UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

Premier Exhibitions, Inc., *et al.*,[1]

Debtors.

CHAPTER 11

Case No. 3:16-bk-02232-PMG

(Jointly Administered)

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) PRELIMINARILY
APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II)
APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH
RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED CHAPTER 11
PLAN, (III) APPROVING THE FORMS OF NOTICES AND BALLOT IN
CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH
RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

COMES NOW Premier Exhibitions, Inc. ("Premier") and certain of its subsidiaries

and affiliates, as debtors and debtors-in-possession in the above-captioned case (collectively,

the "Debtors"), by and through undersigned counsel, and hereby files this motion (the

"Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A**

(the "Order"), granting the following relief:

    A.    **Disclosure Statement**. Preliminarily approving the *Disclosure Statement to
    Accompany Plan of Liquidation of the Debtors under Chapter 11 of the
    Bankruptcy Code* [D.E. •] (the "Disclosure Statement"), [2] filed

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number include: Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and
Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions
NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors'
service address is c/o Troutman Sanders, LLP, 600 Peachtree Street, NE, Suite 3000, Atlanta, GA 30308.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
*Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code* [D.E. •], filed contemporaneously
herewith (as amended, supplemented, or modified from time to time, the "Plan").

contemporaneously herewith, to permit solicitation of the Plan pursuant to the procedures described herein;

B.     ***Solicitation and Voting Procedures***.  Approving procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Disclosure Statement and/or Plan, substantially in the form attached to the Order as <u>Schedule 1</u> (the "<u>Solicitation and Voting Procedures</u>");

C.     ***Ballots***.  Approving the form of ballots for Holders of Class 2 Claims (the "<u>Ballots</u>"), substantially in the form attached to the Order as <u>Schedule 2</u>**;**

D.     ***Solicitation Packages***.  Approving the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to Holders of Class 2 Claims entitled to vote to accept or reject the Plan, in compliance with Rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>");

E.     ***Non-Voting Status Notices***.  Approving (i) the form of notice applicable to Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, (ii) the form of notice applicable to Holders of Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan, and (iii) the form of notice applicable to Holders of Claims that are, among other things, unliquidated, contingent, or disputed, or subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (collectively, the "<u>Non-Voting Status Notices</u>"), substantially in the forms attached to the Order as <u>Schedule 3</u>, <u>Schedule 4</u>, and <u>Schedule 5</u>, respectively;

F.     ***Combined Hearing Notice***.  Approving the form and manner of notice (the "<u>Combined Hearing Notice</u>") of the combined hearing to be held by the Bankruptcy Court to consider (i) final approval of the Disclosure Statement and (ii) Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code (collectively, the "<u>Combined Hearing</u>") substantially in the form attached to the Order as <u>Schedule 6</u>; and

G.     ***Confirmation Dates***.  Establishing the earliest possible dates and deadlines with respect to Confirmation, subject to the Court's availability (the "<u>Confirmation Timeline</u>"):

38704988

| Event | Date[3] | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | [4:00 PM (EDT) on the date which is seven (7) business days prior to the Combined Hearing Date] | Deadline by which objections to the Disclosure Statement must be filed with the Bankruptcy Court and served on the appropriate notice parties (the "Disclosure Statement Objection Deadline") |
| Voting Record Date | [4:00 PM (EDT) on the date which is ten (10) business days after entry of the Order sought herein] | Date for determining, among other things, which Holders of Class 2 Claims are entitled to vote to accept or reject the Plan and (ii) whether Class 2 Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e), such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Class 2 Claim (the "Voting Record Date") |
| Solicitation Deadline | [Fifteen (15) business days after entry of the Order sought herein] | Deadline for distributing Solicitation Packages (including Ballots) to Holders of Class 2 Claims (the "Solicitation Deadline") |
| Voting Deadline | [4:00 PM (EDT) on the date which seven (7) business days prior to the Combined Hearing Date] | Deadline by which **all** Ballots must be properly executed, completed, and delivered so that they are **actually received** (the "Voting Deadline") by the Clerk's |

---

[3] For the avoidance of doubt, the Debtors seek approval of the earliest possible date and time of the Combined Hearing, at the convenience of the Court, along with approval of the time periods set forth in this Confirmation Timeline.

38704988

| | | Office |
|---|---|---|
| Plan Objection Deadline | [4:00 PM (EDT) on the date which is seven (7) business days prior to the Combined Hearing Date] | Deadline by which objections to the Plan must be filed with the Bankruptcy Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline") |
| Deadline to File Confirmation Brief | [One (1) business day prior to the Combined Hearing Date] | Date by which the Debtors shall file their brief in support of Confirmation (the "Confirmation Brief Deadline") |
| Deadline to File Voting Report | [Two (2) days prior to the Combined Hearing Date] | Date by which the report tabulating the voting on the Plan as required by Local Rule 3018-1(d) (the "Voting Report") shall be filed with the Bankruptcy Court |
| Combined Hearing Date | [ • ] | Date and time for the hearing at which the Bankruptcy Court will (i) determine, finally, whether the Disclosure Statement contains "adequate information" and (ii) consider Confirmation of the Plan |

In support hereof, the Debtors respectfully represent the following:

### JURISDICTION AND VENUE

1.      This Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  Venue

in this district is proper pursuant to 28 U.S.C. § 1408.

38704988

2.     The statutory predicates for the relief sought herein are sections 105(a), 363, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 2017, 3018, and 3020, and Local Rule 3018-1.

## RELEVANT BACKGROUND[4]

3.     Premier was a leader in the exhibitions industry.   Together with its subsidiaries, Premier presented to the public museum-quality touring exhibitions around the world, most famously including exhibitions of the Titanic Artifacts.   Premier's exhibitions spanned beyond the Titanic Artifacts, however, and on April 9, 2014, Premier entered into a lease for non-residential real property in New York City, New York (the "NY Lease") to house and showcase Premier's Saturday Night Live exhibition – an immersive experience featuring the characters, stories, programs, cast, and creators of "Saturday Night Live" (the "SNL Exhibition").   Unfortunately, the realized profits for the SNL Exhibition were well-below the Debtors' projections, forcing the Debtors to close the SNL Exhibition in June of 2016.   At this point, the rent and expenses associated with the NY Lease became a critical drain on the Debtors' finances, and, after unsuccessful attempts to consensually resolve the termination of the NY Lease, the Debtors pursued a restructuring alternative.

4.     On June 14, 2016, (the "Petition Date") the Debtors commenced voluntary chapter 11 cases, intending to restructure their businesses and continue operating as a going concern.   Pursuant to an Order dated July 21, 2016 [D.E. 100], the cases are jointly administered under the lead case *In re Premier Exhibitions, Inc.*, Case No. 3:16-bk-02232

---

[4] A complete and detailed background with respect to, among other things, the Debtors and these Chapter 11 Cases, is set forth in the Disclosure Statement.

38704988

(collectively, the "Chapter 11 Cases").[5]  As set forth below (and in greater detail in the Disclosure Statement), the Debtors sold substantially all of their assets during these Chapter 11 Cases and no longer engage in any business activities; however, the Debtors continue to operate as debtors-in-possession pursuant to Bankruptcy Code section 1107(a) and 1108, and no trustee or examiner has been appointed.

5.    On August 24, 2016, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") and an Official Committee of Equity Security Holders (the "Equity Committee") [D.E. 166,167].  The United States Trustee subsequently disbanded the Equity Committee by notice dated February 6, 2019 [D.E. 1311].

6.    On June 14, 2018 the Debtors executed that certain *Asset Purchase Agreement* (as subsequently amended, the "Purchase Agreement") by and among the Debtors (and certain non-debtor affiliates) as sellers, and Premier Acquisition, as buyer.  The Purchase Agreement provided for, among other things, a sale of substantially all of the Debtors' assets (as defined in the Purchase Agreement, the "Transferred Assets") to Premier Acquisition.  As consideration for the Transferred Assets, Premier Acquisition agreed to (i) pay to the Debtors $19,500,000.00 in cash, subject to certain adjustments at closing, and (ii) assume certain liabilities set forth in the Purchase Agreement.

7.    On October 19, 2018, the Bankruptcy Court entered an Order [D.E. 1232] approving, among other things, the sale of the Transferred Assets to Premier Acquisition

---

[5] The Chapter 11 Cases originally were jointly administered under the lead case *In re: RMS Titanic, Inc.* (No. 3:16-bk-02230); however, *RMS Titanic, Inc.* was dismissed as a debtor in these Chapter 11 Cases by Order dated March 8, 2019 [D.E. 1336], which order additionally designated Premier as the new "Lead Case."

38704988

under the Purchase Agreement.  The transactions authorized under the Purchase Agreement and the Bankruptcy Court's approval thereof were closed effective as of February 13, 2019. *See* [D.E. 1319].  Due to the closing adjustments required by the Purchase Agreement (and certain unforeseen delays, as discussed in the Disclosure Statement), the Debtors ultimately received a cash total of approximately $11,582,000 (the "Sale Proceeds") as consideration for the Transferred Assets.

8.      As set forth in greater detail in the Disclosure Statement, the Plan provides for the distribution of the Sale Proceeds and the orderly liquidation of the Debtors through the establishment of the Liquidating Trust.  The Debtors believe that the Plan (and the Liquidating Trust) provides for the greatest return to the Debtors' creditors and, accordingly, submit this Motion to enable the Debtors to solicit votes to accept the Plan.

## SUMMARY OF PLAN[6]

9.      The primary objective of the Plan is to establish the Liquidating Trust into which the Debtors' remaining Assets – specifically including the Sale Proceeds and any Causes of Action (such as the D&O Litigation) – will be transferred, liquidated, and ultimately distributed to the Liquidating Trust Beneficiaries.

10.     The Plan contemplates classifying Holders of Claims and Interests[7] into certain Classes of Claims and Interests for all purposes, including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code.  The following chart represents

---

[6] This summary of the terms of the Plan is qualified in its entirety by reference to the Plan and the Disclosure Statement.  To the extent there is any inconsistency between the terms of the Plan or Disclosure Statement, on the one hand, and the summary provided in this Motion, on the other, the terms of the Plan shall govern.

[7] Pursuant to Bankruptcy Code section 1123(a)(1), Administrative Expense Claims and Priority Tax Claims, both of which are Unimpaired and deemed to accept the Plan, are not classified under the Plan.

38704988

the Classes of Claims and Interests under the Plan and their respective voting rights in regard

to the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| **Classified Claims and Interests against the Debtors** | | | |
| Class 1 | Priority Claims | Unimpaired | Deemed to Accept |
| Class 2 | Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 | PRXI Equity Interests | Impaired | Deemed to Reject |
| Class 4 | Subsidiary Equity Interests | Impaired | Deemed to Reject |

11.     In accordance with the foregoing classification of Claims and Interests, the

Plan provides for the following treatment of such Claims and Interests:

| Class | Claim / Interest | Treatment of Claim / Interest |
|-------|-----------------|-------------------------------|
| Class 1 | Priority Claims | Paid in full on the later of (1) the Effective Date or as soon as reasonably practicable thereafter, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon as reasonably practicable thereafter. |
| Class 2 | Unsecured Claims | As soon as is reasonably practicable following the Effective Date, as determined by the Liquidating Trustee in his or her sole discretion, and on each Distribution Date thereafter, each Holder of an Allowed Unsecured Claim shall receive its Pro Rata share of the Net Distributable Assets. |
| Class 3 | PRXI Equity Interests | Holders of PRXI Equity Interests shall not receive or retain any property under the Plan, and on the Effective Date such Equity Interests will be cancelled. |
| Class 4 | Subsidiary Equity Interests | Holders of Subsidiary Equity Interests shall not receive or retain any property under the Plan, and on the |

38704988

|  |  | Effective Date such Equity Interests will be cancelled. |
|--|--|--|

12.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Class 2 Claims (*i.e.*, Unsecured Claims) (the "Voting Class"). The Debtors are not proposing to solicit votes from unclassified claimants or Holders of Claims and Interests in Classes 1, 3, or 4 (each a "Non-Voting Class" and, collectively, the "Non-Voting Classes").

13.     If the Plan is approved, the Confirmation Order shall be deemed to authorize the Debtors to take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, or contemplated by the Plan. These transactions summarized above are described in detail in the Disclosure Statement, filed contemporaneously herewith.

## I.     THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT ON A PRELIMINARY BASIS.

### A.     Preliminary Approval of the Disclosure Statement Is Warranted.

14.     Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent generally may not solicit the acceptance or rejection of a plan unless the disclosure statement describing the plan has been approved as containing "adequate information."  11 U.S.C. § 1125(b) ("An acceptance or rejection of a plan may not be solicited . . . unless . . . there is transmitted . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.").  A court, however, may exercise its equitable powers under section 105 of the Bankruptcy Code to approve a disclosure statement on a preliminary basis (thereby permitting solicitation of the plan without a prior hearing) in the

interests of efficiency and frugality.  *See* 11 U.S.C. § 105(d)(2)(vi) ("The court . . . may issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.").

15.     Indeed, courts both within and outside of this Circuit routinely permit the preliminary approval of a disclosure statement and resulting solicitation, while reserving final approval until the confirmation hearing.  *See, e.g.*, *In re Lighthouse Financial Grp., Inc., et al.* (Case No. 8:09-bk-20530-CPM) (Bankr. M.D. Fla. Jan. 29, 2010) (Doc. No. 173) ("The Disclosure Statement is conditionally approved subject to the rights of parties to object as described below."); *In re Luminent Mortgage Capital, Inc., et. al.* (Case No. 08-21389-DK) (Bankr. D. Md. May 15, 2019) (Doc. No. 538) ("The hearings to determine the adequacy of the Disclosure Statement and to consider confirmation of the Plan will be held concurrently . . ."); *In re HIPCRICKET, INC.* (Case No. 15-10104 (LSS)) (Bankr. D. Del., Mar. 31, 2015) (Doc. No. 290) ("The Disclosure Statement is conditionally approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.  Any objections to the adequacy of the information contained in the Disclosure Statement are expressly reserved for consideration at the Combined Hearing . . .").  *See also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("The Bankruptcy Code does not prohibit simplification of procedures for debtors that are not small business debtors. In fact, Bankruptcy Code § 105(d) [permits] . . . the court [to] issue such orders as are appropriate for the expeditious and economical resolution of the case, including . . . an order providing for combination of the hearing on the plan and disclosure statement.).

38704988

16.     Here, the Debtors respectfully submit that preliminary approval of the Disclosure Statement is both necessary and appropriate, for at least two reasons.  *First*, as this Court is aware, these Chapter 11 Cases have been pending for nearly three years – which, among other things, has resulted in the buildup of a not-inconsiderable amount of administrative expenses.   Preliminarily approving the Disclosure Statement and finally determining its adequacy concurrently with Plan confirmation, however, would result in substantial cost-savings for the Debtors and their estates, inuring to the benefit of the Debtors' Unsecured Creditors.  *Second*, as set forth in greater detail immediately below, the Disclosure Statement contains "adequate information" under Bankruptcy Code section 1125(a)(1), thereby satisfying the requirements of section 1125(b).    Under these circumstances, conditional approval of a disclosure statement is both warranted and proper.  *See, e.g.*, *Gulf Coast Oil*, 404 B.R. at 425.  Accordingly, the Disclosure Statement should be preliminarily approved to expedite the confirmation process.

B.     **Standard for Approval of the Disclosure Statement.**

17.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class

to make an informed judgment about the plan.
11 U.S.C. § 1125(a)(1).

18.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether to vote for the plan. *M. Davis Mgmt. v. Zink (In re M. Davis Mgmt.)*, Nos. 6:09-bk-02071-KSJ, 6:10-ap-00237-KSJ, 2011 Bankr. LEXIS 3068, at *34 (Bankr. M.D. Fla. July 19, 2011) ("The purpose of the disclosure requirements in §§ 1123 and 1125 is to allow creditors to cast an informed vote for or against a plan of reorganization."). *See also Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1118 (11th Cir. 2006) (quoting 11 U.S.C. § 1125(a)(1)). *Accord, e.g.*, *Nelson v. Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)*, No. 98-1080, 1998 U.S. App. LEXIS 21387, at *10 (4th Cir. Aug. 31, 1998) (stating that the purpose of the disclosure statement is to provide "sufficient information to permit a reasonable, typical creditor to make an informed judgment about the merits of the proposed plan."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan.").

19.    "Adequate information" is a flexible standard based on the "particular circumstances of the case." *Bank of the Ozarks v. Coastal Realty Inv., Inc. (In re Coastal Realty Inv., Inc.)*, No. 12-20564, 2013 Bankr. LEXIS 197, at *14 (Bankr. S.D. Ga. Jan. 17, 2013) (internal citations and quotations omitted). *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances

- 12 -

of each case."). In other words, whether a disclosure statement contains "adequate information" within the meaning of Bankruptcy Code section 1125(a) "is to be determined on a case-specific basis." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (citing H.R. Rep. No. 95-595 (1978)).

20. Thus, the determination of what constitutes "adequate information" for the purposes of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the Bankruptcy Court. *In re Howell*, No. 09-91538, 2011 Bankr. LEXIS 1146, at *2 (Bankr. N.D. Ga. Jan. 21, 2011) ("Beyond the statutory guidelines described in § 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court.") (quoting *In re El Comandante Management Co., LLC*, 359 B.R. 410, 414 (Bankr. D. Puerto Rico 2006)). *See also, e.g.*, *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and the form of information are left essentially to the judicial discretion of the bankruptcy court.'") (internal citations omitted).

21. To aid in the exercise of that discretion, courts have identified a number of non-exclusive, non-exhaustive factors which "provide a useful starting point for the Court's analysis of the adequacy of the disclosure statement." *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). These factors include:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors

under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with                                                      affiliates.

*Id.*  *See also In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (identifying relevant factors); *In re Scioto Valley Morg. Co.*, 88 B.R. 168-170-71 (Bankr. S.D. Ohio 1988) (same).  Although the factors are a useful tool, "[d]isclosure of all factors is not necessary in every case."  *Metrocraft*, 39 B.R. at 568.  *See also In re Phx. Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("Nonetheless, it is also well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.") (citing *U.S. Brass Corp.*).

     **C.**     **The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

     22.     Here, the Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Class to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that bankruptcy courts within and outside of this Circuit consider to be representative of "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Disclaimer | Disclaimer regarding the information contained in the Disclosure Statement. | Article I.A. |
| Estimated Administrative Expenses | The approximate amount of Administrative Expense Claims (including Professional Compensation Claims). | Article I.D. |
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article II. |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' challenges with respect to the New York Lease | Article II.F. |
| Events of the Chapter 11 Cases | A summary of the main events in these Chapter 11 Cases. | Article III. |
| A Description and Valuation of the Assets Available | A summary of the Sale Proceeds available for distribution | Article III.S. |
| Future of Company | An explanation of the liquidation of the Debtors pursuant to the Plan. | Article VI.B., C. |
| Summary of the Plan | Among other things, the classification and treatment of Claims and Interests under the Plan and the means for its implementation. | Articles IV – VI. |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis. | Articles X; XII. |
| Certain Tax Matters | A description of certain U.S. federal income tax law consequences of the Plan. | Article XII. |

23.     Based on the foregoing, the Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Class 2 Claims entitled to vote to accept or reject the Plan.  Accordingly, the Disclosure Statement contains "adequate information" within the meaning of Bankruptcy Code section 1125(a)(1) and should, therefore, be approved on a preliminary basis.

**D.      The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

24.      In addition to compliance with Bankruptcy Code section 1125(a)(1), the Disclosure Statement adheres to the notice provisions of Bankruptcy Rule 3016(c). Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  FED. R. BANKR. P. 3016(c) (" . . . the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.").

25.      Here, the Disclosure Statement (and Plan) complies in all respects with Bankruptcy Rule 3016(c).  Article XI.A. of the Disclosure Statement describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Likewise, Article XI.B. of the Disclosure Statement describes in detail the entities entitled to exculpation and release under the Plan.  Each of the foregoing sections is set forth, conspicuously, in bold text.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by specifically and conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan and should, therefore, be approved.

38704988

## II. THE COURT SHOULD APPROVE THE SOLICITATION AND VOTING PROCEDURES, INCLUDING THE VOTING AND TABULATION PROCEDURES, THE MATERIALS, AND THE TIMELINE FOR SOLICITING VOTES ON THE PLAN.

### A. Procedures and Forms Applicable to Solicitation Process.

26.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests, as applicable, for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan.  Bankruptcy Rule 3017(d) provides in relevant part that:

> Upon approval of a disclosure statement – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession, trustee, proponent of the plan, or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)     the plan or a court-approved summary of the plan;
>
> (2)     the disclosure statement approved by the court;
>
> (3)     notice of the time within which acceptances and rejections of such plan may be filed; and
>
> (4)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

FED. R. BANKR. P. 3017(d).

38704988

27.     In accordance with Bankruptcy Rules 2002(b) and 3017(d) and in light of the circumstances of these Chapter 11 Cases, the Debtors propose to distribute solicitation and notice materials as follows:

1.      <u>Distribution and Form of Notice of Combined Hearing</u>

28.     On or before the Solicitation Deadline, the Debtors will serve the Combined Hearing Notice on all known Holders of Claims and Interests and all parties required to be notified under Rule 2002 of the Bankruptcy Rules (the "<u>2002 List</u>") as of the Voting Record Date (regardless of whether such parties are entitled to vote on the Plan).  The Combined Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding the Ballot) from the Debtors and/or the Bankruptcy Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in the Disclosure Statement and Plan; (c) notice to all counterparties to Executory Contracts and Unexpired Leases that all such Executory Contracts and Unexpired Leases not previously assumed and assigned by the Debtors will be rejected under the Plan; (d) notice of the Disclosure Statement Objection Deadline and Plan Objection Deadline; (e) notice of the Combined Hearing Date; and (f) information related thereto.

29.     The Combined Hearing Notice will provide all parties in interest with sufficient notice of, among other things, the Disclosure Statement Objection Deadline, Plan Objection Deadline, and the Combined Hearing as required by Bankruptcy Rules 2002(b) and 3017(d).  Additionally, the Combined Hearing Notice provides the counterparties to

38704988

rejected Executory Contracts and Unexpired Leases with sufficient notice of the rejection thereof, along with instructions on how to obtain a Ballot to vote on the Plan. Accordingly, the Debtors respectfully submit that the Combined Hearing Notice is adequate under Bankruptcy Rules 2002(b) and 3017(d) and should, therefore, be approved.

2.   <u>Distribution and Form of Solicitation Packages.</u>

30.   On or before the Solicitation Deadline, the Debtors will distribute or cause to be distributed the Solicitation Packages by first-class U.S. mail to Holders of Class 2 Claims allowed to vote on the Plan as well as Rejection Claimants (as defined below). Each Solicitation Package will include the following materials:

(a)   a copy of the Solicitation and Voting Procedures;

(b)   the Order (without exhibits except as set forth herein);

(c)   the Combined Hearing Notice;

(d)   the Disclosure Statement;

(e)   the Plan (as Exhibit • to the Disclosure Statement);

(f)   a Class 2 Ballot; and

(g)   such other information as the Bankruptcy Court may direct or approve.

These materials will provide the Rejection Claimants and Holders of Class 2 Claims allowed to vote on the Plan with the information they need to make informed decisions with respect to how to vote to accept or reject the Plan.

31.   Concurrently with providing the Solicitation Packages to the Voting Class, the Debtors shall distribute or cause to be distributed a complete Solicitation Package (excluding the Ballot) to (a) the Office of the United States Trustee for the Middle District of Florida

and (b) to the 2002 List as of the Voting Record Date.  The Debtors believe that the Solicitation Packages (and the proposed distribution thereof) comply in all respects with Bankruptcy Rule 3017(d) and should, therefore, be approved.

3.    <u>Distribution and Form of Non-Voting Status Notices.</u>

32.    Under the Plan and relevant provisions of the Bankruptcy Code, the Non-Voting Classes are not entitled vote to accept or reject the Plan.  Thus, distribution of Solicitation Packages to members of the Non-Voting Classes would deplete estate resources unnecessarily and to the detriment of Unsecured Creditors.  To avoid this result, the Debtors propose to distribute to the Non-Voting Classes the following Non-Voting Status Notices in lieu of the Solicitation Packages:

| Name | Class | Status | Treatment |
|---|---|---|---|
| Administrative Expense Claims<br><br>Priority Tax Claims | N/A (Unclassified) | Unimpaired – Conclusively Presumed to Accept | In lieu of a Solicitation Package, will receive (a) a notice, substantially in the form attached to the Order as <u>Schedule 3</u> and (b) the Combined Hearing Notice. |
| Priority Claims | 1 | Unimpaired – Conclusively Presumed to Accept | In lieu of a Solicitation Package, will receive (a) a notice, substantially in the form attached to the Order as <u>Schedule 3</u> and (b) the Combined Hearing Notice. |
| PRXI Equity Interests | 3 | Impaired – Deemed to Reject | In lieu of a Solicitation Package, will receive (a) a notice, substantially in |

| | | | the form attached to the Order as Schedule 4 and (b) the Combined Hearing Notice. |
|---|---|---|---|
| Subsidiary Equity Interests | 4 | Impaired – Deemed to Reject | In lieu of a Solicitation Package, will receive (a) a notice, substantially in the form attached to the Order as Schedule 4 and (b) the Combined Hearing Notice. |
| Disputed Claims | N/A (Unclassified) | Not Entitled to Vote | In lieu of a Solicitation Package, will receive (a) a notice, substantially in the form attached to the Order as Schedule 5 and (b) the Combined Hearing Notice. |

33.     The contents of and proposed distribution scheme for each of the Non-Voting

Status Notices are set forth in detail as follows:

a.     *Deemed Accepting.*

34.     Under the Plan, Administrative Expense Claims and Priority Tax Claims are

unclassified claims that are treated in accordance with Bankruptcy Code section 1129(a)(9)

and are not, therefore, entitled to vote on the Plan.  Additionally, other (non-tax) Priority

Claims in Class 1 are not entitled to vote on the Plan because the Plan proposes to treat such

Class 1 Claims as Unimpaired.  *See* 11 U.S.C. § 1126(f) ("a class that is not impaired . . . [is]

conclusively presumed to have accepted the plan.").

35. Bankruptcy Rule 3017(d) permits a bankruptcy court to order that the disclosure statement and plan need not be mailed to any unimpaired class and to approve instead the mailing of a "notice that the class is designated in the plan as unimpaired and notice of the name and address from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation." FED. R. BANK. P. 3017(d).

36. In accordance with Bankruptcy Rule 3017(d), the Debtors do not intend to distribute the Solicitation Package to holders of Administrative Expense Claims, Priority Tax Claims, or Priority Claims (collectively, the "Unimpaired Holders"). Instead, the Debtors propose to distribute to the Unimpaired Holders, by first-class U.S. Mail, the following materials in lieu of the Solicitation Package:

(a)   a notice substantially in the form attached to the Order as Schedule 3 (the "Deemed Accepting Notice"), and

(b)   the Combined Hearing Notice.

Among other things, the Deemed Accepting Notice summarizes the treatment provisions of the Plan as applicable to the Classes of Claims held by the Unimpaired Holders. Together with the Combined Hearing Notice, the Deemed Accepting Notice provides the Unimpaired Holders with all necessary information with respect to the Plan, Disclosure Statement, and Combined Hearing.

37. The Debtors believe that distributing the Deemed Accepting Notice (and Combined Hearing Notice) as described above satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Unimpaired Holders. The Debtors, therefore, request that the

Bankruptcy Court approve the form of the Deemed Accepting Notice and its distribution (with the Combined Hearing Notice) to the Unimpaired Holders in lieu of the Solicitation Package.

b.   *Deemed Rejecting.*

38.     Under the Plan, holders of PRXI Equity Interests (Class 3) and Subsidiary Equity Interests (Class 4) (the "Deemed Rejecting Holders") will not receive a distribution from or retain any claim against or interest in the Debtors.   Accordingly, the Deemed Rejecting Holders are not entitled to vote on the Plan because they are conclusively deemed to have rejected it.   *See* 11 U.S.C. § 1126(g) ("[A] class is deemed not to have accepted a plan if . . . [they do not] receive or retain any property under the plan on account of such claims or interests.").   Thus, solicitation of votes on the Plan from the Deemed Rejecting Holders is unnecessary.

39.     In this situation, a court may waive the solicitation requirements under Bankruptcy Rule 3017(d) for impaired creditors (or interest holders) who are deemed to reject a plan pursuant to Bankruptcy Code section 1126(g).   *See, e.g.*, *In re Gen. Growth Props.*, No. 09-11977 (ALG), 2010 Bankr. LEXIS 3190, at *18 (Bankr. S.D.N.Y. Aug. 27, 2010) ("Debtors are not required to distribute Ballots, the Disclosure Statement, the Plan, and/or this Disclosure Statement Order to holders of Claims against or Interests in the Plan Debtors within a Class under the Plan that is deemed to accept *or reject* the plan pursuant to section 1126(f) and (g) of the Bankruptcy Code.") (emphasis supplied).   *See also In re Winn-Dixie Stores, Inc., et al.* (Case No. 05-03817-3F1) (Bankr. M.D. Fla. Aug. 4, 2006) (Doc No.

38704988

9920) at ¶ 14 (waiving requirement to distribute solicitation materials to deemed rejecting classes).

40.     Accordingly, the Debtors do not intend to distribute the Solicitation Package to the Deemed Rejecting Holders.  Instead, the Debtors propose to distribute to the Deemed Rejecting Holders, by first-class U.S. Mail, the following materials in lieu of the Solicitation Package:

        (a)      a notice, substantially in the form attached to the Order as <u>Schedule 4</u> (the "<u>Deemed Rejecting Notice</u>"), and

        (b)      the Combined Hearing Notice.

The Deemed Rejecting Notice summarizes the treatment provisions of the Plan that apply to the Classes of Interests held by the Deemed Rejecting Holders.  Together with the Combined Hearing Notice, the Deemed Accepting Notice provides the Deemed Rejecting Holders with all necessary information with respect to the Plan, Disclosure Statement, and Combined Hearing.

41.     The Debtors, therefore, request that the Bankruptcy Court waive the requirements of Bankruptcy Rule 3017(d) as they may apply to Deemed Rejecting Holders, approve the form of the Deemed Rejecting Notice, and authorize the Debtors to distribute the Deemed Rejecting Notice (with the Combined Hearing Notice) to the Deemed Rejecting Holders in lieu of the Solicitation Package.

        c.     *Disputed Claims.*

42.     Pursuant to Bankruptcy Code Section 1126(a), only holders of allowed claims or interests are entitled to vote to accept or reject a plan.  *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a

plan."). Accordingly, the Debtors propose that any Holder of a Class 2 Claim whose Claim is (a) asserted as wholly unliquidated or wholly contingent; (b) asserted in an untimely Proof of Claim (unless allowed as timely prior to the Voting Record Date); (c) asserted in a Proof of Claim as to which an objection to the entirety of the Claim is pending as of the Voting Record Date; or (d) listed in the Schedules as unliquidated, contingent, or disputed (collectively, the "Disputed Claimants") not be permitted to vote on the Plan except as otherwise provided herein.[8]  Specifically, the Debtors propose that all Holders (or potential Holders) of Claims that will or may arise due to the rejection of Executory Contracts and Unexpired Leases pursuant to §§ 9.1 and 9.2 of the Plan (collectively, the "Rejection Claimants") be allowed to vote to accept or reject the Plan through the submission of a Class 2 Ballot on or before the Voting Deadline; provided that the amount of such claim will be allowed, *solely for voting purposes*, in the amount of $1.00.[9]

43.     Because the Disputed Claimants are not entitled to vote on the Plan, the Debtors do not intend to distribute to the Disputed Claimants the Solicitation Packages. Instead, the Debtors propose to distribute to the Disputed Claimants the following materials in lieu of the Solicitation Package:

  (a)     a notice, substantially in the form attached to the Order as Schedule 5 (the "Notice of Disputed Claim Status"), and

  (b)     the Combined Hearing Notice.

---

[8] The Holder of any Class 2 Claim that is (or is asserted to be) partly contingent, unliquidated, or disputed will receive a Solicitation Package and be permitted to vote the amount of the Claim that is fixed or undisputed, subject to the right of the Holder to ask the Court to temporarily allow the Claim in a higher amount of voting purposes.

[9] For the avoidance of doubt, the allowed amount of $1.00 shall not (y) be binding on the Debtors, the Liquidating Trustee, or any other party in interest for any purpose other than voting (specifically including, but not limited to, for allowance and distribution under the Plan) or (z) excuse the Rejection Claimants from timely filing a Proof of Claim by the Rejection Objection Deadline.

38704988

The Notice of Disputed Claim Status, among other things, informs the Disputed Claimants that their Claims have been designated as contingent, unliquidated, or disputed or are the subject of a pending objection.   The Notice of Disputed Claim Status also informs the Disputed Claimants that, absent the occurrence of a Resolution Event (as defined therein) by the deadline described below, they are precluded from submitting a vote with respect to their contingent, unliquidated, or disputed Claim.   The Debtors, therefore, request that the Bankruptcy Court approve the form of the Notice of Disputed Claim Status and authorize the Debtors to distribute the Notice of Disputed Claim Status (with the Combined Hearing Notice) to the Disputed Claimants in lieu of the Solicitation Package.

44.     The Debtors further request that the Bankruptcy Court fix the date that is two business days prior to the Voting Deadline as the deadline for the ***occurrence*** of a Resolution Event (as defined in the Notice of Disputed Claim Status).   Among other things, this procedure will help ensure an efficient tabulation of Ballots to be completed accurately by the Combined Hearing.[10]

4.     No Notice or Transmittal Necessary.

45.     The Debtors propose that no Solicitation Packages or any other notices or materials need be transmitted to Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to orders previously entered by this Court, as such Holders do not properly

---

[10] Nothing in these procedures is intended to affect the Debtors' right (or the right of any other party, if applicable) to object to any Proof of Claim filed after the Voting Record Date.   With respect to any such objection, the Debtors reserve the right to request, on notice, that any vote cast by the Holder of the disputed claim be disallowed and not counted in determining whether the requirements of Bankruptcy Code section 1126(c) have been met.

38704988

have a Claim against the Debtors or their estates.  Accordingly, and to the extent necessary, the Debtors request authority to refrain from distributing any Solicitation Packages or other solicitation materials to all such Holders.

**B.    The Court Should Approve the Solicitation Packages and Non-Voting Status Notices.**

46.    In light of the circumstances of these Chapter 11 Cases, the Debtors respectfully submit that the Solicitation Packages and Notices of Non-Voting Status are fair and reasonable and are designed to provide adequate notice in accordance with the Bankruptcy Code and Bankruptcy Rules and, thus, should be approved.

**C.    Approval of Dates, Procedures, and Forms Applicable to Voting Process.**

1.    <u>Use of Clerk's Office</u>

47.    Local Rule 3018-1(b) provides that ballots "may be filed in paper with the Court, or may be electronically filed with the Clerk's Office via the Chapter 11 eBallot hyperlink on the Court's website."  Local Rule 3018-1(b).  Consistent with Local Rule 3018-1(b), the Debtors propose to designate the Clerk's Office to receive all Ballots cast on the Plan.  For the avoidance of doubt, the Clerk's Office will be responsible only for receiving the Ballots cast on the Plan; the Debtors will solicit votes on and provide notice of the Plan (including by mailing the Solicitation Packages and other materials set forth herein) and will submit to the Bankruptcy Court the Voting Report in accordance with Local Rule 3018-1(d). Accordingly, and to the extent necessary, the Debtors request authority to utilize the Clerk's Office to receive Ballots and to require that all Ballots to be submitted to the Clerk's Office in accordance with Local Rule 3018-1(b) and (d).

2.      Form of Ballot and Distribution Thereof

48.     Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting a plan of reorganization should conform substantially to Official Form No. B 314.  *See* FED. R. BANKR. P. 3017(d) ("[A] form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.").  However, Bankruptcy Rule 9009 permits alteration of the Official Forms if, among other things, the "national instructions for a particular Official Form" so provide.  FED. R. BANK. P. 9009(a).  Pursuant to the National Instructions, alternations to the ballot form (Official Form No. B314) are permitted.

49.     Here, the Ballot attached as Schedule 2 to the Order is derived from Official Form No. B 314 but includes modifications necessary to address and comply with Local Rule 3018-1(a).  Among other things, Local Rule 3018-1(a) requires that ballots to be distributed "include both the Court's physical address and information regarding the Chapter 11 eBallot hyperlink on the Court's website."  Local Rule 3018-1(a).  Thus, the Ballot includes nonstandard language explaining how it may be cast electronically (via eBallot) or physically (by timely delivery to the Clerk's Office) in accordance with the Local Rule.  The Ballot also includes minor wording and structural changes for clarity and readability.[11]  Accordingly, the Debtors request that the Court approve the Debtors' changes to Official Form No. B314 and further approve the Ballot for use with respect to solicitation of votes on the Plan.

---

[11] For example, the Ballot explains that Class 2 is the only voting Class and defines "Voting Deadline."

3.      Setting the Voting Record Date

50.      Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the Bankruptcy Court, for cause, after notice and a hearing."   FED. R. BANKR. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  *See generally* FED. R. BANKR. P. 3018(a).

51.      Accordingly, the Debtors request that the Bankruptcy Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish [•] as the Voting Record Date.  Setting the Voting Record Date will enable the Debtors to timely determine: (a) the Holders of Claims and Interests entitled to receive Non-Voting Status Notices; (b) the Holders of Class 2 Claims entitled to receive a Solicitation Package and to vote to accept or reject the Plan; and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of such Claim.

52.      Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim *only if* all actions necessary to effectuate the transfer to the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date.  In the event a Claim is transferred

after the Voting Record Date, the transferee of such Claim should be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

53.     Approval of the Voting Record Date and the procedures with respect to transferred Claims will, among other things, establish a straightforward solicitation process. Accordingly, the Debtors request approval of the Voting Record Date and the procedures with respect to transferred Claims.

### 4.    Establishing the Voting Deadline

54.     Bankruptcy Rule 3017(c) provides that the Bankruptcy Court shall fix a time within which the holders of claims or interests may accept or reject a plan of reorganization. *See* FED. R. BANKR. P. 3017(c).  Accordingly, the Debtors request that the Bankruptcy Court establish [•] as the Voting Deadline.  For the avoidance of doubt, the Debtors request that the Banrkuptcy Court require that the Voting Class (Holders of Class 2 Claims entitled to vote to accept or reject the Plan) complete, execute, and return their Ballots so that they are ***actually received*** by the Clerk's Office on or before the Voting Deadline.  The proposed solicitation period will afford the Voting Class sufficient time with which to review and analyze the Solicitation Packages and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline.  Thus, the Debtors submit that this solicitation period is sufficient, and the Voting Deadline should be approved.

**D.     Approval of Procedures for Vote Tabulation.**

55.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under

> section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Additionally, Bankruptcy Rule 3018(c) provides, in relevant part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, [and] be signed by the creditor or equity security holder or an authorized agent . . . ." FED. R. BANKR. P. 3018(c). Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which set forth specific voting and tabulation requirements and processes, including:

1.  <u>Votes Counted.</u>

56.     Subject to paragraph 57 below, the Debtors propose that any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant, and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

2.  <u>Votes Not Counted.</u>

57.     The Debtors further propose that the following Ballots ***not*** be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any Ballot received after the Voting Deadline (unless the Debtors have granted an extension of the Voting Deadline);

(b)     any Ballot that is illegible, unsigned, or otherwise contains insufficient information to permit the identification of the claimant (including, but not limited to, any Ballot that fails to indicate the fiduciary or representative capacity of the signatory, if applicable);

(c)     any Ballot cast by a person or entity that does not hold a Class 2 Claim;

(d)　　any Ballot cast for a Claim designated as unliquidated, contingent, or disputed, or as zero or unknown in amount (except for the Ballots cast by Rejection Claimants) and for which no timely Resolution Event has occurred;

(e)　　any Ballot not marked to accept or reject the Plan or marked to both accept and reject the Plan;

(f)　　any duplicate Ballots, with one electing acceptance and the other electing rejection unless the later Ballot is explicitly designated as amending the prior one; or

(g)　　any other Ballot not cast in accordance with the Solicitation and Voting Procedures.

58.　　The Debtors respectfully submit that the procedures set forth herein (and in greater detail in the Solicitation and Voting Procedures) provide for a fair and equitable voting process in light of the circumstances involved and should be approved.

## III.　THE COURT SHOULD APPROVE THE PROCEDURES FOR CONFIRMING THE PLAN AND FINALLY APPROVING THE DISCLOSURE STATEMENT.

### A.　The Court Should Approve the Combined Hearing Date.

59.　　Section 1125(b) of the Bankruptcy Code provides that a disclosure statement must be approved as containing adequate information after a notice and hearing.  11 U.S.C. § 1125(b).  Likewise, section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  *See generally* 11 U.S.C. § 1128.  Accordingly, Bankruptcy Rule 3017(a) and (c) provide for the Court to fix a date certain for the hearing to determine approval of the disclosure statement and confirmation of the plan.  *See* FED. R. BANKR. P. 3017(a), (c).  As a general matter, Bankruptcy Rule 2002(b) requires 28 days' notice of the hearing to consider confirmation of a chapter 11 plan.  FED. R. BANKR. P. 2002(b)(2).

60.     In accordance with Bankruptcy Rules 2002(b) and 3017(a) and (c) and sections 1125(b) and 1128 of the Bankruptcy Code, the Debtors request that the Bankruptcy Court establish [•] as the Combined Hearing.  The Debtors further request permission to continue the Combined Hearing from time to time without further notice to parties in interest other than such adjournment announced in court and/or a notice of adjournment filed with the Bankruptcy Court and served on the 2002 List.

   **B.     The Court Should Approve the Procedures for Filing Objections to the Plan and Disclosure Statement.**

61.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  FED. R. BANKR. P. 3020(b)(1).  Likewise, objections to a disclosure statement must be filed and served by a date "as the court may fix."  FED. R. BANKR. P. 3017(a).  Accordingly, the Debtors request that the Court establish [•] as the Disclosure Statement Objection Deadline and [•] as the Plan Objection Deadline.

62.     The Debtors also request that the Bankruptcy Court direct the manner in which parties in interest may object to confirmation of the Plan or to the adequacy of the Disclosure Statement.  Specifically, and as set forth in the Combined Hearing Notice, the Debtors propose that objections to the Disclosure Statement, confirmation of the Plan, or requests for modification to the Plan, if any, must:

   (a)     be in writing;

   (b)     conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Bankruptcy Court;

(c)     state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

(d)     be filed with the Bankruptcy Court (contemporaneously with proof of service) so as to be ***actually received*** and served upon the applicable notice parties on or before the Plan Objection Deadline or Disclosure Statement Objection Deadline, as applicable.

63.     Finally, the Debtors propose that they (and other parties supporting the Plan and Disclosure Statement) be permitted to file a reply to objections to the Disclosure Statement and/or Plan confirmation, if any, and a memorandum in support of the adequacy of the Disclosure Statement and/or confirmation of the Plan, if necessary, by [•].

64.     The Debtors submit that the Disclosure Statement Objection Deadline, Plan Objection Deadline, and the Confirmation Brief Deadline afford the Bankruptcy Court, the Debtors, and all other parties in interest reasonable time to consider the Disclosure Statement, the Plan, and any objections or proposed modifications thereto prior to the Combined Hearing.  Accordingly, the Debtors request approval of the Disclosure Statement Objection Deadline, Plan Objection Deadline, and Confirmation Brief Deadline.

## NON-SUBSTANTIVE MODIFICATIONS

65.     The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Combined Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Solicitation and Voting Procedures, Plan Supplement Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages (or other materials) before distribution.

38704988

## NOTICE

66.     The Debtors will provide notice of this Motion via first class mail and/or email, as applicable, to: (a) the Office of the United States Trustee for the Middle District of Florida (Attn: Miriam Suarez, Esq.); (b) counsel to the Creditors' Committee, Storch Amini PC (Attn: Jeff Chubak, Esq.); (c) counsel to Premier Acquisition, Greenberg Traurig, LLP (Attn: Scott Grossman, Esq.) & Bracewell LLP (Attn: Jen Feldsher, Esq.); (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; and (f) any other party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

67.     No prior request for the relief sought in this Motion has been made to this or any other court.


WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other and further relief as is just and proper.


[*Signature on following page*]

38704988

Dated:     May 15, 2019                    NELSON MULLINS RILEY &
                                           SCARBOROUGH LLP


                                           By: */s/ Daniel F. Blanks*
                                               Daniel F. Blanks, FL Bar No. 88957
                                               Lee D. Wedekind, III, FL Bar No. 670588
                                               50 N. Laura Street
                                               Suite 4100
                                               Jacksonville, FL 32202
                                               Telephone:   904.665.3656
                                               Facsimile:   904.665.3699

                                           *Co-Counsel for Debtors and Debtors in
                                           Possession*

                                           -and-


                                               TROUTMAN SANDERS LLP
                                               Harris B. Winsberg (FL Bar No. 0127190)
                                               Matthew R. Brooks (GA Bar No. 378018)
                                               Bank of America Plaza
                                               600 Peachtree Street NE
                                               Suite 3000
                                               Atlanta, GA  30308-2216
                                               Telephone:   404.885.3000
                                               Facsimile:   404.885.3900

                                           *Counsel for Debtors and Debtors in
                                           Possession*

38704988

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on May 15, 2019. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Jay B. Verona, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
(813) 229-7600
jverona@slk-law.com
*Attorneys for George F. Eyde
Orlando, LLC and Louis J. Eyde
Orlando, LLC*

Jill E. Kelso, Esq.
Miriam G. Suarez, Esq.
Office of the United States Trustee
400 W. Washington Street, Suite 1100
Orlando FL 32801
(407) 648-6301 ext. 137
jill.kelso@usdoj.gov
Miriam.g.suarez@usdoj.gov
*Attorneys for Guy G. Gebhardt,
Acting U.S. Trustee for Region 21*

Scott M. Grossman, Esq.
Greenberg Traurig
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
(954) 768-5212
grossmansm@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,
Jihe Zhang, High Nature Holdings
Limited and PacBridge Capital Partners
(HK) Ltd.*

Ari Newman, Esq.
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
newmanar@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,
Jihe Zhang, and High Nature Holdings
Limited*

Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
*Attorneys for 417 Fifth Avenue Real
Estate, LLC*

Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
ajenkins@bushross.com
*Attorneys for Bank of America, N.A.*

38704988

Matthew J. Troy, Esq.
U.S. Dept. of Justice
1100 L Street NW, Suite 10030
Washington, DC 20005
(202) 514-9038
matthew.troy@usdoj.gov
*Attorneys for the United States Department
of Commerce, National Oceanic and
Atmospheric Administration*

Kathy A. Jorrie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
(213) 488-7251
Kathy.jorrie@pillsburylaw.com
*Attorneys for AEG Presents, LLC*

Brian D. Equi, Esq.
Goldberg Segalla, LLP
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 458-5608
bequi@goldbergsegalla.com
salamina@goldbergsegalla.com
sherndon@goldbergsegalla.com
*Attorneys for Structure Tone, Inc.*

J. Ellsworth Summers, Jr., Esq.
Burr Forman, LLP
50 N. Laura Street, Suite 3000
Jacksonville, FL 32202
(904) 232-7200
esummers@burr.com
*Attorneys for Michael J. Little*

Norman P. Fivel, Esq.
Assistant Attorney General
Office of the New York State
Attorney General
Civil Recoveries Bureau,
Bankruptcy Litigation Unit
The Capitol
Albany, NY 12224-0341
(518) 776-2264
norman.fivel@ag.ny.gov
*Attorneys for New York Dept. of Taxation
and Finance*

D. Marcus Braswell, Jr., Esq.
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
(305) 529-2801
mbraswell@sugarmansusskind.com
*Attorneys for Theatrical Protective Union,
Local No. One, IATSE*

Chris Broussard, Esq.
Suzy Tate, P.A.
14502 N. Dale Mabry Highway, Suite 200
Tampa, FL 33618
(813) 264-1685
cbrouss@suzytate.com
*Attorneys for The Armada Group GP, Inc.*

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
(904) 358-4000
rrt@tmhlaw.net
*Attorneys for Official Committee of
Unsecured Creditors*

38704988

Avery Samet, Esq.
Jeffrey Chubak, Esq.
Storch Amini & Munves PC
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100
asamet@samlegal.com
jchubak@samlegal.com
*Attorneys for Official Committee of
Unsecured Creditors*

Jacob A. Brown, Esq.
Katherine C. Fackler, Esq.
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
(904) 798-3700
jacob.brown@akerman.com
katherine.fackler@akerman.com
*Attorneys for the Official Committee of
Equity Security Holders of Premier
Exhibitions, Inc.*

T. David Mitchell, Esq.
Brenner Kaprosy Mitchell, L.L.P.
30050 Chagrin Blvd., Suite 100
Pepper Pike, OH 44124
(216) 292-5555
tdmitchell@brenner-law.com
*Attorneys for CRI Properties, Ltd.*

Susan R. Sherrill-Beard, Esq.
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326
(404) 842-7626
sherrill-beards@sec.gov
atlreorg@sec.gov
*Attorneys for U.S. Securities and
Exchange Commission*

Peter J. Gurfein, Esq.
Roye Zur, Esq.
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 557-0050
pgurfein@lgbfirm.com
rzur@lgbfirm.com
*Attorneys for Official Committee of Equity Security
Holders of Premier Exhibitions, Inc.*

Skyler M. Tanner, Esq.
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
tanners@lanepowell.com
beldingt@lanepowell.com
docketing-pdx@lanepowell.com
*Attorneys for Oregon Museum of Science and
Industry*

Howard Siegel, Esq.
945 McKinney Street, PMB 434
Houston, TX 77002
(713) 984-4801
howard@eucinv.com
*Attorney for Euclid Investments, LP
And Euclid Claims Recovery LLC*

Garrett A. Nail, Esq.
John F. Isbell, Esq.
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2900
garrett.nail@thompsonhine.com
john.isbell@thompsonhine.com
*Attorneys for Bay Point Capital Partners, LP*

38704988

Steven R. Fox, Esq.
Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316
srfox@foxlaw.com
*Attorneys for Titanic Entertainment Holdings*

Stephen D. Busey, Esq.
Asghar A. Syed, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
(904) 359-7700
busey@smithhulsey.com
asyed@smithhulsey.com
*Attorneys for the Ad Hoc Group of Equityholders*

Jennifer Feldsher, Esq.
David L. Lawton, Esq.
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 508-6100
Jennifer.feldsher@bracewell.com
David.laweton@bracewell.com
*Attorneys for the Ad Hoc Group of Equityholders*

Patricia Ann Redmond, Esq.
Stearns Weaver, et al.
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
predmond@stearnweaver.com
*Attorneys for the Trustees of the National Maritime Museum*

Timothy Graulich, Esq.
James I. McClammy, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Timothy.graulich@davispolk.com
James.mcclammy@davispolk.com
*Attorneys for the Trustees of the National Maritime Museum*

Jason B. Burnett, Esq.
Ashlea A. Edwards, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
ashlea.edwards@gray-robinson.com
*Attorneys for Ramparts, Inc. d/b/a Luxor Hotel and Casino*

Steven Z. Szanzer, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Steven.szanzer@davispolk.com
*Attorneys for Royal Museum Greenwich*

Robert P. Charbonneau, Esq.
Agentis PLLC
55 Alhambra Plaza, Suite 800
Coral Gables, FL 33134
(305) 722-2002
rpc@agentislaw.com
*Attorneys for Responsible Person Mark C. Healy*

38704988

**Via U.S. Mail**

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
5290 Shawnee Road, Suite 300
Alexandria, VA 22312

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144
Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

George Young Company
509 Heron Drive
Swedesboro, NJ 08085
Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
543 Broad Street
Augusta, GA 30901

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

38704988

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Time Out New York
405 Park Avenue
New York, NY 10022

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

B.E. Capital Management Fund LP
Thomas Branziel
228 Park Avenue South, Suite 63787
New York, NY 10003
*Creditor Committee*

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5
Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
*Creditor Committee*

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

AEG Presents LLC
c/o Managing Member
800 W. Olympic Blvd.
Suite 305
Los Angeles, CA 90015

AEG Presents LLC
c/o CT Corporation System,
Registered Agent
ATTN: Amanda Garcia
818 West Seventh Street
Suite 930
Los Angeles, CA 90017

AEG Presents LLC
c/o Managing Member
5750 Wilshire Blvd.
Suite 501
Los Angeles, CA 90036-3638

AEG Presents LLC
c/o Managing Member
425 W. 11th Street
Los Angeles, CA 90015-3459

_____*/s/ Daniel F. Blanks*_____
Attorney