**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 3:16-bk-2232-PMG |
| PREMIER EXHIBITIONS, INC., et. al., | Chapter 11 |
| _____Debtor._____ / | |

**RESPONSIBLE PERSON'S EXPEDITED MOTION FOR**
**TURNOVER OF ELECTRONICALLY STORED DATA**

*(Expedited Hearing Requested)*

**Basis for Expedited Relief**

> **The Responsible Person, as Plaintiff in Adversary Proceeding 18-00064-PMG, and the Defendants in that adversary proceeding, are scheduled for mediation on July 24, 2019. The Responsible Person believes there is information on the Debtors' servers which may be probative and helpful in preparation for the mediation. The Responsible Person and his counsel already conducted a meet and confer with Debtors' counsel on May 1, 2019, but no turnover has been made, and the timing of the relief sought is critical to the success of the mediation.**

MARK C. HEALY of Michael Moecker & Associates, Inc., in his capacity as Court-Appointed Responsible Person (the "Responsible Person" or "Mr. Healy"), by and through undersigned counsel, moves for turnover of electronically stored data and servers held by the Debtors (the "Motion"). In support of this Motion, the Responsible Person states as follows:

1. On June 14, 2016, (the "Petition Date") the Debtors commenced voluntary chapter 11 cases. Pursuant to an Order dated July 21, 2016 [ECF# 100], the cases were jointly administered under the lead case *In re Premier Exhibitions, Inc.*, Case No. 3:16-bk-02230

(collectively, the "Chapter 11 Cases").[1] As set forth below (and in greater detail in the Disclosure Statement), the Debtors sold substantially all of their assets during these Chapter 11 Cases and no longer engage in any business activities.

2. On August 24, 2016, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") [ECF# 166,167].

3. As fiduciaries, the Debtors were obligated to investigate and pursue certain directors and officer's liability claims (the "D&O Claims") on behalf of the estate, but refused to do so. Accordingly, on May 11, 2018, the Equity Committee filed the *Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estates* [ECF # 1015], seeking derivative standing to prosecute and potentially settle the D&O Claims.

4. The Debtors objected to the Equity Committee's pursuit of standing to prosecute the D&O Claims and its retention of Special Litigation Counsel, arguing that the Court should stay any prosecution of the D&O Claims [ECF #1029]. Notably, certain directors of the Debtors were at that time and continue to be defendants and targets of the D&O Claims, and were indisputably conflicted in making any decisions relating the Equity Committee's request for derivative standing.

5. On May 25, 2018, the Court granted derivative and exclusive standing to the Equity Committee to commence, prosecute and, if appropriate, settle the D&O Claims for the benefit of the estate [ECF #1036], and approved the undersigned to represent the Equity Committee in connection with such litigation [ECF #1038].

---

[1] The RMS Titanic, Inc., Case No.: 3:16-bk-02330 (the "RMS Case") was dismissed on March 11, 2019 [ECF# 1336]. Unless otherwise noted, all references to filings in this Motion refer to filings in the RMS Case.



6. On June 5, 2018, the Equity Committee filed its *Adversary Complaint and Demand for Jury Trial*, initiating an adversary proceeding to pursue the D&O Claims, Case No. 3:18-ap-00064-PMG (the "Adversary Proceeding").

7. On June 14, 2018 the Debtors executed that certain Asset Purchase Agreement (as subsequently amended, the "Purchase Agreement") by and among the Debtors (and certain non-debtor affiliates) as sellers, and Premier Acquisition, as buyer. The Purchase Agreement provided for, among other things, a sale of substantially all of the Debtors' assets (as defined in the Purchase Agreement, the "Transferred Assets") to Premier Acquisition. As consideration for the Transferred Assets, Premier Acquisition agreed to (i) pay to the Debtors $19,500,000.00 in cash, subject to certain adjustments at closing, and (ii) assume certain liabilities set forth in the Purchase Agreement.

8. On October 3, 2018, the Equity Committee filed the *Motion of the Official Committee of Equity Security Holders to Establish Document Retention Protocols* [ECF #1221] (the "Retention Motion"), requesting the establishment of protocols to retain and preserve the Debtors' documents and information to ensure that no evidence, or potential evidence, relating to the Adversary Proceeding or the D&O Claims would be lost, altered, or destroyed as a result of the sale of the Debtors' assets to a proposed purchaser.

9. The Debtors filed an objection to the Retention Motion [ECF #1230], and on October 18, 2018, the Court held a hearing on the Retention Motion. An order was entered on an agreed basis granting in part and denying in part the Retention Motion (the "Protocol Order") on October 29, 2018. The Protocol Order was entered on the docket on October 30, 2018 [ECF #1247]. The Protocol Order required the Debtors to:

> preserve and instruct all of its relevant personnel to retain and preserve any information, documents, and records in its

3



possession, custody or control, including not only hard copy documents, but also e-mail, text messages, social media messages and postings, audio recordings, videotape, instant messages, bank statements, credit card statements, loan applications, financial records, receipts, invoices, statements, spreadsheets, databases, calendars, telephone logs, internet usage files, and all other electronically stored information ("ESI"), whether on computer systems, phones, or otherwise. The Debtor shall also maintain and preserve, without alteration, sources of the ESI, documents, and data, including, without limitation, all hard copy files, computer hard drives, removable media (e.g., CDs, DVDs and flash/thumb/jump drives), laptop computers, PDAs, smart phone devices, cell phones, and any other locations where hard copies, data, and ESI is stored. The above-mentioned sources of relevant information include those on personal computers and smart phones. It also includes inaccessible storage media, such as back-up tapes and servers which may contain relevant electronic information that does not exist in any other form. The Debtors shall suspend deletion, overwriting, and any other possible destruction of relevant documents and data, including suspension of Debtors' current document destruction policy, if any, and/or automatic deletion function on computers or other electronic devices.

10. On January 22, 2019 the Debtors filed the *Motion to Vacate the Agreed Order Granting Motion of the Official Committee of Equity Security Holders to Establish Document Retention Protocols and Request for Hearing* [ECF #1294] (the "Motion to Vacate"). On January 23, 2019, the Court's courtroom deputy inquired with the parties the estimated time necessary to dispose of the Motion to Vacate. After several exchanges, counsel for the Debtors sent a rather remarkable email to the Court's courtroom deputy, explaining that:

> It is a practical impossibility for the Debtors to collect and preserve every item of information. Aside from the practical impossibility; the cost to collect everything and maintain it would cost tens of thousands of dollars; and the Debtors have already produced thousands of documents and other information to the Equity Committee, which was the basis for the claims in the D&O complaint. Since the Debtors anticipate closing the sale tomorrow, we need to address the document retention order to appropriately reflect the agreement that was announced on the record. The order as currently entered cannot be performed by

4



>the Debtors because it requires them to preserve everything and that is not possible prior to closing.

*See*, attached **Exhibit "A"**, a true and correct copy of Debtors' counsel's January 23, 2019 email to courtroom deputy.

11. On April 5, 2019, the Court denied the Motion to Vacate.

12. The United States Trustee disbanded the Equity Committee by notice dated February 6, 2019 [D.E. 1311]. On January 25, 2019 the Court entered the *Consent Order Granting Motion to Appoint a Responsible Person As Substitute Plaintiff In The Adversary Proceeding Against Certain of the Debtors' Current and Former Directors and Officers* [ECF # 25 in the Adversary Proceeding.] Pursuant to this order, the Responsible Person was appointed and substituted as the plaintiff in the Adversary Proceeding with "all rights, powers and remedies granted to the Equity Committee under" the order granting standing to pursue the D&O Claims to the Equity Committee.

13. On October 19, 2018, the Bankruptcy Court entered an Order [ECF# 1232] approving, among other things, the sale of the Transferred Assets to Premier Acquisition under the Purchase Agreement. The transactions authorized under the Purchase Agreement and the Bankruptcy Court's approval thereof were closed effective as of February 13, 2019. *See* [ECF# 1319]. Due to closing adjustments purportedly required by the Purchase Agreement, the Debtors ultimately received a cash total of approximately $11,582,000 (the "Sale Proceeds") as consideration for the Transferred Assets. See [ECF # 82 *Premier Exhibitions, Inc.*].

14. The Debtors have opposed the active prosecution of the Adversary Proceeding and D&O Claims at every opportunity, including upon the undersigned's request for production of documents and other information the Debtors were required to preserve. The Debtors' stated



basis for their opposition has always been the pending sale, and its closing.  Now the sale is closed, and the purported distraction of both the sale and closing no longer exists, if it ever did.

15. Moreover, the Responsible Person will soon inherit all of the Debtors' interests in and to the electronically stored data and servers sought in this Motion, as is made clear in the Debtors' *Consent Motion for an Order Appointing a Responsible Person as Substitute Plaintiff in The Adversary Proceeding Against Certain of The Debtor's Current and Former Directors and Officers*[ECF # 1296]:

> Through consultation with the Equity Committee, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and other constituencies, the Debtors have selected Mr. Healy of Michael Moecker & Associates, Inc. to serve as the liquidating trustee upon confirmation of the Debtors' Plan and, prior thereto, as the responsible person who will be substituted upon the Equity Committee's pre-Plan dissolution as the plaintiff in the Adversary Proceeding.

16. The Debtors are not operating.  Mr. Healy will shortly evolve from Responsible Person to Liquidating Trustee under the Debtors' plan.  There is no factual or legal basis for delaying the turnover of all of the Debtors' servers and information contemplated in the Protocol Order, and yet that information is still not in the possession of Mr. Healy.  In light of the impending mediation, the Responsible Person requests an expedited hearing to request turnover of the Debtors' electronically stored data and servers.

**<u>RESERVATION OF RIGHTS</u>**

17. Based on the representations of the Debtors to the Court concerning the difficulty in preserving the Debtors' information as required under the Protocol Order, the Responsible Person is concerned about possible spoliation of evidence.  While not making such a claim at this time, and subject to the turnover of all information contemplated under the Protocol Order, the



55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

Responsible Person is reserving all rights against the Debtors and their professionals concerning spoliation of evidence.

**WHEREFORE**, the Responsible Person respectfully requests the entry of an order (i) requiring the Debtors to turnover the electronically stored data and servers; and (ii) granting such further relief as the Court deems just and appropriate.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on May 21, 2019.

        **AGENTIS, PLLC**
        *Counsel for Mark C. Healy as Responsible Person*
        55 Alhambra Plaza, Suite 800
        Coral Gables, Florida 33134
        Tel.:   305.722.2002
        www.agentislaw.com

        By:   /s/ Robert P. Charbonneau_____
              Robert P. Charbonneau
              Florida Bar No.: 968234
              rpc@agentislaw.com



# Exhibit "A"

**From:** Daniel Blanks <daniel.blanks@nelsonmullins.com>
**Sent:** Wednesday, January 23, 2019 10:44 AM
**To:** CBarry@flmb.uscourts.gov
**Cc:** jacob.brown@akerman.com; Robert P. Charbonneau <RPC@agentislaw.com>; jchubak@samlegal.com; Brooks, Matthew Ray <Matthew.Brooks@troutman.com>
**Subject:** RE: RMS Titanic 16-2230 Em/Motion Vacate Agreed Order

Barry,

The current order was uploaded without the Debtors' consent or advance notice. By its terms, it requires the Debtors to maintain every single document and every single piece of information and ESI without regard to whether such information or documents are even remotely relevant to the D&O litigation. This is not the standard under Rule 26. The closing for the sale of the Debtors is scheduled for tomorrow. It is a practical impossibility for the Debtors to collect and preserve every item of information. Aside from the practical impossibility; the cost to collect everything and maintain it would cost tens of thousands of dollars; and the Debtors have already produced thousands of documents and other information to the Equity Committee, which was the basis for the claims in the D&O complaint. Since the Debtors anticipate closing the sale tomorrow, we need to address the document retention order to appropriately reflect the agreement that was announced on the record. The order as currently entered cannot be performed by the Debtors because it requires them to preserve everything and that is not possible prior to closing. This is the basis for the request for the emergency hearing.

The Debtors anticipate closing the sale tomorrow, and the buyers will take over the business as a going concern. The Debtors have agreed to preserve and maintain the data room, the previous production, and certain other documents and information relevant to the D&O litigation, but cannot maintain everything.

The Debtors' position is based solely on the agreement that was announced on the record at the October 18 sale hearing - specifically pages 81-82 of the transcript. Accordingly, we estimate the Debtors would require less than 10 minutes to explain the Debtors' position and cite the relevant transcript pages.

Best,

Dan

## NELSON MULLINS

**DANIEL F. BLANKS  PARTNER**
daniel.blanks@nelsonmullins.com
50 N. LAURA STREET | 41ST FLOOR
JACKSONVILLE, FL 32202
T 904.665.3656   F 904.665.3699

2

NELSONMULLINS.COM    VCARD   VIEW BIO

**From:** CBarry@flmb.uscourts.gov [mailto:CBarry@flmb.uscourts.gov]
**Sent:** Wednesday, January 23, 2019 9:02 AM
**To:** Daniel Blanks <daniel.blanks@nelsonmullins.com>
**Cc:** jacob.brown@akerman.com; rpc@agentislaw.com; jchubak@samlegal.com
**Subject:** RMS Titanic 16-2230 Em/Motion Vacate Agreed Order

Gentlemen

Chambers is in receipt of your motion filed yesterday requesting an emergency motion to vacate (doc 1294) an order from October 2018 and requesting an expedited hearing for tomorrow.

As I have expressed previously, Judge Glenn is out and Judge Funk will be hearing the scheduled motion that is set for tomorrow with the understanding that it would be short and in and out.

Having received no advanced notification this motion would be filed, I need to get some clarification before I take this to Judge Funk to review for consideration of adding for tomorrow,

1-The exact emergency of the situation and the need to have it heard on 1 day's notice

2-Any non reversible repercussion it would have it not heard tomorrow.

3-Length of discussion of the motion.

Thank you.



Barry Clark, Courtroom Deputy
United States Bankruptcy Judge Paul M. Glenn
Jacksonville Division
Phone: 904-301-6554
Email: cbarry@flmb.uscourts.gov

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.