UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

Premier Exhibitions, Inc., *et al.*,[1]

                    Debtors.

CHAPTER 11

Case No. 3:16-bk-02232-JAF

(Jointly Administered)

**NOTICE OF FILING OF (I) FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; AND (II) REVISED LIQUIDATING TRUST AGREEMENT TO ACCOMPANY PLAN**

　　　**PLEASE TAKE NOTICE** that, on May 15, 2019, Premier Exhibitions, Inc. ("Premier") and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed the *Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 81] (the "Original Plan") and accompanying *Liquidating Trust Agreement*, as Exhibit A to the Original Plan (the "Original Liquidating Trust Agreement").

　　　**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the *First Amended Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code* (the "Amended Plan") and accompanying revised *Liquidating Trust Agreement*, as Exhibit A to the Amended Plan (the "Revised Liquidating Trust Agreement"). The Amended Plan and accompanying Revised Liquidating Trust Agreement are attached hereto collectively as **Schedule 1**.

　　　**PLEASE TAKE FURTHER NOTICE** that a redline comparison of the Amended Plan reflecting the cumulative changes as between the Original Plan and Amended Plan is attached hereto as **Schedule 2**.

　　　**PLEASE TAKE FURTHER NOTICE** that a redline comparison of the Revised Liquidating Trust Agreement reflecting the cumulative changes as between the Original Liquidating Trust Agreement and the Revised Liquidating Trust Agreement is attached hereto as **Schedule 3**.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is c/o Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308.

Dated:      September 11, 2019           NELSON MULLINS RILEY &
                                         SCARBOROUGH LLP


                                         By: /s/ *Lee D. Wedekind*
                                             Lee D. Wedekind, III, FL Bar No. 670588
                                             50 N. Laura Street
                                             Suite 4100
                                             Jacksonville, FL 32202
                                             Telephone:   904.665.3656
                                             Facsimile:   904.665.3699

                                         *Co-Counsel for Debtors and Debtors in
                                         Possession*

                                         -and-


                                             TROUTMAN SANDERS LLP
                                             Harris B. Winsberg (FL Bar No. 0127190)
                                             Matthew R. Brooks (admitted *pro hac
                                             vice*)
                                             Bank of America Plaza
                                             600 Peachtree Street NE
                                             Suite 3000
                                             Atlanta, GA  30308-2216
                                             Telephone:   404.885.3000
                                             Facsimile:   404.885.3900

                                         *Counsel for Debtors and Debtors in
                                         Possession*

40132832

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on September 11, 2019. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Jay B. Verona, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
(813) 229-7600
jverona@slk-law.com
*Attorneys for George F. Eyde*
*Orlando, LLC and Louis J. Eyde*
*Orlando, LLC*

Jill E. Kelso, Esq.
Miriam G. Suarez, Esq.
Office of the United States Trustee
400 W. Washington Street, Suite 1100
Orlando FL 32801
(407) 648-6301 ext. 137
jill.kelso@usdoj.gov
Miriam.g.suarez@usdoj.gov
*Attorneys for Guy G. Gebhardt,*
*Acting U.S. Trustee for Region 21*

Scott M. Grossman, Esq.
Greenberg Traurig
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
(954) 768-5212
grossmansm@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, High Nature Holdings*
*Limited and PacBridge Capital Partners*
*(HK) Ltd.*

Ari Newman, Esq.
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
newmanar@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, and High Nature Holdings*
*Limited*

Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
*Attorneys for 417 Fifth Avenue Real*
*Estate, LLC*

Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
ajenkins@bushross.com
*Attorneys for Bank of America, N.A.*

Matthew J. Troy, Esq.
U.S. Dept. of Justice
1100 L Street NW, Suite 10030
Washington, DC 20005
(202) 514-9038
matthew.troy@usdoj.gov
*Attorneys for the United States Department
of Commerce, National Oceanic and
Atmospheric Administration*

Kathy A. Jorrie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
(213) 488-7251
Kathy.jorrie@pillsburylaw.com
*Attorneys for AEG Presents, LLC*

Brian D. Equi, Esq.
Goldberg Segalla, LLP
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 458-5608
bequi@goldbergsegalla.com
salamina@goldbergsegalla.com
sherndon@goldbergsegalla.com
*Attorneys for Structure Tone, Inc.*

J. Ellsworth Summers, Jr., Esq.
Burr Forman, LLP
50 N. Laura Street, Suite 3000
Jacksonville, FL 32202
(904) 232-7200
esummers@burr.com
*Attorneys for Michael J. Little*

Norman P. Fivel, Esq.
Assistant Attorney General
Office of the New York State
Attorney General
Civil Recoveries Bureau,
Bankruptcy Litigation Unit
The Capitol
Albany, NY 12224-0341
(518) 776-2264
norman.fivel@ag.ny.gov
*Attorneys for New York Dept. of
Taxation and Finance*

D. Marcus Braswell, Jr., Esq.
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
(305) 529-2801
mbraswell@sugarmansusskind.com
*Attorneys for Theatrical Protective Union,
Local No. One, IATSE*

Chris Broussard, Esq.
Suzy Tate, P.A.
14502 N. Dale Mabry Highway, Suite 200
Tampa, FL 33618
(813) 264-1685
cbrouss@suzytate.com
*Attorneys for The Armada Group GP, Inc.*

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
(904) 358-4000
rrt@tmhlaw.net
*Attorneys for Official Committee of
Unsecured Creditors*

Avery Samet, Esq.
Jeffrey Chubak, Esq.
Storch Amini, PC
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100
asamet@samlegal.com
jchubak@samlegal.com
*Attorneys for Official Committee of
Unsecured Creditors*

Jacob A. Brown, Esq.
John B. Macdonald, Esq.
David E. Otero, Esq.
Katherine C. Fackler, Esq.
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
(904) 798-3700
jacob.brown@akerman.com
john.macdonald@akerman.com
David.otero@akerman.com
katherine.fackler@akerman.com
*Attorneys for the Official Committee of
Equity Security Holders of Premier
Exhibitions, Inc.*

T. David Mitchell, Esq.
Brenner Kaprosy Mitchell, L.L.P.
30050 Chagrin Blvd., Suite 100
Pepper Pike, OH 44124
(216) 292-5555
tdmitchell@brenner-law.com
*Attorneys for CRI Properties, Ltd.*

Peter J. Gurfein, Esq.
Roye Zur, Esq.
Landau Gottfried & Berger LLP
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
(310) 557-0050
pgurfein@lgbfirm.com
rzur@lgbfirm.com
*Attorneys for Official Committee of Equity Security
Holders of Premier Exhibitions, Inc.*

Skyler M. Tanner, Esq.
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
tanners@lanepowell.com
beldingt@lanepowell.com
docketing-pdx@lanepowell.com
*Attorneys for Oregon Museum of Science and
Industry*

Howard Siegel, Esq.
945 McKinney Street, PMB 434
Houston, TX 77002
(713) 984-4801
howard@eucinv.com
*Attorney for Euclid Investments, LP
And Euclid Claims Recovery LLC*

Susan R. Sherrill-Beard, Esq.
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326
(404) 842-7626
sherrill-beards@sec.gov
atlreorg@sec.gov
*Attorneys for U.S. Securities and*
*Exchange Commission*

Garrett A. Nail, Esq.
John F. Isbell, Esq.
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2900
garrett.nail@thompsonhine.com
john.isbell@thompsonhine.com
*Attorneys for Bay Point Capital Partners, LP*

Steven R. Fox, Esq.
Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316
srfox@foxlaw.com
*Attorneys for Titanic Entertainment*
*Holdings*

Stephen D. Busey, Esq.
Asghar A. Syed, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
(904) 359-7700
busey@smithhulsey.com
asyed@smithhulsey.com
*Attorneys for the Ad Hoc Group of Equityholders*

Jennifer Feldsher, Esq.
David L. Lawton, Esq.
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 508-6100
Jennifer.feldsher@bracewell.com
David.laweton@bracewell.com
*Attorneys for the Ad Hoc Group of*
*Equityholders*

Patricia Ann Redmond, Esq.
Stearns Weaver, et al.
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
predmond@stearnweaver.com
*Attorneys for the Trustees of the National Maritime*
*Museum*

Timothy Graulich, Esq.
James I. McClammy, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Timothy.graulich@davispolk.com
James.mcclammy@davispolk.com
*Attorneys for the Trustees of the National*
*Maritime Museum*
Steven Z. Szanzer, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue

Jason B. Burnett, Esq.
Ashlea A. Edwards, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
ashlea.edwards@gray-robinson.com
*Attorneys for Ramparts, Inc. d/b/a Luxor Hotel*
*and Casino*
Robert P. Charbonneau, Esq.
Agentis PLLC
55 Alhambra Plaza, Suite 800

New York, NY 10017
(212) 450-4000
Steven.szanzer@davispolk.com
*Attorneys for Royal Museum Greenwich*

Thomas J. Francella, Jr., Esq.
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2000
Tfrancella@cozen.com
*Attorneys for Ian Whitcomb*

Coral Gables, FL 33134
(305) 722-2002
rpc@agentislaw.com
*Attorneys for Responsible Person Mark C. Healy*

John T. Rogerson, III, Esq.
Jamie W. Olinto, Esq.
Thomas P. White, Esq.
Adams and Reese LLP
501 Riverside Avenue, Suite 601
Jacksonville, FL 32202
(904) 355-1700
John.rogerson@arlaw.com
Jamie.olinto@arlaw.com
Tom.white@arlaw.com
*Attorneys for Mark A. Sellers, Jack H. Jacobs and Sellers Capital, LLC*

Alan F. Curley, Esq.
Alan R. Dolinko, Esq.
Robinson Curley P.C.
300 S. Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 663-3100
acurley@robinsoncurley.com
adolinko@robinsoncurley.com
*Attorneys for Mark A. Sellers, Jack H. Jacobs and Sellers Capital, LLC*

**Via U.S. Mail**

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ABC Imaging
5290 Shawnee Road, Suite 300
Alexandria, VA 22312

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
1619 Broadway
New York, NY 10019

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

Morris Visitor Publications
543 Broad Street
Augusta, GA 30901

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

Time Out New York
1540 Broadway
New York, NY 10036

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

B.E. Capital Management Fund LP
Thomas Branziel
P.O. Box 206
N. Stonington, CT 06359
***Creditor Committee***

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
***Creditor Committee***

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

AEG Presents LLC
c/o Managing Member
800 W. Olympic Blvd., Suite 305
Los Angeles, CA 90015

AEG Presents LLC
c/o Managing Member
425 W. 11th Street
Los Angeles, CA 90015-3459

AEG Presents LLC
c/o CT Corporation System, Reg. Agent
ATTN: Amanda Garcia
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

*/s/ Lee D. Wedekind, III*
Attorney

**<u>SCHEDULE 1</u>**

40132832

**IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Premier Exhibitions, Inc., *et al.*,[1] | Case No. 3:16-bk-02232-PMG |
| Debtors. | Jointly Administered |

**FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

NELSON MULLINS RILEY
& SCARBOROUGH LLP
Daniel F. Blanks (FL Bar No. 88957)
Lee D. Wedekind, III (FL Bar No. 670588)
50 N. Laura Street, Suite 4100
Jacksonville, FL 32202
Telephone:    (904) 665-3656
Facsimile:     (904) 665-3699
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

TROUTMAN SANDERS LLP
Harris B. Winsberg (FL Bar No. 0127190)
Matthew R. Brooks (admitted *pro hac vice*)
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutman.com
matthew.brooks@troutman.com

Dated: September 11, 2019
        Jacksonville, Florida

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Premier Exhibitions, Inc. (4922); Premier Exhibition Management LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309).  The Debtors' service address is c/o Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARTICLE 1 DEFINITIONS, RULES OF INTERPRETATION, AND
           CONSTRUCTION.......................................................................... 1
　　1.1　　DEFINED TERMS ......................................................................... 1
　　1.2　　OTHER TERMS ........................................................................... 13
　　1.3　　RULES OF CONSTRUCTION .................................................... 13
　　1.4　　EXHIBITS, SUPPLEMENTS, APPENDICES, AND SCHEDULES ............... 13
　　1.5　　CONTROLLING DOCUMENT ................................................... 14

ARTICLE 2 CLASSIFICATION OF CLAIMS AND INTERESTS ..................... 14
　　2.1　　SUMMARY ................................................................................. 14
　　2.2　　UNCLASSIFIED CLAIMS ........................................................... 15
　　2.3　　CLASSIFIED CLAIMS ................................................................ 15
　　2.4　　SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS .................. 15

ARTICLE 3 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
           STATUTORY FEES, AND PRIORITY TAX CLAIMS ............... 15
　　3.1　　ADMINISTRATIVE EXPENSE CLAIMS.................................... 16
　　3.2　　STATUTORY FEES ..................................................................... 18
　　3.3　　PRIORITY TAX CLAIMS............................................................ 18

ARTICLE 4 TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.......... 19
　　4.1　　CLASS 1: PRIORITY CLAIMS ................................................... 19
　　4.2　　CLASS 2: UNSECURED CLAIMS ............................................... 19
　　4.3　　CLASS 3: PRXI EQUITY INTERESTS ........................................ 19
　　4.4　　CLASS 4: SUBSIDIARY EQUITY INTERESTS .......................... 19

ARTICLE 5 ACCEPTANCE OR REJECTION OF THIS PLAN ......................... 19
　　5.1　　PRESUMED ACCEPTANCE BY UNIMPAIRED CLASS.............. 19
　　5.2　　IMPAIRED CLASSES ENTITLED TO VOTE.............................. 20
　　5.3　　PRESUMED REJECTION BY IMPAIRED VOTING CLASSES OF
           INTERESTS ................................................................................. 20
　　5.4　　CLAIM DESIGNATION............................................................... 20
　　5.5　　ELIMINATION OF VACANT CLASSES ..................................... 20

ARTICLE 6 IMPLEMENTATION OF THIS PLAN ........................................... 20
　　6.1　　LIMITED CONSOLIDATION ..................................................... 20
　　6.2　　THE LIQUIDATING TRUST ....................................................... 21
　　6.3　　LIQUIDATING TRUST OVERSIGHT COMMITTEE ................... 27
　　6.4　　CORPORATE ACTION................................................................ 30
　　6.5　　RESIGNATION OF DIRECTORS AND OFFICERS ...................... 30
　　6.6　　DISSOLUTION OF THE DEBTORS ............................................ 30

# TABLE OF CONTENTS
(continued)

**Page**

6.7 DISSOLUTION OF THE CREDITORS' COMMITTEE ................................... 30
6.8 CANCELLATION OF INTERESTS ............................................................... 31
6.9 CONFIDENTIALITY, PRIVILEGE ............................................................... 31

ARTICLE 7 DISTRIBUTIONS UNDER THIS PLAN ........................................... 31
7.1 GENERALLY ............................................................................................... 31
7.2 PRIORITY OF DISTRIBUTIONS ................................................................. 31
7.3 TIMING OF DISTRIBUTIONS ..................................................................... 32
7.4 RESERVES ................................................................................................... 32
7.5 CANCELLATION OF EQUITY INTERESTS ................................................ 33
7.6 MANNER OR DISTRIBUTION ..................................................................... 33
7.7 DELIVERY OF DISTRIBUTIONS ............................................................... 33
7.8 UNDELIVERABLE DISTRIBUTIONS .......................................................... 34
7.9 SETOFFS AND RECOUPMENTS ............................................................... 34
7.10 DISTRIBUTIONS IN SATISFACTION; ALLOCATION ............................... 34
7.11 NO DISTRIBUTION IN EXCESS OF ALLOWED AMOUNT OF
     CLAIM ......................................................................................................... 34
7.12 NO INTEREST ON CLAIMS ....................................................................... 34
7.13 WITHHOLDING TAXES ............................................................................. 34

ARTICLE 8 PROCEDURES FOR RESOLVING DISPUTED CLAIMS ................ 35
8.1 NO DISTRIBUTIONS ON DISPUTED CLAIMS .......................................... 35
8.2 PROOF OF CLAIM FILED FOR SCHEDULED CLAIM .............................. 35
8.3 RESOLUTION OF CLAIMS UNDER MATERIALITY THRESHOLD .......... 35
8.4 RESOLUTION OF CLAIMS ABOVE MATERIALITY THRESHOLD .......... 35
8.5 ESTIMATION OF CLAIMS ......................................................................... 36

ARTICLE 9 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
     LEASES ....................................................................................................... 36
9.1 REJECTION OF CONTRACTS AND LEASES ............................................ 36
9.2 EXCEPTIONS TO REJECTION ................................................................... 36
9.3 REJECTION CLAIMS ................................................................................. 37

ARTICLE 10 PLAN INJUNCTION, EXCULPATION, AND RELEASE .............. 37
10.1 PLAN INJUNCTION ................................................................................... 37
10.2 EXCULPATION FROM LIABILITY .......................................................... 38
10.3 PRESERVATION OF INSURANCE ............................................................ 40
10.4 CONTINUATION OF AUTOMATIC STAY ................................................ 40
10.5 BINDING EFFECT OF PLAN ..................................................................... 40
10.6 NO LIABILITY FOR TAX CLAIMS ........................................................... 40
10.7 NO LIABILITY FOR UNTIMELY ADMINISTRATIVE EXPENSE
     CLAIMS ....................................................................................................... 41
10.8 REGULATORY OR ENFORCEMENT ACTIONS ....................................... 41

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE 11 MODIFICATION OF THIS PLAN ........................................................... 41
   11.1   PRECONFIRMATION AMENDMENT ............................................... 41
   11.2   POST-CONFIRMATION AMENDMENT NOT REQUIRING
          RESOLICITATION ........................................................................... 41
   11.3   POST-CONFIRMATION AMENDMENT REQUIRING
          RESOLICITATION ........................................................................... 41

ARTICLE 12 RETENTION OF JURISDICTION ....................................................... 42
   12.2   COURTS OF COMPETENT JURISDICTION ................................... 43

ARTICLE 13 CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE .................... 44
   13.1   CONDITION PRECEDENT TO CONFIRMATION ......................... 44
   13.2   CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE
          DATE .............................................................................................. 44
   13.3   EFFECT OF NONOCCURRENCE OF THE CONDITIONS
          PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE ............ 44

ARTICLE 14 MISCELLANEOUS ........................................................................... 45
   14.1   OBJECTIONS TO CLAIMS ............................................................ 45
   14.2   FURTHER ACTIONS ...................................................................... 45
   14.3   GOVERNING LAW ......................................................................... 45
   14.4   CONTINUING EFFECT OF SALE ORDER AND ADMIRALTY
          ORDER ........................................................................................... 45
   14.5   WAIVER OF BANKRUPTCY RULE 3020 ...................................... 45
   14.6   NO ADMISSIONS .......................................................................... 45
   14.7   SUCCESSORS AND ASSIGNS ....................................................... 46
   14.8   CONFIRMATION ORDER AND PLAN CONTROL ....................... 46
   14.9   SEVERABILITY ............................................................................. 46
   14.10  HEADINGS .................................................................................... 46
   14.11  NOTICE OF EFFECTIVE DATE ................................................... 46
   14.12  NOTICES ....................................................................................... 46
   14.13  POST-EFFECTIVE DATE NOTICE ............................................... 46
   14.14  DEEMED ACTS ............................................................................. 47

# FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

### INTRODUCTION

Premier Exhibitions, Inc., Premier Merchandising, LLC, Premier Exhibition Management LLC, Arts and Exhibitions International, LLC, Premier Exhibitions NYC, Inc., Premier Exhibitions International, LLC, and Dinosaurs Unearthed Corp., the above-captioned debtors and debtors in possession, propose the following Plan under section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, as well as a summary and analysis of this Plan and other related matters, including distributions to be made under this Plan. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and this Plan is being presented as a joint plan of the Debtors. Claims against, and Equity Interests in, the Debtors (other than Administrative Claims, Professional Compensation Claims and Priority Tax Claims) are classified in Article 4.

Only Holders of certain Unsecured Claims, as specified in Article 5, are entitled to vote on this Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE URGED TO CAREFULLY READ THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE 10 BECAUSE SUCH PROVISIONS AFFECT NOT ONLY SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST THE DEBTORS, BUT ALSO SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST CERTAIN NON-DEBTOR PERSONS IDENTIFIED IN SUCH ARTICLE. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE 1

## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**1.1**     _Defined Terms_.  For the purpose of this Plan, the following terms set forth in this Article I shall have the respective meanings set forth below.

**"Administrative and Priority Claims Reserve"** means the reserve established in accordance with § 7.4.3 of this Plan for the payment of certain Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

**"Administrative Expense"** means any cost or expense of administration of the Estates or the Cases that is allowable under Section 503(b) of the Bankruptcy Code, including, but not limited to, —

(1) Professional Compensation Claims; and

(2) any actual and necessary cost or expense of preserving the Estates or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date; and

**"Administrative Expense Claim"** means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)" and "Administrative Expense Claim(s)" may be used interchangeably in this Plan.

**"Administrative Expense Claim Bar Date"** means the last day for filing an application or other Bankruptcy Court-approved pleading for allowance and/or payment of an Administrative Expense Claim other than Professional Compensation Claims. The Administrative Expense Claim Bar Date will be thirty (30) days after the Effective Date.

**"Administrative Expense Claim Objection Deadline"** means no later than thirty (30) days after the Administrative Expense Claim Bar Date.

**"Admiralty Order"** means that certain _Order_ entered on December 21, 2018, by the United States District Court for the Eastern District of Virginia in the admiralty action styled _R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel_, Case No. 2:93-cv-902.

 **"Adversary Proceeding"** means the adversary proceeding entitled _MARK C. HEALY of Michael Moecker & Associates, Inc., in his capacity as Court-Appointed Responsible Person v. MARK A. SELLERS, et al._, Adversary Proceeding Case No. 3:18-ap-00064-JAF (formerly captioned as _Official Committee of Equity Security Holders of Premier Exhibitions, Inc. v. MARK A. SELLERS, et al._) currently pending in the Bankruptcy Court, as may be  amended to assert claims against any and all current or former directors, officers,  managers or control persons of the Debtors (but, for the avoidance of doubt, excluding the Exculpated Parties), and including any and all other actions which have been or may be asserted or filed by the Responsible Person, the

Liquidating Trustee, or any other successor fiduciary in connection with claims against the foregoing.

**"Affiliate"** has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**"Allowed Claim"** means, with respect to a Claim, that portion of a Claim against one or more of the Debtors that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office or other designated filing method on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with this Plan; (b) in a Final Order; or (c) pursuant to the terms of this Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, and Allowed Unsecured Claim) has a corresponding meaning. Notwithstanding any other provision of this Plan, the term Allowed Claim shall not include any Claim held by a Creditor against which the Debtors have asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any penalty or interest accrued after the Petition Date unless otherwise allowable under the Bankruptcy Code and any other applicable law. To the extent that the Holder of an Allowed Claim receives any payment on such Claim from a source other than the Liquidating Trust established under this Plan, the amount of such Allowed Claim shall be reduced by the amount of such payment.

**"Allowed Class ... Claim"** means an Allowed Claim in the particular Class(es) or categories described.

**"Allowed Professional Compensation Claims"** shall have the meaning set forth in § 3.1.3(a) of this Plan.

**"Assets" or "Property"** shall mean all property of the Estates as defined in Section 541 of the Bankruptcy Code, including, without limitation, (i) all right, title, and interest in and to any Causes of Action that the Debtors, the Estates or the Liquidating Trustee (acting in such capacity) may have as of the Effective Date or any time thereafter and (ii) the Estates' interest in the Escrow Amount, pursuant to and as calculated under the Purchase Agreement; provided, however, that under no circumstances shall the Transferred Assets (as defined in the Purchase Agreement) constitute the Assets or Property of the Debtors for purposes under this Plan.

**"Avoidance Action"** means all avoidance actions including all Causes of Action under Chapter 5 of the Bankruptcy Code.

**"Ballot"** means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of this Plan, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, which has jurisdiction over the Chapter 11 Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Cases.

**"Bar Date"** means (i) with respect to entities other than governmental units, October 24, 2016 and (ii) with respect to governmental units, December 9, 2016, by which any Person asserting a Claim against the Debtors must have filed a Proof of Claim or be forever barred from asserting such Claim.

**"Business Day"** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means legal tender of the United States of America. When used in this Plan with respect to a distribution under this Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a Cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtors drawn on a domestic bank.

**"Cause"** means gross negligence, breach of fiduciary duty, breach of trust, reckless or willful mishandling of the Liquidating Trust Assets, fraud, self-dealing, intentional misrepresentation, or willful misconduct.

**"Causes of Action"** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, including all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other Claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all Claims against any Affiliates, members, officers, directors, managers, employees or other Insiders of the Debtors or their Affiliates. Some of the Causes of Action may be described in further detail in the Disclosure Statement.

**"Chapter 11 Cases"** means the Chapter 11 cases commenced by the Debtors.

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, when used in this Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

**"Claims Litigation"** shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate(s), or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate(s).

**"Claims Objection Deadline"** shall have the meaning set forth in § 14.1 of this Plan.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 2 of this Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Confirmation"** or **"Confirmation of the Plan"** means the approval of this Plan by the Bankruptcy Court at the Confirmation Hearing.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**"Confirmation Hearing"** means the hearing or hearings conducted by the Bankruptcy Court to consider Confirmation of this Plan as it may be modified hereafter from time to time.

**"Confirmation Order"** means the final order entered by the Bankruptcy Court in the Cases confirming this Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, and will include any amendments, supplements or modifications thereto made with the consent of the Debtors, or as determined by the Bankruptcy Court.

**"Consolidated Debtors"** shall have the meaning set forth in § 6.1.2 of this Plan.

**"Consummation Date"** shall mean the date on which the Liquidating Trustee makes the final Distribution in accordance with this Plan.

**"Contingent"** with reference to a Claim, shall mean a Claim that has not accrued and that is dependent on a future event that may or may not occur.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in this Plan.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors, appointed by the United States Trustee in these Cases pursuant to Section 1102 of the Bankruptcy Code, as the membership of such committee has been or may be modified by the United States Trustee.

**"Cure Amounts"** means all amounts that must be paid by the Debtors and all obligations that otherwise must be satisfied pursuant to Section 365(b)(1)(A) of the Bankruptcy Code in connection with the assumption and/or assignment of the Assumed Contracts and Leases to Premier Acquisition as provided in the Purchase Agreement and the Sale Procedures Order.

**"D&O Settlement"** shall have the meaning ascribed to such term in § 10.1 of the Plan.

**"D&O Settlement Effective Date"** shall have the meaning ascribed to such term in § 10.1 of the Plan.

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtors"** means, collectively, Premier Exhibitions, Inc., Premier Merchandising, LLC, Premier Exhibition Management LLC, Arts and Exhibitions International, LLC, Premier Exhibitions NYC, Inc., Premier Exhibitions International, LLC, and Dinosaurs Unearthed Corp.

**"Designated Notice"** means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Liquidating Trustee and his or her counsel, the Office of the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for notice with the Clerk of the Court and serve a copy of such request on counsel to the Liquidating Trustee.

**"Disclosure Statement"** means the Disclosure Statement to accompany this Plan, including all attached exhibits, appendices, and schedules, as jointly submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Cases and provisionally approved by the Bankruptcy Court as containing "adequate information" as that term is defined by Section 1125(a)(1) of the Bankruptcy Code, in the Disclosure Statement Approval Order [Docket No. 111], as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

**"Disallowed"** or **"Disallowed Claim"** shall mean: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with this Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no Proof of Claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

**"Disputed Claim"** means any Claim (other than a Disallowed Claim) that has not been Allowed by a Final Order of the Bankruptcy Court.

**"Disputed Claims Reserve"** means the reserve established in accordance with § 7.4.2 of this Plan for the payment of Disputed Claims, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

**"Distribution"** shall mean Cash, Property, interests in Property or other value distributed under this Plan to the Holders of Allowed Claims.

**"Distribution Date"** shall mean the date of any Distribution under this Plan. The initial Distribution Date shall occur as soon as reasonably practicable following the Effective Date, as determined by the Liquidating Trustee in his or her sole discretion. Any subsequent Distribution Date(s) shall occur as soon as practicable following a determination by the Liquidating Trustee that there are sufficient Net Distributable Assets to make a subsequent distribution to the Holder of Claims or Interests pursuant to the terms of this Plan.

**"Docket"** means the docket or dockets in the Cases maintained by the Clerk.

**"Effective Date"** means the first Business Day following satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date, as provided for by Article 13 herein, or such later date as the Bankruptcy Court approves if implementation of this Plan is stayed by order of a court of competent jurisdiction.

**"Entity"** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Committee**" means the Official Committee of Equity Security Holders, appointed by the United States Trustee in these Cases pursuant to Section 1102 of the Bankruptcy Code.

**"Equity Committee Final Fee Applications"** means, collectively: (i) *Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Landau Gottfried & Berger LLP as Counsel to the Official Committee of Equity Security Holders of RMS Titanic, Inc. for Services Rendered and for Reimbursement of Expenses Incurred During the Period from August 31, 2016 through August 12, 2019* [D.E. 150]; (ii) *Final Application of Akerman LLP, Counsel for the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from August 31, 2016 through and Including August 9, 2019* [D.E. 149]; and (iii) *Fourth Interim and Final Application of Teneo Securities LLC as Financial Advisor to the Equity Committee for Interim Allowance of Compensation for Services Rendered During Period from January 1, 2018 through and Including December 31, 2018 and Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred During Period from October 26, 2016 through and Including December 31, 2018* [D.E. 151].

"**Equity Committee Professionals**" means those Professionals employed by the Equity Committee, pursuant to Section 1103 of the Bankruptcy Code; specifically, Landau Gottfried & Berger LLP, Akerman LLP, Lincoln Partners Advisors LLC, and Teneo Securities LLC.

**"Equity Interests" or "Interests"** means any equity interest of a member and/or shareholder in one or more of the Debtors.

**"Estates"** means collectively, the estates created for the Debtors under Section 541 of the Bankruptcy Code upon the commencement of the Cases, as may be consolidated on a limited basis pursuant to § 6.1 of this Plan and controlled by the Liquidating Trustee on and after the Effective Date.

**"Exculpated D&O Parties"** shall have the meaning ascribed to such term in § 10.2 of the Plan.

**"Exculpated Parties"** shall have the meaning ascribed to such term in § 10.2 of the Plan.

**"Executory Contract or Unexpired Lease"** means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**"File" "Filed"** or **"Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

**"Final Decree"** means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Chapter 11 Cases.

**"Final Order"** means—

(1) an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Cases for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which:

   a. no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

   b. such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(2) a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**"Governmental Authority"** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

**"Holder"** means:

(1) as to any Claim:

   a. the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

   b. if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records

- 7 -

of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

c.  if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtors in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(2) as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

**"Impaired"** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Insider"** has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

**"Insurer"** shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Intercompany Claims"** means any Claim by any Debtor or any of its affiliates against another Debtor or any of its affiliates, including but not limited to, intercompany receivables and payments made in the ordinary course of the Debtors' businesses.

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, of or relating to one or more of the Debtors, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor, or assign thereof, the Property, the business or operations of the Debtors, the Cases, or this Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in this Plan, the term "Liabilities" does not include any post confirmation or post Effective Date payment obligation expressly set forth and preserved in this Plan.

**"Lien"** has the meaning ascribed to it in section 101(37) of the Bankruptcy Code and, with respect to any asset or Property, includes any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, or otherwise. Any lien avoided in accordance with Sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

**"Liquidating Trust"** shall mean the trust created pursuant to the Liquidation Trust Agreement and Article 6 of this Plan.

**"Liquidating Trust Agreement"** means the agreement governing the formation and conduct of the Liquidation Trust between the Debtors and the Liquidating Trustee to be entered into as of the Effective Date, substantially in form and substance as that attached hereto as **Exhibit A**, as such Liquidating Trust Agreement may be amended from time to time in accordance with its terms.

**"Liquidating Trust Assets"** means, collectively, (i) all Property transferred to the Liquidating Trust pursuant to § 6.2.2 of this Plan and in accordance with the Liquidating Trust Agreement and (ii) any Cash or proceeds of any other property received or generated by the Liquidating Trust from any source.

**"Liquidating Trust Beneficiaries"** means all individuals and entities entitled to Distributions from the Liquidating Trust under this Plan and the Liquidating Trust Agreement.

**"Liquidating Trust Expenses"** means any and all costs, expenses and other liabilities incurred or anticipated to be incurred in connection with the administration of the Liquidation Trust and the maintenance, liquidation and Distribution of the Liquidating Trust Assets, including, without limitation, (1) amounts due to the Liquidating Trustee and its Professionals, agents and advisors, (2) amounts due to the Liquidating Trust Oversight Committee and its members and their respective professionals, and (3) U.S. Trustee fees due under § 3.2 of this Plan or the U.S. Trustee's guidelines, in each case whether incurred or asserted pursuant to this Plan, the Confirmation Order, the Liquidating Trust Agreement or otherwise.

**"Liquidating Trust Expense Reserve"** means the reserve established in accordance with § 7.4.1 of this Plan for the payment of Liquidating Trust Expenses, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

**"Liquidating Trust Oversight Committee"** means the committee established pursuant to the Liquidating Trust Agreement and § 6.3 of this Plan and as further described therein.

**"Liquidating Trustee"** means Mark Healy of Michael Moecker & Associates, Inc., or if Mark Healy is unwilling or ineligible to serve as Liquidating Trustee, such other Person designated pursuant to the Liquidating Trust Agreement.

**"Net Distributable Assets"** shall mean, and be calculated, as follows: the total gross Cash proceeds of the Liquidating Trust Assets that remain in the Liquidating Trust **less** (a) Retained Proceeds, (b) unpaid and outstanding (i) Allowed Administrative Expense Claims, other than Subordinated Equity Committee Professional Compensation Claims, and (ii) Allowed Priority Tax Claims, and (c) unpaid and outstanding Allowed Class 1 Claims.

**"Non-EC Final Fee Applications"** means, collectively, the: (i) *Eighth Interim and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Nelson Mullins Riley and Scarborough LLP as Counsel to the Debtors and Debtors in Possession for Services Rendered from September 1, 2018 Through July 31, 2019* [D.E. 152]; (ii) *Final Application of Troutman Sanders LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Co-Counsel to the Debtors for the Period from November 09, 2016 Through July 31, 2019 and for Estimated Fees and Expenses Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 155]; (iii) *Final Application of Carr, Riggs*

*& Ingram LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Tax Advisors to the Debtors for the Period from June 1, 2017 Through June 30, 2019, and for Estimated Fees Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 156]; (iv) *Amended Ninth Interim and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Kaleo as Counsel to the Debtors and Debtors in Possession for Services Rendered from March 1, 2019 Through July 31, 2019* [D.E. 158]; (v) *Amended Final Application of GlassRatner Advisory and Capital Group LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisors to the Debtors for Services Rendered from September 30, 2016 Through June 30, 2019, and for Estimated Fees Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 160]; (vi) *Final Application of Thames Markey & Heekin, P.A. for Services Rendered and Reimbursement of Expenses as Counsel to Official Committee of Unsecured Creditors (Fees Requested: $299,683; Expenses: $7,059.19; Period: August 29, 2016 to September 17, 2019)* [D.E. 143]; (vii) *Final Application of Storch Amini PC for Attorneys' Fees and Reimbursement of Costs as Counsel to Official Committee of Unsecured Creditors (Fees Requested: $302,316.48; Expenses: $18,501.41; Period: September 2, 2016 to July 31, 2019)* [D.E. 144]; and (viii) *Ninth and Final Applications for Allowance and Payment of Compensation and Reimbursement of Expenses of McGuireWoods LLP as Special Litigation Counsel for the Debtors* [D.E. 148].

**"PEM"** means Premier Exhibition Management LLC.

**"Person"** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**"Petition Date"** means June 14, 2016, the date upon which each Debtor filed a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

**"Plan," "the Plan," or "this Plan"** means this liquidating plan under Chapter 11 of the Bankruptcy Code, including, without limitation, any exhibits, appendices, and schedules hereto which may be filed with the Plan Supplement, if any, as such may be altered, amended, or otherwise modified from time to time.

**"Plan Documents"** means all documents that aid in effectuating this Plan, including, without limitation, all documents filed with the Bankruptcy Court at or before the Confirmation Hearing, and including the Confirmation Order.

**"Plan Proponent"** means the Debtors.

**"Plan Supplement"** means the supplemental documents, schedules, and exhibits to this Plan, if any. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**"Post-Confirmation"** means arising or accruing on or after the Confirmation Date.

**"Post-Merger D&Os"** shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Prepetition"** means arising or accruing prior to the Petition Date.

**"Pre-Merger D&Os"** shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Premier Acquisition"** means Premier Acquisition Holdings LLC.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**"Pro Rata"** or **"Pro Rata Share"** means, with respect to any Distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes. The terms "Pro Rata" and/or "Pro Rata Share" will also be applied in respect of Administrative Expense Claims, Priority Tax Claims, and Priority Claims as the context requires in this Plan.

**"Professional"** means any professional person (a) employed in the Chapter 11 Cases with the approval of the Bankruptcy Court pursuant to section 327 or 1103 of the Bankruptcy Code, or (b) employed by the Liquidating Trustee, pursuant to this Plan.

**"Professional Compensation"** means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

**"Professional Compensation Claim"** means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Cases incurred on or after the Petition Date and prior to the Effective Date.

**"Proof of Claim"** means a proof of claim filed in these Cases pursuant to Bankruptcy Rules 3001, 3002, or 3003 in accordance with various orders of the Bankruptcy Court.

**"PRXI"** means Premier Exhibitions, Inc.

**"PRXI Equity Interest"** means any Equity Interest in PRXI.

**"Purchase Agreement"** means that certain *Asset Purchase Agreement*, dated as of June 14, 2018 by and among (i) the Debtors and certain non-Debtor affiliates, as sellers and (ii) Premier Acquisition, as purchaser, as such Purchase Agreement was subsequently amended on September 14, 2018 and February 13, 2019.

**"Rejection Claims"** shall have the meaning set forth in § 9.3 of this Plan.

**"Rejection Objection Deadline"** shall have the meaning set forth in § 9.3 of this Plan.

**"Reserves"** shall mean, collectively, the Liquidating Trust Expense Reserve, the Disputed Claims Reserve, and the Administrative and Priority Claims Reserve.

**"Retained Proceeds"** shall mean all amounts allocated to the Reserves plus any unpaid and outstanding Liquidating Trust Expenses that are not otherwise allocated to and provided for in the Liquidating Trust Expense Reserve.

**"Sale"** means the sale of the Transferred Assets to Premier Acquisition as contemplated by the Asset Purchase Agreement, which closed on Wednesday, February 13, 2019.

**"Sale Order"** means the order of the Bankruptcy Court approving the Sale Transaction, dated October 19, 2018 [Docket No. 1232].

**"Sale Proceeds"** means the proceeds received by the Debtors from the Sale pursuant to the Purchase Agreement.

**"Schedules"** means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

**"Secured Claim"** means any Claim that is—

(1) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

(2) subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (1) and (2) above, only to the extent of the Estates' interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in this Plan, if the value of a Creditor's interest in the Estates' interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim, which Claim shall be treated as set forth in Article 4 of this Plan.

**"Special Litigation Counsel"** means Agentis, PLLC, and Cimo Mazer Mark, PLLC.

**"Subordinated Equity Committee Professional Compensation Claims"** shall have the meaning ascribed to it in § 6.4 of this Plan.

**"Subsidiary Equity Interests"** means an Equity Interest in any Debtor other than PRXI.

**"Taxes"** means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, sales, capital, value added, profits and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts

imposed by any Governmental Authority or paid in connection with any item described in clause (i) hereof.

"**Transferred Assets**" shall have the meaning ascribed to such term in the Purchase Agreement.

"**Undeliverable Distribution**" shall have the meaning set forth in § 7.8 of this Plan.

"**Unimpaired Claim**" means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estates' interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code

"**US Trustee**" means the office of the United States Trustee for Region 21, the Middle District of Florida (Orlando and Jacksonville divisions).

"**US Trustee Fees**" means all fees and charges assessed against the Estate by the US Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject this Plan.

**1.2**    Other Terms.  Any capitalized term used in this Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**1.3**    Rules of Construction.  The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar words refer to this Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in this Article 1 are and shall be regarded as integral, substantive, and operative provisions of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to all of the provisions of this Plan.

**1.4**    Exhibits, Supplements, Appendices, and Schedules.  All exhibits, supplements, appendices, and schedules to this Plan, including those filed with the Plan Supplement, if any, are incorporated into and are a part of this Plan as if set forth herein. To the extent that any exhibit,

schedule, or Plan Supplement is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, this Plan shall control.

**1.5**    Controlling Document.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of this Plan and shall control and take precedence.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**    Summary.    The chart below lists the classification of Claims (except for Administrative Expense Claims and Priority Tax Claims) and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to this Plan.  Consistent with Section 1122 of the Bankruptcy Code, a Claim or Interest is classified by this Plan in a particular Class only to the extent that the Claim or Equity Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified in this Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in Article 3.

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| **Unclassified Claims Against the Debtors** | | |
| n/a | Administrative Expense Claims and Priority Tax Claims (§ 507(a)(8)) against all Debtors | Unimpaired – not entitled to vote |
| **Classified Claims Against the Debtors** | | |
| Class 1 | Priority Non-Tax Claims (including Claims for wages under § 507(a)(4) for contribution to employee benefit plans under § 507(a)(5) and for consumer deposits under § 507(a)(7)) | Unimpaired – deemed to accept |
| Class 2 | Unsecured Claims | Impaired – entitled to vote |
| Class 3 | PRXI Equity Interests | Impaired – deemed to reject |

| Class 4 | Subsidiary Equity Interests | Impaired – deemed to reject |

**2.2**    Unclassified Claims.  In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

**2.3**    Classified Claims.

**2.3.1   Unimpaired Class of Claims**.  The following Class contains Claims that are not Impaired by this Plan, are deemed to accept this Plan, and are not entitled to vote on this Plan.

*Class 1.  Priority Claims*

**2.3.2   Impaired Voting Class of Claims**.  The following Class contains Claims that are Impaired by this Plan and are entitled to vote on this Plan.

*Class 2.  General Unsecured Claims*

**2.3.3   Impaired Non-Voting Classes of Interests.**  The following Classes contain Interests that are Impaired by this Plan, are deemed to reject this Plan, and are not entitled to vote on this Plan.

*Class 3.  PRXI Equity Interests*

*Class 4.  Subsidiary Equity Interests*

**2.4**    Special Provision Governing Unimpaired Claims.  Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE 3

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, STATUTORY FEES, AND PRIORITY TAX CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims shall not be classified for the purposes of voting or receiving Distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article 3.   Except as otherwise specifically provided in this Plan, the treatment of, and the consideration to be received by, the U.S Trustee and Holders of Allowed Administrative Expense Claims and Priority Tax Claims pursuant to this Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims.

**3.1**    Administrative Expense Claims.

      **3.1.1    Treatment.**    Subject to (a) the Bar Date provisions herein and (b) additional provisions governing for Professionals and certain other Persons set forth below, including § 6.4 of this Plan, each Holder of an Allowed Administrative Expense Claim against the Debtors shall receive, on the Effective Date, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Expense Claim, unless the Holder agrees or shall have agreed to other treatment of such Claim no less favorable to the Debtors; provided, however, that any Administrative Expense Claim (x) incurred Post-petition by a Debtor in the ordinary course of its business or (y) arising pursuant to one or more Post-petition agreements or transactions entered into by any Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the applicable Debtor or the Liquidating Trustee, on the one hand, and the Holder of such Administrative Expense Claim, on the other.  The Holder of an Allowed Administrative Expense Claim shall not be entitled to, and shall not be paid, any interest, penalty, or premium thereon, and any interest, penalty, or premium asserted with respect to an Administrative Expense Claim shall be deemed disallowed and expunged without the need for any further Order of the Bankruptcy Court; provided, however, that this provision shall not prevent the US Trustee from seeking interest on unpaid US Trustee Fees, if any.

      **3.1.2    Administrative Expense Claims Bar Date (excluding Professional Compensation Claims).**

      (a)    Except for Professional Compensation Claims, which are addressed in § 3.1.3 below, and claims of Special Litigation Counsel, requests for payment of Administrative Expense Claims must be Filed and served on the Liquidating Trustee no later than the Administrative Expense Claim Bar Date.  Holders of Administrative Expense Claims (including, without limitation, the Holders of any Claims for Taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Claims against the Debtors, the Liquidating Trust or any of their Property.  Notwithstanding the foregoing, any Bar Dates established during the course of these Chapter 11 Cases shall remain in full force and effect.

      (b)    All objections to allowance of Administrative Expense Claims (excluding Professional Compensation Claims) must be Filed by any parties in interest no later the Administrative Expense Claim Objection Deadline.  The Administrative Expense Claim Objection Deadline may be initially extended for an additional thirty (30) days at the sole discretion of the Liquidating Trustee upon the Filing of a notice of the extended Administrative Expense Claim Objection Deadline with the Bankruptcy Court.  Thereafter, the Administrative Expense Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted without notice to any Creditors.  If no objection to the applicable Administrative Expense Claim is Filed on or before the Administrative Expense Claim Objection Deadline, as may be extended from time to time, such Administrative Expense Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extend such Administrative Expense Claim Objection Deadline retroactively.

### 3.1.3   Professional Compensation Claims.

(a)    On the Effective Date, all Non-EC Final Fee Applications, except the claims of Special Litigation Counsel, shall be approved on a final basis in the amounts set forth in the table below in the column entitled "Total Discounted Fees and Expenses Allowed."  Further, each Professional shall have an Allowed Professional Compensation Claim in the amount set forth in the table below in the column entitled "Discounted Amount Unpaid," which Professional Compensation Claim shall be paid on the Effective Date.  The voluntary reductions set forth in the table below, along with the Equity Committee Professional Claim Compromise (described in § 6.4 herein), have resulted in a reduction of over $900,000.00 from the undiscounted amounts reflected in the Non-EC Final Fee Applications and the Equity Committee Fee Applications and is the product of substantial negotiations leading to a compromise among the respective Professionals.

| Name of Firm | Total Undiscounted Fees and Expenses Sought | Undiscounted Amount Unpaid | Reductions | Total Discounted Fees and Expenses Allowed | Discounted Amount Unpaid |
|---|---|---|---|---|---|
| | | | | | |
| Troutman Sanders LLP[2] | $3,424,074.51 | $604,252.09 | (Included) | $3,424,074.51 | $604,252.09 |
| Carr, Rigss & Ingram LLC | $136,566.88 | $0.00 | N/A | $136,566.88 | $0.00 |
| GlassRatner Advisory & Capital Group | $558,772.26 | $67,603.90 | $39,716.18 | $519,056.09 | $27,887.73 |
| Kaleo Legal | $505,252.50 | $43,632.00 | $24,827.00 | $480,425.50 | $18,805.00 |
| Nelson Mullins Riley & Scarborough | $925,694.80 | $228,058.64 | $228,058.64 | $697,636.16 | $0.00 |
| McGuire Woods LLP | $177,732.99 | $32,967.50 | $13,759.18 | $163,973.82 | $19,208.33 |
| Storch Amini PC[3] | $320,817.89 | $82,430.13 | (Included) | $320,817.89 | $82,430.13 |
| Thames Markey & Heekin, P.A. | $306,740.19 | $133,747.71 | $59,936.60 | $246,803.59 | $73,811.11 |

[2] The figures for Troutman Sanders LLP's fees reflect the voluntary fee reduction already included in Troutman Sanders LLP's Final Fee Application.

[3] The figures for Storch Amini PC's fees reflect the voluntary fee reduction already included in Storch Amini's Final Fee Application.

(b)      For the avoidance of doubt, and notwithstanding § 3.1.3(a) above, the Equity Committee Professionals' respective Professional Compensation Claims arising out of or related to the Equity Committee Final Fee Applications shall be treated in accordance with § 3.1.3(d), below.

(c)      Any Professional Compensation incurred by the Debtors or the Creditors' Committee subsequent to the Confirmation Date may be paid by the Liquidation Trustee without application to or Order of the Bankruptcy Court.  Further, and notwithstanding anything to the contrary in § 3.1.3(a) above, any Professional Compensation incurred by the Debtors or the Creditors' Committee from August 1, 2019 through and including the Confirmation Date (such period, the **"Estimated Period"**) may be paid by the Liquidating Trustee without application to or Order of the Bankruptcy Court; provided, however, that if the Professional Compensation incurred during the Estimated Period exceeds the estimate set forth in the Non-EC Final Fee Application for each respective Professional, then the Professional seeking payment must apply to the Bankruptcy Court.

(d)      As part of the Equity Committee Professional Compensation Claim Compromise set forth in § 6.4 of this Plan, which is also the product of substantial negotiations leading to a compromise among the respective Professionals, the Equity Committee Professionals' respective Professional Compensation Claims (and the Equity Committee Final Fee Applications) shall be Allowed in full on a final basis and paid on the Effective Date, subject to § 6.4 of this Plan.

**3.2**      Statutory Fees.  All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date or as soon as reasonably practicable thereafter, by the Liquidating Trustee.  After the Effective Date, the Liquidating Trustee shall pay to the U.S. Trustee the U.S. Trustee Fees, in Cash, until the Chapter 11 Cases are closed, and a Final Decree is entered.  In addition, the Liquidating Trust shall file Post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines.  The U.S. Trustee shall not be required to File a request for payment of its U.S. Trustee Fees, which will be deemed Administrative Expense Claims against the Debtors.

**3.3**      Priority Tax Claims.  The Liquidating Trustee will pay all Allowed Priority Tax Claims in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date. As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

# ARTICLE 4

# TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Claims and Equity Interests will be treated under this Plan in the manner set forth in this Article 4. Except as otherwise specifically provided in this Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to this Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**4.1**     Class 1: Priority Claims.  Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Claim, at the sole option of the Debtors or the Liquidating Trustee, each Holder of an Allowed Priority Claim shall receive: (a) Cash in an amount equal to the amount of such Allowed Priority Claim on the later of (1) the Effective Date or as soon as reasonably practicable thereafter, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon as reasonably practicable thereafter, or (b) such other treatment so as to render such Holder's Allowed Priority Claim Unimpaired.

**4.2**     Class 2: Unsecured Claims.  Subject to § 6.4 of this Plan, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of the Net Distributable Assets.

**4.3**     Class 3: PRXI Equity Interests.  On the Effective Date, all PRXI Equity Interests shall be cancelled as set forth in § 7.5 of this Plan.  In the event that there exist sufficient Net Distributable Assets to pay in full Allowed General Unsecured Claims with interest at the federal judgment rate from the Petition Date, pursuant to Section 726(a)(5) of the Bankruptcy Code, made applicable by Section 1129(a)(7) of the Bankruptcy Code, and the Equity Committee Professionals' respective Subordinated Equity Committee Professional Compensation Claims, pursuant to § 6.4 of this Plan, then the Liquidating Trustee shall be authorized to Distribute any remaining Liquidating Trust Assets to Holders of PRXI Equity Interests, as of the Effective Date, and modify the Liquidating Trust Agreement as may be necessary or appropriate to effect any such Distribution.

**4.4**     Class 4: Subsidiary Equity Interests.  On the Effective Date, all Subsidiary Equity Interests shall be canceled as set forth in § 7.5 of this Plan.  Holders of Subsidiary Equity Interests shall receive no Distribution and retain no Assets on account of such Interests.

# ARTICLE 5

# ACCEPTANCE OR REJECTION OF THIS PLAN

**5.1**     Presumed Acceptance by Unimpaired Class.  Claims in Class 1 are Unimpaired under this Plan.  Under Bankruptcy Code Section 1126(f), Holders of such Unimpaired Claims are conclusively presumed to have accepted this Plan, and the votes of such Unimpaired Claims shall not be solicited.

**5.2**   Impaired Classes Entitled to Vote.  Holders of Class 2 Claims are Impaired and entitled to vote as a Class to accept or reject this Plan.  Accordingly, the votes of Holders of Claims in Class 2 shall be solicited with respect to this Plan.

**5.2.1   Acceptance by an Impaired Class**.  In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), Class 2 shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**5.3**   Presumed Rejection by Impaired Voting Classes of Interests.  Interests in Classes 3 and 4 are Impaired under this Plan and not entitled to a Distribution under this Plan.  Under Bankruptcy Code Section 1126(g), Holders of such Impaired Claims and Interests are conclusively presumed to have rejected this Plan, and the votes of such Impaired Interest Holders shall not be solicited.

**5.4**   Claim Designation.  The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Holder of any Claim whose vote on this Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

**5.5**   Elimination of Vacant Classes.  Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE 6

## IMPLEMENTATION OF THIS PLAN

**6.1**   Limited Consolidation.

**6.1.1**   Solely for purposes of voting on, Confirmation of, and Distributions to be made to Holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to Confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan, the Confirmation hereof and Distributions hereunder.

**6.1.2**   Pursuant to the Confirmation Order, and on the Effective Date, (i) all Assets and Liabilities of the Debtors will be deemed to be merged into PRXI (as such, the "**Consolidated Debtors**") solely for purposes of this Plan, the Confirmation hereof and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the Consolidated Debtors solely for purposes of this Plan, the Confirmation hereof  and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the Consolidated Debtors and all Claims filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the Consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against

- 20 -

the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the Assets and Liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder on Allowed Claims and will be deemed to be made by the Consolidated Debtors, (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several Liability of any of the Debtors shall be deemed to be one obligation of the Consolidated Debtors, and (vii) no Distributions shall be made under this Plan on account of Intercompany Claims and all such Intercompany Claims shall be eliminated. Holders of Allowed Claims in each Class shall be entitled to their share of Liquidating Trust Assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, Holders of PRXI Equity Interests and Subsidiary Equity Interests shall be treated as provided in Class 3 and Class 4 of this Plan, respectively, without regard to any limited consolidation of the Debtors' Estates as provided above.

      **6.1.3**   Notwithstanding the foregoing, such limited consolidation shall not affect (a) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts or Unexpired Leases that will be (or have been) assumed and assigned pursuant to the Purchase Agreement, (b) distributions from any insurance policies or proceeds of such policies, or (c) guarantees that are required to be maintained post-Effective Date (i) in connection with Executory Contracts or Unexpired Leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed and assigned, or (ii) pursuant to the express terms of this Plan.  The limited consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay the U.S. Trustee Fees. Such obligations shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

      **6.2**    The Liquidating Trust.

      **6.2.1**   **Creation of the Liquidating Trust.**  On the Effective Date, the Liquidating Trust shall be created for the benefit of the Liquidating Trust Beneficiaries. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, this Plan and the Confirmation Order. A copy of the Liquidating Trust Agreement is annexed hereto as **Exhibit A**.

      **6.2.2**   **Vesting of Liquidating Trust Assets**.  On the Effective Date, all Assets of the Estates shall vest in the Liquidating Trust and constitute Liquidating Trust Assets, and each Debtor shall be deemed for all purposes to have transferred legal and equitable title of all Assets of its Estate to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.  The Debtors shall take all actions reasonably necessary to transfer control of the Liquidating Trust Assets to the Liquidating Trustee.  In accordance with Section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be vested with, retain and may exclusively enforce, prosecute, and resolve any or all Causes of Action that the Debtors or their Estates may have against any Person, including, for the avoidance of doubt, the Adversary Proceeding.  All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances, except as otherwise set forth in this Plan.  For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability or standing of the Liquidating Trustee to assert any Causes of Action transferred to the Liquidating Trust. In connection with any Causes of Action that are included in the Assets transferred by the Debtors to the Liquidating Trust (including, but not limited to the Adversary

Proceeding), any attorney-client privilege, work-product privilege or protection, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) will also exist for the benefit of the Liquidating Trust and will vest in the Liquidating Trustee and his or her representatives, and will also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges. For federal income tax purposes, the transfer of the Property to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Liquidating Trust Beneficiaries), followed by a deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust.

6.2.3   **Preservation of Rights of Action.**   Except as otherwise expressly provided herein, any rights or Causes of Action accruing to or held by the Debtors or their Estates prior to the Effective Date shall be deemed Assets of, and vest in, the Liquidating Trust on the Effective Date, including but not limited to those Causes of Action specifically identified in the Plan Supplement, if any. The Liquidating Trustee may pursue those rights of action, as deemed appropriate. This Plan, the Disclosure Statement and Plan Supplement do not set forth an exhaustive list of all Causes of Action preserved under this Plan and vesting in the Liquidating Trust and the failure to identify or list any particular Cause of Action therein shall not constitute a waiver or release of such Cause of Action. **ALL CAUSES OF ACTIONS NOT EXPRESSLY RELEASED OR WAIVED IN THIS PLAN OR THE CONFIRMATION ORDER SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CAUSES OF ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE.**

6.2.4   **Administration of Claims.**   Following the Effective Date, the Liquidating Trustee shall review the filed Proofs of Claim and audit those Claims with regard to (a) the supporting documents evidencing the Claims; (b) the appropriateness of the asserted priority of each Claim; (c) the amount of the Claim as set forth in the Proof of Claim; (d) the extent to which the Debtors originally Scheduled the Claim as Contingent, disputed or unliquidated; and (e) whether the Proof of Claim is otherwise valid, permissible, due and payable under the Bankruptcy Code and applicable state law;  provided, however, that the Liquidating Trustee shall not review or audit Claims already Allowed by prior Final Order of the Bankruptcy Court. Thereafter, the Liquidating Trustee shall complete his or her review of the Claims and shall initiate, file and prosecute any and all actions deemed necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims against the Debtors and/or their Estate(s). All Claims Litigation, including actions that arise out of the amount of a submitted Claim, or any objection to a submitted Claim, shall vest with the Liquidating Trust and shall be prosecuted by the Liquidating Trustee. The Liquidating Trustee shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to Claims and prosecute Claims actions, until such time as the Liquidating Trustee determines that further pursuit of litigation or actions objecting to Claims is no longer cost efficient and will be of no further benefit to the Estates and their creditors. **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THIS PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

**6.2.5   Payments by the Liquidating Trust.**   Subject to § 6.4 of this Plan, the Liquidating Trustee shall make Distributions to Holders of Allowed Claims in accordance with Article 7 of this Plan.

**6.2.6   Full and Final Satisfaction against Liquidating Trust.**   On and after the Effective Date, the Liquidating Trust will have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under this Plan will be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against the Liquidating Trust.

**6.2.7   Appointment, Removal, and Resignation of the Liquidating Trustee**.

(a)   *Initial Liquidating Trustee.*   The initial Liquidating Trustee shall be Mark Healy of Michael Moecker & Associates, Inc.   The Liquidating Trustee shall commence serving as the Liquidating Trustee on the Effective Date.

(b)   *Resignation or Removal of the Liquidating Trustee.*   If the Liquidating Trustee resigns or is removed, dies, dissolves, or is incapacitated, the Liquidating Trust Oversight Committee shall, in accordance with the Liquidating Trust Agreement designate another Person to become the Liquidating Trustee and thereupon the successor Liquidating Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the compensation of the predecessor Liquidating Trustee. No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**6.2.8   Rights, Powers, and Duties of the Liquidating Trust and the Liquidating Trustee.**

(a)   The Liquidating Trustee shall have the rights, duties and obligations set forth in the Liquidating Trust Agreement and this Plan. Such rights, duties and obligations include, but are not limited to, exercising control and authority over the Liquidating Trust Assets and responsibility for liquidating and administering (or abandoning, as the case may be) the Liquidating Trust Assets and taking actions on behalf of, and representing, the Liquidating Trust. The Liquidating Trustee shall be the representative of and fiduciary for the Estates as contemplated by Section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall have the rights and powers of a trustee appointed under Sections 702 and 1104 of the Bankruptcy Code to act on behalf of the Estates and the Liquidating Trust with regard to the administration of the Cases, the Property of the Estates, the Liquidating Trust, and the Liquidating Trust Assets. The Liquidating Trustee shall have the authority to bind the Liquidating Trust within the limitations set forth in the Liquidating Trust Agreement, this Plan and the Confirmation Order, but shall for all purposes hereunder be acting in the capacity of Liquidating Trustee and not individually. Within the limitations set forth in the Liquidating Trust Agreement and subject to the provisions of this Plan, the responsibilities and authority of the Liquidating Trustee, shall include, without limitation: (i) the making of Distributions to Holders of Allowed Claims as contemplated in this Plan; (ii) establishing and maintaining a Disputed Claims Reserve to be determined in accordance with § 7.4.2 of this Plan; (iii) conducting an analysis of Claims not already Allowed by prior Final Order

of the Bankruptcy Court, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with this Plan; (iv) filing appropriate tax returns with respect to the Liquidating Trust in the exercise of its fiduciary obligations; (v) retaining Liquidating Trust Professionals; (vi) taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action assigned to the Liquidating Trust; (vii) opening, closing and maintaining new or existing bank accounts, letters of credit and other financial instruments; (viii) taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust; and (ix) filing (or causing to be filed) any documents necessary to effect the dissolution of each of the Debtors immediately upon the Effective Date and the execution of the Liquidating Trust Agreement.

(b)     The Liquidating Trustee shall consult with the Liquidating Trust Oversight Committee generally and shall obtain the consent or approval of the Liquidating Trust Oversight Committee as provided in the Liquidating Trust Agreement and in § 6.3 herein.

(c)     The Liquidating Trustee, in his reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the non-Cash Liquidating Trust Assets, make timely Distributions and not unduly prolong the duration of the Liquidating Trust.  The liquidation of the non-Cash Liquidating Trust Assets may be accomplished, either in whole or in part, by the prosecution, settlement, or sale of the non-Cash Liquidating Trust Assets, including Causes of Action, or any other means permitted by law.

(d)     The Liquidating Trustee shall file all required Post-Confirmation operating reports through the date the Chapter 11 Cases are closed (or a Final Decree is entered), or such other and further reports, statements or disclosures relating to the Liquidating Trust that are necessary or appropriate or as may be reasonably requested by the Liquidating Trust Oversight Committee.  Without limiting the generality of the foregoing, the Liquidating Trustee shall file quarterly reports setting forth: (i) the compensation paid to the Liquidating Trustee; (ii) the fees and expenses reimbursed or paid to the Liquidating Trustee; (iii) the Professional Compensation paid to the Liquidating Trustee's Professionals; (iv) the amount and number of Distributions made; (v) the amount of Disputed and Undeliverable Distributions, if any; (vi) the total amount or estimated value of the Liquidating Trust Assets remaining; (v) the proceeds of the Adversary Proceeding or any other lawsuit seeking the recovery of assets commenced by the Liquidating Trustee; and (vi) all fees and expenses paid in connection therewith.

**6.2.9   Substitution of the Liquidating Trustee.**  After the Effective Date, the Liquidating Trustee shall be substituted in for the Debtors as the proper party in interest in all pending matters, including but not limited to (a) motions, contested matters or adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court, and the Liquidating Trustee is authorized to file such motions or other documents and take such actions are necessary or appropriate to effectuate such substitution consistent with this Plan and the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, the Liquidating Trustee shall specifically be substituted as the proper plaintiff in the Adversary Proceeding without need for further action or notice.

**6.2.10  Compensation of the Liquidating Trustee.**  The Liquidating Trustee shall be compensated in accordance with the provisions of the Liquidating Trust Agreement.

**6.2.11    Retention of Professionals.**  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Liquidating Trustee in the performance of its duties as Liquidating Trustee or otherwise under this Plan. The reasonable fees and expenses of such Professionals and the additional expenses of the Liquidating Trustee incurred in the performance of its duties as Liquidating Trustee under this Plan shall be paid by the Liquidating Trustee as a Liquidating Trust Expense from the Liquidating Trust Expense Reserve.   Except as otherwise set forth herein and in the Liquidating Trust Agreement, approval of the Bankruptcy Court shall not be required for the Liquidating Trustee to retain or pay any such Professionals.

**6.2.12  Liquidating Trust Expenses.**  All Liquidating Trust Expenses will be charged against and paid from the proceeds of the Liquidating Trust Assets, and the Liquidating Trustee will pay the same as and when due and payable; provided, however, that the Liquidating Trustee's compensation and the Trustee Professional Fees (as defined in the Liquidating Trust Agreement) shall be payable only from the Liquidating Trust Expense Reserve, as set forth in the Liquidating Trust Agreement and in § 6.2.11 herein.   The Liquidating Trustee will engage attorneys or other Professionals to prosecute Causes of Action and represent the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement. The Professionals retained by the Liquidating Trustee will submit periodic statements for services rendered and costs incurred to the Liquidating Trustee for review and approval, which approval shall be subject to review by the Liquidating Trust Oversight Committee. Any compensation paid to the Liquidating Trustee and its Professionals shall be set forth in the reports to be filed by the Liquidating Trustee as described in § 6.2.8(d) above.   Likewise, any fees and expenses paid as part of the Adversary Proceeding (or any other suit commenced by the Liquidating Trustee) shall be set forth in the reports to be filed by the Liquidating Trustee, as described in § 6.2.8(d) above.  Notwithstanding anything herein to the contrary, the fees and expenses of Special Litigation Counsel  with respect to the Adversary Proceeding shall not be paid as Liquidating Trust Expenses and, instead, shall be payable first, and solely from the proceeds, if any, of and from the Adversary Proceeding, as approved by the Bankruptcy Court pursuant to the orders approving their employment as special counsel to the Liquidating Trustee, as amended, and without further application to, or order from, the Court.   See [Docket Nos. 1038, 1338].

**6.2.13    Liquidating Trust Accounts.**  The Liquidating Trustee shall maintain any and all funds, liquid Assets, and/or Cash in one or more segregated accounts for Distribution or for the Reserves, as applicable, solely in accordance with this Plan and Liquidating Trust Agreement.

### 6.2.14    Certain Tax Matters.

(a)      *Purpose of the Liquidating Trust.*  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Accordingly, the Liquidating Trustee will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely

distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement and not unduly prolong its duration. Subject to definitive direction to the contrary from the IRS (but subject to the rights of the Liquidating Trustee to seek administrative and judicial review of any such direction), all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes, except as otherwise provided for U.S. federal income tax purposes in the event the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations. The Liquidating Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of certain assets and liabilities of the Debtors and a representative of the Estates for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code.

(b)     *Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest.* The Liquidating Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IR Code**"). In the event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Liquidating Trustee shall take such action as he or she shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IR Code), including, if necessary, creating or converting it into a Delaware limited partnership or limited liability company that is so classified. For federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as the grantors and owners of the Liquidating Trust and, therefore, will be responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

(c)     *Valuation of Assets.* As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate after consultation with the Liquidating Trust Oversight Committee) will value the Liquidating Trust Assets based on the good faith determination of the value of such Liquidating Trust Assets. The valuation will be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court will resolve any dispute regarding the valuation of the Liquidating Trust Assets.

(d)     *Investment Powers of the Liquidating Trustee.* All funds held by the Liquidating Trustee shall be held in Cash or invested in demand and time deposits, such as certificates of deposit, having maturities of not more than one year, U.S. Treasury bills, or other temporary liquid investments all as more particularly described in the Liquidating Trust Agreement consistent with Section 345 of the Bankruptcy Code; provided, however, that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations or as set forth in IRS rulings, notices, or other IRS pronouncements. The Liquidating Trustee may expend

the Cash of the Liquidating Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (y) to pay reasonable administrative expenses (including, but not limited to, any Taxes imposed on the Liquidating Trust) and (z) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(e)    *Disputed Ownership Fund.*  With the approval of the Liquidating Trust Oversight Committee, the Liquidating Trustee may make the election described in § 1.468B-9(c)(2)(ii) of the Treasury Regulations to treat any portion of the Liquidating Trust consisting of Disputed Claims as a "disputed ownership fund."  The Liquidating Trustee may also, to the extent permitted by law, make such an election for state and local income tax purposes.  If the election is made to treat the Disputed Claims as a "disputed ownership fund," then the Liquidating Trust may (i) allocate taxable income or loss to the Disputed Claims, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed), and (ii) make Distributions from the Disputed Claims Reserve as, when, and to the extent, such Claims that are Disputed cease to be Disputed, whether by virtue of becoming Allowed or otherwise resolved.  The Liquidating Trust Beneficiaries will be bound by such election, if made by the Trustee, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

**6.2.15   Further Transactions.**  The Liquidating Trustee shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. In order to facilitate the liquidation and distribution of the Estates and the wind-up of the Debtors' affairs, on the Effective Date the Liquidating Trustee shall be deemed, by operation of law and the Confirmation Order and without need for any action by any person affiliated with the Debtors or any officer or director of the Debtors, to hold an irrevocable power of attorney on behalf of the Debtors and the Estates and with respect to all Assets of the Debtors and the Estates.

**6.2.16   Dissolution of Liquidating Trust.**  The Liquidating Trust shall terminate after the Distribution of all Liquidating Trust Assets and the full performance of all other duties and functions of the Liquidating Trustee set forth herein and in the Liquidating Trust Agreement, or as otherwise ordered by the Bankruptcy Court.  The Liquidating Trust shall terminate no later than the third anniversary of the Effective Date; provided, however, that, within six months prior to such date or any extended termination date, the Bankruptcy Court, upon motion by the Liquidating Trustee or other party in interest, may extend the term of the Liquidating Trust for a finite period if it is necessary to the liquidating purpose thereof.

**6.3**   Liquidating Trust Oversight Committee.

**6.3.1   Appointment.**  The Confirmation Order shall confirm the appointment of the Liquidating Trust Oversight Committee, which shall begin to act on the Effective Date.  The Liquidating Trust Oversight Committee shall consist of three (3) members, each of whom must, at all times, be the Holder of an Unsecured Claim.  The initial members of the Liquidating Trust Oversight Committee shall be B.E. Capital Management Fund LP, Dalian Hoffen Biotechnique Co., Ltd, and 417 Fifth Avenue LLC.  In the event of resignation, incapacitation, or death of any

member of the Liquidating Trust Oversight Committee, the remaining members shall designate a successor from among the Holders of Unsecured Claims and shall re-constitute itself as a committee of three (3).   Until any such vacancy is filled, the Liquidating Trust Oversight Committee shall function with reduced membership.

**6.3.2   Fiduciary Duties.**   The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date shall apply to the Liquidating Trust Oversight Committee, as limited by the exculpations, indemnifications, releases and other protections provided in this Plan, the Liquidating Trust Agreement, and the Confirmation Order.   The duties, rights and powers of the Liquidating Trust Oversight Committee shall terminate upon the dissolution of the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement.

**6.3.3   Rights and Powers.**   The Liquidating Trust Oversight Committee shall oversee the actions of the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.   The Liquidating Trust Oversight Committee shall have the rights and powers set forth in the Liquidating Trust Agreement.   The rights and powers shall include, but not be limited to, consulting with the Liquidating Trustee on: t

        (a)     the Liquidating Trustee's determination to not object to a Claim having a stated amount in excess of $250,000;

        (b)     the settlement of (i) any Cause of Action in which the amount sought to be recovered exceeds $250,000 or (ii) any Disputed Claim having a stated amount in excess of $250,000 and to approve any release or indemnification to be given by the Liquidating Trustee in connection with any such settlement;

        (c)     any sale of any Liquidating Trust Assets for a price in excess of $250,000;

        (d)     investment of Cash or other Liquidating Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

        (e)     the waiver of the attorney-client privilege by the Liquidating Trustee with respect to any Cause of Action or other litigation related matter; and

        (f)     the election to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to a matter described in subsection 6.3.3(a) –(f), then the Liquidating Trustee shall bring the matter before the Court for determination.

**6.3.4   Unanimous Decisions.**   The Liquidating Trust Oversight Committee shall also have the absolute right and power to determine the following by the unanimous vote of all the members of the Liquidating Trust Oversight Committee:

(a)     to change the initial bond to be posted by the Liquidating Trustee; and

(b)     to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause, or to select a successor Liquidating Trustee when a successor is required.

If the Liquidating Trust Oversight Committee is unable to reach a unanimous decision with respect to subsection (a) or (b), above, and such deadlock shall continue for a period of one (1) week, any member of the Liquidating Trust Oversight Committee shall have the right to move the Bankruptcy Court for appropriate relief.

**6.3.5    No Compensation.**    Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Liquidating Trust Oversight Committee, including reasonable attorneys' fees subject to review by the Liquidating Trustee, the members of the Liquidating Trust Oversight Committee shall serve without compensation.  Such reasonable actual costs and expenses may be paid by the Liquidating Trustee as Liquidating Trust Expenses without approval by the Bankruptcy Court.

**6.3.6    Objection to Fees.**    The Liquidating Trust Oversight Committee shall have the right, within ten (10) days from the delivery of a fee statement, to object to the fees of any Professional retained by the Liquidating Trustee, other than Special Litigation Counsel.  Likewise, the Liquidating Trustee shall have the right, within ten (10) days from the delivery of a fee statement, to object to the fees of any Professional retained by the Liquidating Trust Oversight Committee.  Any such objection shall be lodged by giving notice of the objection to the Professional seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within 20 days after its delivery to the Liquidating Trust Oversight Committee and/or the Liquidating Trustee, as applicable.

**6.3.7    Removal of the Liquidating Trustee.**    In accordance with § 6.3.4(b) of this Plan, the Liquidating Trust Oversight Committee shall have the right to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause. Upon such removal or upon the resignation or death of the Liquidating Trustee, the Liquidating Trust Oversight Committee may appoint a successor Liquidating Trustee, and, in that event, the Liquidating Trust Oversight Committee shall File with the Bankruptcy Court a notice of the appointment of the successor Liquidating Trustee.

**6.4**    Equity Committee Professional Compensation Claim Compromise.    Twenty percent (20%) of the Equity Committee Professionals' respective claims for compensation, pursuant to Sections 330(a)(1)(A) and 503(b) of the Bankruptcy Code, Allowed as set forth in § 3.1.3.(d) of this Plan, shall be subordinated in right to payment to Allowed General Unsecured Claims (such subordinated portions, the "**Subordinated Equity Committee Professional Compensation Claims**"); provided, that notwithstanding any other provision of this Plan, the proceeds of the Adversary Proceeding, net of all fees payable and expenses reimbursable to Special Litigation Counsel shall be distributed in the following order: first, to the Equity Committee Professionals, on a Pro Rata basis, in an amount sufficient to pay fifty percent (50%) of their

respective Subordinated Equity Committee Professional Compensation Claims; second, to Holders of Allowed General Unsecured Claims, pursuant to § 4.2 of this Plan, in an amount sufficient to pay such Claims in full with interest at the federal judgment rate from the Petition Date; third, to the Equity Committee Professionals, on a Pro Rata basis, in an amount sufficient to pay the balance of their respective Subordinated Equity Committee Professional Compensation Claims; and fourth, to Holders of PRXI Equity Interests as of the Effective Date, pursuant to § 4.3 of this Plan. For the avoidance of doubt, no portion of the Equity Committee Professionals' respective claims for reimbursement of expenses, pursuant to Sections 330(a)(1)(B) and 503(b) of the Bankruptcy Code, Allowed pursuant to § 3.1.3.(d) of this Plan, shall be subordinated, but rather, shall be paid on the Effective Date pursuant to § 3.1.1 of this Plan.  In addition, as part of this Equity Committee Professional Compensation Claim Compromise, the members of the Equity Committee and the Equity Committee Professionals shall be named as Exculpated Parties pursuant to § 10.2 of this Plan.

        **6.5**    Corporate Action.  This Plan will be administered by the Liquidating Trustee and all actions taken under this Plan in the name of the Debtors shall be taken through the Liquidating Trustee.  On the Effective Date, (a) the matters under this Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries, and (b) the officers, directors, members, managers or any other Person exercising control over the affairs of the Debtors shall immediately cease to serve and be terminated and such authority shall be vested solely with the Liquidating Trustee without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.

        **6.6**    Resignation of Directors and Officers.  Upon the Effective Date, the Debtors' officers, directors, members, managers or any other Person exercising control over the affairs of the Debtors shall be deemed to have resigned without the necessity of any further action or writing, and they shall be released from responsibilities, duties, and obligations arising after the Effective Date to the Debtors or their Creditors under this Plan and applicable law.

        **6.7**    Dissolution of the Debtors.  On and after the Effective Date, the Liquidating Trustee shall be authorized to take all actions reasonably necessary to dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or Filing any necessary paperwork or documentation.

        **6.8**    Dissolution of the Creditors' Committee.  On the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms.

**6.9**    Cancellation of Interests.  On the Effective Date, all Equity Interests (including, without limitation, all promissory notes, stock, instruments, warrants, certificates and other documents evidencing any interest in the Debtors) shall be deemed automatically cancelled and surrendered and shall be of no further force, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

**6.10**    Confidentiality, Privilege.  On and after the Effective Date, any confidentiality obligations, attorney-client privilege or other privilege or immunity attaching to any documents or communications shall vest in the Liquidation Trust and its representatives, and the Liquidating Trustee and its representatives shall not otherwise waive such confidentiality, privilege, or immunity without prior notice and a hearing before the Bankruptcy Court. The Debtors are authorized to take all actions they deem necessary to effectuate the transfer of such privilege, and any documents or communications that would otherwise be protected from discovery by virtue of any applicable privilege or immunity shall remain so protected. The Confirmation Order shall provide that the Liquidating Trustee's receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' Estates. If any privileged documents are inadvertently produced to third parties, such production shall not be deemed to destroy any privilege or be deemed a waiver of any confidentiality protections afforded to such privileged documents.

# ARTICLE 7

# DISTRIBUTIONS UNDER THIS PLAN

**7.1**    Generally.  The Liquidating Trustee shall apply the Liquidating Trust Assets only in accordance with this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall make all Distributions provided for in this Plan from the Liquidating Trust Assets, including those to be paid on the Effective Date.  The Liquidating Trustee shall not be required to seek approval of the Bankruptcy Court or any other court with respect to the administration of the Liquidating Trust, or as a condition to making any payment or Distribution out of the Liquidating Trust Assets; provided, however, that, with respect to any Distribution from any "disputed ownership fund" that the Liquidating Trustee may establish under § 1.468B-9(c)(2)(ii) of the Treasury Regulations, the Liquidating Trustee shall obtain Bankruptcy Court approval to the extent necessary to comply with the requirements of such Treasury Regulation.  All Distributions and the Reserves described in this Article 7 shall be managed by the Liquidating Trustee in a manner that accounts for the priority of Distributions described in § 7.2, below.

**7.2**    Priority of Distributions.

**7.2.1    Distribution of Cash.**  Cash available for Distributions pursuant to this Plan shall, subject to the terms of this Plan and the Liquidating Trust Agreement, be paid to Holders of Allowed Claims or allocated to the Reserves established by the Liquidating Trustee in the following order of priority:

**First**,        to all Holders of Allowed Administrative Expense Claims, subject to § 6.4 of this Plan, Allowed Priority Tax Claims and Allowed Priority Claims, and

to allocate to the Disputed Claims Reserve and Administrative and Priority Claims Reserve as provided for in §§ 7.4.2 and 7.4.3 of this Plan; and

**Second**,    to outstanding Liquidating Trust Expenses, and to allocate to the Liquidating Trust Expense Reserve as provided for in § 7.4.1 of this Plan.

**7.2.2    Distribution of Net Distributable Assets.**    Thereafter, subject to § 6.4 of this Plan, all Net Distributable Assets shall be paid Pro Rata to all Holders of Allowed Unsecured Claims on an interim and final basis in accordance with §§ 7.3.2 and 7.3.3 of this Plan.

**7.3**    Timing of Distributions.

**7.3.1    Distributions on Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims.**    Except as otherwise provided in this Plan, each Holder of an Allowed Administrative Expense Claim, Allowed Priority Tax Claim and Allowed Priority Claim against any Debtor shall be entitled to a Distribution of Cash from the Liquidating Trust Assets as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

**7.3.2    Interim Distributions on Allowed Unsecured Claims.**    Holders of Allowed Unsecured Claims shall be entitled to an initial Distribution from the Net Distributable Assets in an amount to be determined by the Liquidating Trustee (but, in any event, no more than each such Holder's Pro Rata Share) and may also receive subsequent Distributions from the Net Distributable Assets on account of each such Holder's Allowed Unsecured Claim; provided that any such Distribution must be warranted, economical and not unduly burdensome to the Liquidating Trust; and, provided further, the Liquidating Trustee has allocated adequate funds to the Reserves, as applicable, and the Reserves will remain adequate after any such interim Distribution is made.

**7.3.3    Final Distributions on Allowed Unsecured Claims.**    After (a) the payment of all Liquidating Trust Expenses, Administrative Expense Claims, Priority Tax Claims and Priority Claims, (b) the prosecution, settlement, or abandonment of all Causes of Action, (c) the allowance or disallowance of all Claims against the Estates, and (d) the liquidation or abandonment of all other Liquidating Trust Assets, the Holders of all Allowed Unsecured Claims shall be entitled to a Pro Rata Distribution of all remaining Net Distributable Assets pursuant to the terms of this Plan and the Liquidating Trust Agreement, until the earlier of: (y) all such Allowed Unsecured Claims are paid in full and (z) the Net Distributable Assets are exhausted.

**7.4**    Reserves.

**7.4.1    Liquidating Trust Expense Reserve.**    On the Effective Date, the Liquidating Trustee shall establish the Liquidating Trust Expense Reserve to ensure that the Liquidating Trust will have sufficient funds to pay certain Liquidating Trust Expenses that may arise from time to time in connection with the administration of the Liquidating Trust. The initial amount of the Liquidating Trust Expense Reserve shall be estimated and funded in accordance with § 3.4 of the Liquidating Trust Agreement.

**7.4.2    Disputed Claims Reserve.**  In addition to the Liquidating Trust Expense Reserve, the Liquidating Trustee shall establish a Disputed Claims Reserve.  The Disputed Claims Reserve shall be for the payment of any Disputed Claim, to the extent such Disputed Claim becomes an Allowed Claim against the Debtors.  The amount set aside in the Disputed Claims Reserve for any such Disputed Claim shall be the amount that would be distributed on account of such Claim if it were an Allowed Claim in the lower of: (a) (i) the amount set forth in the Proof of Claim Filed by the Holder of such Claim, or (ii) if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed; and (b) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to § 8.5 of this Plan.

**7.4.3    Administrative and Priority Claims Reserve.**  In addition to the Liquidating Trust Expense Reserve and the Disputed Claims Reserve, the Liquidating Trustee shall establish an Administrative and Priority Claims Reserve.  The Administrative and Priority Claims Reserve shall be for the payment of all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Allowed but unpaid, other than Subordinated Equity Committee Professional Compensation Claims, regardless of whether such Claim is Allowed (but unpaid) before, on, or after the Effective Date.  The amount of the Administrative and Priority Claims Reserve shall be based on the Liquidating Trustee's good faith estimate of the amount necessary to pay all present and anticipated Allowed Administrative Expense Claims, Priority Claims, and Priority Tax Claims against the Debtors, other than Subordinated Equity Committee Professional Compensation Claims.  Notwithstanding anything to the contrary in the foregoing, funding for all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Disputed shall be allocated pursuant to § 7.4.2 of this Plan.

**7.5**    Cancellation of Equity Interests.  On the Effective Date, all Equity Interests, including all promissory notes, stock, instruments, warrants, certificates and other documents evidencing any PRXI Equity Interest or Subsidiary Equity Interest shall be deemed automatically cancelled and surrendered.

**7.6**    Manner or Distribution.  Notwithstanding any other provisions of this Plan or the Liquidating Trust Agreement providing for a Distribution or payment in Cash, at the option of the Liquidating Trustee, any Distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH.  Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Any Cash Distributions or payments will be issued to Holders of Allowed Claims in whole cents (rounded to the nearest whole cent when and as necessary).

**7.7**    Delivery of Distributions.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made by the Debtors, if before the Effective Date, or the Liquidating Trustee, if on or after the Effective Date, (i) at the addresses set forth on any Proof of Claim or Filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim is Filed or the Debtors or the Liquidating Trustee have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes Filed with the Bankruptcy Court and served on the Liquidating Trustee by such Holder after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if

no Proof of Claim has been Filed and no written notice of address change has been Filed by such Holder with the Bankruptcy Court and served on the Liquidating Trustee.

**7.8**    Undeliverable Distributions. If any Distribution or other payment to the Holder of an Allowed Claim under this Plan is returned for lack of a current address for the Holder or otherwise (as such, an "**Undeliverable Distribution**"), the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of 90 days, the attempted Distribution remains an Undeliverable Distribution, the Liquidating Trustee shall distribute to the Holders of Allowed Claims in the appropriate Class the amount of the Undeliverable Distribution, and the Allowed Claim giving rise to the Undeliverable Distribution shall be deemed satisfied and released, with no recourse to the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Assets, to the same extent as if the Undeliverable Distribution had been made to the corresponding Holder of the Allowed Claim.

**7.9**    Setoffs and Recoupments. The Debtors, if before the Effective Date, or the Liquidating Trustee, if on or after the Effective Date, may, to the extent permitted by Section 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments or Distributions are to be made pursuant to this Plan, any Causes of Action of any nature whatsoever that the Debtors, the Estates, or the Liquidating Trust may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, or the Liquidating Trust of any right of setoff or recoupment that the Debtors, the Liquidating Trust or the Estates may have against the Holder of such Claim, nor of any other Cause of Action.

**7.10**    Distributions in Satisfaction; Allocation. Except for the obligations expressly imposed by this Plan and the property and rights expressly retained under this Plan, if any, the Distributions and rights that are provided in this Plan shall be in complete satisfaction and release of all Claims against, Liabilities in, Liens on, obligations of and Interests in the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trust Assets, whether known or unknown, that arose or existed prior to the Effective Date.

**7.11**    No Distribution in Excess of Allowed Amount of Claim. Notwithstanding anything to the contrary contained in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**7.12**    No Interest on Claims. Unless otherwise specifically provided for in this Plan, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of this Plan, Confirmation Order or Liquidating Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**7.13**    Withholding Taxes. The Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, shall be entitled to deduct any federal, state or local

withholding taxes from any payments or Distributions under this Plan. As a condition to making any Distribution under this Plan, the Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws. Failure of a Holder of any Allowed Claim to provide such Holder's taxpayer identification number and such other information and certification may result in forfeiture of such Holder's right to Distributions in respect of its Claim.

**ARTICLE 8**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**8.1** No Distributions on Disputed Claims. Notwithstanding any other provisions of this Plan, no payments or Distributions shall be made on account of a Disputed Claim until and unless such Claim becomes an Allowed Claim. In lieu of Distributions under this Plan to Holders of Disputed Claims, a Disputed Claims Reserve shall be maintained by the Liquidating Trustee for payment of any Disputed Claim which becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made within the time periods provided above in Article 7 of this Plan, or as soon as is reasonably practicable following allowance of the Claim.

**8.2** Proof of Claim Filed for Scheduled Claim. As set forth in Bankruptcy Rule 3003(c)(4), if a Proof of Claim is filed by any Creditor asserting a Claim for the same obligation which had previously been listed for such Creditor by the Debtors on the Schedules, then the Scheduled Claim shall be deemed a Disallowed Claim without the need for the Debtors, the Liquidating Trustee or any party in interest to file an objection to such Scheduled Claim. The Claim asserted in the Proof of Claim shall be deemed to replace such Scheduled Claim and shall ultimately become an Allowed Claim, a Disputed Claim or a Disallowed Claim pursuant to the procedures set forth in this Plan.

**8.3** Resolution of Claims under Materiality Threshold. Subsequent to the Effective Date, the Liquidating Trustee shall have the authority to settle and resolve a Disputed Claim that was originally asserted in an amount equal to or less than $250,000.00 upon such terms and conditions as the Liquidating Trustee deems appropriate and in the best interests of the Estates. Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Chapter 11 Cases. The Liquidating Trustee shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest, and shall not have any requirement to obtain Court approval, in connection with compromising, settling, or otherwise resolving these Claims.

**8.4** Resolution of Claims above Materiality Threshold. With respect to any Disputed Claim that was originally asserted in an amount that exceeds $250,000.00, the Liquidating Trustee shall have the authority to compromise and settle any such Claim on such terms as the Liquidating Trustee deems appropriate and in the best interests of the Estates, subject to the approval of the Liquidating Trust Oversight Committee pursuant to § 6.3.3 of this Plan, by providing Designated

Notice of any such proposed compromise and a reasonable opportunity to object thereto. If a party in interest files a written objection with the Court in the Chapter 11 Cases with respect to any proposed compromise of any Disputed Claim, and serves a copy of said objection upon the Liquidating Trustee and his or her counsel, within twenty-one (21) days from the service of Designated Notice of the proposed compromise, then the Court shall schedule a hearing with respect to said objection. If no objection is timely filed and served, the Liquidating Trustee may compromise and settle any Disputed Claim without further authorization. The Liquidating Trustee may file motions which seek to compromise more than one Claim.

**8.5**    Estimation of Claims.    The Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, may request that the Bankruptcy Court estimate any Contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.    If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to object to the ultimate allowance of the Claim or seek to reduce and allow the Claim (as reduced). All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE 9

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1**    Rejection of Contracts and Leases.    Subject to the exceptions set forth in Section 9.2, below, on and after the Effective Date, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code, and written notice will be provided to each such counterparty of such deemed rejected contract or lease (together with a statement of the date by which any Proof of Claim must be filed). Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

**9.2**    Exceptions to Rejection.    The following Executory Contracts and Unexpired Leases shall ***not*** be rejected pursuant to this Plan: all  Executory Contracts and Unexpired Leases that the Debtors either (i) previously assumed, and/or assumed and assigned (specifically including, but not limited to, the contracts and leases set forth on Exhibit A of the *Notice of Assumption and Assignment of Executory Contract or Unexpired Lease* [Docket No. 1323]), (ii) rejected, each as provided for by an order of the Bankruptcy Court, or (iii) assumed and/or assigned in this Plan.

**9.3**    Rejection Claims.  Claims created by the rejection of Executory Contracts and Unexpired Leases pursuant to § 9.1 of this Plan, or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Effective Date (collectively, "**Rejection Claims**"), must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date (the "**Rejection Objection Deadline**").

**9.3.1    Timely Filed Rejection Claims.**  Unless otherwise ordered by the Bankruptcy Court, all Rejection Claims that are filed on or before the Rejection Objection Deadline shall be treated as Unsecured Claims under this Plan and shall be subject to the provisions of Article 4 of this Plan.

**9.3.2    Tardy Rejection Claims.**  All Rejection Claims that are filed after the Rejection Objection Deadline (or not filed at all) shall be deemed Disallowed without the need for any action or formal objection by the Liquidating Trustee or any other party in interest, and shall be forever barred from assertion against the Debtors, their Estates, the Liquidating Trust, and the Liquidating Trust Assets, unless otherwise ordered by the Bankruptcy Court or provided herein.

**9.3.3    Employment Agreements and Benefit Programs**

(a)    *Employment Agreements*.  Except to the extent previously rejected by Final Order of the Bankruptcy Court on or before the Effective Date, all employment and severance agreements between the Debtors and their employees entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected under § 9.1 of the Plan.  Any Claim arising out of such rejection shall be treated in accordance with § 9.3 of the Plan.

(b)    *Employee Benefit Plans*. Except and to the extent previously rejected by Final Order of the Bankruptcy Court on or before the Effective Date, all Employee Benefit Plans entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected under § 9.1 of the Plan. Any Claim arising out of such rejection shall be treated in accordance with § 9.3 of the Plan.

**ARTICLE 10**

**PLAN INJUNCTION, EXCULPATION, AND RELEASE**

**10.1    Plan Injunction.  Except as otherwise expressly provided in this Plan, the Plan Supplement, documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including any Governmental Authority, but solely to the extent such Governmental Authority received notice of the Plan and Disclosure Statement) shall be permanently enjoined from, on account of such Claims or Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, the Exculpated Parties, the Liquidating Trust, the Liquidating Trustee, or any of their respective properties or assets: (i) commencing or continuing in any manner any action or other proceeding of any**

kind; (ii) enforcing, executing, collecting, or recovering in any manner any judgment, award, decree, or order, or attaching any property pursuant to the foregoing; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) enjoining or invalidating any foreclosure or other conveyance of any Property of the Liquidating Trust or of the Debtors; (vi) interfering with or in any manner whatsoever disturbing the rights and remedies of the Liquidating Trust, the Debtors or the Estates under this Plan and the Plan documents and the other documents executed in connection therewith; and (vii) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of this Plan. This injunction shall not enjoin or prohibit (i) the holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of this Plan or (ii) any party in interest from seeking the interpretation or enforcement of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under this Plan. The Liquidating Trustee shall have the right to independently seek enforcement of this Plan Injunction provision.  This Plan Injunction provision is an integral part of this Plan and is essential to its implementation.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, Distributions under such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article 10 of the Plan.

Notwithstanding the foregoing, the Plan Injunction shall not include or be effective against Mark A. Sellers, Douglas Banker, Richard Kraniak, or Jack H. Jacobs (the "Pre-Merger D&Os"), unless and until that certain Settlement Agreement by and between: (i) Mark C. Healy, the Responsible Person; (ii) Mark A. Sellers, Douglas Banker, Richard Kraniak, and Jack H. Jacobs; and (iii)  National Union Fire Insurance Company of Pittsburgh, Pa (the "Insurer"), related to the Adversary Proceeding (the "D&O Settlement"), is approved by a final, non-appealable Order of the Bankruptcy Court (the "D&O Settlement Effective Date").  In the event the D&O Settlement is not approved by the Bankruptcy Court and the D&O Settlement Effective Date does not occur, the Pre-Merger D&Os shall be excluded from the Plan Injunction.

Additionally, and notwithstanding the foregoing, Daoping Bao, Michael Evans, Sid Dutchak, Mingcheng Tao, Jerome Henshall, Mark Bains, and Guo "David" Ding (the "Post-Merger D&Os") are specifically excluded from the Plan Injunction, and the Plan Injunction shall not enjoin any action against them. For the avoidance of any doubt, the Responsible Person, Liquidating Trustee, and any successor fiduciary retain any and all rights and causes of action against the Post-Merger D&Os, including but not limited to in connection with the Adversary Proceeding.

**10.2    Exculpation from Liability**.  To the fullest extent permissible under applicable law, (i) effective as of the Effective Date, the Debtors,  Jessica Leigh Sanders, in her capacity

- 38 -

as an officer of the Debtors, the Debtors' Professionals (acting in such capacity), the members of the Creditors' Committee (acting in such capacity) and the Creditors' Committee's Professionals (acting in such capacity), and the members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity) and (ii) effective as of the D&O Settlement Effective Date with respect to the Pre-Merger D&Os (collectively referred to herein as the "Exculpated D&O Parties", and with the Debtors, Jessica Leigh Sanders, in her capacity as an officer of the Debtors, the Debtors' Professionals (acting in such capacity), the members of the Creditors' Committee (acting in such capacity), the Creditors' Committee's Professionals (acting in such capacity), and the members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity), collectively the "Exculpated Parties")) are hereby released and exculpated from any Claim, obligation, Cause of Action, or liability of any kind whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law or in equity, for any action taken or omitted to be taken, in connection with or related to the formulation, preparation, dissemination, or confirmation of this Plan, including solicitation of acceptances thereto, the Disclosure Statement, any Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into, including without limitation the Purchase Agreement, or any other act taken or omitted from being taken, in connection with the Sale, this Plan or these Chapter 11 Cases, including but not limited to the commencement and administration of these Chapter 11 Cases, the sale of assets, the arranging for post-petition financing, the prosecution and defense of contested matters and adversary proceedings, the settlement of Claims, and the disbursement of funds (including, for the avoidance of doubt, providing any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors, in each case except for actual fraud, willful misconduct, or gross negligence in connection with the Plan or the Chapter 11 Cases, each solely to the extent as determined by a Final Order of a court of competent jurisdiction; *provided*, *however*, that in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the restructuring of Claims and Interests in the Chapter 11 Cases and in connection with the transactions contemplated herein, including the Sale, the negotiation, formulation, or preparation of the agreements, instruments, or other documents pursuant to the Plan or the Sale, and the solicitation and distribution of the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, this exculpation shall not release any obligation or liability of any party under the Plan or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable

**law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a Plan or the offer, issuance, sale or purchase of securities. This Exculpation from Liability provision is an integral part of this Plan and is essential to its implementation.**

**For the avoidance of any doubt, the Pre-Merger D&Os shall not be released or exculpated, and are specifically excluded from the Exculpated Parties, unless and until the occurrence of the D&O Settlement Effective Date. In the event the D&O Settlement is not approved by the Bankruptcy Court and the D&O Settlement Effective Date does not occur, the Pre-Merger D&Os shall not be released or exculpated under this Section 10.2 of the Plan or otherwise.**

**Additionally, for the avoidance of any doubt, the Post Merger D&Os, shall not be and are not released or exculpated under Section 10.2 of the Plan or otherwise. The Responsible Person, Liquidating Trustee, and any successor fiduciary retain any and all rights and causes of action against the Post-Merger D&Os, including but not limited to in connection with the Adversary Proceeding, and nothing in this Plan or the Confirmation Order shall be construed to enjoin any rights, claims, or causes of action against the Post-Merger D&Os, or to release or exculpate the Post-Merger D&Os, in connection with the Adversary Proceeding, or otherwise.**

**10.3**    Preservation of Insurance.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement (if any), any bar date notice, or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtors have any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtors and assigned to the Liquidating Trust, and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies (and the proceeds thereof) shall vest in the Liquidating Trust.  For the avoidance of doubt, nothing in this Plan, the Plan Supplement (if any), or otherwise shall diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, including, without limitation, its current and former officers and directors, or any other Person.

**10.4**    Continuation of Automatic Stay.  The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect pursuant to Section 362(c)(2) of the Bankruptcy Code.  The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Assets of the Debtors, the Estates and/or the Liquidating Trust or to permit the just and orderly administration of the Estates.

**10.5**    Binding Effect of Plan.  Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan, whether or not such Holder has accepted this Plan and whether or not the Holder has Filed a Claim.

**10.6**    No Liability for Tax Claims.  Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claim Bar Date

established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtors, the Estates, the Liquidation Trust, the Liquidating Trustee, or their directors, officers, employees or agents for Taxes, penalties, interest, additions to tax or other charges arising out of (a) the failure, if any, of the Debtors, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (b) an audit of any return for a period before the Petition Date. The entry of the Confirmation Order shall be deemed to be a determination that no provision of this Plan has avoidance of Taxes as a principal purpose, and the Confirmation Order shall so provide.

**10.7**    No Liability for Untimely Administrative Expense Claims.    Holders of Administrative Expense Claims (including Holders of any Claims for Post-petition Taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Estates, the Liquidating Trust, or any of their respective Property.

**10.8**    Regulatory or Enforcement Actions.    Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code.  Nothing contained in this § 10.8 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

# ARTICLE 11

# MODIFICATION OF THIS PLAN

**11.1**    Preconfirmation Amendment.  The Debtors reserve the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation of this Plan. This Plan may be modified, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, this Plan otherwise may be modified after notice and hearing. In the event of modification at or before Confirmation, any votes in favor of this Plan shall be deemed to be votes in favor of this Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes.

**11.2**    Post-Confirmation Amendment Not Requiring Resolicitation.  After the entry of the Confirmation Order, the Debtors may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under this Plan.

**11.3**    Post-Confirmation Amendment Requiring Resolicitation.  After the Confirmation Date and before the Effective Date of this Plan, the Debtors may modify this Plan in a way that

materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice to all Creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtors comply with Section 1125 of the Bankruptcy Code with respect to the modified Plan.

## ARTICLE 12

## RETENTION OF JURISDICTION

**12.1**    Notwithstanding Confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, for the following purposes:

(a)    to determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)    to hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, estimation, or payment of Rejection Claims and Cure Amounts resulting therefrom;

(c)    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(d)    to hear and determine objections to the allowance of Claims, whether Filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to determine any matter (other than those matters that are subject to the exclusive jurisdiction of the United States District Court for the Eastern District of Virginia in the admiralty action styled *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, Case No. 2:93-cv-902, including, but not limited to, the Admiralty Order) (i) under the Purchase Agreement; (ii) in connection with the Sale Transaction; or (iii) the Sale Order;

(h)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the

consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)     to hear and determine any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan and the Liquidating Trust Agreement, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning Taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     to enter a Final Decree closing the Chapter 11 Cases;

(o)     to recover all Assets of the Debtors and the Liquidating Trust, and Property of the Estates, wherever located;

(p)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors and/or the Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(q)     to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(r)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**12.2**    Courts of Competent Jurisdiction.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE 13

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**13.1**    Condition Precedent to Confirmation.  This Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Debtors and provides for, among other things, the limited consolidation of the Debtors in accordance with § 6.1, above.

**13.2**    Conditions Precedent to Occurrence of Effective Date.  The Effective Date for this Plan may not occur unless each of the conditions set forth below is satisfied.  Any one or more of the following conditions may be waived in whole or in part at any time by the Debtors:

(a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall not have been stayed, modified, or vacated on appeal;

(b)    The Confirmation Order shall provide for the releases, injunctions, and exculpation of the Persons provided for by this Plan in Article 10;

(c)    Mark Healy or his designee shall have been appointed as Liquidating Trustee and shall have accepted to act in such capacity in accordance with the terms and conditions of this Plan;

(d)    All actions, documents, and agreements necessary to implement and consummate this Plan shall have been affected or executed and binding on all parties thereto; and

(e)    All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**13.3**    Effect of Nonoccurrence of the Conditions Precedent to Occurrence of Effective Date.  If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day after 90 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant this Plan, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors or of any other party in interest.

# ARTICLE 14

# MISCELLANEOUS

**14.1**     Objections to Claims.  On and after the Effective Date, the Liquidating Trustee shall have the exclusive right to make, file and prosecute objections to Disputed Claims (whether scheduled or filed). All such objections shall be filed within one hundred eighty (180) days after the Confirmation Date (the "**Claims Objection Deadline**"); however, the Liquidating Trustee may seek extensions of this one hundred eighty (180) day period following Designated Notice. If a party in interest files a written objection with the Bankruptcy Court with respect to any proposed extension of time and serves a copy of said objection upon the Liquidating Trustee, and his or her counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Bankruptcy Court shall schedule a hearing with respect to said objection and the deadline for the Liquidating Trustee to object to Claims as authorized under this Plan, shall be deemed extended through the conclusion of such hearing. If no objection is timely filed and served, the proposed extension is granted without further authorization. The failure to object to any Claim prior to the commencement of the hearing on Confirmation of this Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of Distribution.

**14.2**     Further Actions.  Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Bankruptcy Court directing the Debtors, the Liquidating Trustee and/or any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to affect any transfer and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan. Any transfer taxes arising from transfers of property ordered or made pursuant to this Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

**14.3**     Governing Law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Florida shall govern the rights and obligations arising under this Plan, without giving effect to principles of conflicts of law of Florida.

**14.4**     Continuing Effect of Sale Order and Admiralty Order.  Notwithstanding anything in this Plan to the contrary, the Sale Order and any and all related documents (including but not limited to the Purchase Agreement) and Admiralty Order shall not be modified, limited, or amended by this Plan.

**14.5**     Waiver of Bankruptcy Rule 3020.  The Debtors may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order and this Plan be immediately binding and enforceable; and (b) authorization for the Debtors to consummate this Plan immediately after entry of the Confirmation Order.

**14.6**     No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in this Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**14.7**   Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**14.8**   Confirmation Order and Plan Control.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, the Liquidation Trust Agreement, or any other agreement entered into between the Debtors and any third party, this Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control this Plan; provided, however, that neither this Plan nor the Confirmation Order shall alter, modify, or otherwise affect the Purchase Agreement or the Sale Order.

**14.9**   Severability.  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**14.10**   Headings.  Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

**14.11**   Notice of Effective Date.  Not later than five (5) Business Days following the Effective Date, the Liquidating Trustee shall file a notice of the occurrence of the Effective Date of this Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

**14.12**   Notices.  Any notice required or permitted to be provided under this Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

*To the Debtors*:  Premier Exhibitions, Inc., in care of Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris Winsberg and Matthew Brooks, Tel: (404) 885-3000, Fax: (404) 885-3900; with copies to Nelson Mullins Riley & Scarborough LLP, 50 N. Laura Street, Suite 4100, Jacksonville, FL 32202, attention: Daniel F. Blanks and Lee D. Wedekind, III, Tel: (904) 665-3656, Fax: (904) 665-3699.

*To the Creditors' Committee*:  Official Committee of Unsecured Creditors of Premier Exhibitions, Inc. and its Debtor Affiliates, in care of Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak and Avery Samet, Tel: (212) 490-4100, Fax: (212) 490-4208; with copies to Thames Markey & Heekin, P.A., 50 N. Laura Street, Suite 1600, Jacksonville, FL 32202, attention: Richard R. Thames and Robert A. Heekin, Jr., Tel: (904) 358-4000, Fax: (904) 358-4001.

**14.13**   Post-Effective Date Notice.  Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the US Trustee's Office, counsel to the Liquidating Trustee, and any Creditor that has a direct pecuniary interest in the relief sought by the pleading. With the exception of the US Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee. Parties who do not file a request for

continued service shall be removed from the Debtors' Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading. Notice of the requirement to file a request for continued service will be provided in the notice sent to all Creditors regarding the Confirmation of this Plan.

**14.14**    Deemed Acts.  Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

[*Signatures on Following Page*]

**PREMIER EXHIBITIONS, INC.**, on
behalf of itself and its subsidiaries


By: _____
Name: Jessica Leigh Sanders
Title: Corporate Secretary, Premier
Exhibitions, Inc.

**EXHIBIT A**

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Agreement**"), dated as of _____ __, 2019, by and among (a) Mark C. Healy of Michael Moecker & Associates, Inc., not individually, but solely in his capacity as the trustee for the liquidating trust established pursuant to this Agreement (such person and each successor trustee, the "**Liquidating Trustee**") and (b) Premier Exhibitions, Inc., on behalf of itself and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), is executed pursuant to the First Amended Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code [Docket No. •], dated _____ __, 2019 (as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "**Plan**") that provides for the establishment of the liquidating trust (the "**Liquidating Trust**") created hereby.  Each of the Debtors and the Liquidating Trustee are sometimes referred to individually as a "**Party**" and collectively as the "**Parties**." Capitalized terms used in this Liquidating Trust Agreement and not otherwise defined shall have the meanings assigned to such terms in the Plan.

# R E C I T A L S:

(A)     On June 14, 2016 (the "**Petition Date**"), each of the Debtors filed voluntary petitions with the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "**Bankruptcy Court**") under Chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered under Case No. 3:16-bk-02232-JAF.

(B)     On May 15, 2019, the Debtors filed their Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code [Docket No. 82] (the "**Original Plan**") and accompanying disclosure statement [Docket No. 81] (the "**Disclosure Statement**").

(C)     On [●], 2019, the Debtors filed their Plan.

(D)     On [__, 2019], the Bankruptcy Court entered the Confirmation Order [Docket No. •] confirming the Plan.  A copy of the confirmed Plan is attached hereto as **<u>Exhibit A</u>**.

(E)     The Plan provides for the creation of a post-confirmation Liquidating Trust to hold and administer the Liquidating Trust Assets and to distribute the proceeds therefrom to the Liquidating Trust Beneficiaries (defined below), in accordance with the terms of this Agreement and the Plan. This Agreement is executed to establish the Liquidating Trust and to facilitate the Plan.

(F)     The Liquidating Trust is created on behalf of, and for the benefit of, the Liquidating Trust Beneficiaries.

(G)     The respective powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by this Agreement, the Plan, the Confirmation Order and other applicable orders issued by the Bankruptcy Court.

(H)    This Agreement is intended to supplement, complement and implement the Plan which is incorporated herein by reference; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

(I)    The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IR Code**").

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby acknowledged and confirmed, the Parties hereby agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1    Establishment of Liquidating Trust and Appointment of Liquidating Trustee.

(a)    This Liquidating Trust, which shall be known as the "Premier Exhibitions Liquidating Trust," is hereby established on behalf, and for the benefit, of: (i) the Holders of Allowed Claims of the Debtors (whether such Claims are Allowed as of or subsequent to the Effective Date); and (ii) Holders of Subordinated Equity Committee Professional Compensation Claims, but solely to the extent there are proceeds from the Adversary Proceeding available for Distribution to such Holders in accordance with § 6.4 of the Plan(collectively, the "**Liquidating Trust Beneficiaries**").

(b)    The Liquidating Trustee is hereby appointed as trustee of the Liquidating Trust effective as of the Effective Date and agrees to accept and hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries subject to the terms of the Plan, the Confirmation Order, and this Agreement. The Liquidating Trustee and each successor Liquidating Trustee serving from time to time hereunder shall have all the rights, powers, and duties set forth herein.

1.2    Transfer of Assets and Rights to the Liquidating Trust.

(a)    As of the Effective Date, and pursuant to and subject in all respects to the terms of the Plan and Confirmation Order, the Debtors, in their respective capacities as debtors-in-possession on behalf of the Estates, hereby transfer, assign and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their right, title and interest in the Liquidating Trust Assets, including Causes of Action of such Debtors, other than any waived, exculpated or released Causes of Action in accordance with the provisions of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law.   The Liquidating Trustee agrees to accept and hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

(b)    All of the proceeds received by the Liquidating Trust from the sale, transfer or other disposition of the Liquidating Trust Assets (including the prosecution or settlement of any

Cause of Action) shall be added to the Liquidating Trust Assets and held as a part thereof (and title thereto shall be vested in the Liquidating Trust), and shall be distributed in accordance with Article 7 of the Plan.

1.3    Funding.

The Liquidating Trust shall be funded by the Liquidating Trust Assets and any proceeds thereof.

1.4    Title to Assets.

(a)    **Transfer of Title.**  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets. In accordance with Section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to the interests of the Liquidating Trust Beneficiaries, the Liquidating Trust Expenses, and certain Liabilities (as defined below). Thereupon, the Debtors shall not have any interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

(b)    **Transfer Subject to Liabilities.**  The Liquidating Trust Assets are hereby transferred subject to the following liabilities, if any, which arise out of or relate to any known or unknown Claim against the Debtors or their Estates (the "**Liabilities**"):

(i)    Allowed Administrative Claims, other than Subordinated Equity Committee Professional Compensation Claims, Allowed Priority Tax Claims, and Allowed Priority Claims that have not been paid as of the Effective Date or that are subsequently Allowed; and

(ii)    all U.S. Trustee Fees (for each Debtor) until such time as the Bankruptcy Court enters a Final Decree or the Chapter 11 Cases are otherwise closed;

(iii)    excluding, however, Claims that have been barred by, or satisfied under, the Plan.

1.5    Nature and Purpose of the Liquidating Trust.

(a)    The Liquidating Trust is organized and established as a trust solely to, subject to the terms and conditions contained herein and in the Plan: (i) administer the Liquidating Trust Assets and make Distributions in accordance with the Plan and this Agreement; and (ii) oversee and direct the expeditious but orderly liquidation of the Liquidating Trust Assets. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Liquidating Trust Assets, and consistent with the liquidating purpose of the Liquidating Trust.

(b)     This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee, the Liquidating Trust Oversight Committee (or any of its members), or the Liquidating Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Liquidating Trust Beneficiaries (on the one hand) to the Liquidating Trustee and the Liquidating Trust Oversight Committee (on the other hand) shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

1.6     <u>Relationship to, and Incorporation of, the Plan and the Confirmation Order.</u>

This Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions of the Plan and the Confirmation Order by this reference. To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and Confirmation Order, in each case solely to the extent such actions or orders are in furtherance of this Agreement, but in each case subject in all respects to and solely to the extent not inconsistent with the terms of the Plan and/or Confirmation Order. To the extent that there is a conflict between the provisions of this Agreement, and the provisions of the Plan, and/or the Confirmation Order, the terms of the Confirmation Order shall govern the Plan, and the terms of the Plan shall govern this Agreement.

**ARTICLE II**
**LIQUIDATING TRUST INTERESTS**

2.1     <u>Allocation of Liquidating Trust Interests.</u>

(a)     **Beneficial Interests.**   On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim shall be allocated a Pro Rata Share of beneficial interests in the Liquidating Trust (the "**Beneficial Interests**") on account of such Holder's Allowed Claim.

(b)     **Subordinated Interests**.   On the Effective Date, or as soon as practicable thereafter, each Holder of a Subordinated Equity Committee Professional Compensation Claim (Allowed, as provided in the Plan) shall be allocated a Pro Rata Share of beneficial interests in the Liquidating Trust (the "**Subordinated Interests**") on account of such Holder's Subordinated Equity Committee Professional Compensation Claim; <u>provided</u>, <u>however</u>, that the Subordinated Interests shall rank junior to the Beneficial Interests and shall not have a right to Distribution or payment except as explicitly provided in § 6.4 of the Plan.

2.2     Allocation of Beneficial Interests to Holders of Disputed Claims.

No Beneficial Interest shall be allocated to the Holder of a Disputed Claim unless and until such Disputed Claim is an Allowed Claim. If a Holder's Disputed Claim is resolved and becomes an Allowed Claim, the Holder shall be allocated a Pro Rata Share of Beneficial Interests in accordance § 2.1(a), above (and receive the same percentage recovery as Holders of Allowed Claims in the same Class as if the Holder's Allowed Claim was an Allowed Claim as of the Effective Date of the Plan); provided, however, that post-Effective Date interest shall not be allowed.

2.3     Interests Beneficial Only.

(a)     The ownership of a Beneficial Interest or Subordinated Interest shall not entitle any Liquidating Trust Beneficiary to any title in or to the Liquidating Trust Assets (which title shall be vested solely in the Liquidating Trust) or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting.

(b)     Notwithstanding the foregoing, the Liquidating Trustee may deem and treat each Liquidating Trust Beneficiary of record, as determined pursuant to this Agreement, as the absolute owner of such Liquidating Trust Beneficiary's Beneficial Interests or Subordinated Interests for the purpose of receiving Distributions and payment thereon or on account thereof and for all other purposes whatsoever; provided, that nothing within this subsection (b) shall supersede or limit § 2.3(a), above.

2.4     Evidence of Liquidating Trust Interests; Trust Register.

(a)     **Interests Uncertificated.** The Beneficial Interests shall be uncertificated. The Beneficial Interests shall be represented by appropriate book entries in the Trust Register (as defined immediately below).

(b)     **Creation of Trust Register.** The Liquidating Trustee shall create, maintain, and make appropriate notations in a registry of the Liquidating Trust Beneficiaries (the "**Trust Register**") and calculate and set forth in the Trust Register the following entries prior to each Distribution to the Liquidating Trust Beneficiaries:

(i)     The Beneficial Interest and Allowed Claim held by each Liquidating Trust Beneficiary; and

(ii)     The Beneficial Interest that otherwise would be attributable to the Holder of a Disputed Claim were such Disputed Claim to become an Allowed Claim.

(c)     **Application to Subordinated Interests**. § 2.4(a) and (b) above shall apply equally to Subordinated Interests.

(d)     **Location of Trust Register.** The Liquidating Trustee shall keep, or cause to be kept, the Trust Register at the office of the Liquidating Trustee or at such other place as may

be designated by the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Commission, from time-to-time.

(e) **Access to Trust Register.** Each Liquidating Trust Beneficiary and its duly authorized representatives shall have the right, upon reasonable prior written notice to the Liquidating Trustee, and in accordance with the reasonable regulations prescribed by the Liquidating Trustee, to inspect and, at the sole expense of the Liquidating Trust Beneficiary seeking the same, make copies of the Trust Register reflecting such Liquidating Trust Beneficiary's interest in the Liquidating Trust, in each case for a purpose reasonably related to such Liquidating Trust Beneficiary's interest in the Liquidating Trust.

2.5     Exemption from Registration.

The Parties hereto intend that the rights of the Liquidating Trust Beneficiaries arising under this Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan and this Agreement.

2.6     Transfer and Exchange.

(a)     Beneficial Interests and/or Subordinated Interests are not negotiable and shall not be assignable or transferable voluntarily.  In the case of a deceased individual Liquidating Trust Beneficiary, his or her executor, administrator, or legal representative shall succeed to such decedent's interest in the Liquidating Trust; provided, however, that any such transfer by shall not be effective or binding upon the Liquidating Trust for any purpose, unless and until (i) notification of such transfer is provided to the Liquidating Trustee in accordance with § 10.6(a) herein, and (ii) such transfer is in fact recorded on the Trust Register.

2.7     Change of Address.

A Liquidating Trust Beneficiary may, after the Effective Date, select an alternative address for Distribution or provide wire transfer instructions for any Distribution by providing notice to the Liquidating Trustee (in accordance with § 10.6(a) herein) including such address or instructions. Such notification will be effective only upon receipt by the Liquidating Trustee and notation in the Trust Register. Absent receipt of such notice by the Liquidating Trustee, the Liquidating Trustee shall not recognize any such change of Distribution address.

2.8     Tax Identification Numbers.

The Liquidating Trustee may require any direct payee of Distributions on account of Beneficial Interests or Subordinated Interests to furnish to the Liquidating Trustee its social security number or employer or taxpayer identification number as assigned by the Internal Revenue Service and complete any related documentation (including a Form W-8 or Form W-9), and the Liquidating Trustee may condition any Distribution to any such payee upon the receipt of

such information and the receipt of such other documents as the Liquidating Trustee reasonably requests.

## ARTICLE III
## THE LIQUIDATING TRUSTEE

3.1    Role of the Liquidating Trustee.

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee, subject to the terms and conditions contained herein, in the Plan and in the Confirmation Order, shall (a) hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, and (b) make Distributions of Liquidating Trust Assets in accordance with the Plan and this Agreement. Subject to the provisions of this Agreement, the Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Liquidating Trustee shall act in the best interests of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

3.2    Responsibilities and Authority of the Liquidating Trustee.

(a)    **Responsibilities.**  In connection with the administration of the Liquidating Trust, in addition to any and all of the powers enumerated elsewhere herein, the Liquidating Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Liquidating Trust Agreement and the provisions of the Plan solely relating to the Liquidating Trust, within the bounds of the Plan and applicable law (and, for the avoidance of doubt, subject to Liquidating Trust Oversight Committee consultation and/or approval to the extent required herein). The Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, to the extent required, shall:

(i)    in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets;

(ii)    make timely Distributions to Holders of Beneficial Interests;

(iii)    make timely Distributions to Holders of Subordinated Interests out of the proceeds of the Adversary Proceeding (but solely to the extent and in the priority set forth in § 6.4 of the Plan);

(iv)    establish and maintain the Disputed Claims Reserve, the Liquidating Trust Expense Reserve, and the Administrative and Priority Claims Reserve;

(v)    audit and analyze all Claims not paid in full on the Effective Date or otherwise Allowed by the Bankruptcy Court;

(vi)    prosecute objections to, settle, or otherwise resolve such Claims if necessary and appropriate in accordance with the Plan and this Agreement;

- 7 -

(vii)    file appropriate tax returns with respect to the Liquidating Trust; and

(viii)    take all actions as are necessary and reasonable to carry out the purposes of the Liquidating trust under the Plan and this Agreement and not unduly prolong the duration of the Liquidating Trust.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(b)    **Specific Provisions with Respect to Causes of Action.**  The Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, shall have the right to pursue, not pursue, release, abandon, and/or settle any and all Causes of Action (including any counterclaims asserted against the Liquidating Trust) as the Liquidating Trustee determines is in the best interests of the Liquidating Trust.  To the extent that any action has been taken to prosecute or otherwise resolve any Cause of Action prior to the Effective Date, on the Effective Date the Liquidating Trustee shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following: "*Mark Healy of Michael Moecker & Associates, Inc.*, *as Liquidating Trustee for the Premier Exhibitions Liquidating Trust v.* [*Defendant*(s)]."  Without limiting the generality of the foregoing, the Liquidating Trustee shall specifically be substituted in as plaintiff in the Adversary Proceeding, and the caption with respect to the Adversary Proceeding shall be changed to the following: *Mark Healy of Michael Moecker & Associates, Inc.*, *as Liquidating Trustee for the Premier Exhibitions Liquidating Trust v. Mark Sellers* [et al.]"

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(c)    **Additional Powers.**  Subject to any limitations contained herein or in the Plan, the Liquidating Trustee (on behalf of the Liquidating Trust as the Liquidating Trustee, but not individually) shall have the power to:

(i)    hold legal title to any and all rights of or arising from the Liquidating Trust Assets, including collecting and receiving any and all money and other property belonging to the Liquidating Trust and, subject to consultation with the Liquidating Trust Oversight Committee, the right to vote any claim or interest relating to the Liquidating Trust Assets in a case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)    receive and take such action as may be necessary to take possession, custody or control of all Liquidating Trust Assets to be distributed pursuant to the Plan;

- 8 -

(iii)     oversee, administer, maintain, and wind-down any 401(k) plans and other employee or retiree benefit plans of the Debtors to the extent any such plans remain in place or claims thereunder remain unsatisfied following the Effective Date and are transferred to the Liquidating Trust;

(iv)     in consultation with the Liquidating Trust Oversight Committee, protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(v)     in consultation with the Liquidating Trust Oversight Committee, obtain reasonable insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Liquidating Trust Oversight Committee under this Liquidating Trust Agreement (in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise);

(viii)     employ various professionals, including counsel, tax advisors, consultants, and financial advisors, as the Liquidating Trustee deems necessary to aid it in fulfilling its obligations under this Liquidating Trust Agreement and the Plan (such Persons, the "**Trustee Professionals**"), and on whatever fee arrangement the Liquidating Trustee deems appropriate, including contingency fee arrangements (any such fees, "**Trustee Professional Fees**");

(ix)     in consultation with the Liquidating Trust Oversight Committee, the Liquidating Trustee may invest the proceeds of the Liquidating Trust Assets (and all income earned by the Liquidating Trust pending periodic Distributions in accordance with the provisions of the Plan) in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; provided, however, that such actions are consistent with the Liquidating Trust's status as a liquidating trust within the meaning of United States Treasury Regulation section 301.77014(d) and; provided further that such actions are consistent with § 6.2.14(d) of the Plan;

(x)     request any appropriate tax determination with respect to the Liquidating Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xi)     subject to applicable securities laws, if any, establish and maintain a website, to the extent the Liquidating Trustee deems necessary, for the purpose of providing notice of Liquidating Trust activities in lieu of sending written notice to Liquidating Trust Beneficiaries, subject to providing notice of the establishment of such website to such Liquidating Trust Beneficiaries;

(xii)     take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Liquidating Trust Assets consistent with the purposes hereof, take all steps and execute all instruments and documents necessary to effectuate the Liquidating Trust, and take all

actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder, in each case subject to Liquidating Trust Oversight Committee consultation to the extent required herein;

(xiii) in consultation with the Liquidating Trust Oversight Committee, as applicable, liquidate any remaining Liquidating Trust Assets, and provide for the Distributions therefrom in accordance with the provisions of the Plan and this Agreement;

(xiv) in consultation with the Liquidating Trust Oversight Committee, exercise such other powers and authority as may be necessary and proper to carry out the provisions of the Plan relating to the Liquidating Trust;

(xv) with the advice of the Liquidating Trust Oversight Committee, evaluate and determine strategy with respect to the Liquidating Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Liquidating Trust Assets on behalf of the Liquidating Trust and the Liquidating Trust Beneficiaries;

(xvi) in the event that the Liquidating Trustee determines that the Liquidating Trust Beneficiaries or the Liquidating Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences;

(xvii) assume such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement; and

(xviii) modify or amend this Agreement to enable the Liquidating Trustee to Distribute any remaining Net Distributable Assets to Holders of Allowed PRXI Equity Interests as of the Effective Date in accordance with § 6.4 of the Plan.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(d) **Necessary Reports.** The Liquidating Trustee shall file all required Post-Confirmation operating reports through the date the Chapter 11 Cases are closed (or a Final Decree is entered), or such other and further reports, statements or disclosures relating to the Liquidating Trust that are necessary or appropriate or as may be reasonably requested by the Liquidating Trust Oversight Committee.

(i) Without limiting the generality of the foregoing, the Liquidating Trustee shall provide quarterly reports to the Liquidating Trust Beneficiaries with respect to the (a) the sale, transfer or other disposition of the Liquidating Trust Assets (including any Causes of Action), and (b) expenditures, receipts, and Distributions of the Liquidating Trust.

- 10 -

(ii)     In addition, the Liquidating Trustee shall File or cause to be Filed with the Bankruptcy Court quarterly reports setting forth: (a) the compensation paid to the Liquidating Trustee; (b) the fees and expenses reimbursed or paid to the Liquidating Trustee; (c) the fees paid to Trustee Professionals and LTOC Professionals (defined below); (d) the number and amount of Distributions; (e) the amount of Disputed Claims and Undeliverable Distributions, if any; (f) the total amount or estimated value of the Liquidating Trust Assets remaining; (g) the proceeds of the Adversary Proceeding or any other lawsuit seeking the recovery of assets commenced by the Liquidating Trustee; and (h) all fees and expenses paid in connection therewith.

(e)     **Objections to Claims.**  On and after the Effective Date, the Liquidating Trustee shall have the exclusive right to make, file and prosecute objections to Claims (whether Scheduled or Filed). All such objections shall be filed within one hundred eighty (180) days after the Confirmation Date (the "**Claims Objection Deadline**"); provided, however, the Liquidating Trustee may seek extensions of the Claims Objection Deadline following Designated Notice prior to the expiration of the Claims Objection Deadline period, as provided for in § 14.1 of the Plan.

(f)     **Authority to Act.**  Unless specifically stated otherwise in this Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (i) authorized in this Agreement or (ii) specifically contemplated in the Plan.

(g)     **Dissolution of the Debtors.**  In accordance with the Plan and the Confirmation Order, upon the last to occur of (i) the Effective Date (ii) the execution of this Agreement and (iii) the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Liquidating Trustee shall file or cause to be filed such necessary articles or certificates of dissolution, as the case may be, with the secretary of state or designated office of the state of formation, incorporation or organization (as applicable) of each Debtor, to affirmatively and permanently dissolve, cancel, liquidate, and destroy the corporate legal existence of each applicable Debtor.

(h)     **Other Activities**.  The Liquidating Trustee shall be entitled to be employed by third parties while performing the duties required under the Plan and this Agreement, so long as such other employment does not involve holding or representing any interest adverse to the interests of the Liquidating Trust, or otherwise preclude or impair the Liquidating Trustee from performing his or her duties under the Plan and this Agreement.

3.3     Limitation on the Liquidating Trustee's Authority.

(a)     Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall not (i) be authorized to engage in any trade or business (for or on behalf of the Liquidating Trust), (ii) take any actions inconsistent with the orderly liquidation of the Liquidating Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of United States Treasury Regulation section 301.7701-4(d), (iv) perform any environmental remediation or restoration activities, (v) own any real property, (vi) take any action in

- 11 -

contravention of this Liquidating Trust Agreement, or (v) take any action that would jeopardize treatment of the Liquidating Trust as a grantor trust for U.S. federal income tax purposes under sections 671-677 of the IR Code, or any successor provisions thereof.

(b)     The Liquidating Trustee, acting on behalf of the Liquidating Trust, shall agree to comply with, and shall not take any actions inconsistent with or seek to modify or seek relief from, any provision of the Plan or the Confirmation Order.

3.4     Liquidating Trust Expenses.

(a)     The Liquidating Trustee may incur any reasonable and necessary Liquidating Trust Expenses in pursuing the Liquidating Trust Assets, administering the Liquidating Trust, managing the Liquidating Trust Assets, and making Distributions on account of Beneficial Interests and/or Subordinated Interests. Subject to the following limitation, all Liquidating Trust Expenses shall be paid by, and solely be the obligation of, the Liquidating Trust.

(b)     **First Quarter Liquidating Trust Budget.**  On or before the Effective Date, the Liquidating Trustee shall prepare a reasonably detailed budget for the first quarter of the Liquidating Trust (such budget, the "**First Quarter Liquidating Trust Budget**") with respect to the Liquidating Trust Expenses expected to be incurred by the Liquidating Trust and the Liquidating Trustee (including the expenses of Trustee Professionals) in furtherance of the limited purpose of the Liquidating Trust and shall submit such First Quarter Liquidating Trust Budget to the Liquidating Trust Oversight Committee.  Within ten (10) Business Days after receipt of the First Quarter Liquidating Trust Budget, the Liquidating Trust Oversight Committee shall either (i) approve the First Quarter Liquidating Trust Budget, (ii) approve the First Quarter Liquidating Trust Budget with modifications, or (iii) deny the First Quarter Liquidating Trust Budget, and shall provide written notice of such decision to the Liquidating Trustee.

(i)     If the First Quarter Liquidating Trust Budget is approved (or if the Liquidating Trustee accepts the modifications to the First Quarter Liquidating Trust Budget proposed by the Liquidating Trust Oversight Committee), the Liquidating Trustee shall, as soon as reasonably practicable thereafter, fund the Liquidating Trust Expense Reserve with the approved amount of the First Quarter Liquidating Trust Budget, using the Liquidating Trust Assets.

(ii)     If the First Quarter Liquidating Trust Budget is denied (or if the Liquidating Trustee does not accept the modifications to the First Quarter Liquidating Trust Budget proposed by the Liquidating Trust Oversight Committee), the Liquidating Trustee may seek approval of the First Quarter Liquidating Trust Budget from the Bankruptcy Court, whose decision as to the amount of the First Quarter Liquidating Trust Budget shall be final and non-appealable by any Party herein.  Upon receipt of the Bankruptcy Court's decision with respect to the approved amount of the First Quarter Liquidating Trust Budget, the Liquidating Trustee shall fund the Liquidating Trust Expense Reserve with the approved amount of the First Quarter Liquidating Trust Budget, using the Liquidating Trust Assets.

(c)     No later than ten (10) Business Days prior to the expiration of the First Quarter Liquidating Trust Budget, the Liquidating Trustee shall prepare and submit to the Liquidating Trust Oversight Committee a reasonably detailed budget for the following quarter of the Liquidating Trust, which process shall repeat until the termination of the Liquidating Trust in accordance with Article VII of this Agreement (each such successive quarterly budget, a "**Successive Quarterly Budget**" and, together with the First Quarter Liquidating Trust Budget, the "**Liquidating Trust Budget**").  Each Successive Quarterly Budget shall be governed in all respects by the foregoing subsection (b) (and its subsections) to the same extent as if "First Quarter Budget" were replaced with "Successive Quarterly Budget."

(d)     With the exception of (i) the out-of-pocket expenses incurred by the Liquidating Trust Oversight Committee and (ii) LTOC Professional Fees (defined below), any and all Liquidating Trust Expenses shall be paid only out of the Liquidating Trust Expense Reserve. If excess funds remain in the Liquidating Trust Expense Reserve immediately prior to the termination of the Liquidating Trust, in accordance with Article VII of this Agreement, the Liquidating Trustee shall affect a Distribution of the excess funds in the Liquidating Trust Expense Reserve to the Liquidating Trust Beneficiaries in the order, amount, and priority set forth in Article 7 of the Plan.

3.5     Tenure, Removal, and Replacement of the Liquidating Trustee.

(a)     The Liquidating Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, Disability (as defined below), or death (if applicable).

(b)     The Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice to the Liquidating Trust Oversight Committee. Such resignation will become effective on the later to occur of (i) the day specified in such notice, and (ii) the appointment of a successor Liquidating Trustee as provided herein and the acceptance by such successor Liquidating Trustee of such appointment.

(c)     The Liquidating Trust Oversight Committee may petition the Bankruptcy Court to remove for Cause the Liquidating Trustee or any successor Liquidating Trustee appointed pursuant to the Plan and this Agreement.

(d)     In the event that the Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, the Liquidating Trust Oversight Committee shall appoint, in writing, a successor Liquidating Trustee, and shall File with the Bankruptcy Court a notice of the appointment of the successor Liquidating Trustee.

(e)     Immediately upon the appointment of any successor Liquidating Trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee hereunder will be vested in and undertaken by the successor Liquidating Trustee without any further act; and the successor Liquidating Trustee will not be liable personally for any act or omission of the predecessor Liquidating Trustee. Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the

obligations of the predecessor Liquidating Trustee hereunder, and such successor shall be subject to the same qualifications and shall have the same rights, powers, duties, and discretion, and otherwise be in the same position, as the originally named Liquidating Trustee. References herein to the Liquidating Trustee shall be deemed to refer to any successor Liquidating Trustee acting hereunder.

(e)     Upon the appointment of a successor Liquidating Trustee, the predecessor Liquidating Trustee (or the duly appointed legal representative of a deceased Liquidating Trustee or a Liquidating Trustee suffering a Disability) shall, if applicable, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee, without recourse to the predecessor Liquidating Trustee, all the estates, properties, rights, powers and trusts of such predecessor Liquidating Trustee (solely as each relates to this Agreement and the Liquidating Trust), and shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held hereunder, and all other assets and documents relating to the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trust Beneficiaries then in such predecessor Liquidating Trustee's possession and held hereunder.

(f)     In the event there is a vacancy in the position of Liquidating Trustee, the Liquidating Trust Oversight Committee shall appoint one of its members to serve as interim Liquidating Trustee (the "**Interim Trustee**"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Liquidating Trustee hereunder; provided, however, that the Interim Trustee shall not serve indefinitely and shall be replaced by a duly appointed successor Liquidating Trustee; provided further, that such Interim Trustee shall not exercise any rights or powers as a member of the Liquidating Trust Oversight Committee during such Person's tenure as Interim Trustee.

(g)     The Liquidating Trustee shall, during the period that the Liquidating Trustee serves as Liquidating Trustee under this Liquidating Trust Agreement and following the termination of this Liquidating Trust Agreement or following its removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which the Liquidating Trustee has become aware in the Liquidating Trustee's capacity as Liquidating Trustee, except as otherwise required by law.

(h)     "**Disability**" of the Liquidating Trustee or a member of the Liquidating Trust Oversight Commission shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Liquidating Trustee or the member of the Liquidating Trust Oversight Committee, as applicable, and reasonably acceptable to the Liquidating Trust Oversight Committee, the Liquidating Trustee or the member of the Liquidating Trust Oversight Committee shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

- 14 -

3.6    Books and Records.

The Liquidating Trustee shall maintain in respect of the Liquidating Trust and the Liquidating Trust Beneficiaries good and sufficient books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust and the payment of, expenses of, liabilities of, and claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Liquidating Trust. Nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution out of the Liquidating Trust Assets. The books and records of the Liquidating Trust shall be available for inspection by any member of the Liquidating Oversight Committee upon reasonable notice.  Subject to all applicable privileges, the Liquidating Trust Beneficiaries shall have the right, upon twenty (20) days' prior written notice to the Liquidating Trustee, to request a reasonable inspection of the books and records held by the Liquidating Trustee; provided, all costs associated with such inspection shall be paid in advance by such requesting Liquidating Trust Beneficiary; provided further, if so requested, such Liquidating Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee, and make such other arrangements as may be reasonably requested by the Liquidating Trustee.

3.7    Inquiries into the Liquidating Trustee's Authority.

Except as otherwise set forth in this Liquidating Trust Agreement or in the Plan, no Person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Liquidating Trust Assets.

3.8    Compliance with Laws.

(a)    The Liquidating Trustee shall ensure that any and all Distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including applicable federal and state securities laws.

(b)    If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), the Trust Indenture Act of 1939, or the Investment Company Act of 1940, then the Liquidating Trustee shall, after consultation with the Liquidating Trust Oversight Committee, take commercially reasonable efforts to comply with such registration and reporting requirements, if any, and file periodic reports with the U.S. Securities and Exchange Commission to the extent required by law.

3.9    Liquidating Trustee Compensation and Reimbursement.

(a)    The Liquidating Trustee shall receive compensation and reimbursement from the Liquidating Trust (but solely through the Liquidating Trust Expense Reserve) as follows:

(i)    The Liquidating Trustee shall receive compensation on terms consistent with (and in no event exceeding) those set forth in the *Consent Motion for an Order Appointing a Responsible Person as Substitute Plaintiff in the Adversary Proceeding against certain of the Debtors' Current and Former Directors and Officers* [D.E. 1296-2] (refiled in the Adversary Proceeding). Specifically, the Liquidating Trustee's compensation shall be set at no more than $300/hour, and the other Professionals at Michael Moecker & Associates assisting the Liquidating Trustee shall receive their standard hourly rates.

(b)    In addition, the Liquidating Trust will reimburse the Liquidating Trustee (but solely out of the Liquidating Trust Expense Reserve) for all reasonable and documented out-of-pocket expenses incurred by the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties hereunder and under the Plan.

(c)    The fees and expenses payable to the Liquidating Trustee shall be paid to the Liquidating Trustee upon approval of such fees by the Liquidating Trust Oversight Committee without necessity for review or approval by the Bankruptcy Court or any other Person. All such compensation and reimbursement shall be paid solely from the Liquidating Trust Expense Reserve, in accordance with the applicable Liquidating Trust Budget. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Liquidating Trustee and the Liquidating Trust Oversight Committee regarding the fees, compensation, and expenses of the Liquidating Trustee.

3.10    Reliance by the Liquidating Trustee.

(a)    Except as otherwise provided herein:

(i)    The Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties.

(ii)    Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such Person in carrying out the terms of this Agreement, and neither the Liquidating Trustee nor any member of the Liquidating Trust Oversight Committee shall have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidating Trustee (or the Liquidating Trust Oversight Committee, as applicable) are determined by Final Order to be solely due to the Liquidating Trustee's (or the Liquidating Trust Oversight Committee's) own willful misconduct, fraud, or gross negligence.

3.11    No Bond.

The Liquidating Trustee shall not be obligated to post a bond but may do so, in his or her sole discretion.

- 16 -

3.12    Standard of Care; Exculpation.

(a)    **Fiduciary Duty**.  Pursuant to the Plan and this Agreement, the Liquidating Trustee will act as a fiduciary on behalf of the Liquidating Trustee Beneficiaries.

(b)    **Exculpatory Provisions.**

(i)    None of the Liquidating Trustee, the Liquidating Trust Oversight Committee, the members thereof, the Trustee Professionals, or LTOC Professionals (defined below) shall be liable for any damages arising out of the creation, operation or termination of the Liquidating Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Liquidating Trust except in the case of such party's gross negligence, bad faith, willful misconduct, or fraud.  In performing its duties under this Agreement, the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) shall have no liability for any action taken in accordance with the advice of counsel, accountants, appraisers and other professionals retained by the Liquidating Trust Oversight Committee or the Liquidating Trust. Without limiting the generality of the foregoing, the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) to be genuine, and shall have no liability for actions taken in reliance thereon.  Each of the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may rely without inquiry upon writings delivered to it under the Plan which the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) reasonably believes to be genuine and to have been given by a proper Person. Notwithstanding the foregoing, nothing in this § 3.12(b)(i) shall relieve the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee from any liability for any actions or omissions arising out of their gross negligence, willful misconduct, or fraud.  Any action taken or omitted to be taken in the case of the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence or willful misconduct.

(ii)    The Liquidating Trustee and the Liquidating Trust Oversight Committee, and their respective officers, directors, partners, members, managers and employees, shall be indemnified to the fullest extent permitted by law by the Liquidating Trust against all liabilities arising out of the creation, operation or termination of the Liquidating Trust, including actions taken or omitted in fulfillment of their duties with respect to the Liquidating Trust, except for those acts that are determined by Final Order to have arisen out of their own willful misconduct, gross negligence, bad faith, or fraud.

**ARTICLE IV**
**LIQUIDATING TRUST OVERSIGHT COMMITTEE**

4.1    Constitution and Appointment.

The Liquidating Trust Oversight Committee shall have three (3) members, each of whom must be the Holder of an Unsecured Claim at the time of appointment and throughout tenure as a

member of the Liquidating Trust Oversight Committee. The Liquidating Trust Oversight Committee is hereby established as of the Effective Date pursuant to § 6.3 of the Plan to advise, assist, supervise and direct the Liquidating Trustee in the administration of the Liquidating Trust pursuant to this Agreement. The initial members of the Liquidating Trust Oversight Committee shall be B.E. Capital Management Fund LP, Dalian Hoffen Biotechnique Co., Ltd, and 417 Fifth Avenue LLC.

4.2   Fiduciary Duties.

The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date shall apply to the Liquidating Trust Oversight Committee, as limited by the exculpations, indemnifications, releases and other protections provided in the Plan, this Agreement, and the Confirmation Order. The duties, rights and powers of the Liquidating Trust Oversight Committee shall terminate upon the dissolution of the Liquidating Trust pursuant to the Plan and this Agreement.

4.3   Authority of the Liquidating Trust Oversight Committee Generally.

(a)   The Liquidating Trust Oversight Committee shall have (i) the authority and responsibility to advise, assist, and supervise, the Liquidating Trustee in the administration of the Liquidating Trust (ii) such other rights to operate and manage the Liquidating Trust as are not inconsistent with the Confirmation Order, the Plan and the terms of this Agreement and (iii) have the authority to remove the Liquidating Trustee in accordance with § 4.5(b) herein. The Liquidating Trustee shall consult with and provide information to the Liquidating Trust Oversight Committee in accordance with and pursuant to the terms of this Agreement and the Plan.

(b)   No other Liquidating Trust Beneficiary shall have any approval rights whatsoever in respect of management and operation of the Liquidating Trust.

4.4   Engagement of Professionals and Advisors.   The Liquidating Trustee, in consultation with the Oversight Committee,  shall have the authority to select and engage such professionals or advisors as the Liquidating Trust Oversight Committee deems necessary and desirable to assist the Liquidating Trust Oversight Committee in fulfilling its obligations under this Agreement and the Plan (such Persons, the "**LTOC Professionals**").

4.5   Specific Rights and Powers of the Liquidating Trust Oversight Committee.

(a)   **Ratification by Majority Vote.**  Unless otherwise stated herein, whenever the approval or consent of the Liquidating Trust Oversight Committee is required, such approval or consent may be indicated by a majority vote of the Liquidating Trust Oversight Committee. Without limiting the generality of the foregoing, the Liquidating Trustee must consult with the Liquidating Trust Oversight Committee before acting or failing to act on any of the following:

(i)   the determination not to object to a Claim having a stated amount in excess of $250,000;

(ii)  the settlement of (a) any Cause of Action in which the amount sought to be recovered exceeds $250,000 or (b) any Disputed Claim having a stated amount in excess of $250,000 and to approve any release or indemnification to be given by the Liquidating Trustee in connection with any such settlement;

(iii)  any sale of any Liquidating Trust Assets for a price in excess of $250,000;

(iv)  the investment of Cash or other Liquidating Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

(v)  the waiver of the attorney-client privilege by the Liquidating Trustee with respect to any Cause of Action or other litigation related matter; and

(vi)  the election to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to a matter described in subsection 4.5 (a)(i) –(vi), then the Liquidating Trustee shall bring the matter before the Court for determination

(b)  **Unanimous Decisions.**  The Liquidating Trust Oversight Committee shall also have the absolute right and power to determine the following by the unanimous vote of all the members of the Liquidating Trust Oversight Committee:

(i)  to change the initial bond to be posted by the Liquidating Trustee; and

(ii)  to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause, or to select a successor Liquidating Trustee when a successor is required.

If the Liquidating Trust Oversight Committee is unable to reach a unanimous decision with respect to subsection (i) or (ii), above, and such deadlock shall continue for a period of one (1) week, any member of the Liquidating Trust Oversight Committee shall have the right to petition the Bankruptcy Court for appropriate relief.

4.6    Regular Meetings of the Liquidating Trust Oversight Committee.

Meetings of the Liquidating Trust Oversight Committee are to be held with such frequency and at such place as the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may determine in their reasonable discretion, but in no event shall such meetings be held less frequently than quarterly.

4.7     Special Meetings of the Liquidating Trust Oversight Committee.

Special meetings of the Liquidating Trust Oversight Committee may be held whenever and wherever called for by the Liquidating Trustee or any member of the Liquidating Trust Oversight Committee, subject to reasonable notice.

4.8     Voting.

(a)     A majority of the total number of members of the Liquidating Trust Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Liquidating Trust Oversight Committee. The affirmative vote of a majority of the members of the Liquidating Trust Oversight Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Liquidating Trust Oversight Committee except as otherwise required by law or as provided in this Agreement (specifically including § 4.5(b) hereof) or the Plan. Any or all of the members of the Liquidating Trust Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Liquidating Trust Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Liquidating Trustee and each member of the Liquidating Trust Oversight Committee.

(b)     Any member of the Liquidating Trust Oversight Committee who is present and entitled to vote at a meeting of the Liquidating Trust Oversight Committee when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Liquidating Trust Oversight Committee, unless: (i) such member of the Liquidating Oversight Trust Committee objects at the beginning of the meeting (or promptly upon his or her arrival) to holding it or transacting business at the meeting; (ii) his or her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he or she delivers written notice (including by electronic or facsimile transmission) of his or her dissent or abstention to the Liquidating Trust Oversight Committee before its adjournment. The right of dissent or abstention is not available to any member of the Liquidating Trust Oversight Committee who votes in favor of the action taken.

(c)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Liquidating Trust Oversight Committee shall report to the Liquidating Trust Oversight Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Liquidating Trust Beneficiary). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote with respect to such matter or issue (however, such member shall be counted for purposes of determining the existence of a quorum and may engage in the Liquidating Trust Oversight Committee's discussions

- 20 -

on such matter or issue); the vote or action with respect to such matter or issue shall be undertaken only by members of the Liquidating Trust Oversight Committee who are not "conflicted members." Notwithstanding anything to the contrary set forth herein, no member of the Liquidating Trust Oversight Committee shall be deemed to be a "conflicted member" solely as a result of (i) such member's affiliation with a Person that is a Liquidating Trust Beneficiary, or (ii) such member's affiliation with any Person that is, or is adverse to, a defendant in any of the Causes of Action or in any other action or proceeding.

4.9     Manner of Acting.

Any action required or permitted to be taken by the Liquidating Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Liquidating Trust Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Liquidating Trust Oversight Committee and recorded in the minutes or other transcript of proceedings of the Liquidating Trust Oversight Committee.

4.10     Tenure, Removal, and Replacement of the Members of the Liquidating Trust Oversight Committee.

The authority of the members of the Liquidating Trust Oversight Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with Article VII herein.  The service of the members of the Liquidating Trust Oversight Committee will be subject to the following:

(a)     The members of the Liquidating Trust Oversight Committee will serve until Disability, death, resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below;

(b)     A member of the Liquidating Trust Oversight Committee may resign at any time by providing a written notice of resignation to the remaining members of the Liquidating Trust Oversight Committee. Such resignation will be effective upon the date received by the Liquidating Trust Oversight Committee or such later date specified in the written notice;

(c)     A member of the Liquidating Trust Oversight Committee may be removed by the majority vote of the other members of the Liquidating Trust Oversight Committee, a written resolution of which shall be delivered to the removed Liquidating Trust Oversight Committee member; provided, however, that such removal may only be made for Cause;

(d)     In the event of a vacancy on the Liquidating Trust Oversight Committee (whether by removal, Disability, death or resignation), a new member shall be appointed to fill such position by majority vote of the Liquidating Trust Oversight Committee; provided, however, that the Liquidating Trust Oversight Committee shall function with reduced membership until such vacancy is filled;

- 21 -

(e)     Immediately upon the appointment of any successor member of the Liquidating Trust Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Liquidating Trust Oversight Committee hereunder will be vested in and undertaken by the successor member of the Liquidating Trust Oversight Committee without any further act; and the successor member of the Liquidating Trust Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Liquidating Trust Oversight Committee; and

(f)     Every successor member of the Liquidating Trust Oversight Committee appointed hereunder shall execute, acknowledge and deliver to the Liquidating Trustee and other members of the Liquidating Trust Oversight Committee an instrument accepting the appointment under this Liquidating Trust Agreement and agreeing to be bound thereto, and thereupon the successor member of the Liquidating Trust Oversight Committee without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring member.

4.11    Compensation and Reimbursement of Expenses of the Liquidating Trust Oversight Committee.

(a)     **No Compensation.**    The members of the Liquidating Trust Oversight Committee shall serve without compensation.

(b)     **Reimbursement**.  The Liquidating Trust will reimburse, as a Liquidating Trust Expense, the members of the Liquidating Trust Oversight Committee for all reasonable and documented out-of-pocket expenses incurred by such members in connection with the performance of their respective services hereunder, without duplication, upon demand for payment thereof.  Additionally, the Liquidating Trust shall pay, as a Liquidating Trust Expense, the reasonable and documented fees of the LTOC Professionals (including on an hourly, contingency, or modified contingency basis) and reimburse such LTOC Professionals for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Agreement (such fees and expenses, the "**LTOC Professional Fees**"); provided, however, that the LTOC Professional Fees shall be subject to the Liquidating Trustee's review and objection, in accordance with Article V of this Agreement.

## ARTICLE V
## PROVISIONS REGARDING PROFESSIONAL FEES

5.1    Fee Statements.

On and after the Effective Date, Trustee Professionals and LTOC Professionals, but not Special Litigation Counsel, as defined in the Plan, shall be required to submit reasonably detailed invoices on a monthly basis (or on such other periodic basis as is agreed between the relevant parties) to the Liquidating Trustee or Liquidating Trust Oversight Committee, as applicable, including in such invoices a description of the work performed, who performed such work, and if

billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.

The fees and expenses of Special Litigation Counsel with respect to the Adversary Proceeding, as defined in the Plan, shall not be paid as Liquidating Trust Expenses and, instead, shall be payable first, and solely from the proceeds, if any, of and from the Adversary Proceeding, as defined in the Plan, as approved by the Bankruptcy Court pursuant to the orders approving their employment as special counsel to the Liquidating Trustee, as amended, and without further application to, or order from, the Court.  *See* [Docket Nos. 1038, 1338]

5.2    Delivery of Fee Statements.

(a)    **Trustee Professional Fees.**  Within five (5) Business Days after receipt of an invoice, fee statement, or demand for payment for Trustee Professional Fees, the Liquidating Trustee shall transmit to the Liquidating Trust Oversight Committee such invoice, fee statement, or demand for payment.

(b)    **LTOC Professional Fees.**  Within five (5) Business Days after receipt of an invoice, fee statement, or demand for payment for LTOC Professional Fees, the Liquidating Trust Oversight Committee shall transmit to the Liquidating Trustee such invoice, fee statement, or demand for payment.

5.3    Right to Object; Limitations.

(a)    **Liquidating Trustee Objection.**  Other than the fees and expenses of Special Litigation Counsel, and following receipt of an invoice, fee statement, or demand for payment of LTOC Professional Fees in accordance with § 5.2(b), the Liquidating Trustee shall have ten (10) days to object to the LTOC Professional Fees.

(b)    **Liquidating Trust Oversight Committee Objection.**  Other than the fees and expenses of Special Litigation Counsel, and following receipt of an invoice, fee statement, or demand for payment of Trustee Professional Fees in accordance with § 5.2(a), the Liquidating Trust Oversight Committee shall have ten (10) days to object to the Trustee Professional Fees.

(c)    To be valid, any such objection under the immediately preceding subsections (a) or (b) must be in writing and set forth in detail the specific fees objected to and the basis for the objection. Further, the objection must be lodged by giving notice of the objection to the LTOC Professional and/or Trustee Professional seeking reimbursement.

(d)    Any objection under this § 5.2 that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution; provided, however, that the uncontested portion of each invoice shall be paid no later than twenty (20) days after its delivery to the Liquidating Trust Oversight Committee and/or the Liquidating Trustee, as applicable.

5.4     Fees as Liquidating Trust Expenses.

Both Trustee Professional Fees and LTOC Professional Fees shall be Liquidating Trust Expenses and duly payable as such; provided, however, that Trustee Professional Fees shall only be paid out of the Liquidating Trust Expense Reserve.

## ARTICLE VI
## TAX MATTERS

6.1     Treatment of Liquidating Trust Assets Transfer.

All parties shall treat, for U.S. federal income tax purposes, the transfer of each of the Liquidating Trust Assets to the Liquidating Trust, including any amounts or other assets subsequently transferred to the Liquidating Trust (but only at such time as actually transferred), as a deemed transfer of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries, followed by a deemed transfer of such Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust.

6.2     Income Tax Status.

(a)     For U.S. federal income tax purposes (and for tax purposes of all state, local and other jurisdictions to the extent applicable), the Liquidating Trust shall be treated as a grantor trust pursuant to IR Code sections 671-677, or any successor provisions thereof. To the extent not otherwise inconsistent with this Agreement, this Agreement shall be construed so as to satisfy the requirements for liquidating trust status. For all purposes of this Agreement, (i) the Liquidating Trust Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Liquidating Trust, and (ii) any items of income, gain, loss, deduction and credit of the Liquidating Trust shall be allocated for U.S. federal income tax purposes to the Liquidating Trust Beneficiaries. The Liquidating Trust shall at all times be administered so as to constitute a domestic trust for U.S. federal income tax purposes.

(b)     In the event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the Liquidating Trustee shall take such action as he or she shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IR Code), including, if necessary, creating or converting it into a limited partnership or limited liability company that is so classified. For federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as the grantors and owners of the Liquidating Trust and, therefore, will be responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

6.3     Treatment of Disputed Claims Reserve.

To the extent the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee, elects to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treas. Reg. section 1.468B-9 by timely making an election thereto, the Liquidating Trustee shall:

(a) file such tax returns and pay such taxes as may be required consistent with such treatment, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  In the event of such election, to the extent the Disputed Claims Reserve contains insufficient Cash to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, the Disputed Claims Reserve, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

6.4     Valuation of the Liquidating Trust Assets as of the Effective Date.

Promptly after the Effective Date, the Liquidating Trustee (to the extent the Liquidating Trustee deems it necessary or appropriate after consultation with the Liquidating Trust Oversight Committee) shall determine the final fair market value as of the Effective Date of all Liquidating Trust Assets transferred to the Liquidating Trust, based on the good faith determination of the value of such Liquidating Trust Assets; provided that such valuation can be based on reasonable estimates of the Liquidating Trustee and the Liquidating Trustee does not need to obtain formal appraisals of any Liquidating Trust Assets. The Liquidating Trustee shall provide notice of such valuation to each Liquidating Trust Beneficiary. The Liquidating Trust Beneficiaries, the Liquidating Trust and the Liquidating Trustee will each be required to use such final valuation consistently and solely for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. For the avoidance of doubt, the final valuation shall not be binding on the Liquidating Trust Beneficiaries, the Liquidating Trust or the Liquidating Trustee for any purpose other than U.S. federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority, and privileges of the Liquidating Trust Beneficiaries, the Liquidating Trust or the Liquidating Trustee except with respect to U.S. federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Liquidating Trust that are required by any governmental unit.

6.5     Tax Returns and Allocations.

(a)     The Liquidating Trustee shall file U.S. federal income tax returns for the Liquidating Trust as a grantor trust in accordance with United States Treasury Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss, deduction and credit ("**LT Tax Items**"). The Liquidating Trust Beneficiaries shall report such LT Tax Items on their U.S. federal income tax returns and pay any resulting U.S. federal income tax liability. In addition, the Liquidating Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Liquidating Trust shall send to each Liquidating Trust Beneficiary a separate statement setting forth the Liquidating Trust Beneficiary's share of LT Tax Items and will instruct each such Liquidating Trust Beneficiary to report such items on its applicable income tax return. The Liquidating Trust may provide each Liquidating Trust Beneficiary with a copy of the Form 1041 for the Liquidating Trust (without attaching any other Liquidating Trust Beneficiary's Schedule K-1 or other

applicable information form) along with such Liquidating Trust Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

(b)     Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restriction on Distributions described herein) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable losses of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IR Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

6.6     Expedited Determination of Taxes.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under applicable law for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

6.7     Withholding of Taxes; Liquidating Trust Taxes.

(a)     The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions made by the Liquidating Trust to the Liquidating Trust Beneficiaries shall be subject to any such withholding and reporting requirements.  Liquidating Trust Beneficiaries will be required to provide to the Liquidating Trustee any information necessary to affect the withholding of such taxes.  Without limiting the generality of the foregoing, the Liquidating Trustee may require any Person receiving a Distribution hereunder to furnish to the Liquidating Trustee in writing an employer identification number or taxpayer identification number as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any Distribution to any Person hereunder on receipt of such identification number.

(b)     Notwithstanding the foregoing, each Liquidating Trust Beneficiary that is to receive a Distribution hereunder will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such Distribution, including, without limitation, withholding tax obligations in respect of in-kind (non-cash) Distributions. Any party issuing an instrument or making an in-kind (non-cash) Distribution under the Plan has the right, but not the obligation, to refrain from making such Distribution until the Person to which the Distribution is to be made has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

(c)     To the extent that the operation of the Liquidating Trust or the liquidation of the Liquidating Trust Assets creates a tax liability imposed on the Liquidating Trust, the Liquidating Trust shall timely pay such tax liability and any such payment shall be considered a Liquidating Trust Expense.

## ARTICLE VII
## DISTRIBUTIONS AND CLAIMS RESERVES

7.1     No Separate Distribution Agent.

The Liquidating Trustee shall act as the agent for making distributions to the Liquidating Trust Beneficiaries under the Plan and this Agreement.

7.2     Distributions under the Plan.

The Liquidating Trustee shall make interim and final Distributions from the Liquidating Trust Assets (including Net Distributable Assets) in accordance with § 6.4 and Article 7 of the Plan.  The Liquidating Trustee may withhold amounts otherwise distributable to any Person that the Liquidating Trustee determines, in his or her reasonable sole discretion, are required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

7.3     Timing of Distributions.

Distributions to Liquidating Trust Beneficiaries shall be made as and when provided in the Plan; provided, however, that, to the extent not yet paid, the Liquidating Trustee shall remit payment to the Holders of Allowed Professional Compensation Claims in accordance with § 3.1.3 of the Plan.

7.4     Disputed Claims Reserve.

The Liquidating Trustee shall establish a Disputed Claims Reserve, which shall be for the payment of any Disputed Claim if and to the extent such Disputed Claim becomes an Allowed Claim. The amount set aside in the Disputed Claims Reserve for any such Disputed Claim shall be the amount that would be distributed on account of such Claim if it were an Allowed Claim in the lower of: (a) (i) the amount set forth in the Proof of Claim Filed by the Holder of such Claim, or (ii) if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed; and (b) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to § 8.6 of the Plan.

7.5     Administrative and Priority Claims Reserve.

The Liquidating Trustee shall establish an Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be for the payment of all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Allowed but unpaid, other than Subordinated Equity Committee Professional Claims, regardless of whether such Claim is Allowed (but unpaid) before, on, or after the Effective Date.  The amount of the Administrative

and Priority Claims Reserve shall be based on the Liquidating Trustee's good faith estimate of the amount necessary to pay all present and anticipated Allowed Administrative Expense Claims, Priority Claims, and Priority Tax Claims against the Debtors, other than Subordinated Equity Committee Professional Compensation Claims.  Notwithstanding anything to the contrary in the foregoing, funding for all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Disputed shall be allocated pursuant to § 7.4.2 of the Plan.

7.6    U.S. Trustee Fees.

The Liquidating Trustee shall timely pay all U.S. Trustee Fees (for each Debtor's Estate) as and when due until entry of a Final Decree (or the Chapter 11 Cases are otherwise closed).  U.S. Trustee Fees shall be payable from the Liquidating Trust Assets.

7.7    Delivery of Liquidating Trust Distributions.

All Distributions under this Agreement to any Liquidating Trust Beneficiary shall be made to the most current of the following: (i) at the address set forth on any Proof of Claim or Interest; (ii) any address Filed by a Liquidating Trust Beneficiary and served on the Liquidating Trustee; (iii) at the address reflected in the Schedules if no Proof of Claim has been Filed and/or no address has been Filed and served on the Liquidating Trustee; and (iv) the last known address of such Liquidating Trust Beneficiary if none of (i) – (iii) apply.

7.8    Undeliverable Distributions.

If any Distribution or other payment due to a Liquidating Trust Beneficiary is returned for lack of a current address or otherwise (as such, an "**Undeliverable Distribution**"), the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Liquidating Trust Beneficiary and the reason for its inability to make payment.  In the event of an Undeliverable Distribution, no further Distribution to such Liquidating Trust Beneficiary shall be made until and unless the Liquidating Trustee has determined the then current address of such Liquidating Trust Beneficiary, at which time such Distribution shall be made to the Liquidating Trust Beneficiary without interest; provided, however, that such Undeliverable Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable date of attempted Distribution.  After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandonment, or unclaimed property laws to the contrary) and become a Liquidating Trust Asset; and the Claim or Interest of any Liquidating Trust Beneficiary to such property or interest in property shall be released, settled, compromised, and forever barred.

7.9    General Distribution Provisions.

(a)    **Disputed Payments.**  If any dispute arises as to the identity of a Liquidating Trust Beneficiary that is to receive any Distribution, the Liquidating Trustee may, in lieu of making such Distribution to such Liquidating Trust Beneficiary, make such Distribution into an escrow

account or otherwise hold such Distribution until the disposition thereof is determined by the Bankruptcy Court or by written agreement by and among the interested parties to such dispute.

(b)    **Record Date for Distributions.**  All Distributions made by the Liquidating Trustee shall be payable by the Liquidating Trustee directly to the Liquidating Trust Beneficiaries of record (and at the addresses provided) as of the twentieth (20th) day prior to the date scheduled for Distribution.

(c)    **Fractional Distributions.**  Notwithstanding any other provision herein to the contrary, payments of fractions of dollars by the Liquidating Trustee shall not be required. Whenever any Distribution of a fraction of a dollar would be required, the Distribution will instead be rounded to the nearest whole dollar (either up or down), with half dollars being rounded down.

## ARTICLE VIII
## TERMINATION OF LIQUIDATING TRUST

8.1    Duration and Extension.

(a)    The Liquidating Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (i) the distribution of all Liquidating Trust Assets available for Distribution pursuant to the Plan, or (ii) the determination of the Liquidating Trust Oversight Committee that the administration of the Liquidating Trust Assets is not likely to yield additional Distributions; provided, however, that in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    Upon dissolution of the Liquidating Trust, any remaining Cash on hand and other Liquidating Trust Assets will be distributed to the Liquidating Trust Beneficiaries in accordance with the Plan and this Agreement.

(c)    If for any reason the Liquidating Trust shall terminate and be deemed wound up prior to the sale, transfer or other disposition of the Liquidating Trust Assets and entry of a final, non-appealable order resolving all Causes of Action, and receipt by the Liquidating Trust of all amounts to which the Liquidating Trust may be entitled, notwithstanding anything to the contrary set forth herein, the Distribution of any proceeds recovered at any time thereafter shall be made in accordance with the priorities set forth in the Plan.

8.2    Diligent Administration.

The Liquidating Trustee shall (a) not unduly prolong the duration of the Liquidating Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all Causes of Action that constitute Liquidating Trust Assets; and (c) cause the liquidation and Distribution of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.

# ARTICLE IX
## AMENDMENT AND WAIVER

Any substantive provision of this Agreement may be materially amended or waived only by order of the Bankruptcy Court if necessary to implement the Plan; provided, however, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidating Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary to clarify this Agreement or to enable the Liquidating Trust to effectuate the terms of this Agreement, with the consent of the Liquidating Trustee.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1 <u>Intention of Parties to Establish Grantor Trust.</u>

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

10.2 <u>Preservation of Privilege.</u>

In connection with the vesting and transfer of the Liquidating Trust Assets, including all Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidating Trust and shall vest in the Liquidating Trust. The Debtors and the Liquidating Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities.

10.3 <u>Confidentiality.</u>

The Liquidating Trustee and Liquidating Oversight Committee (and the members thereof) and each of his, her, or their respective employees, members, agents, professionals and advisors, including the Trustee Professionals and the LTOC Professionals, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidating Trust Assets relates; provided, however, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including, but not limited to, subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to clause (b) above, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee and the Liquidating Trust Oversight Committee to allow them sufficient time to object to

or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidating Trustee and/or the Liquidating Trust Oversight Committee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

10.4    Laws as to Construction.

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of law.

10.5    Severability.

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

10.6    Notice.

(a)    **To the Liquidating Trustee and Liquidating Trust Oversight Committee.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the third (3rd) Business Day after such notice is delivered by (i) facsimile (at the number set forth below with proof of confirmation), (ii) overnight delivery, (iii) electronic mail, or (iv) certified mail, with return receipt requested at the address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**As to the Liquidating Trustee:**

Michael Moecker & Associates, Inc., Attention: Mark C. Healy, 841 Prudential Drive, 12th Floor, Jacksonville, FL 32207, Tel: (904) 210-7023, with a copy to: [•].

**As to the Liquidating Trust Oversight Committee**: to the last known address(es) and facsimile number(s) provided by each member of the Liquidating Trust Oversight Committee to the Liquidating Trustee.

(b)    **To a Liquidating Trust Beneficiary.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the fifth (5th) Business Day after deposited, first class postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address as determined in accordance with the Trust Register; provided that general notices to all Liquidating Trust Beneficiaries may be made by posting such notice to a website identified in advance for communication with Liquidating Trust Beneficiaries.

- 31 -

10.7    <u>Survivability.</u>

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidating Trustee.

10.8    <u>Headings.</u>

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.9    <u>Counterparts.</u>

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

10.10    <u>Entire Agreement.</u>

This Agreement (including the Recitals), the Confirmation Order, and the Plan constitute the entire agreement by and among the Parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the Parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the Parties hereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

10.11    <u>Rules of Interpretation.</u>

For purposes of this Agreement, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, subsection or clause contained in this Agreement; (c) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (d) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

*[Signatures on following pages]*

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

PREMIER EXHIBITIONS, INC.

By:_____
Name:
Title:


PREMIER MERCHANDISING, LLC

By:_____
Name:
Title:


PREMIER EXHIBITION MANAGEMENT LLC

By:_____
Name:
Title:


ARTS AND EXHIBITIONS INTERNATIONAL LLC

By:_____
Name:
Title:


PREMIER EXHIBITIONS NYC, INC.

By:_____
Name:
Title:


PREMIER EXHIBITIONS INTERNATIONAL, LLC

By:_____
Name:
Title:

- 33 -

DINOSAURS UNEARTHED CORP.

By:_____

Name:

Title:

MICHAEL MOECKER & ASSOCIATES, INC.

AS LIQUIDATING TRUSTEE

By: _____

Name: Mark C. Healy

## **EXHIBIT A**

(*Intentionally Omitted*)

# **SCHEDULE 2**

40132832

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Premier Exhibitions, Inc., *et al.*,[1] | Case No. 3:16-bk-02232-PMG |
| Debtors. | Jointly Administered |

## FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

NELSON MULLINS RILEY
& SCARBOROUGH LLP
Daniel F. Blanks (FL Bar No. 88957)
Lee D. Wedekind, III (FL Bar No. 670588)
50 N. Laura Street, Suite 4100
Jacksonville, FL 32202
Telephone:     (904) 665-3656
Facsimile:      (904) 665-3699
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

TROUTMAN SANDERS LLP
Harris B. Winsberg (FL Bar No. 0127190)
Matthew R. Brooks (admitted *pro hac vice*)
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutman.com
matthew.brooks@troutman.com

Dated: May 15, 2019September 11, 2019
          Jacksonville, Florida

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Premier Exhibitions, Inc. (4922); Premier Exhibition Management LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309).  The Debtors' service address is c/o Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE 1 DEFINITIONS, RULES OF INTERPRETATION, AND
CONSTRUCTION......................................................................... 1
1.1    DEFINED TERMS ......................................................................... 1
1.2    OTHER TERMS ........................................................................... 13
1.3    RULES OF CONSTRUCTION ..................................................... 13
1.4    EXHIBITS, SUPPLEMENTS, APPENDICES, AND SCHEDULES ............... 13
1.5    CONTROLLING DOCUMENT ................................................... 14

ARTICLE 2 CLASSIFICATION OF CLAIMS AND INTERESTS ......................... 14
2.1    SUMMARY .................................................................................. 14
2.2    UNCLASSIFIED CLAIMS ........................................................... 15
2.3    CLASSIFIED CLAIMS ................................................................. 15
2.4    SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS ................... 15

ARTICLE 3 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
STATUTORY FEES, AND PRIORITY TAX CLAIMS ............................. 15
3.1    ADMINISTRATIVE EXPENSE CLAIMS..................................... 16
3.2    STATUTORY FEES ...................................................................... 18
3.3    PRIORITY TAX CLAIMS ............................................................ 19

ARTICLE 4 TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS........... 19
4.1    CLASS 1: PRIORITY CLAIMS ................................................... 19
4.2    CLASS 2: UNSECURED CLAIMS ............................................... 19
4.3    CLASS 3: PRXI EQUITY INTERESTS ........................................ 19
4.4    CLASS 4: SUBSIDIARY EQUITY INTERESTS ........................ 20

ARTICLE 5 ACCEPTANCE OR REJECTION OF THIS PLAN ............................ 20
5.1    PRESUMED ACCEPTANCE BY UNIMPAIRED CLASS .............. 20
5.2    IMPAIRED CLASSES ENTITLED TO VOTE............................. 20
5.3    PRESUMED REJECTION BY IMPAIRED VOTING CLASSES OF
INTERESTS ............................................................................ 20
5.4    CLAIM DESIGNATION............................................................... 20
5.5    ELIMINATION OF VACANT CLASSES ..................................... 20

ARTICLE 6 IMPLEMENTATION OF THIS PLAN ............................................... 21
6.1    LIMITED CONSOLIDATION ..................................................... 21
6.2    THE LIQUIDATING TRUST ....................................................... 22
6.3    LIQUIDATING TRUST OVERSIGHT COMMITTEE ................. 28
6.4    CORPORATE ACTION................................................................ 30
6.5    RESIGNATION OF DIRECTORS AND OFFICERS ....................... 31
6.6    DISSOLUTION OF THE DEBTORS ................................................. 31

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 6.7 | DISSOLUTION OF THE CREDITORS' COMMITTEE | 31 |
| 6.8 | CANCELLATION OF INTERESTS | 31 |
| 6.9 | CONFIDENTIALITY, PRIVILEGE | 31 |

ARTICLE 7 DISTRIBUTIONS UNDER THIS PLAN ............................................. 32

| | | |
|---|---|---|
| 7.1 | GENERALLY | 32 |
| 7.2 | PRIORITY OF DISTRIBUTIONS | 32 |
| 7.3 | TIMING OF DISTRIBUTIONS | 32 |
| 7.4 | RESERVES | 33 |
| 7.5 | CANCELLATION OF EQUITY INTERESTS | 34 |
| 7.6 | MANNER OR DISTRIBUTION | 34 |
| 7.7 | DELIVERY OF DISTRIBUTIONS | 34 |
| 7.8 | UNDELIVERABLE DISTRIBUTIONS | 34 |
| 7.9 | SETOFFS AND RECOUPMENTS | 34 |
| 7.10 | DISTRIBUTIONS IN SATISFACTION; ALLOCATION | 35 |
| 7.11 | NO DISTRIBUTION IN EXCESS OF ALLOWED AMOUNT OF CLAIM | 35 |
| 7.12 | NO INTEREST ON CLAIMS | 35 |
| 7.13 | WITHHOLDING TAXES | 35 |

ARTICLE 8 PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............................ 35

| | | |
|---|---|---|
| 8.1 | NO DISTRIBUTIONS ON DISPUTED CLAIMS | 35 |
| 8.2 | PROOF OF CLAIM FILED FOR SCHEDULED CLAIM | 36 |
| 8.3 | RESOLUTION OF CLAIMS UNDER MATERIALITY THRESHOLD | 36 |
| 8.4 | RESOLUTION OF CLAIMS ABOVE MATERIALITY THRESHOLD | 36 |
| 8.5 | ESTIMATION OF CLAIMS | 36 |

ARTICLE 9 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 37

| | | |
|---|---|---|
| 9.1 | REJECTION OF CONTRACTS AND LEASES | 37 |
| 9.2 | EXCEPTIONS TO REJECTION | 37 |
| 9.3 | REJECTION CLAIMS | 37 |

ARTICLE 10 PLAN INJUNCTION, EXCULPATION, AND RELEASE ......................... 38

| | | |
|---|---|---|
| 10.1 | PLAN INJUNCTION | 38 |
| 10.2 | EXCULPATION FROM LIABILITY | 39 |
| 10.3 | PRESERVATION OF INSURANCE | 41 |
| 10.4 | CONTINUATION OF AUTOMATIC STAY | 41 |
| 10.5 | BINDING EFFECT OF PLAN | 41 |
| 10.6 | NO LIABILITY FOR TAX CLAIMS | 41 |
| 10.7 | NO LIABILITY FOR UNTIMELY ADMINISTRATIVE EXPENSE CLAIMS | 41 |
| 10.8 | REGULATORY OR ENFORCEMENT ACTIONS | 42 |

## TABLE OF CONTENTS
(continued)

**Page**

ARTICLE 11 MODIFICATION OF THIS PLAN ........................................................... 42
    11.1    PRECONFIRMATION AMENDMENT .................................................. 42
    11.2    POST-CONFIRMATION AMENDMENT NOT REQUIRING
           RESOLICITATION ............................................................................ 42
    11.3    POST-CONFIRMATION AMENDMENT REQUIRING
           RESOLICITATION ............................................................................ 42

ARTICLE 12 RETENTION OF JURISDICTION ...................................................... 42
    12.2    COURTS OF COMPETENT JURISDICTION .................................... 44

ARTICLE 13 CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ..................... 44
    13.1    CONDITION PRECEDENT TO CONFIRMATION .......................... 44
    13.2    CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE
           DATE ................................................................................................ 45
    13.3    EFFECT OF NONOCCURRENCE OF THE CONDITIONS
           PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE ........... 45

ARTICLE 14 MISCELLANEOUS ....................................................................... 45
    14.1    OBJECTIONS TO CLAIMS ............................................................ 45
    14.2    FURTHER ACTIONS ...................................................................... 46
    14.3    GOVERNING LAW ........................................................................ 46
    14.4    CONTINUING EFFECT OF SALE ORDER AND ADMIRALTY
           ORDER ............................................................................................. 46
    14.5    WAIVER OF BANKRUPTCY RULE 3020 ..................................... 46
    14.6    NO ADMISSIONS .......................................................................... 46
    14.7    SUCCESSORS AND ASSIGNS ...................................................... 46
    14.8    CONFIRMATION ORDER AND PLAN CONTROL ...................... 46
    14.9    SEVERABILITY ............................................................................. 47
    14.10    HEADINGS .................................................................................... 47
    14.11    NOTICE OF EFFECTIVE DATE .................................................. 47
    14.12    NOTICES ........................................................................................ 47
    14.13    POST-EFFECTIVE DATE NOTICE .............................................. 47
    14.14    DEEMED ACTS ............................................................................. 47

# FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER
# CHAPTER 11 OF THE BANKRUPTCY CODE

## INTRODUCTION

Premier Exhibitions, Inc., Premier Merchandising, LLC, Premier Exhibition Management LLC, Arts and Exhibitions International, LLC, Premier Exhibitions NYC, Inc., Premier Exhibitions International, LLC, and Dinosaurs Unearthed Corp., the above-captioned debtors and debtors in possession, propose the following Plan under section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, as well as a summary and analysis of this Plan and other related matters, including distributions to be made under this Plan. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and this Plan is being presented as a joint plan of the Debtors.  Claims against, and Equity Interests in, the Debtors (other than Administrative Claims, Professional Compensation Claims and Priority Tax Claims) are classified in Article 4.

Only Holders of certain Unsecured Claims, as specified in Article 5, are entitled to vote on this Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE URGED TO CAREFULLY READ THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE 10 BECAUSE SUCH PROVISIONS AFFECT NOT ONLY SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST THE DEBTORS, BUT ALSO SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST CERTAIN NON-DEBTOR PERSONS IDENTIFIED IN SUCH ARTICLE. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE 1

## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**1.1**     <u>Defined Terms</u>.  For the purpose of this Plan, the following terms set forth in this Article I shall have the respective meanings set forth below.

**"Administrative and Priority Claims Reserve"** means the reserve established in accordance with § 7.4.3 of this Plan for the payment of certain Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

**"Administrative Expense"** means any cost or expense of administration of the Estates or the Cases that is allowable under Section 503(b) of the Bankruptcy Code, including, but not limited to, —

(1) Professional Compensation Claims; and

(2) any actual and necessary cost or expense of preserving the Estates or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date; and

**"Administrative Expense Claim"** means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)" and "Administrative Expense Claim(s)" may be used interchangeably in this Plan.

**"Administrative Expense Claim Bar Date"** means the last day for filing an application or other Bankruptcy Court-approved pleading for allowance and/or payment of an Administrative Expense Claim other than Professional Compensation Claims, ~~which deadline is governed by the Professional Claims Bar Date.~~. The Administrative Expense Claim Bar Date will be thirty (30) days after the Effective Date.

**"Administrative Expense Claim Objection Deadline"** means no later than thirty (30) days after the Administrative Expense Claim Bar Date.

**"Admiralty Order"** means that certain *Order* entered on December 21, 2018, by the United States District Court for the Eastern District of Virginia in the admiralty action styled *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, Case No. 2:93-cv-902.

 **"Adversary Proceeding"** means the adversary proceeding entitled *MARK C. HEALY of Michael Moecker & Associates, Inc., in his capacity as Court-Appointed Responsible Person v. MARK A. SELLERS, et al.*, Adversary Proceeding Case No. 3:18-ap-00064-~~PMG~~JAF (formerly captioned as *Official Committee of Equity Security Holders of Premier Exhibitions, Inc. v. MARK A. SELLERS, et al.*) currently pending in the Bankruptcy Court~~,~~, as may be  amended to assert claims against any and all current or former directors, officers,  managers or control persons of the Debtors (but, for the avoidance of doubt, excluding the Exculpated Parties), and including any and

38132506

all other actions which have been or may be asserted or filed by the Responsible Person, the Liquidating Trustee, or any other successor fiduciary in connection with claims against the foregoing.

"**Affiliate**" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

"**Allowed Claim**" means, with respect to a Claim, that portion of a Claim against one or more of the Debtors that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office or other designated filing method on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with this Plan; (b) in a Final Order; or (c) pursuant to the terms of this Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, and Allowed Unsecured Claim) has a corresponding meaning. Notwithstanding any other provision of this Plan, the term Allowed Claim shall not include any Claim held by a Creditor against which the Debtors have asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any penalty or interest accrued after the Petition Date unless otherwise allowable under the Bankruptcy Code and any other applicable law. To the extent that the Holder of an Allowed Claim receives any payment on such Claim from a source other than the Liquidating Trust established under this Plan, the amount of such Allowed Claim shall be reduced by the amount of such payment.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class(es) or categories described.

"**Allowed Professional Compensation Claims**" shall have the meaning set forth in § 3.1.3(a) of this Plan.

"**Assets**" or "**Property**" shall mean all property of the Estates as defined in Section 541 of the Bankruptcy Code, including, without limitation, (i) all right, title, and interest in and to any Causes of Action that the Debtors, the Estates or the Liquidating Trustee (acting in such capacity) may have as of the Effective Date or any time thereafter and (ii) the Estates' interest in the Escrow Amount, pursuant to and as calculated under the Purchase Agreement; provided, however, that under no circumstances shall the Transferred Assets (as defined in the Purchase Agreement) constitute the Assets or Property of the Debtors for purposes under this Plan.

"**Avoidance Action**" means all avoidance actions including all Causes of Action under Chapter 5 of the Bankruptcy Code.

- 2 -

**"Ballot"** means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of this Plan, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, which has jurisdiction over the Chapter 11 Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Cases.

**"Bar Date"** means (i) with respect to entities other than governmental units, October 24, 2016 and (ii) with respect to governmental units, December 9, 2016, by which any Person asserting a Claim against the Debtors must have filed a Proof of Claim or be forever barred from asserting such Claim.

**"Business Day"** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means legal tender of the United States of America. When used in this Plan with respect to a distribution under this Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a Cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtors drawn on a domestic bank.

**"Cause"** means gross negligence, breach of fiduciary duty, breach of trust, reckless or willful mishandling of the Liquidating Trust Assets, fraud, self-dealing, intentional misrepresentation, or willful misconduct.

**"Causes of Action"** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, including all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other Claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all Claims against any Affiliates, members, officers, directors, managers, employees or other Insiders of the Debtors or their Affiliates. Some of the Causes of Action may be described in further detail in the Disclosure Statement.

**"Chapter 11 Cases"** means the Chapter 11 cases commenced by the Debtors.

38132506

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

**"Claims Litigation"** shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate(s), or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate(s).

**"Claims Objection Deadline"** shall have the meaning set forth in § 14.1 of this Plan.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 2 of this Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Confirmation"** or **"Confirmation of the Plan"** means the approval of this Plan by the Bankruptcy Court at the Confirmation Hearing.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**"Confirmation Hearing"** means the hearing or hearings conducted by the Bankruptcy Court to consider Confirmation of this Plan as it may be modified hereafter from time to time.

**"Confirmation Order"** means the final order entered by the Bankruptcy Court in the Cases confirming this Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, and will include any amendments, supplements or modifications thereto made with the consent of the Debtors, or as determined by the Bankruptcy Court.

**"Consolidated Debtors"** shall have the meaning set forth in § 6.1.2 of this Plan.

**"Consummation Date"** shall mean the date on which the Liquidating Trustee makes the final Distribution in accordance with this Plan.

**"Contingent"** with reference to a Claim, shall mean a Claim that has not accrued and that is dependent on a future event that may or may not occur.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in this Plan.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors, appointed by the United States Trustee in these Cases pursuant to Section 1102 of the Bankruptcy Code, as the membership of such committee has been or may be modified by the United States Trustee.

38132506

"**Cure Amounts"** means all amounts that must be paid by the Debtors and all obligations that otherwise must be satisfied pursuant to Section 365(b)(1)(A) of the Bankruptcy Code in connection with the assumption and/or assignment of the Assumed Contracts and Leases to Premier Acquisition as provided in the Purchase Agreement and the Sale Procedures Order.

**"D&O Settlement"** shall have the meaning ascribed to such term in § 10.1 of the Plan.

**"D&O Settlement Effective Date"** shall have the meaning ascribed to such term in § 10.1 of the Plan.

"**Debt**" has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

"**Debtors**" means, collectively, Premier Exhibitions, Inc., Premier Merchandising, LLC, Premier Exhibition Management LLC, Arts and Exhibitions International, LLC, Premier Exhibitions NYC, Inc., Premier Exhibitions International, LLC, and Dinosaurs Unearthed Corp.

"**Designated Notice**" means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Liquidating Trustee and his or her counsel, the Office of the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for notice with the Clerk of the Court and serve a copy of such request on counsel to the Liquidating Trustee.

"**Disclosure Statement**" means the Disclosure Statement to accompany this Plan, including all attached exhibits, appendices, and schedules, as jointly submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Cases and provisionally approved by the Bankruptcy Court as containing "adequate information" as that term is defined by Section 1125(a)(1) of the Bankruptcy Code, in the Disclosure Statement Approval Order [Docket No. ~~]~~.111], as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

"**Disallowed**" or "**Disallowed Claim**" shall mean: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with this Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no Proof of Claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

"**Disputed Claim**" means any Claim (other than a Disallowed Claim) that has not been Allowed by a Final Order of the Bankruptcy Court.

"**Disputed Claims Reserve**" means the reserve established in accordance with § 7.4.2 of this Plan for the payment of Disputed Claims, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

"**Distribution**" shall mean Cash, Property, interests in Property or other value distributed under this Plan to the Holders of Allowed Claims.

- 5 -

"**Distribution Date**" shall mean the date of any Distribution under this Plan. The initial Distribution Date shall occur as soon as reasonably practicable following the Effective Date, as determined by the Liquidating Trustee in his or her sole discretion. Any subsequent Distribution Date(s) shall occur as soon as practicable following a determination by the Liquidating Trustee that there are sufficient Net Distributable Assets to make a subsequent distribution to the Holder of Claims or Interests pursuant to the terms of this Plan.

"**Docket**" means the docket or dockets in the Cases maintained by the Clerk.

"**Effective Date**" means the first Business Day following satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date, as provided for by Article 13 herein, or such later date as the Bankruptcy Court approves if implementation of this Plan is stayed by order of a court of competent jurisdiction.

"**Entity**" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Committee**" means the Official Committee of Equity Security Holders, appointed by the United States Trustee in these Cases pursuant to Section 1102 of the Bankruptcy Code.

"**Equity Committee Final Fee Applications**" means, collectively: (i) *Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Landau Gottfried & Berger LLP as Counsel to the Official Committee of Equity Security Holders of RMS Titanic, Inc. for Services Rendered and for Reimbursement of Expenses Incurred During the Period from August 31, 2016 through August 12, 2019* [D.E. 150]; (ii) *Final Application of Akerman LLP, Counsel for the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from August 31, 2016 through and Including August 9, 2019* [D.E. 149]; and (iii) *Fourth Interim and Final Application of Teneo Securities LLC as Financial Advisor to the Equity Committee for Interim Allowance of Compensation for Services Rendered During Period from January 1, 2018 through and Including December 31, 2018 and Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred During Period from October 26, 2016 through and Including December 31, 2018* [D.E. 151].

"**Equity Committee Professionals**" means those Professionals employed by the Equity Committee, pursuant to Section 1103 of the Bankruptcy Code; specifically, Landau Gottfried & Berger LLP, Akerman LLP, Lincoln Partners Advisors LLC, and Teneo Securities LLC.

"**Equity Interests**" or "**Interests**" means any equity interest of a member and/or shareholder in one or more of the Debtors.

"**Estates**" means collectively, the estates created for the Debtors under Section 541 of the Bankruptcy Code upon the commencement of the Cases, as may be consolidated on a limited basis pursuant to § 6.1 of this Plan and controlled by the Liquidating Trustee on and after the Effective Date.

"**Exculpated D&O Parties**" shall have the meaning ascribed to such term in § 10.2 of the Plan.

- 6 -

**"Exculpated Parties"** shall have the meaning ascribed to such term in § 10.2 of the Plan.

**"Executory Contract or Unexpired Lease"** means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**"File" "Filed"** or **"Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

**"Final Decree"** means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Chapter 11 Cases.

**"Final Order"** means—

(1) an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Cases for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which:

   a. no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

   b. such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(2) a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**"Governmental Authority"** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

**"Holder"** means:

(1) as to any Claim:

   a. the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

   b. if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records

38132506

of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

c.  if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtors in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(2) as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

**"Impaired"** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Insider"** has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

**"Insurer"** shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Intercompany Claims"** means any Claim by any Debtor or any of its affiliates against another Debtor or any of its affiliates, including but not limited to, intercompany receivables and payments made in the ordinary course of the Debtors' businesses.

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, of or relating to one or more of the Debtors, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor, or assign thereof, the Property, the business or operations of the Debtors, the Cases, or this Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in this Plan, the term "Liabilities" does not include any post confirmation or post Effective Date payment obligation expressly set forth and preserved in this Plan.

**"Lien"** has the meaning ascribed to it in section 101(37) of the Bankruptcy Code and, with respect to any asset or Property, includes any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, or otherwise. Any lien avoided in accordance with Sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

**"Liquidating Trust"** shall mean the trust created pursuant to the Liquidation Trust Agreement and Article 6 of this Plan.

- 8 -

"**Liquidating Trust Agreement**" means the agreement governing the formation and conduct of the Liquidation Trust between the Debtors and the Liquidating Trustee to be entered into as of the Effective Date, substantially in form and substance as that attached hereto as **Exhibit A**, as such Liquidating Trust Agreement may be amended from time to time in accordance with its terms.

"**Liquidating Trust Assets**" means, collectively, (i) all Property transferred to the Liquidating Trust pursuant to § 6.2.2 of this Plan and in accordance with the Liquidating Trust Agreement and (ii) any Cash or proceeds of any other property received or generated by the Liquidating Trust from any source.

"**Liquidating Trust Beneficiaries**" means all individuals and entities entitled to Distributions from the Liquidating Trust under this Plan and the Liquidating Trust Agreement.

"**Liquidating Trust Expenses**" means any and all costs, expenses and other liabilities incurred or anticipated to be incurred in connection with the administration of the Liquidation Trust and the maintenance, liquidation and Distribution of the Liquidating Trust Assets, including, without limitation, (1) amounts due to the Liquidating Trustee and its Professionals, agents and advisors, (2) amounts due to the Liquidating Trust Oversight Committee and its members and their respective professionals, and (3) U.S. Trustee fees due under § 3.2 of this Plan or the U.S. Trustee's guidelines, in each case whether incurred or asserted pursuant to this Plan, the Confirmation Order, the Liquidating Trust Agreement or otherwise.

"**Liquidating Trust Expense Reserve**" means the reserve established in accordance with § 7.4.1 of this Plan for the payment of Liquidating Trust Expenses, which reserve may be augmented by the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement.

"**Liquidating Trust Oversight Committee**" means the committee established pursuant to the Liquidating Trust Agreement and § 6.3 of this Plan and as further described therein.

"**Liquidating Trustee**" means Mark Healy of Michael Moecker & Associates, Inc., or if Mark Healy is unwilling or ineligible to serve as Liquidating Trustee, such other Person designated pursuant to the Liquidating Trust Agreement.

"**Net Distributable Assets**" shall mean, and be calculated, as follows: the total gross Cash proceeds of the Liquidating Trust Assets that remain in the Liquidating Trust **less** (a) Retained Proceeds, (b) unpaid and outstanding (i) Allowed Administrative Expense Claims ~~and (~~, other than Subordinated Equity Committee Professional Compensation Claims, and (ii) Allowed Priority Tax Claims, and (c) unpaid and outstanding Allowed Class 1 Claims.

"**Non-EC Final Fee Applications**" means, collectively, the: (i) *Eighth Interim and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Nelson Mullins Riley and Scarborough LLP as Counsel to the Debtors and Debtors in Possession for Services Rendered from September 1, 2018 Through July 31, 2019* [D.E. 152]; (ii) *Final Application of Troutman Sanders LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Co-Counsel to the Debtors for the Period from November 09, 2016 Through July 31, 2019 and for Estimated Fees and Expenses Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 155]; (iii) *Final Application of Carr, Riggs*

- 9 -

*& Ingram LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Tax Advisors to the Debtors for the Period from June 1, 2017 Through June 30, 2019, and for Estimated Fees Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 156]; (iv) *Amended Ninth Interim and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Kaleo as Counsel to the Debtors and Debtors in Possession for Services Rendered from March 1, 2019 Through July 31, 2019* [D.E. 158]; (v) *Amended Final Application of GlassRatner Advisory and Capital Group LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisors to the Debtors for Services Rendered from September 30, 2016 Through June 30, 2019, and for Estimated Fees Through and Including Confirmation of the Debtors' Chapter 11 Plan* [D.E. 160]; (vi) *Final Application of Thames Markey & Heekin, P.A. for Services Rendered and Reimbursement of Expenses as Counsel to Official Committee of Unsecured Creditors (Fees Requested: $299,683; Expenses: $7,059.19; Period: August 29, 2016 to September 17, 2019)* [D.E. 143]; (vii) *Final Application of Storch Amini PC for Attorneys' Fees and Reimbursement of Costs as Counsel to Official Committee of Unsecured Creditors (Fees Requested: $302,316.48; Expenses: $18,501.41; Period: September 2, 2016 to July 31, 2019)* [D.E. 144]; and (viii) *Ninth and Final Applications for Allowance and Payment of Compensation and Reimbursement of Expenses of McGuireWoods LLP as Special Litigation Counsel for the Debtors* [D.E. 148].

"**PEM**" means Premier Exhibition Management LLC.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means June 14, 2016, the date upon which each Debtor filed a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

"**Plan**," "**the Plan**," or "**this Plan**" means this liquidating plan under Chapter 11 of the Bankruptcy Code, including, without limitation, any exhibits, appendices, and schedules hereto which may be filed with the Plan Supplement, if any, as such may be altered, amended, or otherwise modified from time to time.

"**Plan Documents**" means all documents that aid in effectuating this Plan, including, without limitation, all documents filed with the Bankruptcy Court at or before the Confirmation Hearing, and including the Confirmation Order.

"**Plan Proponent**" means the Debtors.

"**Plan Supplement**" means the supplemental documents, schedules, and exhibits to this Plan, ~~to be filed by the Debtors no later than [•], if necessary.~~ if any.  The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"**Post-Confirmation**" means arising or accruing on or after the Confirmation Date.

"**Post-Merger D&Os**" shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Prepetition"** means arising or accruing prior to the Petition Date.

**"Pre-Merger D&Os"** shall have the meaning ascribed to such term in § 10.1 of this Plan.

**"Premier Acquisition"** means Premier Acquisition Holdings LLC.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**"Pro Rata"** or **"Pro Rata Share"** means, with respect to any Distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes. The terms "Pro Rata" and/or "Pro Rata Share" will also be applied in respect of Administrative Expense Claims, Priority Tax Claims, and Priority Claims as the context requires in this Plan.

**"Professional"** means any professional person (a) employed in the Chapter 11 Cases with the approval of the Bankruptcy Court pursuant to section 327or 1103 of the Bankruptcy Code, or (b) employed by the Liquidating Trustee, pursuant to this Plan.

~~**"Professional Claims Bar Date"** means forty-five (45) days after the Effective Date.~~

**"Professional Compensation"** means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

**"Professional Compensation Claim"** means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Cases incurred on or after the Petition Date and prior to the Effective Date.

**"Proof of Claim"** means a proof of claim filed in these Cases pursuant to Bankruptcy Rules 3001, 3002, or 3003 in accordance with various orders of the Bankruptcy Court.

**"PRXI"** means Premier Exhibitions, Inc.

**"PRXI Equity Interest"** means any Equity Interest in PRXI.

**"Purchase Agreement"** means that certain *Asset Purchase Agreement*, dated as of June 14, 2018 by and among (i) the Debtors and certain non-Debtor affiliates, as sellers and (ii) Premier Acquisition, as purchaser, as such Purchase Agreement was subsequently amended on September 14, 2018 and February 13, 2019.

**"Rejection Claims"** shall have the meaning set forth in § 9.3 of this Plan.

**"Rejection Objection Deadline"** shall have the meaning set forth in § 9.3 of this Plan.

**"Reserves"** shall mean, collectively, the Liquidating Trust Expense Reserve, the Disputed Claims Reserve, and the Administrative and Priority Claims Reserve.

**"Retained Proceeds"** shall mean all amounts allocated to the Reserves plus any unpaid and outstanding Liquidating Trust Expenses that are not otherwise allocated to and provided for in the Liquidating Trust Expense Reserve.

**"Sale"** means the sale of the Transferred Assets to Premier Acquisition as contemplated by the Asset Purchase Agreement, which closed on Wednesday, February 13, 2019.

**"Sale Order"** means the order of the Bankruptcy Court approving the Sale Transaction, dated October 19, 2018 [Docket No. 1232].

**"Sale Proceeds"** means the proceeds received by the Debtors from the Sale pursuant to the Purchase Agreement.

**"Schedules"** means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

**"Secured Claim"** means any Claim that is—

    (1) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

    (2) subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (1) and (2) above, only to the extent of the Estates' interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in this Plan, if the value of a Creditor's interest in the Estates' interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim, which Claim shall be treated as set forth in Article 4 of this Plan.

**"Special Litigation Counsel"** means Agentis, PLLC, and Cimo Mazer Mark, PLLC.

**"Subordinated Equity Committee Professional Compensation Claims"** shall have the meaning ascribed to it in § 6.4 of this Plan.

**"Subsidiary Equity Interests"** means an Equity Interest in any Debtor other than PRXI.

**"Taxes"** means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, sales, capital, value added, profits

- 12 -

and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Governmental Authority or paid in connection with any item described in clause (i) hereof.

**"Transferred Assets"** shall have the meaning ascribed to such term in the Purchase Agreement.

**"Undeliverable Distribution"** shall have the meaning set forth in § 7.8 of this Plan.

**"Unimpaired Claim"** means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Unsecured Claim"** means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estates' interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code

**"US Trustee"** means the office of the United States Trustee for Region 21, the Middle District of Florida (Orlando and Jacksonville divisions).

**"US Trustee Fees"** means all fees and charges assessed against the Estate by the US Trustee and due pursuant to section 1930 of title 28 of the United States Code.

**"Voting Deadline"** means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject this Plan.

**1.2**    Other Terms.  Any capitalized term used in this Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**1.3**    Rules of Construction.  The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar words refer to this Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in this Article 1 are and shall be regarded as integral, substantive, and operative provisions of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to all of the provisions of this Plan.

**1.4**    Exhibits, Supplements, Appendices, and Schedules.  All exhibits, supplements, appendices, and schedules to this Plan, including those filed with the Plan Supplement, if any, are incorporated into and are a part of this Plan as if set forth herein. To the extent that any exhibit,

- 13 -

38132506

schedule, or Plan Supplement is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, this Plan shall control.

**1.5** <u>Controlling Document</u>.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of this Plan and shall control and take precedence.

# ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1** <u>Summary</u>.  The chart below lists the classification of Claims (except for Administrative Expense Claims and Priority Tax Claims) and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to this Plan.  Consistent with Section 1122 of the Bankruptcy Code, a Claim or Interest is classified by this Plan in a particular Class only to the extent that the Claim or Equity Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified in this Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in Article 3.

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| **Unclassified Claims Against the Debtors** | | |
| n/a | Administrative Expense Claims and Priority Tax Claims (§ 507(a)(8)) against all Debtors | Unimpaired – not entitled to vote |
| **Classified Claims Against the Debtors** | | |
| Class 1 | Priority Non-Tax Claims (including Claims for wages under § 507(a)(4) for contribution to employee benefit plans under § 507(a)(5) and for consumer deposits under § 507(a)(7)) | Unimpaired – deemed to accept |
| Class 2 | Unsecured Claims | Impaired – entitled to vote |
| Class 3 | PRXI Equity Interests | Impaired – deemed to reject |

- 14 -

38132506

| Class 4 | Subsidiary Equity Interests | Impaired – deemed to reject |

**2.2**    Unclassified Claims.  In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

**2.3**    Classified Claims.

**2.3.1    Unimpaired Class of Claims**.  The following Class contains Claims that are not Impaired by this Plan, are deemed to accept this Plan, and are not entitled to vote on this Plan.

*Class 1.  Priority Claims*

**2.3.2    Impaired Voting Class of Claims**.  The following Class contains Claims that are Impaired by this Plan and are entitled to vote on this Plan.

*Class 2.  General Unsecured Claims*

**2.3.3    Impaired Non-Voting Classes of Interests.**  The following Classes contain Interests that are Impaired by this Plan, are deemed to reject this Plan, and are not entitled to vote on this Plan.

*Class 3.  PRXI Equity Interests*

*Class 4.  Subsidiary Equity Interests*

**2.4**    Special Provision Governing Unimpaired Claims.  Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE 3

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, STATUTORY FEES, AND PRIORITY TAX CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims shall not be classified for the purposes of voting or receiving Distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article 3.   Except as otherwise specifically provided in this Plan, the treatment of, and the consideration to be received by, the U.S Trustee and Holders of Allowed Administrative Expense Claims and Priority Tax Claims pursuant to this Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims.

38132506

**3.1**      Administrative Expense Claims.

**3.1.1    Treatment.**    Subject to (a) the Bar Date provisions herein and (b) additional ~~requirements~~provisions governing for Professionals and certain other Persons set forth below, including § 6.4 of this Plan, each Holder of an Allowed Administrative Expense Claim against the Debtors shall receive, on the Effective Date, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Expense Claim, unless the Holder agrees or shall have agreed to other treatment of such Claim no less favorable to the Debtors; provided, however, that any Administrative Expense Claim (x) incurred Post-petition by a Debtor in the ordinary course of its business or (y) arising pursuant to one or more Post-petition agreements or transactions entered into by any Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the applicable Debtor or the Liquidating Trustee, on the one hand, and the Holder of such Administrative Expense Claim, on the other.  The Holder of an Allowed Administrative Expense Claim shall not be entitled to, and shall not be paid, any interest, penalty, or premium thereon, and any interest, penalty, or premium asserted with respect to an Administrative Expense Claim shall be deemed disallowed and expunged without the need for any further Order of the Bankruptcy Court; provided, however, that this provision shall not prevent the US Trustee from seeking interest on unpaid US Trustee Fees, if any.

**3.1.2    Administrative Expense Claims Bar Date (excluding Professional Compensation Claims).**

(a)      Except for Professional Compensation Claims, which are addressed in § 3.1.3 below, and claims of Special Litigation Counsel, requests for payment of Administrative Expense Claims must be Filed and served on the Liquidating Trustee no later than the Administrative Expense Claim Bar Date.  Holders of Administrative Expense Claims (including, without limitation, the Holders of any Claims for Taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Claims against the Debtors, the Liquidating Trust or any of their Property.  Notwithstanding the foregoing, any Bar Dates established during the course of these Chapter 11 Cases shall remain in full force and effect.

(b)      All objections to allowance of Administrative Expense Claims (excluding Professional Compensation Claims) must be Filed by any parties in interest no later the Administrative Expense Claim Objection Deadline.  The Administrative Expense Claim Objection Deadline may be initially extended for an additional thirty (30) days at the sole discretion of the Liquidating Trustee upon the Filing of a notice of the extended Administrative Expense Claim Objection Deadline with the Bankruptcy Court.  Thereafter, the Administrative Expense Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted without notice to any Creditors.  If no objection to the applicable Administrative Expense Claim is Filed on or before the Administrative Expense Claim Objection Deadline, as may be extended from time to time, such Administrative Expense Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extend such Administrative Expense Claim Objection Deadline retroactively.

- 16 -

### 3.1.3    Professional Compensation Claims Bar Date.

(a)    All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code for services rendered on or before the Confirmation Date shall File and serve on counsel for the Liquidating Trustee their Professional Compensation Claim by the Professional Claims Bar Date, or such later date as the Bankruptcy Court shall order upon application made prior to the expiration of the Professional Claims Bar Date.

(b)    Objections to Professional Compensation Claims must be Filed and served on counsel for the Liquidating Trustee and the Professionals or other Persons to whose application the objections are addressed on or before (i) thirty (30) days after the Professional Claims Bar Date or (ii) such later date as (y) the Bankruptcy Court shall order upon application made prior to the end of such 30-day period or (z) is agreed between the Liquidating Trustee and the affected Professional or other Person.

(a)    On the Effective Date, all Non-EC Final Fee Applications, except the claims of Special Litigation Counsel, shall be approved on a final basis in the amounts set forth in the table below in the column entitled "Total Discounted Fees and Expenses Allowed." Further, each Professional shall have an Allowed Professional Compensation Claim in the amount set forth in the table below in the column entitled "Discounted Amount Unpaid," which Professional Compensation Claim shall be paid on the Effective Date. The voluntary reductions set forth in the table below, along with the Equity Committee Professional Claim Compromise (described in § 6.4 herein), have resulted in a reduction of over $900,000.00 from the undiscounted amounts reflected in the Non-EC Final Fee Applications and the Equity Committee Fee Applications and is the product of substantial negotiations leading to a compromise among the respective Professionals.

| Name of Firm | Total Undiscounted Fees and Expenses Sought | Undiscounted Amount Unpaid | Reductions | Total Discounted Fees and Expenses Allowed | Discounted Amount Unpaid |
|---|---|---|---|---|---|
| | | | | | |
| Troutman Sanders LLP[2] | $3,424,074.51 | $604,252.09 | (Included) | $3,424,074.51 | $604,252.09 |
| Carr, Riggs & Ingram LLC | $136,566.88 | $0.00 | N/A | $136,566.88 | $0.00 |
| GlassRatner Advisory & Capital Group | $558,772.26 | $67,603.90 | $39,716.18 | $519,056.09 | $27,887.73 |

---

[2] The figures for Troutman Sanders LLP's fees reflect the voluntary fee reduction already included in Troutman Sanders LLP's Final Fee Application.

- 17 -

| Kaleo Legal | $505,252.50 | $43,632.00 | $24,827.00 | $480,425.50 | $18,805.00 |
| Nelson Mullins Riley & Scarborough | $925,694.80 | $228,058.64 | $228,058.64 | $697,636.16 | $0.00 |
| McGuire Woods LLP | $177,732.99 | $32,967.50 | $13,759.18 | $163,973.82 | $19,208.33 |
| Storch Amini PC[3] | $320,817.89 | $82,430.13 | (Included) | $320,817.89 | $82,430.13 |
| Thames Markey & Heekin, P.A. | $306,740.19 | $133,747.71 | $59,936.60 | $246,803.59 | $73,811.11 |

(b)     For the avoidance of doubt, and notwithstanding § 3.1.3(a) above, the Equity Committee Professionals' respective Professional Compensation Claims arising out of or related to the Equity Committee Final Fee Applications shall be treated in accordance with § 3.1.3(d), below.

(c)     Any Professional Compensation incurred by the Debtors or the Creditors' Committee subsequent to the Confirmation Date may be paid by the Liquidation ~~Trust without application to or Order of the Bankruptcy Court.~~ Trustee without application to or Order of the Bankruptcy Court.  Further, and notwithstanding anything to the contrary in § 3.1.3(a) above, any Professional Compensation incurred by the Debtors or the Creditors' Committee from August 1, 2019 through and including the Confirmation Date (such period, the "**Estimated Period**") may be paid by the Liquidating Trustee without application to or Order of the Bankruptcy Court; provided, however, that if the Professional Compensation incurred during the Estimated Period exceeds the estimate set forth in the Non-EC Final Fee Application for each respective Professional, then the Professional seeking payment must apply to the Bankruptcy Court.

~~(c)~~(d)     As part of the Equity Committee Professional Compensation Claim Compromise set forth in § 6.4 of this Plan, which is also the product of substantial negotiations leading to a compromise among the respective Professionals, the Equity Committee Professionals' respective Professional Compensation Claims (and the Equity Committee Final Fee Applications) shall be Allowed in full on a final basis and paid on the Effective Date, subject to § 6.4 of this Plan.

**3.2**     Statutory Fees.  All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date or as soon as reasonably practicable thereafter, by the Liquidating Trustee.  After the Effective Date, the Liquidating Trustee shall pay to the U.S. Trustee the U.S. Trustee Fees, in Cash, until the Chapter 11 Cases are closed, and a Final Decree is entered.  In addition, the Liquidating Trust shall file Post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines.  The U.S. Trustee

---

[3] The figures for Storch Amini PC's fees reflect the voluntary fee reduction already included in Storch Amini's Final Fee Application.

- 18 -

shall not be required to File a request for payment of its U.S. Trustee Fees, which will be deemed Administrative Expense Claims against the Debtors.

**3.3**    Priority Tax Claims.  The Liquidating Trustee will pay all Allowed Priority Tax Claims in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date. As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

## ARTICLE 4

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Claims and Equity Interests will be treated under this Plan in the manner set forth in this Article 4. Except as otherwise specifically provided in this Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to this Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**4.1**    Class 1: Priority Claims.  Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Claim, at the sole option of the Debtors or the Liquidating Trustee, each Holder of an Allowed Priority Claim shall receive: (a) Cash in an amount equal to the amount of such Allowed Priority Claim on the later of (1) the Effective Date or as soon as reasonably practicable thereafter, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon as reasonably practicable thereafter, or (b) such other treatment so as to render such Holder's Allowed Priority Claim Unimpaired.

**4.2**    Class 2: Unsecured Claims.  ~~Each~~Subject to § 6.4 of this Plan, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of the Net Distributable Assets.

**4.3**    Class 3: PRXI Equity Interests.  On the Effective Date, all PRXI Equity Interests shall be cancelled as set forth in § 7.5 of this Plan. ~~Holders of PRXI Equity Interests shall receive no Distribution and retain no Assets on account of such Interests.~~ In the event that there exist sufficient Net Distributable Assets to pay in full Allowed General Unsecured Claims with interest at the federal judgment rate from the Petition Date, pursuant to Section 726(a)(5) of the Bankruptcy

- 19 -

Code, made applicable by Section 1129(a)(7) of the Bankruptcy Code, and the Equity Committee Professionals' respective Subordinated Equity Committee Professional Compensation Claims, pursuant to § 6.4 of this Plan, then the Liquidating Trustee shall be authorized to Distribute any remaining Liquidating Trust Assets to Holders of PRXI Equity Interests, as of the Effective Date, and modify the Liquidating Trust Agreement as may be necessary or appropriate to effect any such Distribution.

**4.4**     Class 4: Subsidiary Equity Interests.  On the Effective Date, all Subsidiary Equity Interests shall be canceled as set forth in § 7.5 of this Plan.  Holders of Subsidiary Equity Interests shall receive no Distribution and retain no Assets on account of such Interests.

## ARTICLE 5

## ACCEPTANCE OR REJECTION OF THIS PLAN

**5.1**     Presumed Acceptance by Unimpaired Class.  Claims in Class 1 are Unimpaired under this Plan.  Under Bankruptcy Code Section 1126(f), Holders of such Unimpaired Claims are conclusively presumed to have accepted this Plan, and the votes of such Unimpaired Claims shall not be solicited.

**5.2**     Impaired Classes Entitled to Vote.  Holders of Class 2 Claims are Impaired and entitled to vote as a Class to accept or reject this Plan.  Accordingly, the votes of Holders of Claims in Class 2 shall be solicited with respect to this Plan.

**5.2.1   Acceptance by an Impaired Class**.  In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), Class 2 shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**5.3**     Presumed Rejection by Impaired Voting Classes of Interests.  Interests in Classes 3 and 4 are Impaired under this Plan and not entitled to a Distribution under this Plan.  Under Bankruptcy Code Section 1126(g), Holders of such Impaired Claims and Interests are conclusively presumed to have rejected this Plan, and the votes of such Impaired Interest Holders shall not be solicited.

**5.4**     Claim Designation.  The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Holder of any Claim whose vote on this Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

**5.5**     Elimination of Vacant Classes.  Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

- 20 -

# ARTICLE 6

# IMPLEMENTATION OF THIS PLAN

**6.1**    Limited Consolidation.

**6.1.1**    Solely for purposes of voting on, Confirmation of, and Distributions to be made to Holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to Confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan, the Confirmation hereof and Distributions hereunder.

**6.1.2**    Pursuant to the Confirmation Order, and on the Effective Date, (i) all Assets and Liabilities of the Debtors will be deemed to be merged into PRXI (as such, the "**Consolidated Debtors**") solely for purposes of this Plan, the Confirmation hereof and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the Consolidated Debtors solely for purposes of this Plan, the Confirmation hereof and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the Consolidated Debtors and all Claims filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the Consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the Assets and Liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder on Allowed Claims and will be deemed to be made by the Consolidated Debtors, (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several Liability of any of the Debtors shall be deemed to be one obligation of the Consolidated Debtors, and (vii) no Distributions shall be made under this Plan on account of Intercompany Claims and all such Intercompany Claims shall be eliminated. Holders of Allowed Claims in each Class shall be entitled to their share of Liquidating Trust Assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, Holders of PRXI Equity Interests and Subsidiary Equity Interests shall be treated as provided in Class 3 and Class 4 of this Plan, respectively, without regard to any limited consolidation of the Debtors' Estates as provided above.

**6.1.3**    Notwithstanding the foregoing, such limited consolidation shall not affect (a) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts or Unexpired Leases that will be (or have been) assumed and assigned pursuant to the Purchase Agreement, (b) distributions from any insurance policies or proceeds of such policies, or (c) guarantees that are required to be maintained post-Effective Date (i) in connection with Executory Contracts or Unexpired Leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed and assigned, or (ii) pursuant to the express terms of this Plan. The limited consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay the U.S. Trustee Fees. Such obligations shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

- 21 -

**6.2**    The Liquidating Trust.

**6.2.1    Creation of the Liquidating Trust.**  On the Effective Date, the Liquidating Trust shall be created for the benefit of the Liquidating Trust Beneficiaries. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, this Plan and the Confirmation Order. A copy of the Liquidating Trust Agreement is annexed hereto as **Exhibit A**.

**6.2.2    Vesting of Liquidating Trust Assets**.  On the Effective Date, all Assets of the Estates shall vest in the Liquidating Trust and constitute Liquidating Trust Assets, and each Debtor shall be deemed for all purposes to have transferred legal and equitable title of all Assets of its Estate to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.  The Debtors shall take all actions reasonably necessary to transfer control of the Liquidating Trust Assets to the Liquidating Trustee.  In accordance with Section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be vested with, retain and may exclusively enforce, prosecute, and resolve any or all Causes of Action that the Debtors or their Estates may have against any Person, including, for the avoidance of doubt, the Adversary Proceeding.  All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances, except as otherwise set forth in this Plan.  For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability or standing of the Liquidating Trustee to assert any Causes of Action transferred to the Liquidating Trust. In connection with any Causes of Action that are included in the Assets transferred by the Debtors to the Liquidating Trust (including, but not limited to the Adversary Proceeding), any attorney-client privilege, work-product privilege or protection, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) will also exist for the benefit of the Liquidating Trust and will vest in the Liquidating Trustee and his or her representatives, and will also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges. For federal income tax purposes, the transfer of the Property to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Liquidating Trust Beneficiaries), followed by a deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust.

**6.2.3    Preservation of Rights of Action.**  Except as otherwise expressly provided herein, any rights or Causes of Action accruing to or held by the Debtors or their Estates prior to the Effective Date shall be deemed Assets of, and vest in, the Liquidating Trust on the Effective Date, including but not limited to those Causes of Action specifically identified in the Plan Supplement, if any. The Liquidating Trustee may pursue those rights of action, as deemed appropriate. This Plan, the Disclosure Statement and Plan Supplement do not set forth an exhaustive list of all Causes of Action preserved under this Plan and vesting in the Liquidating Trust and the failure to identify or list any particular Cause of Action therein shall not constitute a waiver or release of such Cause of Action. **ALL CAUSES OF ACTIONS NOT EXPRESSLY RELEASED OR WAIVED IN THIS PLAN OR THE CONFIRMATION ORDER SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CAUSES OF ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE.**

**6.2.4    Administration of Claims.**  ~~Promptly following~~ Following the Effective Date, the Liquidating Trustee shall review the filed Proofs of Claim and audit those Claims with regard to (a) the supporting documents evidencing the Claims; (b) the appropriateness of the

- 22 -

asserted priority of each Claim; (c) the amount of the Claim as set forth in the Proof of Claim; (d) the extent to which the Debtors originally Scheduled the Claim as Contingent, disputed or unliquidated; and (e) whether the Proof of Claim is otherwise valid, permissible, due and payable under the Bankruptcy Code and applicable state law;  provided,  however, that the Liquidating Trustee shall not review or audit Claims already Allowed by prior Final Order of the Bankruptcy Court. Thereafter, the Liquidating Trustee shall complete his or her review of the Claims and shall initiate, file and prosecute any and all actions deemed necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims against the Debtors and/or their Estate(s). All Claims Litigation, including actions that arise out of the amount of a submitted Claim, or any objection to a submitted Claim, shall vest with the Liquidating Trust and shall be prosecuted by the Liquidating Trustee. The Liquidating Trustee shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to Claims and prosecute Claims actions, until such time as the Liquidating Trustee determines that further pursuit of litigation or actions objecting to Claims is no longer cost efficient and will be of no further benefit to the Estates and their creditors. **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THIS PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

**6.2.5    Payments by the Liquidating Trust.**  ~~The~~Subject to § 6.4 of this Plan, the Liquidating Trustee shall make Distributions to Holders of Allowed Claims in accordance with Article 7 of this Plan.

**6.2.6    Full and Final Satisfaction against Liquidating Trust.**  On and after the Effective Date, the Liquidating Trust will have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under this Plan will be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against the Liquidating Trust.

**6.2.7    Appointment, Removal, and Resignation of the Liquidating Trustee**.

(a)    *Initial Liquidating Trustee.*  The initial Liquidating Trustee shall be Mark Healy of Michael Moecker & Associates, Inc.  The Liquidating Trustee shall commence serving as the Liquidating Trustee on the Effective Date.

(b)    *Resignation or Removal of the Liquidating Trustee.*  If the Liquidating Trustee resigns or is removed, dies, dissolves, or is incapacitated, the Liquidating Trust Oversight Committee shall, in accordance with the Liquidating Trust Agreement designate another Person to become the Liquidating Trustee and thereupon the successor Liquidating Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the compensation of the predecessor Liquidating Trustee. No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**6.2.8    Rights, Powers, and Duties of the Liquidating Trust and the Liquidating Trustee.**

- 23 -

(a)    The Liquidating Trustee shall have the rights, duties and obligations set forth in the Liquidating Trust Agreement and this Plan. Such rights, duties and obligations include, but are not limited to, exercising control and authority over the Liquidating Trust Assets and responsibility for liquidating and administering (or abandoning, as the case may be) the Liquidating Trust Assets and taking actions on behalf of, and representing, the Liquidating Trust. The Liquidating Trustee shall be the representative of and fiduciary for the Estates as contemplated by Section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall have the rights and powers of a trustee appointed under Sections 702 and 1104 of the Bankruptcy Code to act on behalf of the Estates and the Liquidating Trust with regard to the administration of the Cases, the Property of the Estates, the Liquidating Trust, and the Liquidating Trust Assets. The Liquidating Trustee shall have the authority to bind the Liquidating Trust within the limitations set forth in the Liquidating Trust Agreement, this Plan and the Confirmation Order, but shall for all purposes hereunder be acting in the capacity of Liquidating Trustee and not individually. Within the limitations set forth in the Liquidating Trust Agreement and subject to the provisions of this Plan, the responsibilities and authority of the Liquidating Trustee, shall include, without limitation: (i) the making of Distributions to Holders of Allowed Claims as contemplated in this Plan; (ii) establishing and maintaining a Disputed Claims Reserve to be determined in accordance with § 7.4.2 of this Plan; (iii) conducting an analysis of Claims not already Allowed by prior Final Order of the Bankruptcy Court, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with this Plan; (iv) filing appropriate tax returns with respect to the Liquidating Trust in the exercise of its fiduciary obligations; (v) retaining Liquidating Trust Professionals; (vi) taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action assigned to the Liquidating Trust; (vii) opening, closing and maintaining new or existing bank accounts, letters of credit and other financial instruments; (viii) taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust; and (ix) filing (or causing to be filed) any documents necessary to effect the dissolution of each of the Debtors immediately upon the Effective Date and the execution of the Liquidating Trust Agreement.

(b)    The Liquidating Trustee shall consult with the Liquidating Trust Oversight Committee generally and shall obtain the consent or approval of the Liquidating Trust Oversight Committee as provided in the Liquidating Trust Agreement and in § 6.3 herein.

(c)    The Liquidating Trustee, in his reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the non-Cash Liquidating Trust Assets, make timely Distributions and not unduly prolong the duration of the Liquidating Trust.  The liquidation of the non-Cash Liquidating Trust Assets may be accomplished, either in whole or in part, by the prosecution, settlement, or sale of the non-Cash Liquidating Trust Assets, including Causes of Action, or any other means permitted by law.

(d)    The Liquidating Trustee shall file all required Post-Confirmation operating reports through the date the Chapter 11 Cases are closed (or a Final Decree is entered), or such other and further reports, statements or disclosures relating to the Liquidating Trust that are necessary or appropriate or as may be reasonably requested by the Liquidating Trust Oversight Committee.  Without limiting the generality of the foregoing, the Liquidating Trustee shall file quarterly reports setting forth: (i) the compensation paid to the Liquidating Trustee; (ii) the fees and expenses reimbursed or paid to the Liquidating Trustee; (iii) the Professional Compensation

paid to the Liquidating Trustee's Professionals; (iv) the amount and number of Distributions made; (v) the amount of Disputed and Undeliverable Distributions, if any; (vi) the total amount or estimated value of the Liquidating Trust Assets remaining; (v) the proceeds of the Adversary Proceeding or any other lawsuit seeking the recovery of assets commenced by the Liquidating Trustee; and (vi) all fees and expenses paid in connection therewith.

        **6.2.9**    **Substitution of the Liquidating Trustee.**  After the Effective Date, the Liquidating Trustee shall be substituted in for the Debtors as the proper party in interest in all pending matters, including but not limited to (a) motions, contested matters or adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court, and the Liquidating Trustee is authorized to file such motions or other documents and take such actions are necessary or appropriate to effectuate such substitution consistent with this Plan and the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, the Liquidating Trustee shall specifically be substituted as the proper plaintiff in the Adversary Proceeding without need for further action or notice.

        **6.2.10**  **Compensation of the Liquidating Trustee.**  The Liquidating Trustee shall be compensated in accordance with the provisions of the Liquidating Trust Agreement.

        **6.2.11**    **Retention of Professionals.**  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Liquidating Trustee in the performance of its duties as Liquidating Trustee or otherwise under this Plan. The reasonable fees and expenses of such Professionals and the additional expenses of the Liquidating Trustee incurred in the performance of its duties as Liquidating Trustee under this Plan shall be paid by the Liquidating Trustee as a Liquidating Trust Expense from the Liquidating Trust Expense Reserve.  Except as otherwise set forth herein and in the Liquidating Trust Agreement, approval of the Bankruptcy Court shall not be required for the Liquidating Trustee to retain or pay any such Professionals.

        **6.2.12**  **Liquidating Trust Expenses.**  All Liquidating Trust Expenses will be charged against and paid from the proceeds of the Liquidating Trust Assets, and the Liquidating Trustee will pay the same as and when due and payable; provided, however, that the Liquidating Trustee's compensation and the Trustee Professional Fees (as defined in the Liquidating Trust Agreement) shall be payable only from the Liquidating Trust Expense Reserve, as set forth in the Liquidating Trust Agreement and in § 6.2.11 herein.  The Liquidating Trustee will engage attorneys or other Professionals to prosecute Causes of Action and represent the Liquidating Trustee as set forth in this Plan and the Liquidating Trust Agreement. The Professionals retained by the Liquidating Trustee will submit periodic statements for services rendered and costs incurred to the Liquidating Trustee for review and approval, which approval shall be subject to review by the Liquidating Trust Oversight Committee. Any compensation paid to the Liquidating Trustee and its Professionals shall be set forth in the reports to be filed by the Liquidating Trustee as described in § 6.2.8(d) above.  Likewise, any fees and expenses paid as part of the Adversary Proceeding (or any other suit commenced by the Liquidating Trustee) shall be set forth in the reports to be filed by the Liquidating Trustee, as described in § 6.2.8(d) above.  Notwithstanding anything herein to the contrary, the fees and expenses of (i) Agentis PLLC (and, to the extent applicable, any individual attorney therefrom, including, but not limited to, Robert P.

- 25 -

Charbonneau, Esq.) and (ii) Cimo Mazer Mark, PLLC (and, to the extent applicable, any individual attorney therefrom, including, but not limited to, Jason S. Mazer, Esq.) both Special Litigation Counsel with respect to the Adversary Proceeding shall not be paid as Liquidating Trust Expenses and, instead, shall be payable first, and solely on the proceeds, if any, of and from the Adversary Proceeding, as approved by the Bankruptcy Court pursuant to the orders approving their employment as special counsel to the Liquidating Trustee, as amended., and without further application to, or order from, the Court.   *See* [Docket Nos. 1038, 1338].

6.2.13    **Liquidating Trust Accounts.**  The Liquidating Trustee shall maintain any and all funds, liquid Assets, and/or Cash in one or more segregated accounts for Distribution or for the Reserves, as applicable, solely in accordance with this Plan and Liquidating Trust Agreement.

6.2.14    **Certain Tax Matters.**

(a)    *Purpose of the Liquidating Trust.*  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Accordingly, the Liquidating Trustee will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement and not unduly prolong its duration.  Subject to definitive direction to the contrary from the IRS (but subject to the rights of the Liquidating Trustee to seek administrative and judicial review of any such direction), all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes, except as otherwise provided for U.S. federal income tax purposes in the event the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.  The Liquidating Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of certain assets and liabilities of the Debtors and a representative of the Estates for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code.

(b)    *Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest.*  The Liquidating Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.  The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IR Code**").  In the event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Liquidating Trustee shall take such action as he or she shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IR Code), including, if necessary, creating or converting it into a Delaware limited partnership or limited liability company that is so classified. For federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as the grantors and owners of the Liquidating Trust and, therefore, will be

- 26 -

responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

(c)    *Valuation of Assets.*    As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate after consultation with the Liquidating Trust Oversight Committee) will value the Liquidating Trust Assets based on the good faith determination of the value of such Liquidating Trust Assets. The valuation will be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court will resolve any dispute regarding the valuation of the Liquidating Trust Assets.

(d)    *Investment Powers of the Liquidating Trustee.*    All funds held by the Liquidating Trustee shall be held in Cash or invested in demand and time deposits, such as certificates of deposit, having maturities of not more than one year, U.S. Treasury bills, or other temporary liquid investments all as more particularly described in the Liquidating Trust Agreement consistent with Section 345 of the Bankruptcy Code; provided, however, that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations or as set forth in IRS rulings, notices, or other IRS pronouncements.  The Liquidating Trustee may expend the Cash of the Liquidating Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (y) to pay reasonable administrative expenses (including, but not limited to, any Taxes imposed on the Liquidating Trust) and (z) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(e)    *Disputed Ownership Fund.*    With the approval of the Liquidating Trust Oversight Committee, the Liquidating Trustee may make the election described in § 1.468B-9(c)(2)(ii) of the Treasury Regulations to treat any portion of the Liquidating Trust consisting of Disputed Claims as a "disputed ownership fund."  The Liquidating Trustee may also, to the extent permitted by law, make such an election for state and local income tax purposes.  If the election is made to treat the Disputed Claims as a "disputed ownership fund," then the Liquidating Trust may (i) allocate taxable income or loss to the Disputed Claims, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed), and (ii) make Distributions from the Disputed Claims Reserve as, when, and to the extent, such Claims that are Disputed cease to be Disputed, whether by virtue of becoming Allowed or otherwise resolved.  The Liquidating Trust Beneficiaries will be bound by such election, if made by the Trustee, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

**6.2.15    Further Transactions.**    The Liquidating Trustee shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. In order to facilitate the liquidation and distribution of the Estates and the wind-up of the Debtors' affairs, on the Effective Date the Liquidating Trustee shall be deemed, by operation of law and the Confirmation Order and without

- 27 -

need for any action by any person affiliated with the Debtors or any officer or director of the Debtors, to hold an irrevocable power of attorney on behalf of the Debtors and the Estates and with respect to all Assets of the Debtors and the Estates.

**6.2.16  Dissolution of Liquidating Trust.**  The Liquidating Trust shall terminate after the Distribution of all Liquidating Trust Assets and the full performance of all other duties and functions of the Liquidating Trustee set forth herein and in the Liquidating Trust Agreement, or as otherwise ordered by the Bankruptcy Court.  The Liquidating Trust shall terminate no later than the third anniversary of the Effective Date; provided, however, that, within six months prior to such date or any extended termination date, the Bankruptcy Court, upon motion by the Liquidating Trustee or other party in interest, may extend the term of the Liquidating Trust for a finite period if it is necessary to the liquidating purpose thereof.

**6.3**    Liquidating Trust Oversight Committee.

**6.3.1  Appointment.**  The Confirmation Order shall confirm the appointment of the Liquidating Trust Oversight Committee, which shall begin to act on the Effective Date.  The Liquidating Trust Oversight Committee shall consist of three (3) members, each of whom must, at all times, be the Holder of an Unsecured Claim.  The initial members of the Liquidating Trust Oversight Committee shall be B.E. Capital Management Fund LP, Dalian Hoffen Biotechnique Co., Ltd, and 417 Fifth Avenue LLC.  In the event of resignation, incapacitation, or death of any member of the Liquidating Trust Oversight Committee, the remaining members shall designate a successor from among the Holders of Unsecured Claims and shall re-constitute itself as a committee of three (3).  Until any such vacancy is filled, the Liquidating Trust Oversight Committee shall function with reduced membership.

**6.3.2  Fiduciary Duties.**  The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date shall apply to the Liquidating Trust Oversight Committee, as limited by the exculpations, indemnifications, releases and other protections provided in this Plan, the Liquidating Trust Agreement, and the Confirmation Order.  The duties, rights and powers of the Liquidating Trust Oversight Committee shall terminate upon the dissolution of the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement.

**6.3.3  Rights and Powers.**  The Liquidating Trust Oversight Committee shall oversee the actions of the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.  The Liquidating Trust Oversight Committee shall have the rights and powers set forth in the Liquidating Trust Agreement.  The rights and powers shall include, but not be limited to, ~~approving by majority vote the following (certain of which approvals or consents may be obtained by notice and without the formality of a written approval or resolution of~~consulting with the Liquidating ~~Trust Oversight Committee, as more particularly set forth in the Liquidating Trust Agreement):~~Trustee on: t

(a)    the Liquidating Trustee's determination to not object to a Claim having a stated amount in excess of $250,000;

(b)    the settlement of (i) any Cause of Action in which the amount sought to be recovered exceeds $250,000 or (ii) any Disputed Claim having a stated amount in excess of

- 28 -

$250,000 and to approve any release or indemnification to be given by the Liquidating Trustee in connection with any such settlement;

(c)    any sale of any Liquidating Trust Assets for a price in excess of $250,000;

(d)    investment of Cash or other Liquidating Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

(e)    the waiver of the attorney-client privilege by the Liquidating Trustee with respect to any Cause of Action or other litigation related matter; and

(f)    the election to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to a matter described in subsection 6.3.3(a) –(f), then the Liquidating Trustee shall bring the matter before the Court for determination.

**6.3.4    Unanimous Decisions.**  The Liquidating Trust Oversight Committee shall also have the absolute right and power to determine the following by the unanimous vote of all the members of the Liquidating Trust Oversight Committee:

(a)    to change the initial bond to be posted by the Liquidating Trustee; and

(b)    to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause, or to select a successor Liquidating Trustee when a successor is required.

If the Liquidating Trust Oversight Committee is unable to reach a unanimous decision with respect to subsection (a) or (b), above, and such deadlock shall continue for a period of one (1) week, any member of the Liquidating Trust Oversight Committee shall have the right to move the Bankruptcy Court for appropriate relief.

**6.3.5    No Compensation.**  Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Liquidating Trust Oversight Committee, including reasonable attorneys' fees subject to review by the Liquidating Trustee, the members of the Liquidating Trust Oversight Committee shall serve without compensation.  Such reasonable actual costs and expenses may be paid by the Liquidating Trustee as Liquidating Trust Expenses without approval by the Bankruptcy Court.

**6.3.6    Objection to Fees.**  The Liquidating Trust Oversight Committee shall have the right, within ten (10) days from the delivery of a fee statement, to object to the fees of any Professional retained by the Liquidating Trustee, other than Special Litigation Counsel.  Likewise, the Liquidating Trustee shall have the right, within ten (10) days from the delivery of a fee statement, to object to the fees of any Professional retained by the Liquidating Trust Oversight Committee.  Any such objection shall be lodged by giving notice of the objection to the

- 29 -

Professional seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within 20 days after its delivery to the Liquidating Trust Oversight Committee and/or the Liquidating Trustee, as applicable.

   **6.3.7 Removal of the Liquidating Trustee.**  In accordance with § 6.3.4(b) of this Plan, the Liquidating Trust Oversight Committee shall have the right to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause. Upon such removal or upon the resignation or death of the Liquidating Trustee, the Liquidating Trust Oversight Committee may appoint a successor Liquidating Trustee, and, in that event, the Liquidating Trust Oversight Committee shall File with the Bankruptcy Court a notice of the appointment of the successor Liquidating Trustee.

   **6.4** Equity Committee Professional Compensation Claim Compromise.  Twenty percent (20%) of the Equity Committee Professionals' respective claims for compensation, pursuant to Sections 330(a)(1)(A) and 503(b) of the Bankruptcy Code, Allowed as set forth in § 3.1.3.(d) of this Plan, shall be subordinated in right to payment to Allowed General Unsecured Claims (such subordinated portions, the "**Subordinated Equity Committee Professional Compensation Claims**"); provided, that notwithstanding any other provision of this Plan, the proceeds of the Adversary Proceeding, net of all fees payable and expenses reimbursable to Special Litigation Counsel shall be distributed in the following order: first, to the Equity Committee Professionals, on a Pro Rata basis, in an amount sufficient to pay fifty percent (50%) of their respective Subordinated Equity Committee Professional Compensation Claims; second, to Holders of Allowed General Unsecured Claims, pursuant to § 4.2 of this Plan, in an amount sufficient to pay such Claims in full with interest at the federal judgment rate from the Petition Date; third, to the Equity Committee Professionals, on a Pro Rata basis, in an amount sufficient to pay the balance of their respective Subordinated Equity Committee Professional Compensation Claims; and fourth, to Holders of PRXI Equity Interests as of the Effective Date, pursuant to § 4.3 of this Plan. For the avoidance of doubt, no portion of the Equity Committee Professionals' respective claims for reimbursement of expenses, pursuant to Sections 330(a)(1)(B) and 503(b) of the Bankruptcy Code, Allowed pursuant to § 3.1.3.(d) of this Plan, shall be subordinated, but rather, shall be paid on the Effective Date pursuant to § 3.1.1 of this Plan.  In addition, as part of this Equity Committee Professional Compensation Claim Compromise, the members of the Equity Committee and the Equity Committee Professionals shall be named as Exculpated Parties pursuant to § 10.2 of this Plan.

   **6.4 6.5** Corporate Action.  This Plan will be administered by the Liquidating Trustee and all actions taken under this Plan in the name of the Debtors shall be taken through the Liquidating Trustee.  On the Effective Date, (a) the matters under this Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries, and (b) the officers, directors, members, managers or any other Person exercising control over the affairs of the Debtors shall immediately cease to serve and be terminated and such

- 30 -

authority shall be vested solely with the Liquidating Trustee without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.

**6.56.6  Resignation of Directors and Officers.**  Upon the Effective Date, the Debtors' officers, directors, members, managers or any other Person exercising control over the affairs of the Debtors shall be deemed to have resigned without the necessity of any further action or writing, and they shall be released from responsibilities, duties, and obligations arising after the Effective Date to the Debtors or their Creditors under this Plan and applicable law.

**6.66.7  Dissolution of the Debtors.**  On and after the Effective Date, the Liquidating Trustee shall be authorized to take all actions reasonably necessary to dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or Filing any necessary paperwork or documentation.

**6.76.8  Dissolution of the Creditors' Committee.**  On the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that ~~(i)~~ such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms~~; and (ii) the Creditors' Committee shall continue to exist solely for the purpose of prosecuting objections to applications for the Allowance of Professional Compensation Claims~~.

**6.86.9  Cancellation of Interests.**  On the Effective Date, all Equity Interests (including, without limitation, all promissory notes, stock, instruments, warrants, certificates and other documents evidencing any interest in the Debtors) shall be deemed automatically cancelled and surrendered and shall be of no further force, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

**6.96.10  Confidentiality, Privilege.**  On and after the Effective Date, any confidentiality obligations, attorney-client privilege or other privilege or immunity attaching to any documents or communications shall vest in the Liquidation Trust and its representatives, and the Liquidating Trustee and its representatives shall not otherwise waive such confidentiality, privilege, or immunity without prior notice and a hearing before the Bankruptcy Court. The Debtors are authorized to take all actions they deem necessary to effectuate the transfer of such privilege, and any documents or communications that would otherwise be protected from discovery by virtue of any applicable privilege or immunity shall remain so protected. The Confirmation Order shall provide that the Liquidating Trustee's receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' Estates. If any privileged documents are inadvertently produced to third parties, such production shall not be deemed to destroy any privilege or be deemed a waiver of any confidentiality protections afforded to such privileged documents.

38132506

# ARTICLE 7

# DISTRIBUTIONS UNDER THIS PLAN

**7.1**     Generally.  The Liquidating Trustee shall apply the Liquidating Trust Assets only in accordance with this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall make all Distributions provided for in this Plan from the Liquidating Trust Assets, including those to be paid on the Effective Date.  The Liquidating Trustee shall not be required to seek approval of the Bankruptcy Court or any other court with respect to the administration of the Liquidating Trust, or as a condition to making any payment or Distribution out of the Liquidating Trust Assets; provided, however, that, with respect to any Distribution from any "disputed ownership fund" that the Liquidating Trustee may establish under § 1.468B-9(c)(2)(ii) of the Treasury Regulations, the Liquidating Trustee shall obtain Bankruptcy Court approval to the extent necessary to comply with the requirements of such Treasury Regulation.  All Distributions and the Reserves described in this Article 7 shall be managed by the Liquidating Trustee in a manner that accounts for the priority of Distributions described in § 7.2, below.

**7.2**     Priority of Distributions.

**7.2.1    Distribution of Cash.**  Cash available for Distributions pursuant to this Plan shall, subject to the terms of this Plan and the Liquidating Trust Agreement, be paid to Holders of Allowed Claims or allocated to the Reserves established by the Liquidating Trustee in the following order of priority:

**First**,          to all Holders of Allowed Administrative Expense Claims, subject to § 6.4 of this Plan. Allowed Priority Tax Claims and Allowed Priority Claims, and to allocate to the Disputed Claims Reserve and Administrative and Priority Claims Reserve as provided for in §§ 7.4.2 and 7.4.3 of this Plan; and

**Second**,          to outstanding Liquidating Trust Expenses, and to allocate to the Liquidating Trust Expense Reserve as provided for in § 7.4.1 of this Plan.

**7.2.2    Distribution of Net Distributable Assets.**  Thereafter, subject to § 6.4 of this Plan, all Net Distributable Assets shall be paid Pro Rata to all Holders of Allowed Unsecured Claims on an interim and final basis in accordance with §§ 7.3.2 and 7.3.3 of this Plan.

**7.3**     Timing of Distributions.

**7.3.1    Distributions on Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims.**  Except as otherwise provided in this Plan, each Holder of an Allowed Administrative Expense Claim, Allowed Priority Tax Claim and Allowed Priority Claim against any Debtor shall be entitled to a Distribution of Cash from the Liquidating Trust Assets as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

- 32 -

**7.3.2    Interim Distributions on Allowed Unsecured Claims.**  Holders of Allowed Unsecured Claims shall be entitled to an initial Distribution from the Net Distributable Assets in an amount to be determined by the Liquidating Trustee (but, in any event, no more than each such Holder's Pro Rata Share) and may also receive subsequent Distributions from the Net Distributable Assets on account of each such Holder's Allowed Unsecured Claim; provided that any such Distribution must be warranted, economical and not unduly burdensome to the Liquidating Trust; and, provided further, the Liquidating Trustee has allocated adequate funds to the Reserves, as applicable, and the Reserves will remain adequate after any such interim Distribution is made.

**7.3.3    Final Distributions on Allowed Unsecured Claims.**  After (a) the payment of all Liquidating Trust Expenses, Administrative Expense Claims, Priority Tax Claims and Priority Claims, (b) the prosecution, settlement, or abandonment of all Causes of Action, (c) the allowance or disallowance of all Claims against the Estates, and (d) the liquidation or abandonment of all other Liquidating Trust Assets, the Holders of all Allowed Unsecured Claims shall be entitled to a Pro Rata Distribution of all remaining Net Distributable Assets pursuant to the terms of this Plan and the Liquidating Trust Agreement, until the earlier of: (y) all such Allowed Unsecured Claims are paid in full and (z) the Net Distributable Assets are exhausted.

**7.4**    Reserves.

**7.4.1    Liquidating Trust Expense Reserve.**  On the Effective Date, the Liquidating Trustee shall establish the Liquidating Trust Expense Reserve to ensure that the Liquidating Trust will have sufficient funds to pay certain Liquidating Trust Expenses that may arise from time to time in connection with the administration of the Liquidating Trust.  The initial amount of the Liquidating Trust Expense Reserve shall be estimated and funded in accordance with § 3.4 of the Liquidating Trust Agreement.

**7.4.2    Disputed Claims Reserve.**  In addition to the Liquidating Trust Expense Reserve, the Liquidating Trustee shall establish a Disputed Claims Reserve.  The Disputed Claims Reserve shall be for the payment of any Disputed Claim, to the extent such Disputed Claim becomes an Allowed Claim against the Debtors.  The amount set aside in the Disputed Claims Reserve for any such Disputed Claim shall be the amount that would be distributed on account of such Claim if it were an Allowed Claim in the lower of: (a) (i) the amount set forth in the Proof of Claim Filed by the Holder of such Claim, or (ii) if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed; and (b) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to § 8.5 of this Plan.

**7.4.3    Administrative and Priority Claims Reserve.**  In addition to the Liquidating Trust Expense Reserve and the Disputed Claims Reserve, the Liquidating Trustee shall establish an Administrative and Priority Claims Reserve.  The Administrative and Priority Claims Reserve shall be for the payment of all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Allowed but unpaid, other than Subordinated Equity Committee Professional Compensation Claims, regardless of whether such Claim is Allowed (but unpaid) before, on, or after the Effective Date.  The amount of the Administrative and Priority Claims Reserve shall be based on the Liquidating Trustee's good faith estimate of the amount necessary

38132506

to pay all present and anticipated Allowed Administrative Expense Claims, Priority Claims, and Priority Tax Claims against the Debtors, other than Subordinated Equity Committee Professional Compensation Claims.  Notwithstanding anything to the contrary in the foregoing, funding for all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Disputed shall be allocated pursuant to § 7.4.2 of this Plan.

**7.5**    Cancellation of Equity Interests.  On the Effective Date, all Equity Interests, including all promissory notes, stock, instruments, warrants, certificates and other documents evidencing any PRXI Equity Interest or Subsidiary Equity Interest shall be deemed automatically cancelled and surrendered.

**7.6**    Manner or Distribution.  Notwithstanding any other provisions of this Plan or the Liquidating Trust Agreement providing for a Distribution or payment in Cash, at the option of the Liquidating Trustee, any Distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH.  Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Any Cash Distributions or payments will be issued to Holders of Allowed Claims in whole cents (rounded to the nearest whole cent when and as necessary).

**7.7**    Delivery of Distributions.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made by the Debtors, if before the Effective Date, or the Liquidating Trustee, if on or after the Effective Date, (i) at the addresses set forth on any Proof of Claim or Filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim or is Filed or the Debtors or the Liquidating Trustee have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes Filed with the Bankruptcy Court and served on the Liquidating Trustee by such Holder after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and no written notice of address change has been Filed by such Holder with the Bankruptcy Court and served on the Liquidating Trustee.

**7.8**    Undeliverable Distributions.  If any Distribution or other payment to the Holder of an Allowed Claim under this Plan is returned for lack of a current address for the Holder or otherwise (as such, an "**Undeliverable Distribution**"), the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment.  If, after the passage of 90 days, the attempted Distribution remains an Undeliverable Distribution, the Liquidating Trustee shall distribute to the Holders of Allowed Claims in the appropriate Class the amount of the Undeliverable Distribution, and the Allowed Claim giving rise to the Undeliverable Distribution shall be deemed satisfied and released, with no recourse to the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Assets, to the same extent as if the Undeliverable Distribution had been made to the corresponding Holder of the Allowed Claim.

**7.9**    Setoffs and Recoupments.  The Debtors, if before the Effective Date, or the Liquidating Trustee, if on or after the Effective Date, may, to the extent permitted by Section  558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments or Distributions are to be made pursuant to this Plan, any Causes of Action of any nature whatsoever that the Debtors, the Estates, or the

- 34 -

Liquidating Trust may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, or the Liquidating Trust of any right of setoff or recoupment that the Debtors, the Liquidating Trust or the Estates may have against the Holder of such Claim, nor of any other Cause of Action.

**7.10**    Distributions in Satisfaction; Allocation.  Except for the obligations expressly imposed by this Plan and the property and rights expressly retained under this Plan, if any, the Distributions and rights that are provided in this Plan shall be in complete satisfaction and release of all Claims against, Liabilities in, Liens on, obligations of and Interests in the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trust Assets, whether known or unknown, that arose or existed prior to the Effective Date.

**7.11**    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary contained in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**7.12**    No Interest on Claims.  Unless otherwise specifically provided for in this Plan, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing or any other provision of this Plan, Confirmation Order or Liquidating Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**7.13**    Withholding Taxes.  The Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, shall be entitled to deduct any federal, state or local withholding taxes from any payments or Distributions under this Plan.  As a condition to making any Distribution under this Plan, the Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.  Failure of a Holder of any Allowed Claim to provide such Holder's taxpayer identification number and such other information and certification may result in forfeiture of such Holder's right to Distributions in respect of its Claim.

# ARTICLE 8

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**8.1**    No Distributions on Disputed Claims.  Notwithstanding any other provisions of this Plan, no payments or Distributions shall be made on account of a Disputed Claim until and unless such Claim becomes an Allowed Claim.  In lieu of Distributions under this Plan to Holders of

38132506

Disputed Claims, a Disputed Claims Reserve shall be maintained by the Liquidating Trustee for payment of any Disputed Claim which becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made within the time periods provided above in Article 7 of this Plan, or as soon as is reasonably practicable following allowance of the Claim.

**8.2** <u>Proof of Claim Filed for Scheduled Claim</u>. As set forth in Bankruptcy Rule 3003(c)(4), if a Proof of Claim is filed by any Creditor asserting a Claim for the same obligation which had previously been listed for such Creditor by the Debtors on the Schedules, then the Scheduled Claim shall be deemed a Disallowed Claim without the need for the Debtors, the Liquidating Trustee or any party in interest to file an objection to such Scheduled Claim. The Claim asserted in the Proof of Claim shall be deemed to replace such Scheduled Claim and shall ultimately become an Allowed Claim, a Disputed Claim or a Disallowed Claim pursuant to the procedures set forth in this Plan.

**8.3** <u>Resolution of Claims under Materiality Threshold</u>. Subsequent to the Effective Date, the Liquidating Trustee shall have the authority to settle and resolve a Disputed Claim that was originally asserted in an amount equal to or less than $250,000.00 upon such terms and conditions as the Liquidating Trustee deems appropriate and in the best interests of the Estates. Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Chapter 11 Cases. The Liquidating Trustee shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest, and shall not have any requirement to obtain Court approval, in connection with compromising, settling, or otherwise resolving these Claims.

**8.4** <u>Resolution of Claims above Materiality Threshold</u>. With respect to any Disputed Claim that was originally asserted in an amount that exceeds $250,000.00, the Liquidating Trustee shall have the authority to compromise and settle any such Claim on such terms as the Liquidating Trustee deems appropriate and in the best interests of the Estates, subject to the approval of the Liquidating Trust Oversight Committee pursuant to § 6.3.3 of this Plan, by providing Designated Notice of any such proposed compromise and a reasonable opportunity to object thereto. If a party in interest files a written objection with the Court in the Chapter 11 Cases with respect to any proposed compromise of any Disputed Claim, and serves a copy of said objection upon the Liquidating Trustee and his or her counsel, within twenty-one (21) days from the service of Designated Notice of the proposed compromise, then the Court shall schedule a hearing with respect to said objection. If no objection is timely filed and served, the Liquidating Trustee may compromise and settle any Disputed Claim without further authorization. The Liquidating Trustee may file motions which seek to compromise more than one Claim.

**8.5** <u>Estimation of Claims</u>. The Debtors, if before the Effective Date, and the Liquidating Trustee, if on or after the Effective Date, may request that the Bankruptcy Court estimate any Contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Contingent or unliquidated Claim, that

38132506

estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to object to the ultimate allowance of the Claim or seek to reduce and allow the Claim (as reduced). All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE 9

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1**    Rejection of Contracts and Leases. Subject to the exceptions set forth in Section 9.2, below, on and after the Effective Date, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code, and written notice will be provided to each such counterparty of such deemed rejected contract or lease (together with a statement of the date by which any Proof of Claim must be filed). Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

**9.2**    Exceptions to Rejection. The following Executory Contracts and Unexpired Leases shall ***not*** be rejected pursuant to this Plan: all  Executory Contracts and Unexpired Leases that the Debtors either (i) previously assumed, and/or assumed and assigned (specifically including, but not limited to, the contracts and leases set forth on Exhibit A of the *Notice of Assumption and Assignment of Executory Contract or Unexpired Lease* [Docket No. 1323]), ~~or~~ (ii) rejected, each as provided for by an order of the Bankruptcy Court, or (iii) assumed and/or assigned in this Plan.

**9.3**    Rejection Claims. Claims created by the rejection of Executory Contracts and Unexpired Leases pursuant to § 9.1 of this Plan, or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Effective Date (collectively, "**Rejection Claims**"), must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date (the "**Rejection Objection Deadline**").

**9.3.1    Timely Filed Rejection Claims.** Unless otherwise ordered by the Bankruptcy Court, all Rejection Claims that are filed on or before the Rejection Objection Deadline shall be treated as Unsecured Claims under this Plan and shall be subject to the provisions of Article 4 of this Plan.

**9.3.2    Tardy Rejection Claims.** All Rejection Claims that are filed after the Rejection Objection Deadline (or not filed at all) shall be deemed Disallowed without the need for any action or formal objection by the Liquidating Trustee or any other party in interest, and shall be forever barred from assertion against the Debtors, their Estates, the Liquidating Trust, and the Liquidating Trust Assets, unless otherwise ordered by the Bankruptcy Court or provided herein.

- 37 -

### 9.3.3    Employment Agreements and Benefit Programs

(a)    *Employment Agreements*.  Except to the extent previously rejected by Final Order of the Bankruptcy Court on or before the Effective Date, all employment and severance agreements between the Debtors and their employees entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected under § 9.1 of the Plan.  Any Claim arising out of such rejection shall be treated in accordance with § 9.3 of the Plan.

(b)    *Employee Benefit Plans*. Except and to the extent previously rejected by Final Order of the Bankruptcy Court on or before the Effective Date, all Employee Benefit Plans entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected under § 9.1 of the Plan. Any Claim arising out of such rejection shall be treated in accordance with § 9.3 of the Plan.

**ARTICLE 10**

**PLAN INJUNCTION, EXCULPATION, AND RELEASE**

**10.1    Plan Injunction.  Except as otherwise expressly provided in this Plan, the Plan Supplement, documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including** ~~all Governmental Units~~**any Governmental Authority, but solely to the extent such Governmental Authority received notice of the Plan and Disclosure Statement) shall be permanently enjoined from, on account of such Claims or Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, the Exculpated Parties, the Liquidating Trust, the Liquidating Trustee, or any of their respective properties or assets: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, executing, collecting, or recovering in any manner any judgment, award, decree, or order, or attaching any property pursuant to the foregoing; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) enjoining or invalidating any foreclosure or other conveyance of any Property of the Liquidating Trust or of the Debtors; (vi) interfering with or in any manner whatsoever disturbing the rights and remedies of the Liquidating Trust, the Debtors or the Estates under this Plan and the Plan documents and the other documents executed in connection therewith; and (vii) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of this Plan. This injunction shall not enjoin or prohibit (i) the holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of this Plan or (ii) any party in interest from seeking the interpretation or enforcement of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under this Plan. The Liquidating Trustee shall have the right to independently seek enforcement of this Plan Injunction provision.  This Plan Injunction provision is an integral part of this Plan and is essential to its implementation.**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, Distributions under such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article X10 of the Plan.

Notwithstanding the foregoing, the Plan Injunction shall not include or be effective against Mark A. Sellers, Douglas Banker, Richard Kraniak, or Jack H. Jacobs (the "Pre-Merger D&Os"), unless and until that certain Settlement Agreement by and between: (i) Mark C. Healy, the Responsible Person; (ii) Mark A. Sellers, Douglas Banker, Richard Kraniak, and Jack H. Jacobs; and (iii)  National Union Fire Insurance Company of Pittsburgh, Pa (the "Insurer"), related to the Adversary Proceeding (the "D&O Settlement"), is approved by a final, non-appealable Order of the Bankruptcy Court (the "D&O Settlement Effective Date").  In the event the D&O Settlement is not approved by the Bankruptcy Court and the D&O Settlement Effective Date does not occur, the Pre-Merger D&Os shall be excluded from the Plan Injunction.

Additionally, and notwithstanding the foregoing, Daoping Bao, Michael Evans, Sid Dutchak, Mingcheng Tao, Jerome Henshall, Mark Bains, and Guo "David" Ding (the "Post-Merger D&Os") are specifically excluded from the Plan Injunction, and the Plan Injunction shall not enjoin any action against them. For the avoidance of any doubt, the Responsible Person, Liquidating Trustee, and any successor fiduciary retain any and all rights and causes of action against the Post-Merger D&Os, including but not limited to in connection with the Adversary Proceeding.

**10.2    Exculpation from Liability.** Effective as of the Effective Date, to the To the fullest extent permissible under applicable law and notwithstanding anything herein to the contrary,, (i) effective as of the Effective Date, the Debtors, their current and former officers and directors, and Jessica Leigh Sanders, in her capacity as an officer of the Debtors, the Debtors' Professionals (acting in such capacity) and), the members of the Creditors' Committee (acting in such capacity) and the Creditors' Committee's Professionals (acting in such capacity) (), and the foregoing members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity) and (ii) effective as of the D&O Settlement Effective Date with respect to the Pre-Merger D&Os (collectively referred to herein as the "Exculpated D&O Parties")", and with the Debtors, Jessica Leigh Sanders, in her capacity as an officer of the Debtors, the Debtors' Professionals (acting in such capacity), the members of the Creditors' Committee (acting in such capacity), the Creditors' Committee's Professionals (acting in such capacity), and the members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity), collectively the "Exculpated Parties")) are hereby released and exculpated from any Claim, obligation, Cause of Action, or liability of any kind whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law or in equity, for any action taken or omitted to be taken, in connection with or related to the formulation, preparation, dissemination, or confirmation of this Plan, including solicitation of

- 39 -

acceptances thereto, the Disclosure Statement, any Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into, including without limitation the Purchase Agreement, or any other act taken or omitted from being taken, in connection with the Sale, this Plan or these Chapter 11 Cases, including but not limited to the commencement and administration of these Chapter 11 Cases, the sale of assets, the arranging for post-petition financing, the prosecution and defense of contested matters and adversary proceedings, the settlement of Claims, and the disbursement of funds (including, for the avoidance of doubt, providing any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors, in each case except for actual fraud, willful misconduct, or gross negligence in connection with the Plan or the Chapter 11 Cases, each solely to the extent as determined by a Final Order of a court of competent jurisdiction; *provided*, *however*, that in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the restructuring of Claims and Interests in the Chapter 11 Cases and in connection with the transactions contemplated herein, including the Sale, the negotiation, formulation, or preparation of the agreements, instruments, or other documents pursuant to the Plan or the Sale, and the solicitation and distribution of the Plan and therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, this exculpation shall not release any obligation or liability of any party under the Plan or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan.  In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a Plan or the offer, issuance, sale or purchase of securities.  This Exculpation from Liability provision is an integral part of this Plan and is essential to its implementation.

For the avoidance of any doubt, the Pre-Merger D&Os shall not be released or exculpated, and are specifically excluded from the Exculpated Parties, unless and until the occurrence of the D&O Settlement Effective Date. In the event the D&O Settlement is not approved by the Bankruptcy Court and the D&O Settlement Effective Date does not occur, the Pre-Merger D&Os shall not be released or exculpated under this Section 10.2 of the Plan or otherwise.

Additionally, for the avoidance of any doubt, the Post Merger D&Os, shall not be and are not released or exculpated under Section 10.2 of the Plan or otherwise. The Responsible Person, Liquidating Trustee, and any successor fiduciary retain any and all rights and causes of action against the Post-Merger D&Os, including but not limited to in connection with the Adversary Proceeding, and nothing in this Plan or the Confirmation Order shall be

- 40 -

construed to enjoin any rights, claims, or causes of action against the Post-Merger D&Os, or to release or exculpate the Post-Merger D&Os, in connection with the Adversary Proceeding, or otherwise.

**10.3** Preservation of Insurance. Except as otherwise provided herein, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not. Notwithstanding anything to the contrary in the Plan, the Plan Supplement (if any), any bar date notice, or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtors have any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtors and assigned to the Liquidating Trust, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies (and the proceeds thereof) shall vest in the Liquidating Trust. For the avoidance of doubt, nothing in this Plan, the Plan Supplement (if any), or otherwise shall diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, including, without limitation, its officers and current and former officers and directors, or any other Person.

**10.4** Continuation of Automatic Stay. The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect pursuant to Section 362(c)(2) of the Bankruptcy Code. The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Assets of the Debtors, the Estates and/or the Liquidating Trust or to permit the just and orderly administration of the Estates.

**10.5** Binding Effect of Plan. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan, whether or not such Holder has accepted this Plan and whether or not the Holder has Filed a Claim.

**10.6** No Liability for Tax Claims. Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claim Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtors, the Estates, the Liquidation Trust, the Liquidating Trustee, or their directors, officers, employees or agents for Taxes, penalties, interest, additions to tax or other charges arising out of (a) the failure, if any, of the Debtors, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (b) an audit of any return for a period before the Petition Date. The entry of the Confirmation Order shall be deemed to be a determination that no provision of this Plan has avoidance of Taxes as a principal purpose, and the Confirmation Order shall so provide.

**10.7** No Liability for Untimely Administrative Expense Claims. Holders of Administrative Expense Claims (including Holders of any Claims for Post-petition Taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Estates, the Liquidating Trust, or any of their respective Property.

38132506

**10.8**   Regulatory or Enforcement Actions.  Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code.  Nothing contained in this § 10.8 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

## ARTICLE 11

## MODIFICATION OF THIS PLAN

**11.1**   Preconfirmation Amendment.  The Debtors reserve the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation of this Plan. This Plan may be modified, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, this Plan otherwise may be modified after notice and hearing. In the event of modification at or before Confirmation, any votes in favor of this Plan shall be deemed to be votes in favor of this Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes.

**11.2**   Post-Confirmation Amendment Not Requiring Resolicitation.  After the entry of the Confirmation Order, the Debtors may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under this Plan.

**11.3**   Post-Confirmation Amendment Requiring Resolicitation.  After the Confirmation Date and before the Effective Date of this Plan, the Debtors may modify this Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice to all Creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtors comply with Section 1125 of the Bankruptcy Code with respect to the modified Plan.

## ARTICLE 12

## RETENTION OF JURISDICTION

- 42 -

38132506

**12.1**    Notwithstanding Confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, for the following purposes:

(a)    to determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)    to hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, estimation, or payment of Rejection Claims and Cure Amounts resulting therefrom;

(c)    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(d)    to hear and determine objections to the allowance of Claims, whether Filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to determine any matter (other than those matters that are subject to the exclusive jurisdiction of the United States District Court for the Eastern District of Virginia in the admiralty action styled *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, Case No. 2:93-cv-902, including, but not limited to, the Admiralty Order) (i) under the Purchase Agreement; (ii) in connection with the Sale Transaction; or (iii) the Sale Order;

(h)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)    to hear and determine any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)    to hear and determine all Professional Compensation Claims;

- 43 -

(k)(j)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)(k)  to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan and the Liquidating Trust Agreement, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)(l)  to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)(m)  to hear and determine matters concerning Taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(o)(n)  to enter a Final Decree closing the Chapter 11 Cases;

(p)(o)  to recover all Assets of the Debtors and the Liquidating Trust, and Property of the Estates, wherever located;

(q)(p)  to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors and/or the Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(r)(q)  to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(s)(r)  to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**12.2**    _Courts of Competent Jurisdiction_.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 13

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**13.1**    _Condition Precedent to Confirmation_.  This Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Debtors and provides for, among other things, the limited consolidation of the Debtors in accordance with § 6.1, above.

38132506

**13.2**    Conditions Precedent to Occurrence of Effective Date.  The Effective Date for this Plan may not occur unless each of the conditions set forth below is satisfied.  Any one or more of the following conditions may be waived in whole or in part at any time by the Debtors:

(a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall not have been stayed, modified, or vacated on appeal;

(b)    The Confirmation Order shall provide for the releases, injunctions, and exculpation of the Persons provided for by this Plan in Article 10;

(c)    Mark Healy or his designee shall have been appointed as Liquidating Trustee and shall have accepted to act in such capacity in accordance with the terms and conditions of this Plan;

(d)    All actions, documents, and agreements necessary to implement and consummate this Plan shall have been affected or executed and binding on all parties thereto; and

(e)    All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**13.3**    Effect of Nonoccurrence of the Conditions Precedent to Occurrence of Effective Date.  If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day after 90 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant this Plan, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors or of any other party in interest.

## ARTICLE 14

## MISCELLANEOUS

**14.1**    Objections to Claims.  On and after the Effective Date, the Liquidating Trustee shall have the exclusive right to make, file and prosecute objections to Disputed Claims (whether scheduled or filed). All such objections shall be filed within one hundred eighty (180) days after the Confirmation Date (the "**Claims Objection Deadline**"); however, the Liquidating Trustee may seek extensions of this one hundred eighty (180) day period following Designated Notice. If a party in interest files a written objection with the Bankruptcy Court with respect to any proposed

extension of time and serves a copy of said objection upon the Liquidating Trustee, and his or her counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Bankruptcy Court shall schedule a hearing with respect to said objection and the deadline for the Liquidating Trustee to object to Claims as authorized under this Plan, shall be deemed extended through the conclusion of such hearing. If no objection is timely filed and served, the proposed extension is granted without further authorization. The failure to object to any Claim prior to the commencement of the hearing on Confirmation of this Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of Distribution.

**14.2**    Further Actions.  Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Bankruptcy Court directing the Debtors, the Liquidating Trustee and/or any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to affect any transfer and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan. Any transfer taxes arising from transfers of property ordered or made pursuant to this Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

**14.3**    Governing Law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Florida shall govern the rights and obligations arising under this Plan, without giving effect to principles of conflicts of law of Florida.

**14.4**    Continuing Effect of Sale Order and Admiralty Order.  Notwithstanding anything in this Plan to the contrary, the Sale Order and any and all related documents (including but not limited to the Purchase Agreement) and Admiralty Order shall not be modified, limited, or amended by this Plan.

**14.5**    Waiver of Bankruptcy Rule 3020.  The Debtors may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order and this Plan be immediately binding and enforceable; and (b) authorization for the Debtors to consummate this Plan immediately after entry of the Confirmation Order.

**14.6**    No Admissions.   Notwithstanding anything herein to the contrary, nothing contained in this Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**14.7**    Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**14.8**    Confirmation Order and Plan Control.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, the Liquidation Trust Agreement, or any other agreement entered into between the Debtors and any third party, this Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control this Plan; provided, however, that neither this Plan nor the Confirmation Order shall alter, modify, or otherwise affect the Purchase Agreement or the Sale Order.

**14.9**    Severability.  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**14.10**    Headings.  Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

**14.11**    Notice of Effective Date.  Not later than five (5) Business Days following the Effective Date, the Liquidating Trustee shall file a notice of the occurrence of the Effective Date of this Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

**14.12**    Notices.  Any notice required or permitted to be provided under this Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

> ***To the Debtors***:  Premier Exhibitions, Inc., in care of Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention:  Harris Winsberg and Matthew Brooks, Tel: (404) 885-3000, Fax: (404) 885-3900; with copies to Nelson Mullins Riley & Scarborough LLP, 50 N. Laura Street, Suite 4100, Jacksonville, FL 32202, attention: Daniel F. Blanks and Lee D. Wedekind, III, Tel: (904) 665-3656, Fax: (904) 665-3699.

> ***To the Creditors' Committee***:  Official Committee of Unsecured Creditors of Premier Exhibitions, Inc. and its Debtor Affiliates, in care of Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention:  Jeffrey Chubak and Avery Samet, Tel: (212) 490-4100, Fax: (212) 490-4208; with copies to Thames Markey & Heekin, P.A., 50 N. Laura Street, Suite 1600, Jacksonville, FL 32202, attention: Richard R. Thames and Robert A. Heekin, Jr., Tel: (904) 358-4000, Fax: (904) 358-4001.

**14.13**    Post-Effective Date Notice.  Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the US Trustee's Office, counsel to the Liquidating Trustee, and any Creditor that has a direct pecuniary interest in the relief sought by the pleading. With the exception of the US Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee. Parties who do not file a request for continued service shall be removed from the Debtors' Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading. Notice of the requirement to file a request for continued service will be provided in the notice sent to all Creditors regarding the Confirmation of this Plan.

**14.14**    Deemed Acts.  Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

38132506

*[Signatures on Following Page]*

38132506

**PREMIER EXHIBITIONS, INC**., on behalf of itself and its subsidiaries

**PREMIER EXHIBITION MANAGEMENT, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping BaoJessica Sanders
Title: President Corporate Secretary, Premier Exhibitions, Inc.

By:_____
Name: Daoping Bao
Title: President

**ARTS AND EXHIBITIONS INTERNATIONAL, LLC**

By Premier Exhibition Management, LLC, its Managing Member

By Premier Exhibitions, Inc., its Managing Member

**PREMIER EXHIBITIONS INTERNATIONAL, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**PREMIER EXHIBITIONS NYC, INC.**

**PREMIER MERCHANDISING, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**DINOSAURS UNEARTHED CORP.**

By:_____
Name: Daoping Bao
Title: President

## **SCHEDULE 3**

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Agreement**"), dated as of _____ __, 2019, by and among (a) Mark C. Healy of Michael Moecker & Associates, Inc., not individually, but solely in his capacity as the trustee for the liquidating trust established pursuant to this Agreement (such person and each successor trustee, the "**Liquidating Trustee**") and (b) Premier Exhibitions, Inc., on behalf of itself and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), is executed pursuant to the First Amended Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code [Docket No. •], dated _____ __, 2019 (as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "**Plan**") that provides for the establishment of the liquidating trust (the "**Liquidating Trust**") created hereby.  Each of the Debtors and the Liquidating Trustee are sometimes referred to individually as a "**Party**" and collectively as the "**Parties**." Capitalized terms used in this Liquidating Trust Agreement and not otherwise defined shall have the meanings assigned to such terms in the Plan.

## R E C I T A L S:

(A)    On June 14, 2016 (the "**Petition Date**"), each of the Debtors filed voluntary petitions with the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "**Bankruptcy Court**") under Chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered under Case No. 3:16-bk-02232-PMGJAF.

(B)    On May 15, 2019, the Debtors filed their Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code [Docket No. 82] (the "**Original Plan**") and accompanying disclosure statement [Docket No. 81] (the "**Disclosure Statement**").

(C)    On [●], 2019, the Debtors filed their Plan.

(C)(D)  On [__, 2019], the Bankruptcy Court entered the Confirmation Order [Docket No. •] confirming the Plan.  A copy of the confirmed Plan is attached hereto as **Exhibit A**.

(D)(E)  The Plan provides for the creation of a post-confirmation Liquidating Trust to hold and administer the Liquidating Trust Assets and to distribute the proceeds therefrom to the Liquidating Trust Beneficiaries (defined below), in accordance with the terms of this Agreement and the Plan. This Agreement is executed to establish the Liquidating Trust and to facilitate the Plan.

(E)(F)  The Liquidating Trust is created on behalf of, and for the benefit of, the Liquidating Trust Beneficiaries.

(F)(G)  The respective powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by this Agreement, the Plan, the Confirmation Order and other applicable orders issued by the Bankruptcy Court.

38132473

(G)(H) This Agreement is intended to supplement, complement and implement the Plan which is incorporated herein by reference; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

(H)(I)  The Liquidating Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IR Code**").

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby acknowledged and confirmed, the Parties hereby agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1    Establishment of Liquidating Trust and Appointment of Liquidating Trustee.

(a)    This Liquidating Trust, which shall be known as the "Premier Exhibitions Liquidating Trust," is hereby established on behalf, and for the benefit, of: (i) the Holders of Allowed Claims of the Debtors (whether such Claims are Allowed as of or subsequent to the Effective Date) (the "**Liquidating Trust Beneficiaries**")); and (ii) Holders of Subordinated Equity Committee Professional Compensation Claims, but solely to the extent there are proceeds from the Adversary Proceeding available for Distribution to such Holders in accordance with § 6.4 of the Plan(collectively, the "**Liquidating Trust Beneficiaries**").

(b)    The Liquidating Trustee is hereby appointed as trustee of the Liquidating Trust effective as of the Effective Date and agrees to accept and hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries subject to the terms of the Plan, the Confirmation Order, and this Agreement. The Liquidating Trustee and each successor Liquidating Trustee serving from time to time hereunder shall have all the rights, powers, and duties set forth herein.

1.2    Transfer of Assets and Rights to the Liquidating Trust.

(a)    As of the Effective Date, and pursuant to and subject in all respects to the terms of the Plan and Confirmation Order, the Debtors, in their respective capacities as debtors-in-possession on behalf of the Estates, hereby transfer, assign and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their right, title and interest in the Liquidating Trust Assets, including Causes of Action of such Debtors, other than any waived, exculpated or released Causes of Action in accordance with the provisions of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law.  The Liquidating Trustee agrees to accept and hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

(b)    All of the proceeds received by the Liquidating Trust from the sale, transfer or other disposition of the Liquidating Trust Assets (including the prosecution or settlement of any

- 2 -

Cause of Action) shall be added to the Liquidating Trust Assets and held as a part thereof (and title thereto shall be vested in the Liquidating Trust), and shall be distributed in accordance with Article 7 of the Plan.

1.3    Funding.

The Liquidating Trust shall be funded by the Liquidating Trust Assets and any proceeds thereof.

1.4    Title to Assets.

(a)    **Transfer of Title.**  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets. In accordance with Section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to the interests of the Liquidating Trust Beneficiaries, the Liquidating Trust Expenses, and certain Liabilities (as defined below). Thereupon, the Debtors shall not have any interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

(b)    **Transfer Subject to Liabilities.**  The Liquidating Trust Assets are hereby transferred subject to the following liabilities, if any, which arise out of or relate to any known or unknown Claim against the Debtors or their Estates (the "**Liabilities**"):

(i)    Allowed Administrative Claims, other than Subordinated Equity Committee Professional Compensation Claims, Allowed Priority Tax Claims, and Allowed Priority Claims that have not been paid as of the Effective Date or that are subsequently Allowed; and

(ii)    all U.S. Trustee Fees (for each Debtor) until such time as the Bankruptcy Court enters a Final Decree or the Chapter 11 Cases are otherwise closed;

(iii)    excluding, however, Claims that have been barred by, or satisfied under, the Plan.

1.5    Nature and Purpose of the Liquidating Trust.

(a)    The Liquidating Trust is organized and established as a trust solely to, subject to the terms and conditions contained herein and in the Plan: (i) administer the Liquidating Trust Assets and make Distributions in accordance with the Plan and this Agreement; and (ii) oversee and direct the expeditious but orderly liquidation of the Liquidating Trust Assets. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Liquidating Trust Assets, and consistent with the liquidating purpose of the Liquidating Trust.

- 3 -

(b)    This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee, the Liquidating Trust Oversight Committee (or any of its members), or the Liquidating Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Liquidating Trust Beneficiaries (on the one hand) to the Liquidating Trustee and the Liquidating Trust Oversight Committee (on the other hand) shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

1.6    <u>Relationship to, and Incorporation of, the Plan and the Confirmation Order.</u>

This Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions of the Plan and the Confirmation Order by this reference. To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and Confirmation Order, in each case solely to the extent such actions or orders are in furtherance of this Agreement, but in each case subject in all respects to and solely to the extent not inconsistent with the terms of the Plan and/or Confirmation Order. To the extent that there is a conflict between the provisions of this Agreement, and the provisions of the Plan, and/or the Confirmation Order, the terms of the Confirmation Order shall govern the Plan, and the terms of the Plan shall govern this Agreement.

## ARTICLE II
## LIQUIDATING TRUST INTERESTS

2.1    <u>Allocation of Liquidating Trust Interests.</u>

(a)    **Beneficial Interests.**  On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim shall be allocated a Pro Rata Share of beneficial interests in the Liquidating Trust (the "**Beneficial Interests**") on account of such Holder's Allowed Claim.

(b)    **Subordinated Interests**.  On the Effective Date, or as soon as practicable thereafter, each Holder of a Subordinated Equity Committee Professional Compensation Claim (Allowed, as provided in the Plan) shall be allocated a Pro Rata Share of beneficial interests in the Liquidating Trust (the "**Subordinated Interests**") on account of such Holder's Subordinated Equity Committee Professional Compensation Claim; provided, however, that the Subordinated Interests shall rank junior to the Beneficial Interests and shall not have a right to Distribution or payment except as explicitly provided in § 6.4 of the Plan.

2.2     Allocation of Beneficial Interests to Holders of Disputed Claims.

No Beneficial Interest shall be allocated to the Holder of a Disputed Claim unless and until such Disputed Claim is an Allowed Claim.  If a Holder's Disputed Claim is resolved and becomes an Allowed Claim, the Holder shall be allocated a Pro Rata Share of Beneficial Interests in accordance § 2.1(a), above (and receive the same percentage recovery as Holders of Allowed Claims in the same Class as if the Holder's Allowed Claim was an Allowed Claim as of the Effective Date of the Plan); provided, however, that post-Effective Date interest shall not be allowed.

2.3     Interests Beneficial Only.

(a)     The ownership of a Beneficial Interest or Subordinated Interest shall not entitle any Liquidating Trust Beneficiary to any title in or to the Liquidating Trust Assets (which title shall be vested solely in the Liquidating Trust) or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting.

(b)     Notwithstanding the foregoing, the Liquidating Trustee may deem and treat each Liquidating Trust Beneficiary of record, as determined pursuant to this Agreement, as the absolute owner of such Liquidating Trust Beneficiary's Beneficial Interests or Subordinated Interests for the purpose of receiving Distributions and payment thereon or on account thereof and for all other purposes whatsoever; provided, that nothing within this subsection (b) shall supersede or limit § 2.3(a), above.

2.4     Evidence of Liquidating Trust Interests; Trust Register.

(a)     **Interests Uncertificated.**  The Beneficial Interests shall be uncertificated. The Beneficial Interests shall be represented by appropriate book entries in the Trust Register (as defined immediately below).

(b)     **Creation of Trust Register.**  The Liquidating Trustee shall create, maintain, and make appropriate notations in a registry of the Liquidating Trust Beneficiaries (the "**Trust Register**") and calculate and set forth in the Trust Register the following entries prior to each Distribution to the Liquidating Trust Beneficiaries:

(i)     The Beneficial Interest and Allowed Claim held by each Liquidating Trust Beneficiary; and

(ii)     The Beneficial Interest that otherwise would be attributable to the Holder of a Disputed Claim were such Disputed Claim to become an Allowed Claim.

(c)     **Application to Subordinated Interests**.  § 2.4(a) and (b) above shall apply equally to Subordinated Interests.

(c)(d)  **Location of Trust Register.**  The Liquidating Trustee shall keep, or cause to be kept, the Trust Register at the office of the Liquidating Trustee or at such other place as may

- 5 -

38132473

be designated by the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Commission, from time-to-time.

(d)(e)   **Access to Trust Register.** Each Liquidating Trust Beneficiary and its duly authorized representatives shall have the right, upon reasonable prior written notice to the Liquidating Trustee, and in accordance with the reasonable regulations prescribed by the Liquidating Trustee, to inspect and, at the sole expense of the Liquidating Trust Beneficiary seeking the same, make copies of the Trust Register reflecting such Liquidating Trust Beneficiary's interest in the Liquidating Trust, in each case for a purpose reasonably related to such Liquidating Trust Beneficiary's interest in the Liquidating Trust.

2.5   Exemption from Registration.

The Parties hereto intend that the rights of the Liquidating Trust Beneficiaries arising under this Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan and this Agreement.

2.6   Transfer and Exchange.

(a)   Beneficial Interests and/or Subordinated Interests are not negotiable and shall not be assignable or transferable voluntarily. In the case of a deceased individual Liquidating Trust Beneficiary, his or her executor, administrator, or legal representative shall succeed to such decedent's interest in the Liquidating Trust; provided, however, that any such transfer by shall not be effective or binding upon the Liquidating Trust for any purpose, unless and until (i) notification of such transfer is provided to the Liquidating Trustee in accordance with § 10.6(a) herein, and (ii) such transfer is in fact recorded on the Trust Register.

2.7   Change of Address.

A Liquidating Trust Beneficiary may, after the Effective Date, select an alternative address for Distribution or provide wire transfer instructions for any Distribution by providing notice to the Liquidating Trustee (in accordance with § 10.6(a) herein) including such address or instructions. Such notification will be effective only upon receipt by the Liquidating Trustee and notation in the Trust Register. Absent receipt of such notice by the Liquidating Trustee, the Liquidating Trustee shall not recognize any such change of Distribution address.

2.8   Tax Identification Numbers.

The Liquidating Trustee may require any direct payee of Distributions on account of Beneficial Interests or Subordinated Interests to furnish to the Liquidating Trustee its social security number or employer or taxpayer identification number as assigned by the Internal Revenue Service and complete any related documentation (including a Form W-8 or Form W-9), and the Liquidating Trustee may condition any Distribution to any such payee upon the receipt of

38132473

such information and the receipt of such other documents as the Liquidating Trustee reasonably requests.

## ARTICLE III
## THE LIQUIDATING TRUSTEE

3.1     Role of the Liquidating Trustee.

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee, subject to the terms and conditions contained herein, in the Plan and in the Confirmation Order, shall (a) hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, and (b) make Distributions of Liquidating Trust Assets in accordance with the Plan and this Agreement. Subject to the provisions of this Agreement, the Liquidating Trustee, in consultation with and subject to the management and direction of the Liquidating Trust Oversight Committee, shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Liquidating Trustee shall act in the best interests of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

3.2     Responsibilities and Authority of the Liquidating Trustee.

(a)     **Responsibilities.**  In connection with the administration of the Liquidating Trust, in addition to any and all of the powers enumerated elsewhere herein, the Liquidating Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Liquidating Trust Agreement and the provisions of the Plan solely relating to the Liquidating Trust, within the bounds of the Plan and applicable law (and, for the avoidance of doubt, subject to Liquidating Trust Oversight Committee consultation and/or approval to the extent required herein). The Liquidating Trustee, upon direction ofin consultation with the Liquidating Trust Oversight Committee, to the extent required, shall:

(i)     in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets;

(ii)    make timely Distributions to Holders of Beneficial Interests;

(iii)    make timely Distributions to Holders of Subordinated Interests out of the proceeds of the Adversary Proceeding (but solely to the extent and in the priority set forth in § 6.4 of the Plan);

(iii)(iv)establish and maintain the Disputed Claims Reserve, the Liquidating Trust Expense Reserve, and the Administrative and Priority Claims Reserve;

(iv)(v) audit and analyze all Claims not paid in full on the Effective Date or otherwise Allowed by the Bankruptcy Court;

(v)(vi) prosecute objections to, settle, or otherwise resolve such Claims if necessary and appropriate in accordance with the Plan and this Agreement;

38132473

(vi)(vii)    file appropriate tax returns with respect to the Liquidating Trust; and

(vii)(viii)    take all actions as are necessary and reasonable to carry out the purposes of the Liquidating trust under the Plan and this Agreement and not unduly prolong the duration of the Liquidating Trust.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(b)    **Specific Provisions with Respect to Causes of Action.**  The Liquidating Trustee (subject to the prior approval of, in consultation with the Liquidating Trust Oversight Committee to the extent required herein), shall have the right to pursue, not pursue, release, abandon, and/or settle any and all Causes of Action (including any counterclaims asserted against the Liquidating Trust) as the Liquidating Trustee determines is in the best interests of the Liquidating Trust.  To the extent that any action has been taken to prosecute or otherwise resolve any Cause of Action prior to the Effective Date, on the Effective Date the Liquidating Trustee shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following: "*Mark Healy of Michael Moecker & Associates, Inc.*, *as Liquidating Trustee for the Premier Exhibitions Liquidating Trust v.* [*Defendant*(s)]."  Without limiting the generality of the foregoing, the Liquidating Trustee shall specifically be substituted in as plaintiff in the Adversary Proceeding, and the caption with respect to the Adversary Proceeding shall be changed to the following: *Mark Healy of Michael Moecker & Associates, Inc.*, *as Liquidating Trustee for the Premier Exhibitions Liquidating Trust v. Mark Sellers* [et al.]"

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(b)(c)    **Additional Powers.**  Subject to any limitations contained herein or in the Plan, the Liquidating Trustee (on behalf of the Liquidating Trust as the Liquidating Trustee, but not individually) shall have the power to:

(i)    hold legal title to any and all rights of or arising from the Liquidating Trust Assets, including collecting and receiving any and all money and other property belonging to the Liquidating Trust and, subject to the approval ofconsultation with the Liquidating Trust Oversight Committee, the right to vote any claim or interest relating to the Liquidating Trust Assets in a case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)    receive and take such action as may be necessary to take possession, custody or control of all Liquidating Trust Assets to be distributed pursuant to the Plan;

- 8 -

(iii)    oversee, administer, maintain, and wind-down any 401(k) plans and other employee or retiree benefit plans of the Debtors to the extent any such plans remain in place or claims thereunder remain unsatisfied following the Effective Date and are transferred to the Liquidating Trust;

(iv)    in consultation with and subject to the approval of the Liquidating Trust Oversight Committee, protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(v)    in consultation with and subject to the approval of the Liquidating Trust Oversight Committee, obtain reasonable insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Liquidating Trust Oversight Committee under this Liquidating Trust Agreement (in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise);

(viii)    employ various professionals, including counsel, tax advisors, consultants, and financial advisors, as the Liquidating Trustee deems necessary to aid it in fulfilling its obligations under this Liquidating Trust Agreement and the Plan (such Persons, the "**Trustee Professionals**"), and on whatever fee arrangement the Liquidating Trustee deems appropriate, including contingency fee arrangements (any such fees, "**Trustee Professional Fees**");

(ix)    upon the consent ofin consultation with the Liquidating Trust Oversight Committee, the Liquidating Trustee may invest the proceeds of the Liquidating Trust Assets (and all income earned by the Liquidating Trust pending periodic Distributions in accordance with the provisions of the Plan) in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; provided, however, that such actions are consistent with the Liquidating Trust's status as a liquidating trust within the meaning of United States Treasury Regulation section 301.77014(d) and; provided further that such actions are consistent with § 6.2.14(d) of the Plan;

(x)    request any appropriate tax determination with respect to the Liquidating Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xi)    subject to applicable securities laws, if any, establish and maintain a website, to the extent the Liquidating Trustee deems necessary, for the purpose of providing notice of Liquidating Trust activities in lieu of sending written notice to Liquidating Trust Beneficiaries, subject to providing notice of the establishment of such website to such Liquidating Trust Beneficiaries;

(xii)    take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Liquidating Trust Assets consistent with the purposes hereof, take all steps and

38132473

execute all instruments and documents necessary to effectuate the Liquidating Trust, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder, in each case subject to Liquidating Trust Oversight Committee consultation and/or approval to the extent required herein;

(xiii)    upon the consent ofin consultation with the Liquidating Trust Oversight Committee, as applicable, liquidate any remaining Liquidating Trust Assets, and provide for the Distributions therefrom in accordance with the provisions of the Plan and this Agreement;

(xiv)    upon the consent ofin consultation with the Liquidating Trust Oversight Committee, exercise such other powers and authority as may be necessary and proper to carry out the provisions of the Plan relating to the Liquidating Trust;

(xv)    with the advice of the Liquidating Trust Oversight Committee, evaluate and determine strategy with respect to the Liquidating Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Liquidating Trust Assets on behalf of the Liquidating Trust and the Liquidating Trust Beneficiaries;

(xvi)    in the event that the Liquidating Trustee determines that the Liquidating Trust Beneficiaries or the Liquidating Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences; and

(xvii)    assume such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.; and

(xviii)  modify or amend this Agreement to enable the Liquidating Trustee to Distribute any remaining Net Distributable Assets to Holders of Allowed PRXI Equity Interests as of the Effective Date in accordance with § 6.4 of the Plan.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to any matters, then the Liquidating Trustee shall bring the matter before the Court for determination.

(e)(d)   **Necessary Reports.**  The Liquidating Trustee shall file all required Post-Confirmation operating reports through the date the Chapter 11 Cases are closed (or a Final Decree is entered), or such other and further reports, statements or disclosures relating to the Liquidating Trust that are necessary or appropriate or as may be reasonably requested by the Liquidating Trust Oversight Committee.

(i)    Without limiting the generality of the foregoing, the Liquidating Trustee shall provide quarterly reports to the Liquidating Trust Beneficiaries with respect to the (a) the sale, transfer or other disposition of the Liquidating Trust Assets (including any Causes of Action), and (b) expenditures, receipts, and Distributions of the Liquidating Trust.

38132473

(ii)    In addition, the Liquidating Trustee shall File or cause to be Filed with the Bankruptcy Court quarterly reports setting forth: (a) the compensation paid to the Liquidating Trustee; (b) the fees and expenses reimbursed or paid to the Liquidating Trustee; (c) the fees paid to Trustee Professionals and LTOC Professionals (defined below); (d) the number and amount of Distributions; (e) the amount of Disputed Claims and Undeliverable Distributions, if any; (f) the total amount or estimated value of the Liquidating Trust Assets remaining; (g) the proceeds of the Adversary Proceeding or any other lawsuit seeking the recovery of assets commenced by the Liquidating Trustee; and (h) all fees and expenses paid in connection therewith.

(d)(e)  **Objections to Claims.**  On and after the Effective Date, the Liquidating Trustee shall have the exclusive right to make, file and prosecute objections to Claims (whether Scheduled or Filed). All such objections shall be filed within one hundred eighty (180) days after the Confirmation Date (the "**Claims Objection Deadline**"); provided, however, the Liquidating Trustee may seek extensions of the Claims Objection Deadline following Designated Notice prior to the expiration of the Claims Objection Deadline period, as provided for in § 14.1 of the Plan.

(e)(f)  **Authority to Act.**  Unless specifically stated otherwise in this Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (i) authorized in this Agreement or (ii) specifically contemplated in the Plan.

(f)(g)  **Dissolution of the Debtors.**  In accordance with the Plan and the Confirmation Order, upon the last to occur of (i) the Effective Date (ii) the execution of this Agreement and (iii) the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Liquidating Trustee shall file or cause to be filed such necessary articles or certificates of dissolution, as the case may be, with the secretary of state or designated office of the state of formation, incorporation or organization (as applicable) of each Debtor, to affirmatively and permanently dissolve, cancel, liquidate, and destroy the corporate legal existence of each applicable Debtor.

(g)(h)  **Other Activities.**  The Liquidating Trustee shall be entitled to be employed by third parties while performing the duties required under the Plan and this Agreement, so long as such other employment does not involve holding or representing any interest adverse to the interests of the Liquidating Trust, or otherwise preclude or impair the Liquidating Trustee from performing his or her duties under the Plan and this Agreement.

3.3    Limitation on the Liquidating Trustee's Authority.

(a)    Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall not (i) be authorized to engage in any trade or business (for or on behalf of the Liquidating Trust), (ii) take any actions inconsistent with the orderly liquidation of the Liquidating Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of United States Treasury Regulation section 301.7701-4(d), (iv) perform any environmental remediation or restoration activities, (v) own any real property, (vi) take any action in

- 11 -

contravention of this Liquidating Trust Agreement, or (v) take any action that would jeopardize treatment of the Liquidating Trust as a grantor trust for U.S. federal income tax purposes under sections 671-677 of the IR Code, or any successor provisions thereof.

(b)    The Liquidating Trustee, acting on behalf of the Liquidating Trust, shall agree to comply with, and shall not take any actions inconsistent with or seek to modify or seek relief from, any provision of the Plan or the Confirmation Order.

### 3.4    Liquidating Trust Expenses.

(a)    The Liquidating Trustee may incur any reasonable and necessary Liquidating Trust Expenses in pursuing the Liquidating Trust Assets, administering the Liquidating Trust, managing the Liquidating Trust Assets, and making Distributions on account of Beneficial Interests, and/or Subordinated Interests. Subject to the following limitation, all Liquidating Trust Expenses shall be paid by, and solely be the obligation of, the Liquidating Trust.

(b)    **First Quarter Liquidating Trust Budget.**  On or before the Effective Date, the Liquidating Trustee shall prepare a reasonably detailed budget for the first quarter of the Liquidating Trust (such budget, the "**First Quarter Liquidating Trust Budget**") with respect to the Liquidating Trust Expenses expected to be incurred by the Liquidating Trust and the Liquidating Trustee (including the expenses of Trustee Professionals) in furtherance of the limited purpose of the Liquidating Trust and shall submit such First Quarter Liquidating Trust Budget to the Liquidating Trust Oversight Committee.  Within ten (10) Business Days after receipt of the First Quarter Liquidating Trust Budget, the Liquidating Trust Oversight Committee shall either (i) approve the First Quarter Liquidating Trust Budget, (ii) approve the First Quarter Liquidating Trust Budget with modifications, or (iii) deny the First Quarter Liquidating Trust Budget, and shall provide written notice of such decision to the Liquidating Trustee.

(i)    If the First Quarter Liquidating Trust Budget is approved (or if the Liquidating Trustee accepts the modifications to the First Quarter Liquidating Trust Budget proposed by the Liquidating Trust Oversight Committee), the Liquidating Trustee shall, as soon as reasonably practicable thereafter, fund the Liquidating Trust Expense Reserve with the approved amount of the First Quarter Liquidating Trust Budget, using the Liquidating Trust Assets.

(ii)    If the First Quarter Liquidating Trust Budget is denied (or if the Liquidating Trustee does not accept the modifications to the First Quarter Liquidating Trust Budget proposed by the Liquidating Trust Oversight Committee), the Liquidating Trustee may seek approval of the First Quarter Liquidating Trust Budget from the Bankruptcy Court, whose decision as to the amount of the First Quarter Liquidating Trust Budget shall be final and non-appealable by any Party herein.  Upon receipt of the Bankruptcy Court's decision with respect to the approved amount of the First Quarter Liquidating Trust Budget, the Liquidating Trustee shall fund the Liquidating Trust Expense Reserve with the approved amount of the First Quarter Liquidating Trust Budget, using the Liquidating Trust Assets.

38132473

(c)      No later than ten (10) Business Days prior to the expiration of the First Quarter Liquidating Trust Budget, the Liquidating Trustee shall prepare and submit to the Liquidating Trust Oversight Committee a reasonably detailed budget for the following quarter of the Liquidating Trust, which process shall repeat until the termination of the Liquidating Trust in accordance with Article VII of this Agreement (each such successive quarterly budget, a "**Successive Quarterly Budget**" and, together with the First Quarter Liquidating Trust Budget, the "**Liquidating Trust Budget**").  Each Successive Quarterly Budget shall be governed in all respects by the foregoing subsection (b) (and its subsections) to the same extent as if "First Quarter Budget" were replaced with "Successive Quarterly Budget."

(d)      With the exception of (i) the out-of-pocket expenses incurred by the Liquidating Trust Oversight Committee and (ii) LTOC Professional Fees (defined below), any and all Liquidating Trust Expenses shall be paid only out of the Liquidating Trust Expense Reserve. If excess funds remain in the Liquidating Trust Expense Reserve immediately prior to the termination of the Liquidating Trust, in accordance with Article VII of this Agreement, the Liquidating Trustee shall affect a Distribution of the excess funds in the Liquidating Trust Expense Reserve to the Liquidating Trust Beneficiaries in the order, amount, and priority set forth in Article 7 of the Plan.

3.5    Tenure, Removal, and Replacement of the Liquidating Trustee.

(a)      The Liquidating Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, Disability (as defined below), or death (if applicable).

(b)      The Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice to the Liquidating Trust Oversight Committee. Such resignation will become effective on the later to occur of (i) the day specified in such notice, and (ii) the appointment of a successor Liquidating Trustee as provided herein and the acceptance by such successor Liquidating Trustee of such appointment.

(c)      The Liquidating Trust Oversight Committee may petition the Bankruptcy Court to remove for Cause the Liquidating Trustee or any successor Liquidating Trustee appointed pursuant to the Plan and this Agreement.

(d)      In the event that the Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, the Liquidating Trust Oversight Committee shall appoint, in writing, a successor Liquidating Trustee, and shall File with the Bankruptcy Court a notice of the appointment of the successor Liquidating Trustee.

(e)      Immediately upon the appointment of any successor Liquidating Trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee hereunder will be vested in and undertaken by the successor Liquidating Trustee without any further act; and the successor Liquidating Trustee will not be liable personally for any act or omission of the predecessor Liquidating Trustee. Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the

- 13 -

obligations of the predecessor Liquidating Trustee hereunder, and such successor shall be subject to the same qualifications and shall have the same rights, powers, duties, and discretion, and otherwise be in the same position, as the originally named Liquidating Trustee. References herein to the Liquidating Trustee shall be deemed to refer to any successor Liquidating Trustee acting hereunder.

(e)     Upon the appointment of a successor Liquidating Trustee, the predecessor Liquidating Trustee (or the duly appointed legal representative of a deceased Liquidating Trustee or a Liquidating Trustee suffering a Disability) shall, if applicable, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee, without recourse to the predecessor Liquidating Trustee, all the estates, properties, rights, powers and trusts of such predecessor Liquidating Trustee (solely as each relates to this Agreement and the Liquidating Trust), and shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held hereunder, and all other assets and documents relating to the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trust Beneficiaries then in such predecessor Liquidating Trustee's possession and held hereunder.

(f)     In the event there is a vacancy in the position of Liquidating Trustee, the Liquidating Trust Oversight Committee shall appoint one of its members to serve as interim Liquidating Trustee (the "**Interim Trustee**"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Liquidating Trustee hereunder; provided, however, that the Interim Trustee shall not serve indefinitely and shall be replaced by a duly appointed successor Liquidating Trustee; provided further, that such Interim Trustee shall not exercise any rights or powers as a member of the Liquidating Trust Oversight Committee during such Person's tenure as Interim Trustee.

(g)     The Liquidating Trustee shall, during the period that the Liquidating Trustee serves as Liquidating Trustee under this Liquidating Trust Agreement and following the termination of this Liquidating Trust Agreement or following its removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which the Liquidating Trustee has become aware in the Liquidating Trustee's capacity as Liquidating Trustee, except as otherwise required by law.

(h)     "**Disability**" of the Liquidating Trustee or a member of the Liquidating Trust Oversight Commission shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Liquidating Trustee or the member of the Liquidating Trust Oversight Committee, as applicable, and reasonably acceptable to the Liquidating Trust Oversight Committee, the Liquidating Trustee or the member of the Liquidating Trust Oversight Committee shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

38132473

3.6    Books and Records.

The Liquidating Trustee shall maintain in respect of the Liquidating Trust and the Liquidating Trust Beneficiaries good and sufficient books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust and the payment of, expenses of, liabilities of, and claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Liquidating Trust. Nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution out of the Liquidating Trust Assets. The books and records of the Liquidating Trust shall be available for inspection by any member of the Liquidating Oversight Committee upon reasonable notice.  Subject to all applicable privileges, the Liquidating Trust Beneficiaries shall have the right, upon twenty (20) days' prior written notice to the Liquidating Trustee, to request a reasonable inspection of the books and records held by the Liquidating Trustee; provided, all costs associated with such inspection shall be paid in advance by such requesting Liquidating Trust Beneficiary; provided further, if so requested, such Liquidating Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee, and make such other arrangements as may be reasonably requested by the Liquidating Trustee.

3.7    Inquiries into the Liquidating Trustee's Authority.

Except as otherwise set forth in this Liquidating Trust Agreement or in the Plan, no Person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Liquidating Trust Assets.

3.8    Compliance with Laws.

(a)    The Liquidating Trustee shall ensure that any and all Distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including applicable federal and state securities laws.

(b)    If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), the Trust Indenture Act of 1939, or the Investment Company Act of 1940, then the Liquidating Trustee shall, after consultation with the Liquidating Trust Oversight Committee, take commercially reasonable efforts to comply with such registration and reporting requirements, if any, and file periodic reports with the U.S. Securities and Exchange Commission to the extent required by law.

3.9    Liquidating Trustee Compensation and Reimbursement.

(a)    The Liquidating Trustee shall receive compensation and reimbursement from the Liquidating Trust (but solely through the Liquidating Trust Expense Reserve) as follows:

38132473

(i)    The Liquidating Trustee shall receive compensation on terms consistent with (and in no event exceeding) those set forth in the *Consent Motion for an Order Appointing a Responsible Person as Substitute Plaintiff in the Adversary Proceeding against certain of the Debtors' Current and Former Directors and Officers* [D.E. 1296-2] (refiled in the Adversary Proceeding).  Specifically, the Liquidating Trustee's compensation shall be set at no more than $300/hour, and the other Professionals at Michael Moecker & Associates assisting the Liquidating Trustee shall receive their standard hourly rates.

(b)    In addition, the Liquidating Trust will reimburse the Liquidating Trustee (but solely out of the Liquidating Trust Expense Reserve) for all reasonable and documented out-of-pocket expenses incurred by the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties hereunder and under the Plan.

(c)    The fees and expenses payable to the Liquidating Trustee shall be paid to the Liquidating Trustee upon approval of such fees by the Liquidating Trust Oversight Committee without necessity for review or approval by the Bankruptcy Court or any other Person.  All such compensation and reimbursement shall be paid solely from the Liquidating Trust Expense Reserve, in accordance with the applicable Liquidating Trust Budget. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Liquidating Trustee and the Liquidating Trust Oversight Committee regarding the fees, compensation, and expenses of the Liquidating Trustee.

3.10    Reliance by the Liquidating Trustee.

(a)    Except as otherwise provided herein:

(i)    The Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties.

(ii)    Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such Person in carrying out the terms of this Agreement, and neither the Liquidating Trustee nor any member of the Liquidating Trust Oversight Committee shall have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidating Trustee (or the Liquidating Trust Oversight Committee, as applicable) are determined by Final Order to be solely due to the Liquidating Trustee's (or the Liquidating Trust Oversight Committee's) own willful misconduct, fraud, or gross negligence.

3.11    No Bond.

The Liquidating Trustee shall not be obligated to post a bond but may do so, in his or her sole discretion.

- 16 -

38132473

3.12    <u>Standard of Care; Exculpation.</u>

(a)    **Fiduciary Duty.**  Pursuant to the Plan and this Agreement, the Liquidating Trustee will act as a fiduciary on behalf of the Liquidating Trustee Beneficiaries.

(b)    **Exculpatory Provisions.**

(i)    None of the Liquidating Trustee, the Liquidating Trust Oversight Committee, the members thereof, the Trustee Professionals, or LTOC Professionals (defined below) shall be liable for any damages arising out of the creation, operation or termination of the Liquidating Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Liquidating Trust except in the case of such party's gross negligence, bad faith, willful misconduct, or fraud.  In performing its duties under this Agreement, the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) shall have no liability for any action taken in accordance with the advice of counsel, accountants, appraisers and other professionals retained by the Liquidating Trust Oversight Committee or the Liquidating Trust. Without limiting the generality of the foregoing, the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) to be genuine, and shall have no liability for actions taken in reliance thereon. Each of the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may rely without inquiry upon writings delivered to it under the Plan which the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee (as applicable) reasonably believes to be genuine and to have been given by a proper Person. Notwithstanding the foregoing, nothing in this § 3.12(b)(i) shall relieve the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee from any liability for any actions or omissions arising out of their gross negligence, willful misconduct, or fraud.  Any action taken or omitted to be taken in the case of the Liquidating Trustee or the members of the Liquidating Trust Oversight Committee with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence or willful misconduct.

(ii)    The Liquidating Trustee and the Liquidating Trust Oversight Committee, and their respective officers, directors, partners, members, managers and employees, shall be indemnified to the fullest extent permitted by law by the Liquidating Trust against all liabilities arising out of the creation, operation or termination of the Liquidating Trust, including actions taken or omitted in fulfillment of their duties with respect to the Liquidating Trust, except for those acts that are determined by Final Order to have arisen out of their own willful misconduct, gross negligence, bad faith, or fraud.

**ARTICLE IV**
**LIQUIDATING TRUST OVERSIGHT COMMITTEE**

4.1    <u>Constitution and Appointment.</u>

The Liquidating Trust Oversight Committee shall have three (3) members, each of whom must be the Holder of an Unsecured Claim at the time of appointment and throughout tenure as a

- 17 -

38132473

member of the Liquidating Trust Oversight Committee. The Liquidating Trust Oversight Committee is hereby established as of the Effective Date pursuant to § 6.3 of the Plan to advise, assist, supervise and direct the Liquidating Trustee in the administration of the Liquidating Trust pursuant to this Agreement. The initial members of the Liquidating Trust Oversight Committee shall be B.E. Capital Management Fund LP, Dalian Hoffen Biotechnique Co., Ltd, and 417 Fifth Avenue LLC.

4.2    Fiduciary Duties.

The fiduciary duties that applied to the Creditors' Committee prior to the Effective Date shall apply to the Liquidating Trust Oversight Committee, as limited by the exculpations, indemnifications, releases and other protections provided in the Plan, this Agreement, and the Confirmation Order. The duties, rights and powers of the Liquidating Trust Oversight Committee shall terminate upon the dissolution of the Liquidating Trust pursuant to the Plan and this Agreement.

4.3    Authority of the Liquidating Trust Oversight Committee Generally.

(a)    The Liquidating Trust Oversight Committee shall have (i) the authority and responsibility to advise, assist, and supervise, and direct the Liquidating Trustee in the administration of the Liquidating Trust (ii) such other rights to operate and manage the Liquidating Trust as are not inconsistent with the Confirmation Order, the Plan and the terms of this Agreement and (iii) have the authority to remove the Liquidating Trustee in accordance with § 4.5(b) herein. The Liquidating Trustee shall consult with and provide information to the Liquidating Trust Oversight Committee in accordance with and pursuant to the terms of this Agreement and the Plan.

(b)    No other Liquidating Trust Beneficiary shall have any approval rights whatsoever in respect of management and operation of the Liquidating Trust.

4.4    Engagement of Professionals and Advisors. The Liquidating TrustTrustee, in consultation with the Oversight Committee, shall have the authority to select and engage such professionals or advisors as the Liquidating Trust Oversight Committee deems necessary and desirable to assist the Liquidating Trust Oversight Committee in fulfilling its obligations under this Agreement and the Plan (such Persons, the "**LTOC Professionals**").

4.5    Specific Rights and Powers of the Liquidating Trust Oversight Committee.

(a)    **Ratification by Majority Vote.** Unless otherwise stated herein, whenever the approval or consent of the Liquidating Trust Oversight Committee is required, such approval or consent may be indicated by a majority vote of the Liquidating Trust Oversight Committee. Without limiting the generality of the foregoing, the Liquidating Trustee must obtain the approval (by majority vote) ofconsult with the Liquidating Trust Oversight Committee before acting or failing to act on any of the following:

(i)    the determination not to object to a Claim having a stated amount in excess of $250,000;

- 18 -

(ii)    the settlement of (a) any Cause of Action in which the amount sought to be recovered exceeds $250,000 or (b) any Disputed Claim having a stated amount in excess of $250,000 and to approve any release or indemnification to be given by the Liquidating Trustee in connection with any such settlement;

(iii)    any sale of any Liquidating Trust Assets for a price in excess of $250,000;

(iv)    the investment of Cash or other Liquidating Trust Assets, except for investments in demand and time deposits, such as certificates of deposit, having maturities of less than one year and in U.S. Treasury bills;

(v)    the waiver of the attorney-client privilege by the Liquidating Trustee with respect to any Cause of Action or other litigation related matter; and

(vi)    the election to treat any portion of the Liquidating Trust as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations.

If the Liquidating Trust Oversight Committee and the Liquidating Trustee are unable to reach agreement with respect to a matter described in subsection 4.5 (a)(i) –(vi), then the Liquidating Trustee shall bring the matter before the Court for determination

(b)    **Unanimous Decisions.**  The Liquidating Trust Oversight Committee shall also have the absolute right and power to determine the following by the unanimous vote of all the members of the Liquidating Trust Oversight Committee:

(i)    to change the initial bond to be posted by the Liquidating Trustee; and

(ii)    to petition the Bankruptcy Court to remove the Liquidating Trustee for Cause, or to select a successor Liquidating Trustee when a successor is required.

If the Liquidating Trust Oversight Committee is unable to reach a unanimous decision with respect to subsection (i) or (ii), above, and such deadlock shall continue for a period of one (1) week, any member of the Liquidating Trust Oversight Committee shall have the right to petition the Bankruptcy Court for appropriate relief.

4.6    Regular Meetings of the Liquidating Trust Oversight Committee.

Meetings of the Liquidating Trust Oversight Committee are to be held with such frequency and at such place as the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee may determine in their reasonable discretion, but in no event shall such meetings be held less frequently than quarterly.

4.7     Special Meetings of the Liquidating Trust Oversight Committee.

Special meetings of the Liquidating Trust Oversight Committee may be held whenever and wherever called for by the Liquidating Trustee or any member of the Liquidating Trust Oversight Committee, subject to reasonable notice.

4.8     Voting.

(a)     A majority of the total number of members of the Liquidating Trust Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Liquidating Trust Oversight Committee. The affirmative vote of a majority of the members of the Liquidating Trust Oversight Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Liquidating Trust Oversight Committee except as otherwise required by law or as provided in this Agreement (specifically including § 4.5(b) hereof) or the Plan. Any or all of the members of the Liquidating Trust Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Liquidating Trust Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Liquidating Trustee and each member of the Liquidating Trust Oversight Committee.

(b)     Any member of the Liquidating Trust Oversight Committee who is present and entitled to vote at a meeting of the Liquidating Trust Oversight Committee when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Liquidating Trust Oversight Committee, unless: (i) such member of the Liquidating Oversight Trust Committee objects at the beginning of the meeting (or promptly upon his or her arrival) to holding it or transacting business at the meeting; (ii) his or her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he or she delivers written notice (including by electronic or facsimile transmission) of his or her dissent or abstention to the Liquidating Trust Oversight Committee before its adjournment. The right of dissent or abstention is not available to any member of the Liquidating Trust Oversight Committee who votes in favor of the action taken.

(c)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Liquidating Trust Oversight Committee shall report to the Liquidating Trust Oversight Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Liquidating Trust Beneficiary). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote with respect to such matter or issue (however, such member shall be counted for purposes of determining the existence of a quorum and may engage in the Liquidating Trust Oversight Committee's discussions

- 20 -

on such matter or issue); the vote or action with respect to such matter or issue shall be undertaken only by members of the Liquidating Trust Oversight Committee who are not "conflicted members." Notwithstanding anything to the contrary set forth herein, no member of the Liquidating Trust Oversight Committee shall be deemed to be a "conflicted member" solely as a result of (i) such member's affiliation with a Person that is a Liquidating Trust Beneficiary, or (ii) such member's affiliation with any Person that is, or is adverse to, a defendant in any of the Causes of Action or in any other action or proceeding.

4.9     Manner of Acting.

Any action required or permitted to be taken by the Liquidating Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Liquidating Trust Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Liquidating Trust Oversight Committee and recorded in the minutes or other transcript of proceedings of the Liquidating Trust Oversight Committee.

4.10     Tenure, Removal, and Replacement of the Members of the Liquidating Trust Oversight Committee.

The authority of the members of the Liquidating Trust Oversight Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with Article VII herein.  The service of the members of the Liquidating Trust Oversight Committee will be subject to the following:

(a)     The members of the Liquidating Trust Oversight Committee will serve until Disability, death, resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below;

(b)     A member of the Liquidating Trust Oversight Committee may resign at any time by providing a written notice of resignation to the remaining members of the Liquidating Trust Oversight Committee. Such resignation will be effective upon the date received by the Liquidating Trust Oversight Committee or such later date specified in the written notice;

(c)     A member of the Liquidating Trust Oversight Committee may be removed by the majority vote of the other members of the Liquidating Trust Oversight Committee, a written resolution of which shall be delivered to the removed Liquidating Trust Oversight Committee member; provided, however, that such removal may only be made for Cause;

(d)     In the event of a vacancy on the Liquidating Trust Oversight Committee (whether by removal, Disability, death or resignation), a new member shall be appointed to fill such position by majority vote of the Liquidating Trust Oversight Committee; provided, however, that the Liquidating Trust Oversight Committee shall function with reduced membership until such vacancy is filled;

- 21 -

(e)    Immediately upon the appointment of any successor member of the Liquidating Trust Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Liquidating Trust Oversight Committee hereunder will be vested in and undertaken by the successor member of the Liquidating Trust Oversight Committee without any further act; and the successor member of the Liquidating Trust Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Liquidating Trust Oversight Committee; and

(f)    Every successor member of the Liquidating Trust Oversight Committee appointed hereunder shall execute, acknowledge and deliver to the Liquidating Trustee and other members of the Liquidating Trust Oversight Committee an instrument accepting the appointment under this Liquidating Trust Agreement and agreeing to be bound thereto, and thereupon the successor member of the Liquidating Trust Oversight Committee without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring member.

4.11    Compensation and Reimbursement of Expenses of the Liquidating Trust Oversight Committee.

(a)    **No Compensation.**    The members of the Liquidating Trust Oversight Committee shall serve without compensation.

(b)    **Reimbursement**.    The Liquidating Trust will reimburse, as a Liquidating Trust Expense, the members of the Liquidating Trust Oversight Committee for all reasonable and documented out-of-pocket expenses incurred by such members in connection with the performance of their respective services hereunder, without duplication, upon demand for payment thereof.    Additionally, the Liquidating Trust shall pay, as a Liquidating Trust Expense, the reasonable and documented fees of the LTOC Professionals (including on an hourly, contingency, or modified contingency basis) and reimburse such LTOC Professionals for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Agreement (such fees and expenses, the "**LTOC Professional Fees**"); provided, however, that the LTOC Professional Fees shall be subject to the Liquidating Trustee's review and objection, in accordance with Article V of this Agreement.

**ARTICLE V**
**PROVISIONS REGARDING PROFESSIONAL FEES**

5.1    Fee Statements.

On and after the Effective Date, Trustee Professionals and LTOC Professionals, but not Special Litigation Counsel, as defined in the Plan, shall be required to submit reasonably detailed invoices on a monthly basis (or on such other periodic basis as is agreed between the relevant parties) to the Liquidating Trustee or Liquidating Trust Oversight Committee, as applicable, including in such invoices a description of the work performed, who performed such work, and if

- 22 -

billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.

The fees and expenses of Special Litigation Counsel with respect to the Adversary Proceeding, as defined in the Plan, shall not be paid as Liquidating Trust Expenses and, instead, shall be payable first, and solely from the proceeds, if any, of and from the Adversary Proceeding, as defined in the Plan, as approved by the Bankruptcy Court pursuant to the orders approving their employment as special counsel to the Liquidating Trustee, as amended, and without further application to, or order from, the Court.   *See* [Docket Nos. 1038, 1338]

5.2    Delivery of Fee Statements.

(a)    **Trustee Professional Fees.**  Within five (5) Business Days after receipt of an invoice, fee statement, or demand for payment for Trustee Professional Fees, the Liquidating Trustee shall transmit to the Liquidating Trust Oversight Committee such invoice, fee statement, or demand for payment.

(b)    **LTOC Professional Fees.**  Within five (5) Business Days after receipt of an invoice, fee statement, or demand for payment for LTOC Professional Fees, the Liquidating Trust Oversight Committee shall transmit to the Liquidating Trustee such invoice, fee statement, or demand for payment.

5.3    Right to Object; Limitations.

(a)    **Liquidating Trustee Objection.**  ~~Following~~Other than the fees and expenses of Special Litigation Counsel, and following receipt of an invoice, fee statement, or demand for payment of LTOC Professional Fees in accordance with § 5.2(b), the Liquidating Trustee shall have ten (10) days to object to the LTOC Professional Fees.

(b)    **Liquidating Trust Oversight Committee Objection.**  ~~Following~~Other than the fees and expenses of Special Litigation Counsel, and following receipt of an invoice, fee statement, or demand for payment of Trustee Professional Fees in accordance with § 5.2(a), the Liquidating Trust Oversight Committee shall have ten (10) days to object to the Trustee Professional Fees.

(c)    To be valid, any such objection under the immediately preceding subsections (a) or (b) must be in writing and set forth in detail the specific fees objected to and the basis for the objection. Further, the objection must be lodged by giving notice of the objection to the LTOC Professional and/or Trustee Professional seeking reimbursement.

(d)    Any objection under this § 5.2 that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution; provided, however, that the uncontested portion of each invoice shall be paid no later than twenty (20) days after its delivery to the Liquidating Trust Oversight Committee and/or the Liquidating Trustee, as applicable.

38132473

5.4     Fees as Liquidating Trust Expenses.

Both Trustee Professional Fees and LTOC Professional Fees shall be Liquidating Trust Expenses and duly payable as such; provided, however, that Trustee Professional Fees shall only be paid out of the Liquidating Trust Expense Reserve.

**ARTICLE VI**
**TAX MATTERS**

6.1     Treatment of Liquidating Trust Assets Transfer.

All parties shall treat, for U.S. federal income tax purposes, the transfer of each of the Liquidating Trust Assets to the Liquidating Trust, including any amounts or other assets subsequently transferred to the Liquidating Trust (but only at such time as actually transferred), as a deemed transfer of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries, followed by a deemed transfer of such Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust.

6.2     Income Tax Status.

(a)     For U.S. federal income tax purposes (and for tax purposes of all state, local and other jurisdictions to the extent applicable), the Liquidating Trust shall be treated as a grantor trust pursuant to IR Code sections 671-677, or any successor provisions thereof. To the extent not otherwise inconsistent with this Agreement, this Agreement shall be construed so as to satisfy the requirements for liquidating trust status. For all purposes of this Agreement, (i) the Liquidating Trust Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Liquidating Trust, and (ii) any items of income, gain, loss, deduction and credit of the Liquidating Trust shall be allocated for U.S. federal income tax purposes to the Liquidating Trust Beneficiaries. The Liquidating Trust shall at all times be administered so as to constitute a domestic trust for U.S. federal income tax purposes.

(b)     In the event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the Liquidating Trustee shall take such action as he or she shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IR Code), including, if necessary, creating or converting it into a limited partnership or limited liability company that is so classified. For federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as the grantors and owners of the Liquidating Trust and, therefore, will be responsible for the payment of tax on their respective allocable share of the taxable income of the Liquidating Trust.

6.3     Treatment of Disputed Claims Reserve.

To the extent the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee, elects to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treas. Reg. section 1.468B-9 by timely making an election thereto, the Liquidating Trustee shall:

38132473

(a) file such tax returns and pay such taxes as may be required consistent with such treatment, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  In the event of such election, to the extent the Disputed Claims Reserve contains insufficient Cash to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, the Disputed Claims Reserve, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

      6.4    <u>Valuation of the Liquidating Trust Assets as of the Effective Date.</u>

Promptly after the Effective Date, the Liquidating Trustee (to the extent the Liquidating Trustee deems it necessary or appropriate after consultation with the Liquidating Trust Oversight Committee) shall determine the final fair market value as of the Effective Date of all Liquidating Trust Assets transferred to the Liquidating Trust, based on the good faith determination of the value of such Liquidating Trust Assets; <u>provided</u> that such valuation can be based on reasonable estimates of the Liquidating Trustee and the Liquidating Trustee does not need to obtain formal appraisals of any Liquidating Trust Assets. The Liquidating Trustee shall provide notice of such valuation to each Liquidating Trust Beneficiary. The Liquidating Trust Beneficiaries, the Liquidating Trust and the Liquidating Trustee will each be required to use such final valuation consistently and solely for all U.S. federal income tax purposes, including for determining tax basis and gain or loss. For the avoidance of doubt, the final valuation shall not be binding on the Liquidating Trust Beneficiaries, the Liquidating Trust or the Liquidating Trustee for any purpose other than U.S. federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority, and privileges of the Liquidating Trust Beneficiaries, the Liquidating Trust or the Liquidating Trustee except with respect to U.S. federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Liquidating Trust that are required by any governmental unit.

      6.5    <u>Tax Returns and Allocations.</u>

      (a)    The Liquidating Trustee shall file U.S. federal income tax returns for the Liquidating Trust as a grantor trust in accordance with United States Treasury Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss, deduction and credit ("**LT Tax Items**"). The Liquidating Trust Beneficiaries shall report such LT Tax Items on their U.S. federal income tax returns and pay any resulting U.S. federal income tax liability. In addition, the Liquidating Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Liquidating Trust shall send to each Liquidating Trust Beneficiary a separate statement setting forth the Liquidating Trust Beneficiary's share of LT Tax Items and will instruct each such Liquidating Trust Beneficiary to report such items on its applicable income tax return. The Liquidating Trust may provide each Liquidating Trust Beneficiary with a copy of the Form 1041 for the Liquidating Trust (without attaching any other Liquidating Trust Beneficiary's Schedule K-1 or other

applicable information form) along with such Liquidating Trust Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

(b)    Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restriction on Distributions described herein) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable losses of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IR Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

6.6    Expedited Determination of Taxes.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under applicable law for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

6.7    Withholding of Taxes; Liquidating Trust Taxes.

(a)    The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions made by the Liquidating Trust to the Liquidating Trust Beneficiaries shall be subject to any such withholding and reporting requirements. Liquidating Trust Beneficiaries will be required to provide to the Liquidating Trustee any information necessary to affect the withholding of such taxes. Without limiting the generality of the foregoing, the Liquidating Trustee may require any Person receiving a Distribution hereunder to furnish to the Liquidating Trustee in writing an employer identification number or taxpayer identification number as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any Distribution to any Person hereunder on receipt of such identification number.

(b)    Notwithstanding the foregoing, each Liquidating Trust Beneficiary that is to receive a Distribution hereunder will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such Distribution, including, without limitation, withholding tax obligations in respect of in-kind (non-cash) Distributions. Any party issuing an instrument or making an in-kind (non-cash) Distribution under the Plan has the right, but not the obligation, to refrain from making such Distribution until the Person to which the Distribution is to be made has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

- 26 -

(c)     To the extent that the operation of the Liquidating Trust or the liquidation of the Liquidating Trust Assets creates a tax liability imposed on the Liquidating Trust, the Liquidating Trust shall timely pay such tax liability and any such payment shall be considered a Liquidating Trust Expense.

## ARTICLE VII
## DISTRIBUTIONS AND CLAIMS RESERVES

### 7.1     No Separate Distribution Agent.

The Liquidating Trustee shall act as the agent for making distributions to the Liquidating Trust Beneficiaries under the Plan and this Agreement.

### 7.2     Distributions under the Plan.

The Liquidating Trustee shall make interim and final Distributions from the Liquidating Trust Assets (including Net Distributable Assets) in accordance with § 6.4 and Article 7 of the Plan.  The Liquidating Trustee may withhold amounts otherwise distributable to any Person that the Liquidating Trustee determines, in his or her reasonable sole discretion, are required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

### 7.3     Timing of Distributions.

Distributions to Liquidating Trust Beneficiaries shall be made as and when provided in the Plan; provided, however, that, to the extent not yet paid, the Liquidating Trustee shall remit payment to all Professionals on accountthe Holders of any unpaidAllowed Professional Compensation Claims in the amounts set forth in any Final Order allowing such Professional Compensation Claims and no later than ten (10) business days following the entryaccordance with § 3.1.3 of any such Final Order.the Plan.

### 7.4     Disputed Claims Reserve.

The Liquidating Trustee shall establish a Disputed Claims Reserve, which shall be for the payment of any Disputed Claim if and to the extent such Disputed Claim becomes an Allowed Claim. The amount set aside in the Disputed Claims Reserve for any such Disputed Claim shall be the amount that would be distributed on account of such Claim if it were an Allowed Claim in the lower of: (a) (i) the amount set forth in the Proof of Claim Filed by the Holder of such Claim, or (ii) if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed; and (b) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to § 8.6 of the Plan.

### 7.5     Administrative and Priority Claims Reserve.

The Liquidating Trustee shall establish an Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be for the payment of all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Allowed but unpaid, other than

- 27 -

Subordinated Equity Committee Professional Claims, regardless of whether such Claim is Allowed (but unpaid) before, on, or after the Effective Date. The amount of the Administrative and Priority Claims Reserve shall be based on the Liquidating Trustee's good faith estimate of the amount necessary to pay all present and anticipated Allowed Administrative Expense Claims, Priority Claims, and Priority Tax Claims against the Debtors, other than Subordinated Equity Committee Professional Compensation Claims. Notwithstanding anything to the contrary in the foregoing, funding for all Administrative Expense Claims, Priority Claims, and Priority Tax Claims that are Disputed shall be allocated pursuant to § 7.4.2 of the Plan.

7.6    U.S. Trustee Fees.

The Liquidating Trustee shall timely pay all U.S. Trustee Fees (for each Debtor's Estate) as and when due until entry of a Final Decree (or the Chapter 11 Cases are otherwise closed). U.S. Trustee Fees shall be payable from the Liquidating Trust Assets.

7.7    Delivery of Liquidating Trust Distributions.

All Distributions under this Agreement to any Liquidating Trust Beneficiary shall be made to the most current of the following: (i) at the address set forth on any Proof of Claim or Interest; (ii) any address Filed by a Liquidating Trust Beneficiary and served on the Liquidating Trustee; (iii) at the address reflected in the Schedules if no Proof of Claim has been Filed and/or no address has been Filed and served on the Liquidating Trustee; and (iv) the last known address of such Liquidating Trust Beneficiary if none of (i) – (iii) apply.

7.8    Undeliverable Distributions.

If any Distribution or other payment due to a Liquidating Trust Beneficiary is returned for lack of a current address or otherwise (as such, an "**Undeliverable Distribution**"), the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Liquidating Trust Beneficiary and the reason for its inability to make payment. In the event of an Undeliverable Distribution, no further Distribution to such Liquidating Trust Beneficiary shall be made until and unless the Liquidating Trustee has determined the then current address of such Liquidating Trust Beneficiary, at which time such Distribution shall be made to the Liquidating Trust Beneficiary without interest; provided, however, that such Undeliverable Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable date of attempted Distribution. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandonment, or unclaimed property laws to the contrary) and become a Liquidating Trust Asset; and the Claim or Interest of any Liquidating Trust Beneficiary to such property or interest in property shall be released, settled, compromised, and forever barred.

7.9    General Distribution Provisions.

(a)    **Disputed Payments.** If any dispute arises as to the identity of a Liquidating Trust Beneficiary that is to receive any Distribution, the Liquidating Trustee may, in lieu of making

- 28 -

such Distribution to such Liquidating Trust Beneficiary, make such Distribution into an escrow account or otherwise hold such Distribution until the disposition thereof is determined by the Bankruptcy Court or by written agreement by and among the interested parties to such dispute.

(b)    **Record Date for Distributions.**  All Distributions made by the Liquidating Trustee shall be payable by the Liquidating Trustee directly to the Liquidating Trust Beneficiaries of record (and at the addresses provided) as of the twentieth (20th) day prior to the date scheduled for Distribution.

(c)    **Fractional Distributions.**  Notwithstanding any other provision herein to the contrary, payments of fractions of dollars by the Liquidating Trustee shall not be required. Whenever any Distribution of a fraction of a dollar would be required, the Distribution will instead be rounded to the nearest whole dollar (either up or down), with half dollars being rounded down.

## ARTICLE VIII
## TERMINATION OF LIQUIDATING TRUST

8.1    Duration and Extension.

(a)    The Liquidating Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (i) the distribution of all Liquidating Trust Assets available for Distribution pursuant to the Plan, or (ii) the determination of the Liquidating Trust Oversight Committee that the administration of the Liquidating Trust Assets is not likely to yield additional Distributions; provided, however, that in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    Upon dissolution of the Liquidating Trust, any remaining Cash on hand and other Liquidating Trust Assets will be distributed to the Liquidating Trust Beneficiaries in accordance with the Plan and this Agreement.

(c)    If for any reason the Liquidating Trust shall terminate and be deemed wound up prior to the sale, transfer or other disposition of the Liquidating Trust Assets and entry of a final, non-appealable order resolving all Causes of Action, and receipt by the Liquidating Trust of all amounts to which the Liquidating Trust may be entitled, notwithstanding anything to the contrary set forth herein, the Distribution of any proceeds recovered at any time thereafter shall be made in accordance with the priorities set forth in the Plan.

8.2    Diligent Administration.

The Liquidating Trustee shall (a) not unduly prolong the duration of the Liquidating Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all Causes of Action that constitute Liquidating Trust Assets; and (c) cause the liquidation and Distribution of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.

- 29 -

## ARTICLE IX
## AMENDMENT AND WAIVER

Any substantive provision of this Agreement may be materially amended or waived only by order of the Bankruptcy Court if necessary to implement the Plan; provided, however, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidating Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary to clarify this Agreement or to enable the Liquidating Trust to effectuate the terms of this Agreement, with the consent of the Liquidating Trustee.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1    Intention of Parties to Establish Grantor Trust.

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

10.2    Preservation of Privilege.

In connection with the vesting and transfer of the Liquidating Trust Assets, including all Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidating Trust and shall vest in the Liquidating Trust. The Debtors and the Liquidating Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities.

10.3    Confidentiality.

The Liquidating Trustee and Liquidating Oversight Committee (and the members thereof) and each of his, her, or their respective employees, members, agents, professionals and advisors, including the Trustee Professionals and the LTOC Professionals, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidating Trust Assets relates; provided, however, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including, but not limited to, subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to clause (b) above, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee and the Liquidating Trust Oversight Committee to allow them sufficient time to object to

- 30 -

or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidating Trustee and/or the Liquidating Trust Oversight Committee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

10.4    Laws as to Construction.

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of law.

10.5    Severability.

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

10.6    Notice.

(a)    **To the Liquidating Trustee and Liquidating Trust Oversight Committee.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the third (3rd) Business Day after such notice is delivered by (i) facsimile (at the number set forth below with proof of confirmation), (ii) overnight delivery, (iii) electronic mail, or (iv) certified mail, with return receipt requested at the address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**As to the Liquidating Trustee:**

Michael Moecker & Associates, Inc., Attention: Mark C. Healy, 841 Prudential Drive, 12th Floor, Jacksonville, FL 32207, Tel: (904) 210-7023, with a copy to: [•].

**As to the Liquidating Trust Oversight Committee**: to the last known address(es) and facsimile number(s) provided by each member of the Liquidating Trust Oversight Committee to the Liquidating Trustee.

(b)    **To a Liquidating Trust Beneficiary.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the fifth (5th) Business Day after deposited, first class postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address as determined in accordance with the Trust Register; provided that general notices to all Liquidating Trust Beneficiaries may be made by posting such notice to a website identified in advance for communication with Liquidating Trust Beneficiaries.

38132473

10.7    <u>Survivability.</u>

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidating Trustee.

10.8    <u>Headings.</u>

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.9    <u>Counterparts.</u>

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

10.10    <u>Entire Agreement.</u>

This Agreement (including the Recitals), the Confirmation Order, and the Plan constitute the entire agreement by and among the Parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the Parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the Parties hereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

10.11    <u>Rules of Interpretation.</u>

For purposes of this Agreement, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, subsection or clause contained in this Agreement; (c) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (d) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

*[Signatures on following pages]*

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

PREMIER EXHIBITIONS, INC.

By:_____
Name:
Title:


PREMIER MERCHANDISING, LLC

By:_____
Name:
Title:


PREMIER EXHIBITION MANAGEMENT LLC

By:_____
Name:
Title:


ARTS AND EXHIBITIONS INTERNATIONAL LLC

By:_____
Name:
Title:


PREMIER EXHIBITIONS NYC, INC.

By:_____
Name:
Title:


PREMIER EXHIBITIONS INTERNATIONAL, LLC

By:_____
Name:
Title:

- 33 -

38132473

DINOSAURS UNEARTHED CORP.


By:_____
Name:
Title:




MICHAEL MOECKER & ASSOCIATES, INC.
AS LIQUIDATING TRUSTEE

By: _____
Name: Mark C. Healy

38132473

## EXHIBIT A

(*Intentionally Omitted*)