## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION
#### www.flmb.uscourts.gov

*In re:*                                                    Case No.: 3:16-bk-2232-JAF

PREMIER EXHIBITIONS, INC., et. al.,          Chapter 11

     Debtor.                         /

## RESPONSIBLE PERSON'S MOTION TO APPROVE SETTLEMENT AGREEMENT AND AUTHORIZE DISBURSEMENT OF CONTINGENCY FEE AND REIMBURSEMENT OF EXPENSES TO SPECIAL LITIGATION COUNSEL

MARK C. HEALY, in his capacity as Court-Appointed Responsible Person (the "Responsible Person"), by and through his undersigned counsel, Agentis, PLLC and Cimo Mazer Mark, PLLC (when Agentis, PLLC and Cimo Mazer Mark, PLLC, and all counsel employed by them are referred to collectively, "Special Litigation Counsel"), and pursuant to Fed. R. Bankr. P. 9019, as well as the prior orders of this Court, moves for the entry of an order approving the Settlement Agreement attached hereto as **Exhibit "A"** by and between (i) the Responsible Person; (ii) Mark A. Sellers, Douglas Banker, Richard Kraniak, and Jack H. Jacobs (individually a "Settling Insured" and collectively, the "Settling Insureds"); and (iii) National Union Fire Insurance Company of Pittsburgh, PA (the "Insurer") (the Responsible Person, the Settling Insureds, and the Insurer shall sometimes collectively be referred to herein as the "Parties"). The Responsible Person also seeks authority from the Court to disburse the Contingency Fee, as further defined below, and to reimburse expenses to Special Litigation Counsel.

### BACKGROUND

1.      On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The factual

background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of this bankruptcy case, as alleged by the Debtors, are set forth in detail in the Chapter 11 Case Management Summary [D.E. # 8] (the "Case Summary").

2.      Pursuant to an Order dated July 21, 2016 [D.E. # 100], the cases were jointly administered under the lead case *In re Premier Exhibitions, Inc.*, Case No. 3:16-bk-02230 (collectively, the "Chapter 11 Cases").[1]  As set forth below (and in greater detail in the Disclosure Statement), the Debtors sold substantially all of their assets during these Chapter 11 Cases and no longer engage in any business activities.

3.      On August 24, 2016, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") [D.E. # 167].  The Equity Committee undertook an investigation of certain causes of action, including potential claims against the Debtors' former or current directors, officers, managers, control persons, and/or employees (the "D&O Claims").

4.      As fiduciaries to the Chapter 11 Cases, the Debtors and the Official Committee of Unsecured Creditors (the "UCC") were obligated to investigate and pursue such D&O Claims on behalf of the bankruptcy estates (the "Estate"), but refused to do so.  Accordingly, on May 11, 2018, the Equity Committee filed the *Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estates* [D.E. # 1015], seeking derivative standing to prosecute and potentially settle the D&O Claims.  On that same date, the Equity Committee also filed the *Application for Approval of Employment of Robert P. Charbonneau, Esq. and the Law*

---

[1]  The RMS Titanic, Inc., Case No.: 3:16-bk-02330 (the "RMS Case") was dismissed on March 11, 2019 [D.E. # 1336]. Unless otherwise noted, all references to filings in this Motion refer to filings in the RMS Case.



*Firm of Agentis PLLC as Special Litigation Counsel For The Official Committee of Equity Security Holders Nunc Pro Tunc to May 2, 2018* [D.E. # 1017].

5.       The Debtors, supported by the UCC, objected to the Equity Committee's pursuit of standing to prosecute the D&O Claims and its retention of Special Litigation Counsel, arguing that the Court should stay any prosecution of the D&O Claims [D.E. #1029]. Notably, certain directors of the Debtors were at that time and continue to be defendants and/or targets of the D&O Claims, and were indisputably conflicted in making any decisions relating to the Equity Committee's request for derivative standing.

6.       On May 25, 2018, the Court granted derivative and exclusive standing to the Equity Committee to commence, prosecute, and, if appropriate, settle the D&O Claims for the benefit of the Estate [D.E. #1036].

7.       On June 5, 2018, the Equity Committee filed its *Adversary Complaint and Demand for Jury Trial*, initiating an adversary proceeding to pursue certain D&O Claims, Case No. 3:18-ap-00064-PMG (the "D&O Adversary Proceeding").

8.       On January 25, 2019 the Court entered the *Consent Order Granting Motion to Appoint a Responsible Person As Substitute Plaintiff In The Adversary Proceeding Against Certain of the Debtors' Current and Former Directors and Officers* [D.E. # 25, D&O Adversary Proceeding.] Pursuant to this order, the Responsible Person was appointed and substituted as the plaintiff in the D&O Adversary Proceeding with "all rights, powers and remedies granted to the Equity Committee under" the order granting standing to pursue the D&O Claims to the Equity Committee.

9.       On March 14, 2019, the Court entered the (i) *Final Order Approving Responsible Person's Application (I) to Approve Employment of Robert P. Charbonneau, Esq., and the Law*

3



*Firm of Agentis, PLLC, as Special Litigation Counsel to the Responsible Person; (II) to Modify*

*the Terms of Said Employment; and (III) to Approve the Terms of the Agreement Between Robert*

*P. Charbonneau, Esq., and the Law Firm of Agentis, PLLC, and Jason S. Mazer, Esq., and the*

*Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel* [ECF # 1338]; and (ii)

the *Final Order Approving Responsible Person's Application to Approve Employment of Jason*

*S. Mazer, Esq., and the Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel*

*to the Responsible Person* [D.E. #1314]. The two, foregoing orders approved a total contingency

fee (the "Contingency Fee") of 40%, to be equally allocated between Agentis, PLLC, and Cimo

Mazer Mark, PLLC, and to reimburse expenses incurred.

## THE PRE-MERGER D&O INSURANCE POLICY AND
## DEFENSE COSTS STAY RELIEF

10.     Prior to the Petition Date, the Insurer issued an Executive Edge Broad Form

Management Liability Policy, which includes, among other coverages, Insured Person and

Organization Coverage ("D&O Coverage Part"), Policy No. 02-420-14-17 (the "Policy"), to the

Debtors, with the Policy having a combined maximum aggregate limit of liability of $5,000,000

pursuant to Run-Off Endorsement No. 27.

11.     The Policy provides specified insurance coverage for acts and omissions by

Insured Persons prior to November 1, 2015.

12.     The Policy is a "wasting asset" insurance policy under which Defense Costs

reduce the $5 million limit of liability dollar-for-dollar.

13.     On October 23, 2017, the Court entered an order lifting the automatic stay with

respect to the advancement of Defense Costs pursuant to the terms and conditions set forth

therein [D.E.# 784].

4



14.     To date, upon information and belief, no less than $850,000 of the $5,000,000 Policy limits has been depleted by Defense Costs.

## THE D&O MEDIATION CONFERENCE

15.     On July 24, 2019, the Responsible Person and the Defendants in the D&O Adversary Proceeding, including the Settling Insureds, participated in a mediation conference (the "Mediation") in Miami, Florida before former Miami-Dade Circuit Court Judge Herbert J. Stettin (the "Mediator") in connection with their respective asserted claims and defenses, and, thereafter, the Parties engaged in continuing mediation settlement discussions in connection with certain D&O Claims under continued supervision and auspices of the Mediator.

16.     Such Mediation and continued mediation negotiations resulted in the successful settlement of certain D&O Claims, which is the subject of this Motion.

## THE SETTLEMENT

17.     Through this Motion and the proposed Settlement, the Parties seek to resolve certain D&O Claims with the Settling Insureds and Insurer to, *inter alia*, avoid the expense, risk, difficulties, delays, and uncertainties of litigation. The following is a summary of the material terms of the Settlement Agreement reached by the Parties[2].

     a.  Insurer will pay to the Responsible Person, on behalf of the Settling Insureds, the total amount of Two Million Seven Hundred and Fifty Thousand Dollars ($2,750,000) within ten (10) days of the Final Order[3];

     b.  Cooperation by Settling Insureds and retention of all legal process rights as set forth in paragraph 7 of the Settlement Agreement;

---

[2] The full Settlement Agreement is attached as Exhibit "A". To the extent the summary of settlement terms referenced in this Motion is inconsistent with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control.

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.



    c.   Responsible Person release to Settling Insureds, and Insurer as set forth in paragraph 3 of the Settlement Agreement;

    d.   Settling Insureds and Insurer release to Responsible Person, Debtors, and Debtors' Estate as set forth in paragraph 4 of the Settlement Agreement;

    e.   Dismissal of Settling Insureds from the D&O Adversary Proceeding as set forth in paragraph 6 of the Settlement Agreement;

    f.   Agreement to lift of automatic stay as set forth in paragraph 3 of the Settlement Agreement; and

    g.   The Responsible Person shall file a Motion pursuant to Bankruptcy Rule 9019 and obtain a Final Order approving the Settlement Agreement, which Final Order shall be binding upon the Estate and any and all successor fiduciaries of the Estate, including but not limited to Mr. Healy in his capacity as post-confirmation Liquidating Trustee.

## RELIEF REQUESTED AND BASIS THEREFOR

18.    The Responsible Person respectfully requests the Court enter an Order: (i) approving the Settlement Agreement in all respects, and (ii) authorizing the Responsible Person to disburse the Contingency Fee and to reimburse expenses to Special Litigation Counsel.

19.    The Responsible Person submits that the terms of the Settlement Agreement are fair and equitable, and its approval is in the best interest of the Estate and creditors.

20.    In particular, approval of the Settlement Agreement will enable the Estate to avoid the uncertainty of further litigation of those certain D&O Claims which are the subject of this settlement, and the costs of such litigation, which are considerable given that the litigation involves a number of officers and directors, and given the significant factual and expert discovery and substantial fact and expert witness testimony through trial, which would be required. These substantial costs borne by the Bankruptcy Estate would be in addition to the opportunity costs in the form of depletion of the Policy absent approval of the Settlement.

6



21.     Early resolution upon the favorable terms set forth in the Settlement Agreement are therefore in the best interests of the Estate.

### A.     The Settlement Meets the Applicable Legal Standard for Approval

22.     Bankruptcy Rule 9019(a) grants the bankruptcy court the power to approve settlements and compromises. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005). Specifically, Bankruptcy Rule 9019 provides, in relevant part, that "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

23.     Approval of a settlement in bankruptcy proceedings is within the sound discretion of the Court and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *See In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). In determining the reasonableness of a settlement, the test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *Id.* at 891; *see also In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

24.     The legal standard for approval of settlements in the Eleventh Circuit is set forth in *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990). The standard set forth in *Justice Oaks* requires that the Court consider the:

(a)     probability of success in litigation;

(b)     difficulties, if any, to be encountered in the matter of collection;

(c)     complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and

(d)     paramount interest of the creditors and a proper deference to their reasonable views in the premises.

7



25.     In applying the foregoing factors, the Responsible Person submits that the Settlement Agreement falls well within the requisite "range of reasonableness" and also satisfies the legal standard set forth in *Justice Oaks* as follows:

(a)     **Probability of Success in Litigation**: Although the Responsible Person believes that he would likely be successful in litigating those certain D&O Claims against the Settling Insureds, litigation with several insureds brings with it considerable factual and legal challenges affecting the odds of success. The claims currently asserted in the D&O Adversary Proceeding include claims for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, gross negligence, and equitable subordination, among others.

The inevitable factual issues involved in establishing personal liability for corporate actors are only multiplied by the number of directors and officers who played a role in the Debtors' downfall and the likely finger-pointing between them. Thus, when balanced, the probability for success should weigh in favor of the Responsible Person, but not without significant hurdles and risk. Accordingly, this factor supports approval of the Settlement.

(b)     **Difficulties, if any, to be Encountered in the Matter of Collection**: Litigation of the D&O Claims which are the subject of the Settlement Agreement would be protracted and take years to resolve. From the Responsible Person's perspective, the wasting asset Policy, the primary source of recovery, and the only director and officer liability Policy

8

providing coverage for acts and omissions prior to November 1, 2015, is at substantial risk of complete depletion absent approval of the Settlement. Upon information and belief, no less than $850,000 in Defense Costs has already been depleted from the $5,000,000 Policy notwithstanding the early stage of the D&O Adversary Proceeding. Accordingly, the Responsible Person is concerned that litigation of the D&O Claims being settled through trial and all appellate levels will result in substantial, if not complete, depletion of the Policy. The Responsible Person would then be left to seek recovery through post-judgment collection efforts against the individual directors and officers with substantial collection risk. Accordingly, this factor supports approval of the Settlement.

(c)  **Complexity of the Litigation Involved:**  The D&O Claims which are the subject of the Settlement are complex.  Because this type of litigation is highly fact-driven, litigation would be extensive and time consuming, and the potential to resolve fact issues by dispositive motions is limited, rendering this a case that, if not settled, would likely need to be tried. Consequently, throughout the process, the litigation itself would be costly and steadily diminish the primary asset—the Policy insurance proceeds. Accordingly, this factor supports approval of the Settlement.

(d)  **Expense, Inconvenience, and Delay:**  While Special Litigation Counsel is retained on a contingency fee basis, which would serve to reduce the expense to the Estate of litigating the D&O Claims which are the subject of the Settlement, the facts, circumstances, and legal theories which form

9

the basis of the D&O Claims against the Settling Insureds will require, among other tasks, significant factual and expert discovery and substantial fact and expert witness testimony through trial at significant expense to the Estate.  Moreover, even if the Responsible Person prevails at trial, there is a high probability that the matter would be appealed.  These substantial costs borne by the Bankruptcy Estate would be in addition to the opportunity costs in the form of depletion of the Policy absent approval of the Settlement. The Settlement Agreement, if approved by the Court, will go far in preserving and maximizing the available insurance proceeds under the Policy for the benefit of creditors, rather than denying the creditors any benefit of the Policy in lieu of diverting all of its value for Defense Costs. Moreover, the early resolution allows for a much more expedient distribution to creditors, rather than delaying recovery for several years while litigation proceeds. Accordingly, this factor supports approval of the Settlement.

(e)     **Paramount Interest of the Creditors**:  The approval of the Settlement Agreement is in the best interest of creditors and all parties in interest.  A final resolution of those certain D&O Claims which are the subject of the Settlement Agreement, without further litigation, will result in substantial economic benefit to the Estate likely resulting in creditors receiving a distribution much sooner than if the matters were delayed by proceeding through continued litigation. Accordingly, this factor supports approval of the Settlement.

agentis

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

26.    Based on the foregoing, the Responsible Person respectfully submits that there is good and sufficient cause for the Court to approve the Settlement Agreement.

**B.    Disbursement of Contingency Fee and Reimbursement of Expenses to Special Litigation Counsel**

27.    Pursuant to the orders entered by the Court authorizing the retention of Agentis, PLLC and Cimo Mazer Mark, PLLC, Special Litigation Counsel are entitled to payment of (a) $1,100,000.00, representing a total Contingency Fee of 40% of the Settlement Payment, and (b) reimbursement of actual costs and expenses.  The Contingency Fee shall be equally allocated between the two firms.

28.    Documentation of the costs incurred by Agentis, PLLC and Cimo Mazer Mark, PLLC, in connection with this representation is attached as **Exhibit "B".**

29.    Accordingly, to the extent the Court entered an Order approving the Settlement Agreement, the Responsible Person requests that the Order also approve and authorize payment of Special Litigation Counsel's (i) earned 40% Contingency Fee in the amount of $1,100,000, to be allocated equally between the two firms, and (ii) costs incurred in connection with this matter as set forth in the attached Exhibit "B".

**WHEREFORE,** the Responsible Person respectfully requests that this Court enter an Order (a) approving the Settlement Agreement; (b) granting this Motion; (c) authorizing the Responsible Person to pay the Contingency Fee and reimbursement of expenses to Special Litigation Counsel; and (d) granting any further relief as the Court deems appropriate.

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on September 26, 2019.

| **AGENTIS, PLLC**<br>*Co-Counsel for Mark C. Healy as Responsible Person*<br>55 Alhambra Plaza, Suite 800<br>Coral Gables, Florida 33134<br>Tel.:    305.722.2002<br>www.agentislaw.com<br><br>By:    */s/ Robert P. Charbonneau*<br>      Robert P. Charbonneau<br>      Florida Bar No.: 968234<br>      rpc@agentislaw.com | **CIMO MAZER MARK PLLC**<br>*Co-Counsel for Mark C. Healy as Responsible Person*<br>100 SE 2nd Street, Suite 3650<br>Miami, Florida 33131<br>Tel.:    305.374.6481<br>www.cmmlawgroup.com<br><br>By:    */s/ Jason S. Mazer*<br>      Jason S. Mazer<br>      Florida Bar No.: 149871<br>      jmazer@cmmlawgroup.com<br>      David C. Cimo, Esq.<br>      Florida Bar No.: 775400<br>      dcimo@cmmlawgroup.com<br>      Marilee A. Mark, Esq.<br>      Florida Bar No.: 725961<br>      Email: mmark@cmmlawgroup.com |
|---|---|

## DECLARATION

Filer's Attestation: Pursuant to Local Rule 1001-2(e)(3) regarding signatures, I, Robert P. Charbonneau do attest that concurrence in the filing of this paper has been obtained.

By:  */s/ Robert P. Charbonneau*
      Robert P. Charbonneau
      Florida Bar No: 968234
      rpc@agentislaw.com



# Exhibit "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
(JACKSONVILLE DIVISION)
www.flmb.uscourts.gov

In re:

CASE NO. 3:16-BK-002230-JAF
CHAPTER 11
(Jointly Administered)

RMS TITANIC, INC. *et al.*[1]

Debtors

_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter the "Agreement"), dated as of this 18th day of September, 2019, is entered into by and between: (i) Mark C. Healy, in his capacity as Court-appointed responsible person (the "Responsible Person"), designated "Liquidating Trustee" under the filed "Plan" pending confirmation and approval,[2] and fiduciary for the estates (the "Estates") of the above-captioned Debtor, RMS Titanic, Inc., and its jointly administered debtor affiliates (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-captioned case (the "Bankruptcy Main Case"), and  in the capacity as substitute Plaintiff in Adversary Case No. 3:18-00064-JAF (the "D&O Adversary Proceeding"), pending in and before the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court" or "Court"); (ii) Mark A. Sellers, Douglas Banker, Richard Kraniak, and Jack H. Jacobs (individually a "Settling Insured" and collectively, the "Settling Insureds"); and (iii) National Union Fire Insurance Company of Pittsburgh, Pa (the "Insurer") (the Responsible Person, the Settling Insureds, and the Insurer shall sometimes collectively be referred to herein as the "Parties").

## RECITALS

**WHEREAS,** on June 14, 2016 (the "Petition Date"), Debtor Premier Exhibitions, Inc. ("Premier" or the "Company"), a Florida corporation, along with its affiliated debtor subsidiaries and affiliates, filed voluntary Chapter 11 bankruptcies before this Court (the "Bankruptcy Court");

---

[1] The eight Debtors in the chapter 11 cases (sometimes collectively referred to herein as the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: (i) RMS Titanic, Inc. (3162) (ii); Premier Exhibitions, Inc. (4922); (iii) Premier Exhibitions Management, LLC (3101); (iv) Arts and Exhibitions International, LLC (3101); (v) Premier Exhibitions International, LLC (5075); (vi) Premier Exhibitions NYC, Inc. (9246); (vii) Premier Merchandising, LLC (3867); and (viii) Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] The Plan is currently scheduled for confirmation hearing before the Bankruptcy Court on October 11, 2019.

**WHEREAS**, the Insurer issued an Executive Edge Broad Form Management Liability Policy, which includes, among other coverages, Insured Person and Organization Coverage ("D&O Coverage Part"), Policy No. 02-420-14-17 (the "Policy"), to the Debtors, with the Policy having a combined maximum aggregate limit of liability of $5,000,000 pursuant to Run-Off Endorsement No. 27;

**WHEREAS**, by Notice dated August 24, 2016, the Office of the U.S. Trustee (the "UST") appointed the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. (the "Equity Committee") in accordance with 11 U.S.C. § 1102(a). [Main Case ECF No. 166];

**WHEREAS**, by Order dated May 25, 2018, the Bankruptcy Court granted the Equity Committee's motion for standing to pursue all direct and derivative claims held by Premier's shareholders [Main Case ECF No. 1036] (the "Order Granting Standing");

**WHEREAS**, on June 4, 2018, the Equity Committee commenced the D&O Adversary Proceeding against the Settling Insureds, among others. [Adv. Case ECF No. 1];

**WHEREAS**, by Order dated January 25, 2019, Mr. Healy was appointed as the Responsible Person, with the condition that upon the Equity Committee's disbandment, he would immediately: (i) have all rights, powers and remedies granted to the Equity Committee under the Standing Order, and (ii) be substituted as party plaintiff in the D&O Adversary Proceeding. [Adv. Case ECF No. 25] (the "Order Appointing Responsible Person");

**WHEREAS**, by Notice dated February 6, 2019, the UST disbanded the Equity Committee. [Main Case ECF No. 1311];

**WHEREAS**, pursuant to the Order Appointing Responsible Person, Mr. Healy, as the Responsible Person, has all rights, powers, and remedies granted to the Equity Committee under the Standing Order, and is now the duly appointed and acting proper party plaintiff with standing to prosecute the claims that are the subject of the D&O Adversary Proceeding, along with the power, authority, and standing to investigate, prosecute, compromise, and otherwise resolve, any and all claims against the Debtors' former or current directors, officers, managers, control persons, and/or employees, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, or other proceeding in law, equity, or otherwise (collectively, the "D&O Claims");

**WHEREAS**, pursuant to the First Amended Plan of Liquidation of the Debtors Under Chapter 11 of the Bankruptcy Code filed on September 11, 2019 (the "Plan"), Mr. Healy is also designated and appointed as the Liquidating Trustee under that certain Liquidating Trust Agreement to be established under the Plan upon confirmation and approval to hold, among other rights and powers, pursuant to Article 6 of the Plan upon the Effective Date, all rights and causes of actions held by the Debtors or their Estates prior to the Effective Date and will vest Healy as Liquidating Trustee with the power and authority, and standing to investigate,

2

prosecute, compromise and otherwise resolve any and all of the Debtors and their Estates' claims by Healy as the Liquidating Trustee which are the subject of the D&O Adversary Proceeding;

**WHEREAS,** the Insurer advised the Settling Insureds by letter that the Insurer would advance Defense Costs (as that term is defined in the Policy) incurred in defense of the D&O Adversary Proceeding, subject to a reservation of rights. The Insurer's participation in this agreement is without prejudice to its right to maintain its reservations and conclusions and this agreement does not constitute an admission regarding the D&O Claims nor does it have any precedential value in this or any other matter;

**WHEREAS,** on October 23, 2017, the Court entered an order lifting the automatic stay with respect to the advancement of Defense Costs pursuant to certain terms and conditions as set forth therein [Main Case ECF No. 784];

**WHEREAS,** on July 24, 2019, the Responsible Person and the Defendants in the D&O Adversary Proceeding, including the Settling Insureds, participated in a mediation conference (the "Mediation") in Miami, Florida before former Miami-Dade Circuit Court Judge Herbert J. Stettin (the "Mediator") in connection with their respective asserted claims and defenses, and, thereafter, the Parties hereto engaged in continuing mediation settlement discussions in connection with certain D&O Claims under continued supervision and auspices of the Mediator;

**WHEREAS,** the Settling Insureds and the Insurer deny any and all liability in connection with the D&O Claims;

**WHEREAS,** the Parties desire to avoid the delay, cost, and uncertainty of litigation by resolving and settling certain D&O Claims under the terms and conditions set forth herein; and

**WHEREAS,** the Parties wish to set forth the terms of their settlement in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises set forth herein, the Parties agree as follows:

1. **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

2. **Effective Date.** Unless otherwise stated, the obligations, representations, and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

(A) the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Order") approving this Agreement, with the 9019 Order providing that approval of this Agreement and the terms of the 9019 Order shall be binding upon the Estates and any and all successor fiduciaries of the Estates, including but not limited to Mr. Healy in his capacity as post-confirmation Liquidating Trustee;

3

(B) the 9019 Order has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such 9019 Order), or (ii) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the 9019 Order) to which the 9019 Order was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken (upon satisfaction of each condition of Paragraph 2(A) and 2(B) herein, the 9019 Order shall be referred to as the "Final Order"); and

(C) upon receipt and bank clearance of the Settlement Payment (as defined below).

3.    **Responsible Person/Liquidating Trustee Release to Settling Insureds, Insured Persons, and Insurer, Court Approval, and Agreement to Lift of Automatic Stay.** Upon occurrence of the Effective Date, the Responsible Person/Liquidating Trustee, solely in his capacity as Responsible Person/Liquidating Trustee, remises, releases, and forever discharges the Settling Insureds, the Insured Persons[3] (solely in their capacity as such under the Policy and as that term is defined in the Policy), and the Insurer (including the Insurer's predecessors, successors, assignees, affiliates, parents, subsidiaries, reinsurers, excess carriers, shareholders, designees, members, partners, directors, officers, employees, agents, representatives and attorneys), solely in the Insurer's capacity as insurer under the Policy, of and from the D&O Claims and any and all claims, bad faith claims, extra contractual claims, sanctions, damages, demands, suits, debts, actions or causes of action of any kind, both known and unknown, held by the Responsible Person (solely in his capacity as Responsible Person)/Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, and the Debtors' Estate relating to any act or omission by any Settling Insured or Insured Person (solely in their capacity as such under the Policy and as that term is defined in the Policy), or in any way relating to the Debtors, the Debtors' Estate, the Bankruptcy Main Case, or the Policy, including, without limitation, claims sounding in contract, tort, and/or violations of any federal or state statute or regulation, whether at law or in equity, direct or derivative, suspected or unsuspected, that the Responsible Person/Liquidating Trustee ever had or may now or hereafter own, hold, have or claim to have by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date, whether such claim was made or could have been made; provided, however, that nothing contained herein shall release the Insurer or the Settling Insureds from any obligations under this Agreement. In making this release to the Settling Insureds, Insured Persons (solely in

---

[3] "Insured Person" and "Insured Persons" as used herein shall mean and include Insured Person(s) as defined in the Policy as follows: "Insured Person means any (1) Executive of an Organization; (2) Employee of an Organization; or (3) Outside Entity Executive."

their capacity as such under the Policy and as that term is defined in the Policy), and Insurer (solely in the Insurer's capacity as insurer under the Policy), the Responsible Person/Liquidating Trustee understands and acknowledges that he may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agrees that he has taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which he expressly assumes the risk, the Responsible Person/Liquidating Trustee fully, finally, and forever settles and releases any and all claims against the Settling Insureds, Insured Persons (solely in their capacity as such under the Policy and as that term is defined in the Policy), and Insurer (solely in the Insurer's capacity as insurer under the Policy) as set forth herein.

Upon occurrence of the Effective Date, the Responsible Person, solely in his capacity as Responsible Person, and the Liquidating Trustee, solely in his capacity as Liquidating Trustee, further fully releases all claims, rights, or title to any coverage, claims, or proceeds under the Policy which the Debtors, Debtors' Estate, or the Responsible Person/Liquidating Trustee claims to have now or may have in the future concerning the Policy and hereby gives the Insurer a complete and full release under the Policy.

Notwithstanding the foregoing, this Agreement is without prejudice to and nothing herein shall operate or be construed to operate as a compromise, impairment, release, waiver, or as having any effect whatsoever on any and all claims which have been or may be asserted by the Responsible Person/Liquidating Trustee or any successor fiduciary against any parties that are not the Settling Insureds, Insured Persons (in their capacity as such under the Policy and as that term is defined in the Policy), or the Insurer (in the Insurer's capacity as insurer under the Policy). For the avoidance of any doubt, the Release hereby granted by the Responsible Person/Liquidating Trustee (i) applies only to: (a) the Settling Insureds; (b) Insured Persons under the Policy for acts and omissions prior to November 1, 2015; and (c) the Insurer solely under the Policy; and (ii) does not apply to: (a) any current or former directors, officers, managers, or control persons beginning service on or after November 1, 2015 other than the Settling Insureds; or (b) any insurer providing coverage for any current or former directors, officers, managers, or control persons for acts or omissions on or after November 1, 2015.

The Parties agree that: (i) upon satisfaction of each condition of Paragraph 2(A) and 2(B) of this Agreement, the automatic stay shall be lifted, to the extent it may be applicable, to permit the Insurer to make the Settlement Payment set forth in Paragraph 5; and (ii) upon occurrence of the Effective Date (including receipt and bank clearance of the Settlement Payment), the automatic stay shall be lifted, to the extent it may be applicable, to permit the Insurer to pay defense costs going forward or make any other payments, pursuant to the terms of the Policy, without further review or approval by the Bankruptcy Court.

The Responsible Person, solely in his capacity as Responsible Person, and Liquidating Trustee, solely in his capacity as Liquidating Trustee, represents and warrants to the Settling Insureds and Insurer that: (i) he has all right, title, and authority necessary to provide the release given in this Agreement; (ii) he has not assigned, conveyed, sold, or transferred or attempted to

5

assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 3; (iii) he has not commenced and is not prosecuting any arbitration or proceeding against the Settling Insureds, Insured Persons (solely in their capacity as such under the Policy and as that term is defined in the Policy), or the Insurer (solely in the Insurer's capacity as insurer under the Policy) anywhere in the world other than the Debtors' Bankruptcy Main Case including the Adversary Proceeding; and (iv) he has not, and upon occurrence of the Effective Date, will not in the future solicit or accept any assignment of a claim of any kind against the Settling Insureds, the Insured Persons (solely in their capacity as such under the Policy and as that term is defined in the Policy), or the Insurer (solely in the Insurer's capacity as insurer under the Policy).

For the avoidance of any doubt, no provisions of this Paragraph 3 apply to or inure to the benefit of (i) any current or former directors, officers, managers, or control persons beginning service on or after November 1, 2015 other than the Settling Insureds, or (ii) any insurer providing coverage for any current or former directors, officers, managers, or control persons for acts or omissions on or after November 1, 2015.

4.    **Settling Insureds and Insurer Release to the Responsible Person, Liquidating Trustee, the Debtors, and the Debtors' Estate.**  Upon occurrence of the Effective Date, the Settling Insureds and the Insurer (solely in the Insurer's capacity as insurer under the Policy) remise, release, and forever discharge the Responsible Person (solely in his capacity as Responsible Person), the Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, and the Debtors' Estate of and from any and all claims, sanctions, extra contractual claims, damages, demands, suits, debts, actions or causes of action of any kind relating to the Debtors, the Debtors' Estate, the Bankruptcy Main Case, the D&O Claims, or the Policy including, without limitation, claims sounding in contract, tort, violations of any federal or state statute or regulation, contribution, indemnity, and/or any and all claims against the Estate, including any and all pre- or post-petition claims against the Estate of the Debtors, and any and all such claims, to the extent they exist or are claimed to exist, including a claim against the Debtors' Estate for payment of the Settlement Payment pursuant to 11 U.S.C. § 502(d) and (h), whether at law or in equity, direct or derivative, known or unknown, or suspected or unsuspected, that the Settling Insureds or Insurer may now have or may have in the future by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date, whether such claim was made or could have been made; provided, however, that nothing contained herein shall release the Responsible Person/Liquidating Trustee from any obligations under this Agreement. In making this release to the Responsible Person (solely in his capacity as Responsible Person), the Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, and the Debtors' Estate, the Settling Insureds and Insurer understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Settling Insureds and Insurer expressly assume the risk, the Settling Insureds and Insurer fully, finally, and forever settle and release any and all claims against the Responsible Person (solely in his capacity as Responsible Person), the Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, and the Debtors' Estate as set forth herein.

6

The Settling Insureds and Insurer (solely in the Insurer's capacity as insurer under the Policy) represent and warrant to the Responsible Person/Liquidating Trustee that: (i) they have all right, title, and authority necessary to provide the release given in this Agreement; (ii) they have not assigned, conveyed, sold, or transferred or attempted to assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 4; (iii) they have not commenced and are not prosecuting any arbitration or proceeding against the Responsible Person (solely in his capacity as Responsible Person), the Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, or Debtors' Estate anywhere in the world; and (iv) they have not, and upon occurrence of the Effective Date, will not in the future solicit or accept any assignment of a claim of any kind against the Responsible Person (solely in his capacity as Responsible Person), the Liquidating Trustee (solely in his capacity as Liquidating Trustee), the Debtors, or Debtors' Estate.

5.    **Settlement Payment.**  For and in consideration of each of the terms set forth herein, as full and final settlement of certain D&O Claims, and any other potential claims against the Settling Insureds, the Insurer shall pay on the Settling Insureds' behalf the sum of TWO MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($2,750,000.00 U.S.) (the "Settlement Payment"). The Insurer shall pay the Settlement Payment in the form of a check for good and collectable funds made payable to "Mark C. Healy, Responsible Person/Liquidating Trustee," which check shall be tendered to the Responsible Person/Liquidating Trustee at his office address: c/o Mark C. Healy, Chapter 11 Responsible Person/Liquidating Trustee, Michael Moecker & Associates, Inc., 841 Prudential Drive, 12th Floor, Jacksonville, FL 32207, via overnight delivery.  The Insurer shall pay the Settlement Payment within ten (10) days of the Final Order (satisfaction of each condition of Paragraph 2(A) and 2(B) of this Agreement) and receipt of a W-9 for the Responsible Person/Liquidating Trustee, whichever is later.  The Parties understand and agree that no Settling Insured is obligated to make all or part of the Settlement Payment.

6.    **Dismissal of the Settling Insureds**.  Within three (3) business days after the occurrence of the Effective Date, the Responsible Person/Liquidating Trustee or any other successor fiduciary and the Settling Insureds shall file a stipulation of dismissal of the D&O Adversary Proceeding solely as against the Settling Insureds, with prejudice, with all Parties to bear their own legal fees and costs, and expressly acknowledging, stating, and agreeing therein that such dismissal shall NOT settle, release, dismiss, or be deemed an adjudication on the merits with respect to any aspect of or claims against any other parties that are not the Settling Insureds in connection with the D&O Adversary Proceeding or otherwise.

7.    **Cooperation by Settling Insureds and Retention of All Legal Process Rights**. A material inducement to the Responsible Person/Liquidating Trustee entering into this Agreement is the obligation of the Settling Insureds, upon entry of a 9019 Order by the Bankruptcy Court approving this Agreement, to cooperate with the Responsible Person/Liquidating Trustee and any successor fiduciary and their counsel in connection with the D&O Claims that will remain after the dismissal of the claims against the Settling Insureds, as

7

may be amended, or as have been or may otherwise be asserted, against any and all current or former directors, officers, managers, or control persons of the Debtors (excluding the Settling Insureds), by, among other things: (i) making their Premier-related documents available to the Responsible Person, Liquidating Trustee, or any other successor fiduciary and their counsel without formal legal process; and (ii) making themselves available on mutually-agreeable dates for no more than seven hours in total of interviews, either in-person or by telephone, and, if their attendance is requested by counsel for the Responsible Person, Liquidating Trustee, or any other successor fiduciary, only as reasonably necessary at trial. The particulars of the scope and mechanics of such cooperation, including reimbursement by the Responsible Person/Liquidating Trustee of reasonable travel expenses, if any are incurred, as part of the cooperation obligation and trial will be arranged between counsel for the Responsible Person, Liquidating Trustee, or any other successor fiduciary and counsel for the Settling Insureds.

For the avoidance of any doubt, in addition to the foregoing cooperation by the Settling Insureds, the Responsible Person, Liquidating Trustee, or any successor fiduciary retain all legal process rights as to the Settling Insureds, including but not limited to all rights under applicable law to subpoena or notice the Settling Insureds for Rule 2004 examinations, depositions, trial, document production, or any and all other discovery or testimony permitted under applicable law. The Settling Insureds agree that service upon their counsel via email (as set forth in Paragraph 11 below) shall constitute good, sufficient, and proper service of any and all legal process, subpoenas, or notices to be issued by the Responsible Person, Liquidating Trustee, or any successor fiduciary including for testimony, whether by Rule 2004 examinations, depositions, at trial, document production, discovery, or otherwise; provided, however, that the Settling Insureds' agreement to accept service through counsel does not constitute a waiver of whatever legal rights and defenses they may have to object to the subpoena or notice (except an objection based on service).

8.      **Non-Approval.** In the event the Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur, nothing herein shall be deemed a representation or admission by any Party as to any issue, and this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date and the Parties shall be returned to the *status quo* each Party held prior to entry into this Agreement, provided, however, that nothing herein shall operate or be construed to operate as deeming null and void or having any effect whatsoever on any Tolling Agreement(s) or amendments thereto which have been executed or may be executed in the future by any of the Parties and any and all such Tolling Agreement(s) or amendments thereto shall remain in full force and effect and valid and binding on the parties thereto.

9.      **No Admissions.** This Agreement is entered into for settlement and compromise of disputed claims and shall never be treated as an admission by any Party of any liability whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the violation of any law, statute, regulation, duty or contract whatsoever. By entering

into this Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings or litigation and expressly disclaim any liability to any other party or person. This Agreement shall have no precedential value in any other litigation or matter.

10. **Attorneys' Fees and Costs.** Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Agreement, obtaining a Final Order approving the Agreement, the D&O Claims, the D&O Adversary Proceeding, and the Bankruptcy Main Case, except that the Settling Insureds' defense costs are reimbursable according to the terms of the Policy; provided, however, that in no event shall defense costs be paid from the Policy which would deplete the remaining Policy limits below the Settlement Payment amount of $2,750,000.00 as set forth in Paragraph 5 above. Subject to the restrictions and limitations of Paragraph 14 below, in the event that a Party hereto initiates a lawsuit or other proceeding to enforce the provisions of this Agreement or asserts the provisions of this Agreement as a defense to a lawsuit or other proceeding brought by any other Party, the Party prevailing in such lawsuit or civil proceeding shall be paid, in addition to all other sums that may be required to be paid, a reasonable sum for the prevailing Party's attorneys' fees and costs of action, including paralegal fees and any fees and costs on appeal.

11. **Notices.** All notices or information to be provided under this Agreement shall be sent via electronic mail to the following:

      a. The Responsible Person:     Mark C. Healy, Responsible Person

                                          c/o Robert P. Charbonneau, Esq.
                                          Christopher B. Spuches, Esq.
                                          Jason A. Martorella, Esq.
                                          Email: rpc@agentislaw.com
                                          Email: cbs@agentislaw.com
                                        Email: jam@agentislaw.com
                                          AGENTIS, PLLC
                                          55 Alhambra Plaza
                                          Suite 800
                                          Coral Gables, FL  33134

                                          c/o Jason S. Mazer, Esq.
                                          David C. Cimo, Esq.
                                            Marilee A. Mark, Esq.
                                          Email: jmazer@cmmlawgroup.com
                                          Email: dcimo@cmmlawgroup.com
                                          Email: mmark@cmmlawgroup.com
                                          CIMO MAZER MARK PLLC
                                          100 Southeast Second Street
                                          Suite 3650
                                          Miami, FL  33131

9

b.  The Insurer:                    National Union Fire Insurance Company of
                                    Pittsburgh, Pa.

                                    c/o  Catherine Kelleher, Esq.
                                    E. Joseph O'Neil, Esq.
                                    Email: ckelleher@peabodyarnold.com
                                    Email: eoneil@peabodyarnold.com

                                    Peabody & Arnold
                                    Federal Reserve Plaza
                                    600 Atlantic Avenue
                                    Boston, MA  02210-2261

c.  The Settling Insureds:          Lewis F. Murphy, Esq.
                                    Stroock & Stroock & Lavan, LLP
                                    200 S. Biscayne Blvd., Suite 3100
                                    Miami, Fl 33131
                                    Phone: (305) 789 9352
                                    Fax: (305) 789 9302
                                    Cell: (305) 772 2006
                                    Email: Lmurphy@stroock.com
                                    *Counsel for Doug Banker and Richard Kraniak*

                                    Alan F. Curley
                                    Robinson Curley P.C.
                                    300 South Wacker Drive
                                    Suite 1700
                                    Chicago, Illinois 60606
                                    Phone: (312) 663-3100 x204
                                    Fax:    (312) 663-0303
                                    Cell:   (847) 338-9450
                                    Email:  acurley@robinsoncurley.com

                                    and

                                    John T. Rogerson, III
                                    Adams and Reese LLP
                                    501 Riverside Avenue
                                    Suite 601
                                    Jacksonville, FL 32202
                                    John.rogerson@arlaw.com

10

(904) 355-1700
*Counsel for Mark A. Sellers and Jack H. Jacobs*

12.    **Entire Agreement.**  This Agreement constitutes the full agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Agreement, unless expressly set forth herein.  This Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

13.    **Parties Affected.**  The terms of this Agreement shall inure to the benefit of the Parties and their officers, directors, shareholders, employees, partners, attorneys in this matter, professionals, representatives, spouses, trustees, heirs, executors, administrators, successors, and assigns.

14.    **Governing Law/Forum Selection.**  The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Agreement and regarding the interpretation, effectuation, and enforcement of the terms of this Agreement and the Final Order approving this Agreement. The Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose.  This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

15.    **Acknowledgment of Terms.**  The Parties have read and understand the terms of this Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term.  No Party is relying on information provided by or from any other Party in entering this Agreement and there are no duties of disclosure by any Party to any other Party. This Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Agreement.

16.    **Advice of Counsel.**  The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, have read this Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Agreement and its nature and effect. The Parties further represent that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

11

17.    **Severability.**    If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

18.    **Neutral Interpretation.**    In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19.    **Execution of Documents.**    This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement. The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

20.    **Divisions and Headings.**    The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| By: _____ | By: _____ |
|---|---|
| Mark C. Healy, Responsible Person | National Union Fire Insurance Company of Pittsburgh, Pa |
| By: _____ | By: _____ |
| Mark A. Sellers | Douglas Banker |
| By: _____ | By: _____ |
| Richard Kraniak | Jack H. Jacobs |

12

17.    **Severability**.    If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

18.    **Neutral Interpretation**.    In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19.    **Execution of Documents**..    This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement. The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

20.    **Divisions and Headings**.    The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| | |
|---|---|
| By: _____<br>Mark C. Healy, Responsible Person | By: _____<br>National Union Fire Insurance Company of Pittsburgh, Pa |
| By: _Mark A. Sellers (signature)_<br>Mark A. Sellers | By: _____<br>Douglas Banker |
| By: _____<br>Richard Kraniak | By: _____<br>Jack H. Jacobs |

12

17.    **Severability.**    If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

18.    **Neutral Interpretation.**    In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19.    **Execution of Documents.**    This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement.  The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

20.    **Divisions and Headings.**    The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| | |
|---|---|
| By: _____<br>    Mark C. Healy, Responsible Person | By: _Joseph Decaminok_<br>    National Union Fire Insurance Company of Pittsburgh, Pa |
| By: _____<br>    Mark A. Sellers | By: _____<br>    Douglas Banker |
| By: _____<br>    Richard Kraniak | By: _____<br>    Jack H. Jacobs |

12

17.    **Severability.**    If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

18.    **Neutral Interpretation.**    In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19.    **Execution of Documents.**    This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement. The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

20.    **Divisions and Headings.**    The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| By: _____<br>Mark C. Healy, Responsible Person | By: _____<br>National Union Fire Insurance Company of Pittsburgh, Pa |
|---|---|
| By: _____<br>Mark A. Sellers | By: _____<br>Douglas Banker |
| By: _____<br>Richard Kraniak | By: _____<br>Jack H. Jacobs |

17. **Severability.**    If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

18. **Neutral Interpretation.**  In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19. **Execution of Documents.** This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement. The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

20. **Divisions and Headings.**  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| | |
|---|---|
| By: _____<br>Mark C. Healy, Responsible Person | By: _____<br>National Union Fire Insurance Company of Pittsburgh, Pa |
| By: _____<br>Mark A. Sellers | By: _____<br>Douglas Banker |
| By: _____<br>Richard Kraniak | By: _____<br>Jack H. Jacobs |

12

# Exhibit "B"

| | AGENTIS PLLC | |
|---|---|---|
| | **Summary of Requested Reimbursement of Expenses** | |
| | **Exhibit "2"** | |
| | **Decription** | **Amount** |
| 1 | **Filing Fees:** | $350.00 |
| 2 | **Process Service Fees:** | |
| 3 | **Witness Fees** | |
| 4 | **Court Reporter Fees and Transcripts:** | |
| 5 | **Lien & Title Searches** | |
| 6 | **Photocopies**<br>**(a)    In House copies** (2,329 at $.15/ page)     $      349.35<br>**(b)    Outside copies Services**     $      485.12 | $834.47 |
| 7 | **Postage** | $329.61 |
| 8 | **Overnight Delivery Charges: FEDEX** | $102.48 |
| 9 | **Outside Courier/Messenger Service:** | |
| 10 | **Long Distance Telephone Charges**<br>**Conference Call Fees and Court Calls:**<br>                                                                                $44.00 | |
| 11 | **Long Distance Fax Transmissions**<br>**(Copies at $1/page)** | |
| 12 | **Computerized Research:**<br>**PACER/WESTLAW**                                          $1,014.50 | |
| 13 | **Travel**<br>      (a)   Transportation<br>      (b)   Lodging               $      484.54<br>      (c)   Meals                 $       75.68<br>      (d)   Parking for hearings   $       25.00<br>      (e)   Mileage<br>      (f)   Tolls<br>      (g)   Airfare              $    1,869.98 | $2,455.20 |
| 14 | **Miscellaneous**<br>        Travel Expenses              201.91<br>        Mediation             $    3,025.00 | $3,226.91 |
| | **TOTAL EXPENSE REIMBURSEMENT**<br>**REQUESTED** | **$8,357.17** |

# Cimo Mazer Mark PLLC

100 Southeast Second Street
Suite 3650
Miami, FL 33131

---

September 25, 2019

Mark C. Healy, Trustee
Michael Moecker & Associates
Jacksonville, FL 32207
mhealy@moecker.com

Invoice #        0
Client #         H002
Billing through  09/30/2019

**In re: RMS Titanic, Inc.**

## EXPENSES

| Date | Description | Amount |
|---|---|---|
| 02\|13\|2019 | Court Call (March 5, 2019 on Application to Employ CMM) | 37.00 |
| 03\|31\|2019 | Photocopies | 1.05 |
| 03\|31\|2019 | PACER (March - September 25, 2019) | 254.70 |
| 05\|15\|2019 | E-Hounds, Inc. Invoice No. 71332 - Data Coversion Services | 390.00 |
| 08\|30\|2019 | Westlaw Investigative Services | 761.00 |
| 09\|06\|2019 | Federal Express | 1,163.32 |
| | | $2,607.07 |

Billing Summary

| | |
|---|---|
| Total professional services | $0.00 |
| Total expenses incurred | +$2,607.07 |
| Total of new charges for this invoice | |
| Plus net balance forward | +$0.00 |