UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

Premier Exhibitions, Inc., *et al.*,[1]

Debtors.

CHAPTER 11

Case No. 3:16-bk-02232-JAF

(Jointly Administered)

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

COMES NOW Premier Exhibitions, Inc. ("Premier") and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), by and through undersigned counsel, and hereby submits this memorandum of law (the "Memorandum") in support of confirmation of the *First Amended Plan of Liquidation of the Debtors under Chapter 11 of the Bankruptcy Code* [D.E. 183; Schedule 1] (as amended, supplemented, restated, or modified from time to time, the "Plan")[2] pursuant to 11 U.S.C. § 1129. In support of confirmation, the Debtors respectfully represent the following:

### PRELIMINARY STATEMENT

After more than three years post-petition, the Debtors are now positioned to reach the ultimate goal of any chapter 11 case: confirmation of the chapter 11 plan. To that end, the

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is c/o Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

Debtors are proud to present a fair, equitable plan that should be confirmed for the following three reasons.

*First*, **100%** of voting creditors accepted the Plan; the Debtors did not receive one vote to reject the Plan.  Additionally, the Plan has the support of the Creditors' Committee and the Debtors' largest unsecured creditor, 417 Fifth Avenue.

*Second*, this Plan is the product of months of negotiations by and among the Debtors, certain Professionals, the Limited Responsible Person, the Creditors' Committee, and the United States Trustee.  As a result, the Plan includes a proposal to reduce Professional Compensation Claims by over $1,000,000.00, thereby boosting creditor recoveries to an estimated 70% on allowed claims, exclusive of any recovery obtained through the pending D&O Litigation.  And, as a further result, confirmation of the Plan is now uncontested – paving the way for a smooth, efficient transition for the effectiveness of the Plan.

*Finally*, the Plan satisfies the requirements for confirmation under Section 1129 of the Bankruptcy Code.

For these reasons, and as set forth more completely below, the Plan should be confirmed.

## BACKGROUND

1.      The pertinent facts relating to the Debtors' Chapter 11 Cases and the Plan are set forth in the Disclosure Statement; the Plan; the *Declaration of Matthew G. Roberts* [D.E. 214] (the "Roberts Declaration"); the *Declaration of Jessica Leigh Sanders* (the "Sanders Declaration"), attached hereto as **Exhibit A**; the *Declaration of Marshall Glade* (the "Glade Declaration"), attached hereto as **Exhibit B**; and any testimony that will be adduced and submitted at or in connection with the Confirmation Hearing.  Such facts are incorporated herein as though set forth fully and at length.

## ARGUMENT AND CITATION TO AUTHORITY

2.      To achieve confirmation of the Plan, the Court must find that the Plan satisfies Section 1129 of the Bankruptcy Code by a preponderance of the evidence. *See, e.g.*, *In re Winn-Dixie Stores, Inc.*, 356 B.R. 813, 817 (Bankr. M.D. Fla. 2006) ("The Debtors have met their burden of proving each of the elements of Bankruptcy Code section 1129 by a preponderance of the evidence, which is the applicable standard."). As set forth below, the Plan satisfies all of the requirements of Section 1129, and, therefore, the Plan should be confirmed.

## I.    THE PLAN SATISFIES THE REQUIREMENTS UNDER SECTION 1129(a) OF THE BANKRUPTCY CODE.

### A.    Section 1129(a)(1): The Plan Complies with All Applicable Provisions of the Bankruptcy Code.

3.      Pursuant to Section 1129(a)(1) of the Bankruptcy Code, a plan must comply with all "applicable provisions" of the Bankruptcy Code. The legislative history of Section 1129(a)(1) indicates that this provision encompasses the requirements of Bankruptcy Code Sections 1122 and 1123 governing classification of claims and the contents of a plan, respectively. *See* H.R. REP. No. 95-595, at 412 (1977) ("Paragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as section 1122 and 1123, governing classification and contents of plan [*sic*]."). *See also, e.g.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988) ("[T]he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans."). As demonstrated below, the Plan complies fully with the requirements of Sections 1122 and 1123 (as well as with all other applicable provisions of the Bankruptcy Code); therefore, the Plan satisfies Section 1129(a)(1).

40306252

1.    The Plan Complies with Section 1122 of the Bankruptcy Code.

4.    Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Under this section, a plan may provide for multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class.  In addition, substantially similar claims may not be classified separately when it is done for an illegitimate reason.  *See, e.g.*, *In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004) ("The adopted rule of proper classification is that 'dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.'") (quoting *Aetna Cas. & Sur. Co. v. Clerk, United States Bankr. Court (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996)).

5.    Here, the Plan's classification structure is proper and complies with Section 1122(a) of the Bankruptcy Code.  The Plan designates the following four (4) classes of Claims and Interests:[3] Class 1 (Priority Non-Tax Claims); Class 2 (Unsecured Claims); Class 3 (PRXI Equity Interests); and Class 4 (Subsidiary Equity Interests.).  *See* Plan at § 2.3.  This separate classification of Claims against and Interests in the Debtors is based upon the differences in the legal nature and/or priority of such Claims and Interests in accordance with applicable law.  Moreover, each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such Class.  Accordingly, the classification structure set forth in the Plan is proper and satisfies the requirements of Section 1122(a).

---

[3] In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

40306252

2.    The Plan Complies with Section 1123(a) of the Bankruptcy Code.

6.    Section 1123(a) of the Bankruptcy Code sets forth seven (7) requirements with which the proponents of every chapter 11 plan, other than individual debtors, must comply.[4]  As demonstrated herein, the Plan fully complies with each of these enumerated requirements.

a.    *Section 1123(a)(1): Designation of Classes of Claims and Interests.*

7.    Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests subject to Section 1122 of the Bankruptcy Code.  As set forth above, Article 2 of the Plan designates four (4) Classes of Claims and Interests.  *See* Plan at § 2.3. Accordingly, the Plan satisfies the requirements of Section 1123(a)(1).

b.    *Section 1123(a)(2): Classes Unimpaired under the Plan*

8.    Section 1123(a)(2) of the Bankruptcy Code requires a plan to specify any class of claims or interests that is not impaired under the proposed plan.  In accordance therewith, Section 2.3.1 of the Plan specifies that Class 1 (Priority Non-Tax Claims) is unimpaired.  Plan at § 2.3.1.  The Plan, therefore, satisfies the requirements of Section 1123(a)(2).

c.    *Section 1123(a)(3): Treatment of Impaired Classes*

9.    Section 1123(a)(3) of the Bankruptcy Code requires a plan to specify the treatment of impaired classes of claims or interests.  Article 4 sets forth the treatment of Class 2 (Unsecured Claims), Class 3 (PRXI Equity Interests), and Class 4 (Subsidiary Equity Interests), each of which constitutes an Impaired Class under the Plan.  *See* Plan at Art. 4.  Accordingly, the Plan satisfies the requirements of Section 1123(a)(3).

---

[4] Section 1123(a)(8) provides an eighth requirement for individual debtors, which is not applicable in these Chapter 11 Cases and is not, therefore, discussed herein.

40306252

   d. *Section 1123(a)(4): Equal Treatment within Classes*

10. Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment than other class members.  Article 4 of the Plan specifies the treatment of Claims and Interests in each respective Class, and, as required by Section 1123(a)(4), provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  *See* Plan at Art. 4.  Accordingly, the Plan satisfies the requirements of Section 1123(a)(4).

   e. *Section 1123(a)(5): Adequate Means for Implementation*

11. Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation."  11 U.S.C. § 1123(a)(5).  Although the Bankruptcy Code does not define "adequate means," Section 1123(a)(5) lists a number of examples, including, among other things, the transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan.  *See* 11 U.S.C. § 1123(a)(5)(B).  *See also In re Stuart Glass & Mirror, Inc.*, 71 B.R. 332, 334 (Bankr. S.D. Fla. 1987) (noting that the proper test is whether the plan provides adequate means for its execution, not whether alternative means might be available).

12. Here, Article 6 the Plan provides adequate means for its implementation.  Article 6 provides for, among other things: (i) the creation of the Liquidating Trust; (ii) the appointment and duties of the Liquidating Trustee; (iii) the appointment and duties of the Liquidating Trust Oversight Committee; and (iv) the funding of distributions under the Plan.  *See generally,* Plan at Art. 6.  Accordingly, the Plan provides for adequate means for its implementation, as required by Section 1123(a)(5).

40306252

f.     *Section 1123(a)(6): Prohibition of Non-Voting Securities*

13.    Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of nonvoting equity securities and requires amendment of a debtor's charter to so provide.  This section also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power.  The Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors.  *See generally*, Plan. Accordingly, the requirements of Section 1123(a)(6) do not apply to the Plan.

g.     *Section 1123(a)(7): Provisions Regarding Directors and Officers*

14.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).  Under the Plan, a Liquidating Trustee will be appointed and will have the authority to administer Debtors' assets in consultation with the Liquidating Trust Oversight Committee, make distributions to Holders of Allowed Claims, take such other actions as are necessary to carry out the purposes of the Liquidating Trust, and ultimately dissolve the Debtors.  *See* Plan at Art. 6.

15.    These provisions are consistent with the interests of creditors in that, ultimately, the ability to control the disposition and activities in these Chapter 11 Cases is in the hands of the Liquidating Trustee who represents, in a fiduciary capacity, the interests of all creditors. Moreover, because all equity interests will be cancelled by confirmation of the Plan, the reference in Section 1123(a)(7) to the interests of "equity security holders" is inapplicable in these Chapter 11 Cases.  The Plan, therefore, satisfies Section 1123(a)(7), to the extent it applies.

3.    The Plan Complies with Section 1123(b) of the Bankruptcy Code.

16.    Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may (but need not) be included in a plan.  As demonstrated below, each provision of the Plan is consistent with Section 1123(b).[5]

a.    *Section 1123(b)(1): Impairment of Claims and Interests*

17.    Section 1123(b)(1) of the Bankruptcy Code provides that a plan "may impair or leave unimpaired any class off claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  As set forth above, the Plan provides that certain Claims will be Unimpaired (Class 1), whereas other Claims and Interests will be Impaired (Classes 2 through 4).  *See* Plan at Art. 2. Accordingly, the Plan is consistent with Section 1123(b)(1) of the Bankruptcy Code.

b.    *Section 1123(b)(2): Executory Contracts and Unexpired Leases*

18.    Section 1123(b)(2) of the Bankruptcy Code states that a plan may provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code.  The Plan provides that, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease: (1) has been previously rejected, assumed, and/or assumed and assigned by the Debtors; (2) is a contract, lease, or other agreement or document entered into in connection with the Plan; or (3) is an insurance policy pursuant to which the Debtors have any obligations in effect as of the Effective Date, in which case such policy shall be deemed and treated as an executory contract, assumed by the Debtors and assigned to the Liquidating Trust, and continue in full force and effect thereafter in accordance with its respective terms.  *See* Plan at §§ 9.1, 9.2, 10.3.  Accordingly, the treatment of Executory Contracts in the Plan is authorized by, and is consistent with, Section 1123(b)(2).

---

[5] Section 1123(b)(4) does not apply to the Plan.  Therefore, it is not discussed herein.

       c.    *Section 1123(b)(3): Settlement of Claims and Causes of Action*

19.    Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan "may provide for the retention and enforcement by the debtor" of certain claims or interests.  Among other things, the Plan preserves and assigns to the Liquidating Trust all Causes of Action owned by the Debtors or their Estates, except as otherwise provided in the Plan.  *See* Plan at § 6.2.3.  Accordingly, the Plan is authorized by, and consistent with, Section 1123(b)(3).

       d.    *Section 1123(b)(5): Modification of Creditor Rights*

20.    Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5).  As set forth in Article 4 of the Plan, the Plan modifies the rights of Holders of Claims and Interests in Classes 2 through 4.  The Plan leaves unaffected the rights of Holders of Claims in Class 1.  *See generally* Article 4.  Accordingly, the Plan is consistent with Section 1123(b)(5).

       e.    *Section 1123(b)(6): Other Appropriate Provisions*

21.    Section 1123(b)(6) of the Bankruptcy Code is a "catchall" provision which permits inclusion in a plan of "any appropriate provision as long as such provision is not inconsistent with applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6).  Typically, provisions such as retention of jurisdiction and exculpatory clauses are considered "appropriate" and "not inconsistent" within the meaning of Section 1123(b)(6).  *See* 7 Collier on Bankruptcy ¶ 1123.02 (16th ed. 2019) ("Additional provisions that are typical of reorganization plans include . . . provisions for the retention of jurisdiction by the court . . .").  *See also, e.g.*, *In re Winn-Dixie Stores, Inc.*, 356 B.R. 813, 820 (Bankr. M.D. Fla. 2006) ("The indemnification,

40306252

exculpation, release and injunction provisions of the Plan . . . are consistent with Bankruptcy Code sections . . . 1123(b)(6) . . .").

22.    Here, the Plan provides for, among other things, the Court's retention of jurisdiction over certain matters related to the Plan.  *See* Plan at Art. 12.  The Plan also includes an exculpation for certain Exculpated Parties[6] for any potential claims arising out of or relating to the Chapter 11 Cases and the agreements made in connection therewith, except for acts and omissions that are the product of actual fraud, gross negligence, or willful misconduct (the "Exculpation").  Generally, courts approve exculpation provisions where they are appropriately tailored to protect the exculpated parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct.  *See, e.g., In re Calpine Corp.,* No. 05-60200 (BRL), 2007 Bankr. LEXIS 4390, at \*27 (Bankr. S.D.N.Y. Dec. 19, 2007) (approving such a provision).  The Exculpation here is appropriately tailored and is an integral part of the Plan.  *See* Sanders Declaration at ¶ 25.  Moreover, it provides necessary and customary protections to the Exculpated Parties similar in scope and breadth to the exculpation provisions in other chapter 11 plans that this Court has approved.  *See, e.g., In re Winn-Dixie Stores*, 356 B.R. 239, 261 (Bankr. M.D. Fla. 2006) (finding as appropriate an exculpation provision which "limit[ed] liability and provide[d] for an injunction of any right of action against the Debtors, the Reorganized Debtors, their respective subsidiaries, the Creditors Committee, Wachovia, the Indenture Trustee or any of their respective present or former members, officers, directors , . .

---

[6] "Exculpated Parties" are collectively defined as: "(i) effective as of the Effective Date, the Debtors, Jessica Leigh Sanders, in her capacity as an officer of the Debtors, the Debtors' Professionals (acting in such capacity), the members of the Creditors' Committee (acting in such capacity) and the Creditors' Committee's Professionals (acting in such capacity), and the members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity) and (ii) effective as of the D&O Settlement Effective Date with respect to the Pre-Merger D&Os (collectively referred to herein as the "Exculpated D&O Parties", and with the Debtors, Jessica Leigh Sanders, in her capacity as an officer of the Debtors, the Debtors' Professionals (acting in such capacity), the members of the Creditors' Committee (acting in such capacity), the Creditors' Committee's Professionals (acting in such capacity), and the members of the Equity Committee (acting in such capacity) and the Equity Committee's Professionals (acting in such capacity)."  Plan at § 10.2.

40306252

professionals, and agents for any matters related to the Chapter 11 Case or the Plan process except for acts and omissions which [we]re the result of fraud, gross negligence, or willful misconduct."); *In re Fiddler's Creek, LLC*, 2011 Bankr. LEXIS 5726, at *102 (Bankr. M.D. Fla. Aug. 29, 2011) (approving similar provisions); *In re Taylor Bean & Whitaker Mortgage Corp*., Case No. 3:09-bk-07047-JAF, [D.E. 3420 at ¶ 57] (Bankr. M.D. Fla. July 21, 2011) (same).

23.    Accordingly, the retention of jurisdiction and Exculpation each is consistent with the Bankruptcy Code and complies with applicable case law.  As such, both should be approved.

24.    Based upon the foregoing, the Plan complies fully with the requirements of Section 1122 and 1123.  The Plan, therefore, satisfies Section 1129(a)(1).

**B.    Section 1129(a)(2): The Debtors Have Complied with the Provisions of the Bankruptcy Code.**

25.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code.  The legislative history of Section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under the Bankruptcy Code.  H.R. REP. No. 95-595, at 412 ("Paragraph (2) [of Section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").  *See also In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) ("[T]he principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of Section 1125 in the solicitation of acceptances to the plan.").

26.    The Debtors (as Plan Proponents) have complied with the applicable provisions of the Bankruptcy Code, including the provisions of Section 1125 regarding disclosure and plan solicitation.  Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before

such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

27.     In these Chapter 11 Cases, the Court entered an Order [D.E. 83] (the "Disclosure Statement Order"), which, among other things, approved: (i) the Disclosure Statement, on a preliminary basis, as containing adequate information under Section 1125 of the Bankruptcy Code; (ii) the Solicitation Packages (as defined in the Disclosure Statement Order) for use in soliciting votes on the *Plan of Liquidation of the Debtors under Chapter 11 of the Banrkuptcy Code* [D.E. 81] (the "Original Plan"); (iii) the notices to be sent to those Holders of Claims or Interests or other parties-in-interest not eligible to vote on the Original Plan (collectively, the "Plan Notices"); and (iv) the rules for tabulating the votes to accept or reject the Original Plan. Subsequently, after the Debtors filed the Plan, the Court entered an Order [D.E. 189] (the "Adjournment Order"), which, among other things: (i) provided that the disposition of any Class 2 Ballots timely cast on the Original Plan controlled with respect to the Plan, unless timely superseded by an Amended Ballot (as defined therein); and (ii) directed the Debtors to serve the Adjournment Notice (as defined therein) on the parties who received Solicitation Packages and/or Plan Notices.

28.     The Debtors promptly transmitted the Solicitation Packages, Plan Notices, and Adjournment Notice to the appropriate recipients in accordance with the Solicitation Procedures Order and Adjournment Order.  *See* Roberts Declaration at ¶¶ 6, 8.  The Debtors did not solicit the acceptance or rejection of the Original Plan (or, to the extent applicable, the Plan) before the approval and transmission of the Disclosure Statement.  *See* Sanders Declaration at ¶ 28. Accordingly, the Debtors have complied with the applicable provisions of Title 11, including

40306252

Section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and, as a result, the Plan meets the requirements of Section 1129(a)(2).

### C.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.

29.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Although the Bankruptcy Code does not define "good faith," courts typically find that "a plan is proposed in good faith 'if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'"  *In re the Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (internal citations omitted).  *See also In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995) ("Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of Section 1129(a)(3) are satisfied.").

30.    The Plan has been proposed in good faith and for the legitimate purpose of winding down the Debtors' estates, distributing the Debtors' assets in accordance with the priority scheme set forth in the Bankruptcy Code, and maximizing the returns available to creditors.  Indeed, the Plan is the product of extensive arms-length negotiations among the Debtors, the Creditors' Committee, the Professionals, and the Debtors' major creditor constituencies.  Moreover, the Plan incorporates an agreement between the Professionals in these Chapter 11 Cases, which agreement reduces outstanding Professional Compensation Claims (entitled to Administrative Expense priority under the Plan) by over $1,000,000.00.  *See* Plan at §§ 3.1.3, 6.4; and supplemental final fee applications filed by certain professionals on or after October 8, 2019.  As a result, distributions to Holders of Allowed Unsecured Claims under the Plan have been boosted to an estimated 70% return, exclusive of any recovery obtained through the pending D&O Litigation.  *See* Glade Declaration at ¶ 9.  Put simply, the Plan is consistent

with the interests of creditors.  The Plan, therefore, satisfies the "good faith" requirement of Section 1129(a)(3).

**D.    Section 1129(a)(4): The Plan Provides for Court Approval of Payment for Professional Fees and Expenses.**

31.    Section 1129(a)(4) of the Bankruptcy Code provides that any payment made or to be made by the plan proponent, the debtor, or a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case or the plan, be subject to approval by the Court as reasonable.  *See* 11 U.S.C. § 1129(a)(4).  This section has been construed to require that all payments of professional fees that are made from estate assets be subject to bankruptcy court review and approval as to their reasonableness.  *See In re Johns-Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986).

32.    The Plan provides for the Court's approval of payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases.  *See* Plan at §§ 3.1.3 and 6.4.  Indeed, the Plan's proposed resolution for Professional Compensation Claims (subject to the Court's approval through confirmation) was a heavily negotiated aspect of the Plan. Accordingly, the Plan satisfies Section 1129(a)(4).

**E.    Section 1129(a)(5): The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders.**

33.    Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the

40306252

reorganized debtors.  *See* 1129(a)(5).  *See also In re Atlanta Southern Business Park*, 173 B.R. 444, 452 (Bankr. N.D. Ga. 1994).

34.     Sections 6.3.1 and 6.2.7(a) of the Plan, respectively, disclose the identities of the initial members of the Liquidating Trust Oversight Committee and the identity of the Liquidating Trustee.  *See* Plan § 6.3.1 (identifying B.E. Capital Management Fund, LP, Dalian Biotechnique Co., Ltd., and 417 Fifth Avenue LLC as the initial members of the Liquidating Trust Oversight Committee); § 6.2.7(a) (identifying Mark C. Healy of Michael Moecker & Associates as Liquidating Trustee).   Both sections further describe the mechanism for the removal, replacement, and/or succession of the Liquidating Trustee and members of the Liquidating Trust Oversight Committee.  Moreover, the Plan does not provide for the employment of any insiders. The Plan, therefore, satisfies the requirements of Section 1129(a)(5).

**F.      Section 1129(a)(6): Inapplicable.**

35.     Pursuant to Section 1129(a)(6) of the Bankruptcy Code, "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor [must have] approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."  11 U.S.C. § 1129(a)(6).

36.     The Plan does not provide for the change of any rates subject to the oversight of a governmental regulatory commission.  *See generally*, Plan.  Accordingly, Section 1129(a)(6) does not apply to the Plan.

**G.      Section 1129(a)(7): Distributions to Creditors under the Plan Will Not Be Less than a Hypothetical Recovery under a Chapter 7 Liquidation.**

37.     Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part:

   With respect to each impaired class of claims or interests –
   (A)     each holder of a claim or interest of such class –
   (i)     has accepted the plan; or

- 15 -

>          (ii)    will receive or retain under the plan on account of such
>          claim or interest property of a value, as of the effective date of the
>          plan, that is not less than the amount that such holder would so
>          receive or retain if the debtor were liquidated under chapter 7 of
>          this          title          on          such          date          .    .    .

11 U.S.C. § 1129(a)(7).

38.    Section 1129(a)(7) is often referred to as the "best interests test" or the "liquidation test."  *See Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1046 (9th Cir. 2013) (referring to Section 1129(a)(7) as "[t]he so-called 'Best Interest of Creditors' test.").  It focuses on individual dissenting creditors and equity holders rather than classes of claims or interests.  *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The "best interests" test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").  The test requires that "if the holder of a claim impaired under a plan of reorganization has not accepted the plan, then such holder must 'receive . . . on account of such claim . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive . . . if the debtor were liquidated under chapter 7 . . . on such date.'"  *Id.* (quoting 11 U.S.C. § 1129(a)(7)).

39.    Here, the best interests test does not apply to Holders of Claims in Class 1 (Non-Tax Priority Claims) as they are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan.  *See* Plan at § 2.3.1.  *See also* 11 U.S.C. § 1126(f).  The best interests test is satisfied with respect to Class 2 (Unsecured Claims), Class 3 (PRXI Equity Interests), and Class 4 (Subsidiary Interests) because (i) the recovery to Holders of Allowed Class 2 Claims under the Plan exceeds that which would be available under a Chapter 7 liquidation scheme and (ii) Holders of Interests in Classes 3 and 4 would not be entitled to any recovery under Chapter 7.

40.     The Glade Declaration provides the Debtors' Chapter 7 liquidation analysis (as set forth therein, the "Liquidation Analysis").  The Liquidation Analysis demonstrates that all Holders of Impaired Claims and Interests (*i.e.*, Classes 2 through 4) will receive property of a value not less than the value such Holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.  Specifically, Holders of Allowed Unsecured Claims (Class 2) are estimated to receive, under the Plan, an approximately 70% distribution on account of their Allowed Claims, exclusive of any recovery obtained through the pending D&O Litigation.    Glade Declaration at ¶ 8.  This approximately 70% distribution is made possible by, among other things, the voluntary reduction by over $1,000,000 of outstanding Professional Compensation Claims pursuant to Sections 3.1.3(a) and 6.4 of the Plan (defined in the Glade Declaration as the "Global Fee Proposal"), and supplemental final fee applications filed by certain professionals. *See id*. at ¶ 9.  Without the Global Fee Proposal, however, Holders of Allowed Unsecured Claims are estimated to receive an approximately 63.5% distribution on account of their Claims.  *Id.* at ¶ 8.  Because, among other things, the Global Fee Proposal would not be part of any Chapter 7 liquidation, Holders of Allowed Unsecured Claims would receive *less* under a Chapter 7 liquidation than they would under the Plan.[7]  Likewise, Holders of PRXI Equity Interests (Class 3) and Subsidiary Equity Interests (Class 4) would not be better off under a Chapter 7 liquidation because such Holders still would not receive any distribution.

41.     The Plan, therefore, satisfies the best interests test of Section 1129(a)(7).  Holders of Allowed Unsecured Claims stand to receive a greater distribution under the Plan than they would under a Chapter 7 liquidation, and Holders of Interests are not treated any less favorably

---

[7] Additionally, and as set forth in the Glade Declaration, the expenses of a Chapter 7 liquidation, and the attendant delay in distributions to creditors that would certainly accompany a conversion to Chapter 7, likely would reduce recoveries even further.  *See* Glade Declaration at ¶ 12.

40306252

under the Plan than they would be in a Chapter 7 liquidation.  *See* Glade Declaration at ¶ 10.

Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

> **H.      Section 1129(a)(8): Because Classes 3 and 4 Have Been Deemed to Reject the Plan, Plan Acceptance Must Be Measured under Section 1129(b).**

42.      Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests, that (a) such class has accepted the plan, or (b) such class is not impaired under the plan.  *See* 11 U.S.C. § 1129(a)(8).  Pursuant to Bankruptcy Code Section 1126(c), a class of claims accepts a plan if holders of at least two thirds in amount and more than one half in number of claims vote to accept the plan – counting only those claims whose holders actually vote.  *See* 11 U.S.C. § 1126(c).  Under Bankruptcy Code Section 1126(d), a class of interests accepts a plan if holders of at least two thirds in amount of the allowed interests in that class vote to accept the plan.  *See* 11 U.S.C. § 1126(d).

43.      The Plan provides that Classes 2 through 4 are Impaired and that Classes 3 and 4 are deemed to have rejected the Plan.  *See* Plan at § 2.3.  The Plan, therefore, cannot satisfy Section 1129(a)(8) because less than all Impaired Classes have voted to accept the Plan; however, as set forth in Section II. below, the Plan nonetheless satisfies the requirements for confirmation pursuant to Section 1129(b) of the Bankruptcy Code.

> **I.      Section 1129(a)(9): The Plan Provides for Proper Treatment of Priority Claims.**

44.      Section 1129(a)(9) of the Bankruptcy Code requires that holders of allowed claims entitled to priority under Bankruptcy Code Section 507(a) receive specified cash payments under the plan.  Unless the holder of a particular claim agrees to a different treatment with respect to such claim, Section 1129(a)(9) sets forth the treatment the plan must provide.

45.      Section 3.1.1 of the Plan provides that, with the exception of Professional Compensation Claims (which are addressed through the Global Fee Resolution), each Holder of

40306252

an Allowed Administrative Expense Claim will receive payment in full in Cash equal to such Allowed Administrative Expense Claim on the Effective Date of the Plan.  *See* Plan at § 3.1.1. Thus, the Plan satisfies Section 1129(a)(9)(A) of the Bankruptcy Code.

46.    In accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, Section 4.1 of the Plan provides that Holders of Allowed (Non-Tax) Priority Claims shall receive: (a) Cash in an amount equal to the amount of such Allowed Priority Claim on the later of (1) the Effective Date, or as soon as reasonably practicable thereafter, and (2) for Claims that become Allowed Priority Claims, immediately following the date upon which a Claim becomes an Allowed Priority Claim, or as soon as reasonably practicable thereafter; or (b) such other treatment as to render the Allowed Priority Claim Unimpaired under the Plan.  *See* Plan at § 4.1.

47.    Finally, Section 3.3 of the Plan provides that Holders of Allowed Priority Tax Claims shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the Effective Date, but in no event later than the end of five (5) years from the Petition Date.  As to any Priority Tax Claim that will no be paid in full on the Effective Date, the Plan provides for the payment of interest at the applicable statutory rate. *See* Plan at § 3.3.  Accordingly, the Plan complies with the requirements of Section 1129(a)(9) of the Bankruptcy Code.

**J.      Section 1129(a)(10): At Least One Class of Impaired Claims Has Accepted the Plan.**

48.    Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of a plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).

49.    Pursuant to the Plan, Class 2 (Unsecured Claims) is the only Impaired Class entitled to vote on the Plan.  *See* Plan at § 2.3.2.  As set forth in the Roberts Declaration, Class 2

40306252

voted to accept the Plan unanimously.  *See* Roberts Declaration at ¶ 11.  Accordingly, the Plan satisfies Section 1129(a)(10).

**K.    Section 1129(a)(11): The Plan Is Feasible.**

50.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that confirmation of the Plan is "not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

51.    To make this determination, courts assess whether the debtor can realistically carry out provisions of the plan and whether the plan offers a reasonable prospect of success. *See In re IPC Atlanta Ltd. P'ship*, 142 B.R. 547, 560 (Bankr. N.D. Ga. 1992).  Key to this assessment is whether there is a reasonable probability that the provisions of the plan can be performed; the feasibility requirement protects against visionary or speculative plans.  *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985). The feasibility standard, however, is greatly simplified in the context of a liquidating chapter 11 plan.  In this scenario, feasibility is established by demonstrating that "the liquidation itself, as proposed in the plan, is feasible."  *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007).

52.    The liquidation proposed by the Plan is feasible.  As set forth in the Plan and Disclosure Statement, on the Effective Date, the Debtors' remaining assets will vest in the Liquidating Trust for administration and distribution.  *See generally*, Plan at Art. 6.  There is thus nothing contingent or speculative about the Debtors' ability to make the distributions proposed in the Plan, and, consequently, the Plan is feasible.  *See Heritage*, 375 at 312 ("[T]he Second Amended Plan contemplates that all assets (including causes of action) will be transferred to a trust, the trust will pursue certain litigation, and creditors will receive their pro rata share of

whatever money the trust recovers, if any.  That course of action is unquestionably feasible.").

Accordingly, the Plan satisfies Section 1129(a)(11).

**L.      Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid.**

53.      Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan."  11 U.S.C. § 1129(a)(12).   In accordance with Section 1129(a)(12), the Plan provides that: "All fees and charges assessed against the Estate under . . . 28 U.S.C. §§ 1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date or as soon as reasonably practicable thereafter, by the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall pay to the U.S. Trustee the U.S. Trustee Fees, in Cash, until the Chapter 11 Cases are closed, and a Final Decree is entered."  Plan at § 3.2.  The Plan, therefore, satisfies all applicable requirements of Section 1129(a)(12).

**M.      Section 1129(a)(13): Inapplicable.**

54.      Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide "for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 [of the Bankruptcy Code] . . ."  11 U.S.C. § 1129(a)(13).  The Debtors are not (and, as of the Petition Date, were not) obligated to provide any retiree benefits as that term is defined in Section 1114 of the Bankruptcy Code.  Moreover, pursuant to the Plan, the Debtors eventually will be dissolved (and thus will not have any employees post-confirmation).  Section 1129(a)(13) is, therefore, inapplicable to the Plan.

**N.      Section 1129(a)(14): Inapplicable.**

55.      Section 1129(a)(14) of the Bankruptcy Code contains requirements with respect to the payment of domestic support obligations required by statute or by judicial or

administrative order.  *See* 11 U.S.C. § 1129(a)(14).  Because the Debtors are not required to pay any domestic support obligations, Section 1129(a)(14) is inapplicable.

### O.      Section 1129(a)(15): Inapplicable.

56.     Section 1129(a)(15) of the Bankruptcy Code only applies to cases in which the debtor is an individual.  *See* 11 U.S.C. § 1129(a)(15).  The Debtors are not individuals; therefore, Section 1129(a)(15) is inapplicable.

### P.      Section 1129(a)(16): Inapplicable.

57.     Section 1129(a)(16) contains requirements with respect to property transfers made by a "corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16).  Section 1129(a)(16), in other words, applies only to corporations and trusts that are ***not*** "moneyed, business, or commercial." *Id.*  The Debtors, however, are (or were) for-profit organizations.  Accordingly, Section 1129(a)(16) is inapplicable.

## II.     THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENT UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE.

58.     Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a plan in circumstances where fewer than all impaired classes of claims and/or interests accept a plan, as otherwise required by Section 1129(a)(8).  Pursuant to Section 1129(b), a court, on request from the plan proponent, "shall confirm the plan notwithstanding the requirements of [Section 1129(a)(8)] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b).  Thus, under Section 1129(b), the Court may "cram down" a plan over the rejection or "deemed rejection" of a plan by impaired classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes. *See, e.g.*, *Johns-Manville Corp.*, 843 F.2d at 650.

59.     Here, Holders of Interests in Classes 3 (PRXI Equity Interests) and 4 (Subsidiary Equity Interests) are Impaired under the Plan and deemed to reject the Plan.  *See generally*, Plan at Article 2.  Accordingly, the Debtors (as Plan Proponents) invoke Section 1129(b) with respect to Classes 3 and 4.

A.      **Section 1129(b)(1): The Plan Does Not Discriminate Unfairly.**

60.     The unfair discrimination standard of Section 1129(b)(1) ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes.  *See Johns-Manville*, 68 B.R. at 636.  As a general matter, however, a classification scheme does not "unfairly discriminate" if there are reasonable, non-discriminatory reasons for the classification. *See In re Elmwood, Inc.*, 182 B.R. 845, 850 (D. Nev. 1995).  Thus, a plan violates Section 1129(b)(1) only if similar classes are treated differently without a reasonable basis for the disparate treatment.  *Cf. id.*

61.     Here, there are reasonable and nondiscriminatory reasons for the separate classification of Classes 3 and 4, which are the only two classes that have not accepted the Plan (by virtue of their "deemed rejecting" status).  Classes 3 and 4 are comprised of equity interests in Premier and certain of its subsidiaries, respectively; however, the remaining Classes are comprised of claims against the Debtors.  *See generally*, Plan at Art. 2.  Classes 3 and 4 are thus legally distinct and separate from Classes 1 and 2.  Further, Classes 3 and 4 are legally distinct and separate from one another because Class 4 is comprised of equity interests subordinate to those in Class 3.  Accordingly, separate classification of these Classes is not unfair discrimination, and the Plan complies with Section 1129(b)(1).

B.    **Section 1129(b)(2): The Plan Is Fair and Equitable.**

62.    Section 1129(b)(2)(C) of the Bankruptcy Code sets forth the definition of "fair and equitable" with respect to the treatment of equity interests.  To be "fair and equitable" as to holders of interests, Section 1129(b)(2)(C) requires a plan to provide either: (i) that each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest; or (ii) that a holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.  *See* 11 U.S.C § 1129(b)(2)(C).

63.    Here, the "fair and equitable" rule is satisfied as to Classes 3 and 4.  No interests junior to Classes 3 or 4 will receive or retain any property under the Plan on account of such junior interests.  *See generally*, Plan at §§ 4.3, 4.4.  This is sufficient to meet the requirements of the "fair and equitable" test.  *See Westpointe v. Prarie Prop (In re Westpointe)*, 241 F.3d 1005, 1007 (8th Cir. 2001) (holding that the fair and equitable test was satisfied where no interest junior to the interests of the rejecting class received any property under the plan).  The Plan, therefore, satisfies Section 1129(b)(2)(C).

III.    **THE PLAN SATISFIES THE REMAINING APPLICABLE REQUIREMENTS UNDER SECTION 1129.**

64.    The Plan is the only plan before the Court for confirmation, and accordingly, Section 1129(c) is satisfied or is otherwise inapplicable.  Likewise, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933; therefore, the Plan satisfies the requirements of Section 1129(d).  Finally, these Chapter 11 Cases are not "small business case[s]," as that term is defined in the Bankruptcy Code.  Thus, Section 1129(e) is inapplicable.

40306252

## CONCLUSION

65.     The Plan will bring to a close these Chapter 11 Cases – which have been pending now for over three years and hotly contested for much of that time.  Just as importantly, the Plan is the culmination of substantial negotiation and compromise by and among the Debtors and a number of their constituents, and it has been accepted unanimously by the only Class entitled to vote thereon, recommended by the Creditors' Committee, and endorsed by the Debtors' largest unsecured creditor.  Finally, and as set forth above, the Plan satisfies all requirements of Section 1129 of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request entry of an order confirming the Plan and granting such other relief as may be just and proper.

Dated:     October 10, 2019

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/ *Lee D. Wedekind, III*

Lee D. Wedekind, III, FL Bar No. 670588
50 N. Laura Street
Suite 4100
Jacksonville, FL 32202
Telephone:   904.665.3656
Facsimile:    904.665.3699

*Co-Counsel for Debtors and Debtors in*
*Possession*

-and-

- 25 -

40306252

TROUTMAN SANDERS LLP
Harris B. Winsberg (FL Bar No. 0127190)
Matthew R. Brooks (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:   404.885.3000
Facsimile:    404.885.3900

*Counsel for Debtors and Debtors in Possession*

40306252

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on October 10, 2019.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Jay B. Verona, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
(813) 229-7600
jverona@slk-law.com
*Attorneys for George F. Eyde*
*Orlando, LLC and Louis J. Eyde*
*Orlando, LLC*

Jill E. Kelso, Esq.
Miriam G. Suarez, Esq.
Office of the United States Trustee
400 W. Washington Street, Suite 1100
Orlando FL 32801
(407) 648-6301 ext. 137
jill.kelso@usdoj.gov
Miriam.g.suarez@usdoj.gov
*Attorneys for Guy G. Gebhardt,*
*Acting U.S. Trustee for Region 21*

Ari Newman, Esq.
Greenberg Traurig
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
(954) 768-5212
newmanar@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, High Nature Holdings*
*Limited and PacBridge Capital Partners*
*(HK) Ltd.*

Ari Newman, Esq.
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
newmanar@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, and High Nature Holdings*
*Limited*

Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
*Attorneys for 417 Fifth Avenue Real*
*Estate, LLC*

Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
ajenkins@bushross.com
*Attorneys for Bank of America, N.A.*

Matthew J. Troy, Esq.
U.S. Dept. of Justice
1100 L Street NW, Suite 10030
Washington, DC 20005
(202) 514-9038
matthew.troy@usdoj.gov
*Attorneys for the United States Department
of Commerce, National Oceanic and
Atmospheric Administration*

Kathy A. Jorrie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
(213) 488-7251
Kathy.jorrie@pillsburylaw.com
*Attorneys for AEG Presents, LLC*

Brian D. Equi, Esq.
Goldberg Segalla, LLP
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 458-5608
bequi@goldbergsegalla.com
salamina@goldbergsegalla.com
sherndon@goldbergsegalla.com
*Attorneys for Structure Tone, Inc.*

J. Ellsworth Summers, Jr., Esq.
Burr Forman, LLP
50 N. Laura Street, Suite 3000
Jacksonville, FL 32202
(904) 232-7200
esummers@burr.com
*Attorneys for Michael J. Little*

Norman P. Fivel, Esq.
Assistant Attorney General
Office of the New York State
Attorney General
Civil Recoveries Bureau,
Bankruptcy Litigation Unit
The Capitol
Albany, NY 12224-0341
(518) 776-2264
norman.fivel@ag.ny.gov
*Attorneys for New York Dept. of
Taxation and Finance*

D. Marcus Braswell, Jr., Esq.
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
(305) 529-2801
mbraswell@sugarmansusskind.com
*Attorneys for Theatrical Protective Union,
Local No. One, IATSE*

Chris Broussard, Esq.
Suzy Tate, P.A.
14502 N. Dale Mabry Highway, Suite 200
Tampa, FL 33618
(813) 264-1685
cbrouss@suzytate.com
*Attorneys for The Armada Group GP, Inc.*

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
(904) 358-4000
rrt@tmhlaw.net
*Attorneys for Official Committee of
Unsecured Creditors*

Avery Samet, Esq.
Jeffrey Chubak, Esq.
Storch Amini, PC
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100
asamet@samlegal.com
jchubak@samlegal.com
*Attorneys for Official Committee of*
*Unsecured Creditors*

Jacob A. Brown, Esq.
John B. Macdonald, Esq.
David E. Otero, Esq.
Katherine C. Fackler, Esq.
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
(904) 798-3700
jacob.brown@akerman.com
john.macdonald@akerman.com
David.otero@akerman.com
katherine.fackler@akerman.com
*Attorneys for the Official Committee of*
*Equity Security Holders of Premier*
*Exhibitions, Inc.*

T. David Mitchell, Esq.
Brenner Kaprosy Mitchell, L.L.P.
30050 Chagrin Blvd., Suite 100
Pepper Pike, OH 44124
(216) 292-5555
tdmitchell@brenner-law.com
*Attorneys for CRI Properties, Ltd.*

Peter J. Gurfein, Esq.
Roye Zur, Esq.
Landau Gottfried & Berger LLP
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
(310) 557-0050
pgurfein@lgbfirm.com
rzur@lgbfirm.com
*Attorneys for Official Committee of Equity Security*
*Holders of Premier Exhibitions, Inc.*

Skyler M. Tanner, Esq.
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
tanners@lanepowell.com
beldingt@lanepowell.com
docketing-pdx@lanepowell.com
*Attorneys for Oregon Museum of Science and*
*Industry*

Howard Siegel, Esq.
945 McKinney Street, PMB 434
Houston, TX 77002
(713) 984-4801
howard@eucinv.com
*Attorney for Euclid Investments, LP*
*And Euclid Claims Recovery LLC*

Susan R. Sherrill-Beard, Esq.
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326
(404) 842-7626
sherrill-beards@sec.gov
atlreorg@sec.gov
*Attorneys for U.S. Securities and
Exchange Commission*

Garrett A. Nail, Esq.
John F. Isbell, Esq.
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2900
garrett.nail@thompsonhine.com
john.isbell@thompsonhine.com
*Attorneys for Bay Point Capital Partners, LP*

Steven R. Fox, Esq.
Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316
srfox@foxlaw.com
*Attorneys for Titanic Entertainment
Holdings*

Stephen D. Busey, Esq.
Asghar A. Syed, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
(904) 359-7700
busey@smithhulsey.com
asyed@smithhulsey.com
*Attorneys for the Ad Hoc Group of Equityholders*

Jennifer Feldsher, Esq.
David L. Lawton, Esq.
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 508-6100
Jennifer.feldsher@bracewell.com
David.laweton@bracewell.com
*Attorneys for the Ad Hoc Group of
Equityholders*

Patricia Ann Redmond, Esq.
Stearns Weaver, et al.
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
predmond@stearnweaver.com
*Attorneys for the Trustees of the National Maritime
Museum*

Timothy Graulich, Esq.
James I. McClammy, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Timothy.graulich@davispolk.com
James.mcclammy@davispolk.com
*Attorneys for the Trustees of the National
Maritime Museum*

Jason B. Burnett, Esq.
Ashlea A. Edwards, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
ashlea.edwards@gray-robinson.com
*Attorneys for Ramparts, Inc. d/b/a Luxor Hotel
and Casino*

Steven Z. Szanzer, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Steven.szanzer@davispolk.com
*Attorneys for Royal Museum Greenwich*

Thomas J. Francella, Jr., Esq.
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2000
Tfrancella@cozen.com
*Attorneys for Ian Whitcomb*

Alan F. Curley, Esq.
Alan R. Dolinko, Esq.
Robinson Curley P.C.
300 S. Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 663-3100
acurley@robinsoncurley.com
adolinko@robinsoncurley.com
*Attorneys for Mark A. Sellers, Jack H.
Jacobs and Sellers Capital, LLC*

Robert P. Charbonneau, Esq.
Agentis PLLC
55 Alhambra Plaza, Suite 800
Coral Gables, FL 33134
(305) 722-2002
rpc@agentislaw.com
*Attorneys for Responsible Person Mark C. Healy*

John T. Rogerson, III, Esq.
Jamie W. Olinto, Esq.
Thomas P. White, Esq.
Adams and Reese LLP
501 Riverside Avenue, Suite 601
Jacksonville, FL 32202
(904) 355-1700
John.rogerson@arlaw.com
Jamie.olinto@arlaw.com
Tom.white@arlaw.com
*Attorneys for Mark A. Sellers, Jack H. Jacobs
and Sellers Capital, LLC*

**Via U.S. Mail**

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ABC Imaging
5290 Shawnee Road, Suite 300
Alexandria, VA 22312

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
1619 Broadway
New York, NY 10019

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
543 Broad Street
Augusta, GA 30901

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

Time Out New York
1540 Broadway
New York, NY 10036

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

B.E. Capital Management Fund LP
Thomas Branziel
P.O. Box 206
N. Stonington, CT 06359
*Creditor Committee*

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
*Creditor Committee*

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
*Creditor Committee*

AEG Presents LLC
c/o Managing Member
800 W. Olympic Blvd., Suite 305
Los Angeles, CA 90015

AEG Presents LLC
c/o Managing Member
425 W. 11th Street
Los Angeles, CA 90015-3459

AEG Presents LLC
c/o CT Corporation System, Reg. Agent
ATTN: Amanda Garcia
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

*/s/ Lee D. Wedekind, III*
Attorney