**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov**

*In re:*

Pryxie Liquidation Corp.,*[1]*              Case No.: 3:16-bk-2232-JAF

_____Debtor._____ /   Chapter 11

**RESPONSIBLE PERSON'S MOTION TO APPROVE SETTLEMENT AGREEMENT
WITH SELLERS CAPITAL, LLC AND SELLERS CAPITAL MASTER FUND, LTD.**

***(Hearing requested on January 13, 2020 at 11:00 a.m.)[2]***

MARK C. HEALY in his capacity as Court-Appointed Responsible Person (the

"Responsible Person"), by and through his undersigned counsel, Agentis, PLLC and Cimo

Mazer Mark, PLLC (when Agentis, PLLC and Cimo Mazer Mark, PLLC, and all counsel

employed by them are referred to collectively, "Special Litigation Counsel"), and pursuant to

Fed.  R. Bankr. P. 9019, as well as the prior orders of this Court, moves for the entry of an order

approving the Settlement Agreement attached hereto as **Exhibit "A"** by and between (i) the

Responsible Person; (ii) Sellers Capital Master Fund, Ltd. ("Sellers Fund"), a Cayman Islands

limited company; and (iii) Sellers Capital, LLC ("Sellers LLC"), an Illinois limited liability

company, (the preceding referred together as "Sellers Defendants" and, together with the

Responsible Person, the "Parties").

---

[1]  The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Pryxie Liquidation Corp. (4922); Pryxie Liquidation 1P LLC (3101); Pryxie Liquidation 2A LLC (3101); Pryxie Liquidation 51 LLC (5075); Pryxie Liquidation 3N Inc. (9246); Pryxie Liquidation 4M LLC (3867), and Pryxie Liquidation 6D Corp. (7309). The Debtors' service address is c/o Michael Moecker & Associates, Inc., 841 Prudential Drive, 12th Floor, Jacksonville, Florida 32207.
[2]  A hearing in this case is scheduled on January 13, 2020 at 11:00 a.m., judicial economy suggests this matter be heard contemporaneously.



## BACKGROUND

1.      On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of this bankruptcy case, as alleged by the Debtors, are set forth in detail in the Chapter 11 Case Management Summary [D.E. # 8] (the "Case Summary").

2.      Pursuant to an Order dated July 21, 2016 [D.E. # 100], the cases were jointly administered under the lead case *In re Premier Exhibitions, Inc.*, Case No. 3:16-bk-02230 (collectively, the "Chapter 11 Cases").[3]  As set forth below (and in greater detail in the Disclosure Statement), the Debtors sold substantially all of their assets during these Chapter 11 Cases and no longer engage in any business activities.

3.      On August 24, 2016, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") [D.E. # 167].  The Equity Committee undertook an investigation of certain causes of action, including potential claims against the Debtors' former or current directors, officers, managers, control persons, and/or employees (the "D&O Claims").

4.      As fiduciaries to the Chapter 11 Cases, the Debtors and the Official Committee of Unsecured Creditors (the "UCC") were obligated to investigate and pursue such D&O Claims on behalf of the bankruptcy estates (the "Estate") but refused to do so.  Accordingly, on May 11, 2018, the Equity Committee filed the *Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estates* [D.E. # 1015], seeking derivative standing to

---

[3]  The RMS Titanic, Inc., Case No.: 3:16-bk-02330 (the "RMS Case") was dismissed on March 11, 2019 [D.E. # 1336].  Unless otherwise noted, all references to filings in this Motion refer to filings in the RMS Case.

2



prosecute and potentially settle the D&O Claims.  On that same date, the Equity Committee also filed the *Application for Approval of Employment of Robert P. Charbonneau, Esq. and the Law Firm of Agentis PLLC as Special Litigation Counsel for The Official Committee of Equity Security Holders Nunc Pro Tunc to May 2, 2018* [D.E. # 1017].

5.    The Debtors, supported by the UCC, objected to the Equity Committee's pursuit of standing to prosecute the D&O Claims and its retention of Special Litigation Counsel, arguing that the Court should stay any prosecution of the D&O Claims [D.E. #1029].  Notably, certain directors of the Debtors were at that time and continue to be defendants and/or targets of the D&O Claims and were indisputably conflicted in making any decisions relating to the Equity Committee's request for derivative standing.

6.    On May 25, 2018, the Court granted derivative and exclusive standing to the Equity Committee to commence, prosecute, and, if appropriate, settle the D&O Claims for the benefit of the Estate [D.E. #1036].

7.    On June 5, 2018, the Equity Committee filed its *Adversary Complaint and Demand for Jury Trial*, initiating an adversary proceeding to pursue certain D&O Claims, Case No. 3:18-ap-00064-PMG (the "D&O Adversary Proceeding").

8.    On January 25, 2019 the Court entered the *Consent Order Granting Motion to Appoint a Responsible Person as Substitute Plaintiff In The Adversary Proceeding Against Certain of the Debtors' Current and Former Directors and Officers* [D.E. # 25, D&O Adversary Proceeding.]  Pursuant to this order, the Responsible Person was appointed and substituted as the plaintiff in the D&O Adversary Proceeding with "all rights, powers and remedies granted to the Equity Committee under" the order granting standing to pursue the D&O Claims to the Equity Committee.

3



9.     On March 14, 2019, the Court entered the (i) *Final Order Approving Responsible Person's Application (I) to Approve Employment of Robert P. Charbonneau, Esq., and the Law Firm of Agentis, PLLC, as Special Litigation Counsel to the Responsible Person; (II) to Modify the Terms of Said Employment; and (III) to Approve the Terms of the Agreement Between Robert P. Charbonneau, Esq., and the Law Firm of Agentis, PLLC, and Jason S. Mazer, Esq., and the Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel* [ECF # 1338]; and (ii) the *Final Order Approving Responsible Person's Application to Approve Employment of Jason S. Mazer, Esq., and the Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel to the Responsible Person* [D.E. #1314].

10.     On October 16, 2019, this Court entered its *Order Granting Responsible Person's Motion to Approve Settlement Agreement and Authorize Disbursement of Contingency Fee and Reimbursement of Expenses to Special Litigation Counsel* [D.E. #230], which approved a $2.7 Million settlement to resolve claims with certain parties in the D&O Adversary Proceeding.

## THE ARMADA LITIGATION AND JUDGEMENT

11.     On or about November 28, 2017, a final judgement (the "Armada Judgment"), in the amount of $6 million ($6,000,000.00), was entered in favor of Sellers Capital against George Wight, Armada Group, GP, Inc., and Armada Enterprises, Inc., in the case styled *Sellers Capital, LLC and Sellers Capital Master Fund, Ltd. v. George Wight et al.*, Case No. 15-cv-07644, pending in the United States District Court for the Northern District of Illinois.

## THE SETTLEMENT

12.     Through this Motion and the proposed Settlement, the Parties seek to resolve certain D&O Claims with the Sellers Defendants, *inter alia*, avoid the expense, risk, difficulties,

4

delays, and uncertainties of litigation.  The following is a summary of the material terms of the Settlement Agreement reached by the Parties[4].

    a. <u>The Responsible Person shall receive the right to receive a certain percentage of the amount collected on the Armada Judgment as detailed in paragraph 3 of the Settlement Agreement;</u>

    b. <u>Responsible Person release to Sellers Defendants as set forth in paragraph 4 of the Settlement Agreement;</u>

    c. <u>Sellers Defendants release to Responsible Person, Debtors, and Debtors' Estate as set forth in paragraph 5 of the Settlement Agreement;</u>

    d. <u>Dismissal of Sellers Defendants from the D&O Adversary Proceeding as set forth in paragraph 6 of the Settlement Agreement;</u>

    e. <u>The Responsible Person shall file a Motion pursuant to Bankruptcy Rule 9019 and obtain a Final Order approving the Settlement Agreement, which Final Order shall be binding upon the Estate and any and all successor fiduciaries of the Estate, including but not limited to Mr. Healy in his capacity as post-confirmation Liquidating Trustee.</u>

## **RELIEF REQUESTED AND BASIS THEREFOR**

13.    The Responsible Person submits that the terms of the Settlement Agreement are fair and equitable, and its approval is in the best interest of the Estate and creditors.

14.    In particular, approval of the Settlement Agreement will enable the Estate to avoid the uncertainty of further litigation of those certain D&O Claims which are the subject of this settlement, and the costs of such litigation, which are considerable given that the litigation involves a number of officers and directors, and given the significant factual and expert discovery and substantial fact and expert witness testimony through trial, which would be required.

---

[4] The full Settlement Agreement is attached as Exhibit "A".  To the extent the summary of settlement terms referenced in this Motion is inconsistent with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control.



15.     Early resolution upon the favorable terms set forth in the Settlement Agreement are therefore in the best interests of the Estate.

**A.     The Settlement Meets the Applicable Legal Standard for Approval**

16.     Bankruptcy Rule 9019(a) grants the bankruptcy court the power to approve settlements and compromises. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005). Specifically, Bankruptcy Rule 9019 provides, in relevant part, that "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

17.     Approval of a settlement in bankruptcy proceedings is within the sound discretion of the Court and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *See In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). In determining the reasonableness of a settlement, the test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *Id.* at 891; *see also In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

18.     The legal standard for approval of settlements in the Eleventh Circuit is set forth in *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).  The standard set forth in *Justice Oaks* requires that the Court consider the:

> (a)     probability of success in litigation;
>
> (b)     difficulties, if any, to be encountered in the matter of collection;
>
> (c)     complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and
>
> (d)     paramount interest of the creditors and a proper deference to their reasonable views in the premises.

6



19.     In applying the foregoing factors, the Responsible Person submits that the Settlement Agreement falls well within the requisite "range of reasonableness" and also satisfies the legal standard set forth in *Justice Oaks* as follows:

(a)     **Probability of Success in Litigation**: Although the Responsible Person believes that he would likely be successful in litigating those certain D&O Claims against the Sellers Defendants, litigation with multiple parties brings with it considerable factual and legal challenges affecting the odds of success.   The claims currently asserted in the D&O Adversary Proceeding include claims for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, gross negligence, and equitable subordination, among others.

The inevitable factual issues involved in establishing liability for the Sellers Defendants are only multiplied by the number of directors and officers who played a role in the Debtors' downfall and the likely finger-pointing between them.   Thus, when balanced, the probability for success should weigh in favor of the Responsible Person, but not without significant hurdles and risk.   Accordingly, this factor supports approval of the Settlement.

(b)     **Difficulties, if any, to be Encountered in the Matter of Collection**:

Litigation of the D&O Claims which are the subject of the Settlement Agreement would be protracted and will likely take years to resolve.   The Responsible Person believes that post-judgment collection efforts against the Sellers Defendants would have substantial collection risks, as the only

7



asset of the Sellers Defendants is the Armada Judgment.  Accordingly, this factor supports approval of the Settlement.

(c)      **Complexity of the Litigation Involved:**  The D&O Claims which are the subject of the Settlement are complex.  Because this type of litigation is highly fact-driven, litigation would be extensive and time consuming, and the potential to resolve fact issues by dispositive motions is limited, rendering this a case that, if not settled, would likely need to be tried. Accordingly, this factor supports approval of the Settlement.

(d)      **Expense, Inconvenience, and Delay:**  While Special Litigation Counsel is retained on a contingency fee basis, which would serve to reduce the expense to the Estate of litigating the D&O Claims which are the subject of the Settlement, the facts, circumstances, and legal theories which form the basis of the D&O Claims against the Sellers Defendants will require, among other tasks, significant factual and expert discovery and substantial fact and expert witness testimony through trial at significant expense to the Estate.  Moreover, even if the Responsible Person prevails at trial, there is a high probability that the matter would be appealed.  Moreover, the early resolution allows for a potentially more expedient distribution to creditors, rather than delaying recovery for several years while litigation proceeds.  Accordingly, this factor supports approval of the Settlement.

(e)      **Paramount Interest of the Creditors:**  The approval of the Settlement Agreement is in the best interest of creditors and all parties in interest.  A final resolution of those certain D&O Claims which are the subject of the

8



Settlement Agreement, without further litigation, will maximize the recovery to the estate. Accordingly, this factor supports approval of the Settlement.

20. Based on the foregoing, the Responsible Person respectfully submits that there is good and sufficient cause for the Court to approve the Settlement Agreement.

**WHEREFORE**, the Responsible Person respectfully requests that this Court enter an Order (a) approving the Settlement Agreement; (b) granting this Motion; and (c) granting any further relief as the Court deems appropriate.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on December 12, 2019.

| AGENTIS, PLLC | CIMO MAZER MARK PLLC |
|---|---|
| *Co-Counsel for Mark C. Healy as Responsible Person* | *Co-Counsel for Mark C. Healy as Responsible Person* |
| 55 Alhambra Plaza, Suite 800 | 100 SE 2nd Street, Suite 3650 |
| Coral Gables, Florida 33134 | Miami, Florida 33131 |
| Tel.:   305.722.2002 | Tel.:   305.374.6481 |
| www.agentislaw.com | www.cmmlawgroup.com |
| By:   */s/ Robert P. Charbonneau* | By:   */s/ Jason S. Mazer* |
|     Robert P. Charbonneau |     Jason S. Mazer |
|     Florida Bar No.: 968234 |     Florida Bar No.: 149871 |
|     rpc@agentislaw.com |     jmazer@cmmlawgroup.com |
| |     David C. Cimo, Esq. |
| |     Florida Bar No.: 775400 |
| |     dcimo@cmmlawgroup.com |
| |     Marilee A. Mark, Esq. |
| |     Florida Bar No.: 725961 |
| |     Email: mmark@cmmlawgroup.com |



## <u>DECLARATION</u>

Filer's Attestation: Pursuant to Local Rule 1001-2(e)(3) regarding signatures, I, Robert P.

Charbonneau do attest that concurrence in the filing of this paper has been obtained.

By: */s/ Robert P. Charbonneau*
        Robert P. Charbonneau
        Florida Bar No: 968234
        rpc@agentislaw.com

10

# Exhibit "A"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter the "Settlement Agreement") is made this ___ day of October, 2019, and is entered into by and between (i) Mark C. Healy, in his capacity as Court-appointed responsible person (the "Responsible Person"), designated "Liquidating Trustee" under the confirmed Plan, and fiduciary for the estates (the "Estates") of the Debtor, RMS Titanic, Inc., and its jointly administered debtor affiliates (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-captioned case (the "Main Case"), and solely in the capacity as substitute Plaintiff in Adversary Case No. 3:18-00064-JAF (the "D&O Adversary Proceeding"), pending in and before the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court" or "Court"); and (ii) Sellers Capital Master Fund, Ltd., a Cayman Islands limited company, and Sellers Capital, LLC, an Illinois limited liability company, (together "Sellers Capital" and, together with the Responsible Person, the "Parties").

## RECITALS

A.  **WHEREAS**, on June 14, 2016 (the "Petition Date"), Debtor Premier Exhibitions, Inc. ("Premier" or the "Company"), a Florida corporation, along with its affiliated debtor subsidiaries and affiliates, filed voluntary Chapter 11 bankruptcies before the Bankruptcy Court;

B.  **WHEREAS**, by Notice dated August 24, 2016, the Office of the U.S. Trustee (the "UST") appointed the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. (the "Equity Committee") in accordance with 11 U.S.C. § 1102(a). [Main Case ECF No. 166];

C.  **WHEREAS**, by Order dated May 25, 2018, the Bankruptcy Court granted the Equity Committee's motion for standing to pursue all direct and derivative claims held by Premier's shareholders [Main Case ECF No. 1036] (the "Order Granting Standing");

D.    **WHEREAS**, on June 4, 2018, the Equity Committee commenced the D&O Adversary Proceeding against the Settling Insureds, among others. [Adv. Case ECF No. 1];

E.    **WHEREAS**, by Order dated January 25, 2019, Mr. Healy was appointed as the Responsible Person, with the condition that upon the Equity Committee's disbandment, he would immediately: (i) have all rights, powers and remedies granted to the Equity Committee under the Standing Order, and (ii) be substituted as party plaintiff in the D&O Adversary Proceeding. [Adv. Case ECF No. 25] (the "Order Appointing Responsible Person");

F.    **WHEREAS**, by Notice dated February 6, 2019, the UST disbanded the Equity Committee. [Main Case ECF No. 1311];

G.    **WHEREAS**, pursuant to the Order Appointing Responsible Person, Mr. Healy, as the Responsible Person, has all rights, powers, and remedies granted to the Equity Committee under the Standing Order, and is now the duly appointed and acting proper party plaintiff with standing to prosecute the claims that are the subject of the D&O Adversary Proceeding, along with the power, authority, and standing to investigate, prosecute, compromise, and otherwise resolve, any and all claims against the Debtors' former or current directors, officers, managers, control persons, and/or employees, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, or other proceeding in law, equity, or otherwise (collectively, the "D&O Claims");

H.    **WHEREAS**, pursuant to the First Amended Plan of Liquidation of the Debtors Under Chapter 11 of the Bankruptcy Code filed on September 11, 2019 (the "Plan"), Mr. Healy is also designated and appointed as the Liquidating Trustee under that certain Liquidating Trust Agreement to be established under the Plan upon confirmation and approval to hold, among other rights and powers, pursuant to Article 6 of the Plan upon the Effective Date, all rights and causes of actions held by the Debtors or their Estates prior to the Effective Date and will vest Healy as

Liquidating Trustee with the power and authority, and standing to investigate, prosecute, compromise and otherwise resolve any and all of the Debtors and their Estates' claims by Healy as the Liquidating Trustee which are the subject of the D&O Adversary Proceeding;

I.      **WHEREAS**, a final judgment (the "Armada Judgment"), in the amount of $6 million (6,000,000.00), was entered in favor of Sellers Capital against George Wight, Armada Group, GP, Inc. and Armada Enterprises, Inc, in the case styled *Sellers Capital, LLC and Sellers Capital Master Fund, Ltd. v. George Wight et al.*, Case No. 15-cv-07644, pending in the Northern District of Illinois (the "Armada Litigation").

J.      **WHEREAS**, Robinson Curley P.C. ("RC") represented Sellers Capital in the Armada Litigation on a combined hourly and contingency fee basis.  RC was paid hourly fees at half its regular rates, and due to post-judgment proceedings on the Armada Judgment, is now owed 20% of any amounts collected on the Armada Judgment.

K.      **WHEREAS,** according to RC's billing records, Mark Sellers, on behalf of Sellers Capital, paid RC $294,104 in hourly fees and $39,658 in out-of-pocket costs to finance the Armada Litigation, and has not been repaid (the "Mark Sellers Debt").  Accordingly, and pursuant to RC's billing records, Sellers Capital still owes RC $59,547 for unpaid hourly fees and $250 for unpaid costs advanced (the "RC Debt").

L.      **WHEREAS**, Sellers Capital agrees to settle the D&O Adversary Proceeding by granting the Responsible Person the right to receive a certain percentage of the amount collected on the Armada Judgment as detailed *infra* in the section titled Settlement Terms.

M.      **WHEREAS**, the Parties desire to avoid the delay, cost, and uncertainty of litigation by resolving and settling the D&O Claims against Sellers Capital under the terms and conditions set forth herein; and

3

N.      **WHEREAS**, the Parties wish to set forth the terms of their settlement in this Agreement.

O.      **NOW, THEREFORE**, in consideration of the mutual promises set forth herein, the Parties agree as follows:

1.      <u>Recitals Incorporated</u>.  The recitals and prefatory phrases and paragraphs set forth above are true, accurate and correct, and are incorporated in full into this Settlement Agreement.

2.      <u>Effective Date</u>. Unless otherwise stated, the obligations, representations, and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "<u>Effective Date</u>"):

   a)   the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>9019 Order</u>") approving this Agreement, with the 9019 Order providing that approval of this Agreement and the terms of the 9019 Order shall be binding upon the Estates and any and all successor fiduciaries of the Estates, including but not limited to Mr. Healy in his capacity as post-confirmation Liquidating Trustee; and

   b)   the 9019 Order has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such 9019 Order), or (ii) any appeal, any petition for certiorari or any

motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the 9019 Order) to which the 9019 Order was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken (upon satisfaction of each condition of Paragraph 2(A) and 2(B) herein, the 9019 Order shall be referred to as the "Final Order").

3.    Settlement Terms.    Any dollars collected on the Armada Judgment shall be distributed as follows:

a)    First, all costs advanced by the firm retained to collect the Armada Judgment (the "Collection Firm") in seeking to collect the Armada Judgment shall be paid in full.

b)    Second, after payment of costs to the Collection Firm, the Collection Firm shall receive 25% and RC shall receive 20% of each dollar collected on the Armada Judgment.  For the avoidance of doubt, in the event that RC is retained as the Collection Firm, it shall receive 45% of every dollar collected on the Armada Judgment.

c)    Third, the remaining 55% of each dollar collected on the Armada Judgment shall be paid to RC until the RC Debt is paid in full and then to Mark Sellers until the Mark Sellers Debt is paid in full.

d) Fourth, after the amounts in sub-paragraphs a & c above are paid in full, any and all remaining dollars collected on the Armada Judgment will be distributed as follows:

    i.    25% of each dollar shall be distributed to the Collection Firm;

    ii.    20% of each dollar shall be distributed to RC;

    iii.    10% of each dollar shall be distributed to the Responsible Person; and

    iv.    45% of each dollar shall be distributed to Sellers Capital.

4.    <u>Release by Responsible Person, Debtors, Estates</u>.  Except for the obligations created by this Settlement Agreement, upon the occurrence of the Effective Date, the Responsible Person, the Debtors and the Estates shall be deemed to fully and irrevocably release and forever discharge Sellers Capital, LLC and Sellers Capital Master Fund, Ltd., and each of their respective directors, officers, managers, shareholders, members, partners, employees, administrators, heirs, executors, agents, representatives, attorneys, insurers, successors and assigns (collectively, the "<u>Sellers Capital Released Parties</u>") from any and all claims, complaints, demands, actions, charges, allegations, causes of action, suits, liabilities, obligations, promises, contracts, agreements, damages, losses, expenses and costs (including, without limitation, actual court costs and attorneys' fees) of whatever nature and kind, known and unknown, fixed or contingent, wherever made, filed or prosecuted, and whether or not yet asserted, arising out of or related to the D&O Claims, which the Responsible Person, the Debtors, and/or the Estates may now or hereafter have against the Sellers Capital Released Parties or any of them by reason of any matter, cause, action, omission or failure to act which has occurred on or prior to the date of this Settlement Agreement; excepting only such obligations, promises and agreements as expressly set out in this Settlement Agreement.

5.      <u>Release by Sellers Capital</u>.  Except for the obligations created by this Settlement Agreement, upon the occurrence of the Effective Date, Sellers Capital shall be deemed to fully and irrevocably release and forever discharge the Responsible Person, the Debtors, and the Estates, and each of their respective directors, officers, shareholders, managers, members, employees, administrators, heirs, executors, agents, representatives, attorneys, insurers, successors and assigns (collectively, the "<u>Responsible Person Released Parties</u>") from any and all claims, complaints, demands, actions, charges, allegations, causes of action, suits, liabilities, obligations, promises, contracts, agreements, damages, losses, expenses and costs (including, without limitation, actual court costs and attorneys' fees) of whatever nature and kind, known and unknown, fixed or contingent, wherever made, filed or prosecuted, and whether or not yet asserted, including, but not limited to, claims arising out of or related to the D&O Claims, which Sellers Capital may now or hereafter have against the Responsible Person Released Parties or any of them by reason of any matter, cause, action, omission or failure to act which has occurred on or prior to the date of this Settlement Agreement; excepting only such obligations, promises and agreements as expressly set out in this Settlement Agreement.

6.      <u>Dismissal of Sellers Capital</u>.  Within three (3) business days after the occurrence of the Effective Date, the Responsible Person/Liquidating Trustee or any other successor fiduciary and Sellers Capital shall file a stipulation of dismissal of the D&O Adversary Proceeding solely as against Sellers Capital, with prejudice, with all Parties to bear their own legal fees and costs, and expressly acknowledging, stating, and agreeing therein that such dismissal shall NOT settle, release, dismiss, or be deemed an adjudication on the merits with respect to any aspect of or claims against any other parties in connection with the D&O Adversary Proceeding or otherwise.

7.      Attorneys' Fees and Costs.  Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Agreement, obtaining a Final Order approving the Agreement, the D&O Claims, the D&O Adversary Proceeding, and the Main Case.  In the event that a Party hereto initiates a lawsuit or other proceeding to enforce the provisions of this Agreement or asserts the provisions of this Agreement as a defense to a lawsuit or other proceeding brought by any other Party, the Party prevailing in such lawsuit or civil proceeding shall be paid, in addition to all other sums that may be required to be paid, a reasonable sum for the prevailing Party's attorneys' fees and costs of action, including paralegal fees and any fees and costs on appeal.

8.      Non-Approval.  In the event the Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur, nothing herein shall be deemed a representation or admission by any Party as to any issue, and this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date and the Parties shall be returned to the *status quo* each Party held prior to entry into this Agreement, provided, however, that nothing herein shall operate or be construed to operate as deeming null and void or having any effect whatsoever on any Tolling Agreement(s) or amendments thereto which have been executed or may be executed in the future by any of the Parties and any and all such Tolling Agreement(s) or amendments thereto shall remain in full force and effect and valid and binding on the parties thereto.

9.      No Admissions.  This Agreement is entered into for settlement and compromise of disputed claims and shall never be treated as an admission by any Party of any liability whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the

violation of any law, statute, regulation, duty or contract whatsoever. By entering into this Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings or litigation and expressly disclaim any liability to any other party or person. This Agreement shall have no precedential value in any other litigation or matter.

10.     Authority.  Each Party to this Settlement Agreement warrants and represents that the person signing this Settlement Agreement on its behalf is duly authorized to enter into this Settlement Agreement on behalf of such Party. Each Party signing this Settlement Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Settlement Agreement and shall survive execution of this Settlement Agreement.

11.     Governing Law/Forum Selection.  The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Agreement and regarding the interpretation, effectuation, and enforcement of the terms of this Agreement and the Final Order approving this Agreement. The Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

12.     Advice of Counsel.  The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, have read this Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Agreement and its nature and effect. The Parties further represent that they are entering into this Agreement freely

and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

13.     <u>Severability</u>.  If any non-material term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

14.     <u>Neutral Interpretation</u>.  In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

15.     <u>Execution of Documents</u>.  This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement.  The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF or electronic copies of the executed signature pages. Signatures transmitted in PDF or electronic format shall have the same effect as original signatures.

16.     <u>Divisions and Headings</u>.  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

17.     <u>Notices</u>.  All notices required to be given under this Settlement Agreement by any party to any other party to this Settlement Agreement shall be in writing and shall be deemed to have been sufficiently given if delivered in person, sent by United States mail, via certified or

registered mail, postage prepaid, and addressed as follows, or if sent via electronic mail, to the following electronic mail addresses:

|  |  |
|---|---|
| If to Sellers Capital: | c/o Kenneth Dante Murena, Esq.<br>Damian & Valori LLP<br>1000 Brickell Avenue, Suite 1020<br>Miami, Florida 33131<br>E-mail: kmurena@dvllp.com |
| If to Responsible Person: | Mark C. Healy, Responsible Person<br>c/o Robert P. Charbonneau, Esq.<br>Christopher B. Spuches, Esq.<br>Jason A. Martorella, Esq.<br>Email: rpc@agentislaw.com<br>Email: cbs@agentislaw.com<br>Email: jam@agentislaw.com<br>AGENTIS, PLLC<br>55 Alhambra Plaza<br>Suite 800<br>Coral Gables, FL  33134 |
|  | c/o Jason S. Mazer, Esq.<br>David C. Cimo, Esq.<br>Marilee A. Mark, Esq.<br>Email: jmazer@cmmlawgroup.com<br>Email: dcimo@cmmlawgroup.com<br>Email: mmark@cmmlawgroup.com<br>CIMO MAZER MARK PLLC<br>100 Southeast Second Street<br>Suite 3650<br>Miami, FL  33131 |

18.    <u>Entire Agreement</u>.  This Agreement constitutes the full agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Agreement, unless expressly set forth herein.  This Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

| | Sellers Capital, LLC |
|---|---|
| By: _____<br><br>Mark C. Healy, Responsible Person | By: _____<br><br>Mark Sellers<br>Its: Manager _____ |
| | Sellers Capital Master Fund, Ltd.<br><br>By: _____<br><br>Mark Sellers<br>Its: Manager _____ |