## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

*In re:*

PREMIER EXHIBITIONS, INC. a/k/a      Case No.: 3:16-bk-2232-BAJ
PRYXIE LIQUIDATION CORP., et. al.,

         Chapter 11

_____Debtor._____ /

## LIQUIDATING TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH CERTAIN DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, AND/OR CONTROL PERSONS OF ALL OR CERTAIN OF THE DEBTORS AND AUTHORIZE DISBURSEMENT OF CONTINGENCY FEE AND REIMBURSEMENT OF EXPENSES TO SPECIAL LITIGATION COUNSEL

MARK C. HEALY, solely in his capacity as Liquidating Trustee under the Liquidating Trust Agreement (the "Trustee"), by and through his undersigned counsel, (i) Agentis, PLLC ("Agentis"), (ii) Cimo Mazer Mark, PLLC ("CMM") (ii) Cimo Mark, PLLC ("Cimo Mark") and (iv) Mazer Law P.A. ("Mazer Law")[1] (when Agentis, CMM, Cimo Mark and Mazer Law, referred to collectively, "Special Litigation Counsel"), and pursuant to Fed. R. Bankr. P. 9019, as well as the prior orders of this Court, moves for the entry of an order approving the Settlement Agreement[2] by and between (i) the Trustee; and the Debtors' director and officer ("D&O") liability insurers (defined below); and (iii) the following former directors, officers, managers, managers, employees, and/or control persons of all or certain of the Debtors: Daoping Bao, Jerome Henshall, Michael Evans, Sid Dutchak, Mark Bains, and Guo "David" Ding each

---

[1] Effective as of July 31, 2024, CMM ceased operations with former shareholders David Cimo and Marilee Mark forming Cimo Mark PLLC and Jason Mazer forming Mazer Law P.A. effective August 1, 2024, which firms were collectively retained by the Trustee as successor special litigation counsel.

[2] The final executed version of the Settlement Agreement will be filed prior to the hearing on to be scheduled on this Motion.



individually a "Settling Insured" and collectively, the "Settling Insureds").[3] The Trustee also seeks

authority from the Court to disburse the Contingency Fee, as further defined below, and to

reimburse expenses to Special Litigation Counsel.

## BACKGROUND

1.      On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The factual background

regarding the Debtors, including their business operations, capital and debt structure, and the

events leading to the filing of this bankruptcy case, are set forth in detail in the Chapter 11 Case

Management Summary [D.E. # 8] (the "Case Summary").

2.      Pursuant to an Order dated July 21, 2016 [ECF# 100], the cases were jointly

administered under the lead case *In re Premier Exhibitions, Inc*., Case No. 3:16-bk-02230

(collectively, the "Chapter 11 Cases").[4]  As set forth below (and in greater detail in the Disclosure

Statement), the Debtors sold substantially all of their assets during these Chapter 11 Cases and no

longer engage in any business activities.

3.      On August 24, 2016, the United States Trustee appointed an Official Committee of

Equity Security Holders (the "Equity Committee") [ECF# 167].  The Equity Committee undertook

an investigation of certain causes of action, including potential claims against the Debtors' officers

and directors (the "D&O Claims").

---

[3] "Insured Person" and "Insured Persons" as used herein shall mean and include (i) the Settling Insureds as
defined herein and (ii) the Insured Persons as defined in Great American Insurance Group Policies No.
DFX1491056, Illinois National Insurance Company Policies No. 02-211-90-92, Lloyd's Hiscox Policies
No. B0146ERUSA1500577, Argonaut Insurance Company Policies MLX7601647-00, and  Liberty
Insurance Underwriters Inc. Policies No. DONYAA7494001 (collectively, the "Insurers" and the
"Policies"). From time to time in this Settlement Agreement, the Trustee, the Insurers, and the Settling
Insureds are referred to collectively as the "Parties" or individually as "Party."

[4]  The RMS Titanic, Inc., Case No.: 3:16-bk-02330 (the "RMS Case") was dismissed on March 11, 2019
[ECF# 1336].  Unless otherwise noted, all references to filings in this Motion refer to filings in the RMS Case.



4.      On May 11, 2018, the Equity Committee filed the *Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estates* [ECF # 1015], seeking derivative standing to prosecute and potentially settle claims against one or more the Debtors' officers and/or directors (the "D&O Claims").  Contemporaneously with the foregoing motion, the Equity Committee also filed the *Application for Approval of Employment of Robert P. Charbonneau, Esq. and the Law Firm of Agentis PLLC as Special Litigation Counsel For The Official Committee of Equity Security Holders Nunc Pro Tunc to May 2, 2018* [ECF # 1017].

5.      On May 25, 2018, the Court granted derivative and exclusive standing to the Equity Committee to commence, prosecute and, if appropriate, settle the D&O Claims for the benefit of the estate [ECF #1036].

6.      On June 4, 2018, the Equity Committee filed an *Adversary Complaint and Demand for Jury Trial*, initiating an adversary proceeding to pursue certain D&O Claims and other claims against (i) Defendant Bao; (ii) certain other former directors and officers of Premier Exhibitions, Inc., including Mark A. Sellers, Douglas Banker, Richard Kraniak, and Jack H. Jacobs (collectively the "2018 AP Defendants"); and (iii) Sellers Capital, LLC and Sellers Capital Master Fund, Ltd. (together, the "Sellers Entities") in Adv. Proc. No. 3:18-ap-00064-PMG (the "2018 Adversary") [ECF #1 in 2018 Adversary].

7.      On June 14, 2018, the Debtors executed a certain Asset Purchase Agreement (as subsequently amended, the "APA") for the sale of substantially all of the Debtors' assets—including, (a) the entire collection of artifacts recovered from the RMS Titanic wreck site that the Debtor had previously valued at approximately $218 million, and (b) future salvage rights—to Premier Acquisition Holdings LLC ("Premier Acquisition") in exchange for $19,500,000.00 in

3



cash, subject to certain adjustments at closing, and the assumption of certain liabilities set forth in the APA.

8.      On October 19, 2018, the Court approved the sale of the Debtors' assets to Premier Acquisition pursuant to the APA (the "Sale") [ECF #1232].

9.      On January 24, 2019, the Debtors filed a *Consent Motion for an Order Appointing a Responsible Person as Substitute Plaintiff in the Adversary Proceeding against Certain of the Debtors' Current and Former Directors and Officers* [ECF #24, 2018 Adversary] (the "Appointment Motion") wherein the Debtors sought the appointment of the Mark C. Healy as the "Responsible Person" and substitute plaintiff to pursue the claims in the 2018 Adversary upon disbandment of the Equity Committee.

10.     On January 25, 2019, the Court entered an order granting the Appointment Motion, which provided, in pertinent part, that the Responsible Person "shall immediately (i) have all rights, powers and remedies granted to the Equity Committee under the Standing Order, and (ii) be substituted as party plaintiff in the Adversary Proceeding . . . ." [ECF #25, 2018 Adversary].

11.     By order dated October 16, 2019[ECF #231 in No. 16-02232] (the "Confirmation Order"), the Court confirmed the Debtors' First Amended Plan of Liquidation [ECF #82 in No. 16-02232] (the "Confirmed Plan").   The Confirmation Plan, provided, *inter alia*, for the appointment of the Trustee as liquidating trustee pursuant to the liquidating trust agreement implemented under the Confirmed Plan. In his role as liquidating trustee, the Trustee became the acting fiduciary with standing to prosecute the D&O Claims.

4



## A. The Adversary Proceedings

12.    On January 8, 2020, the Trustee and the 2018 Defendants filed a stipulated motion to dismiss the 2018 AP Defendants in the 2018 Adversary, which remained in full force and effect as to all other defendants [ECF #42, 2018 Adversary].

13.    On February 26, 2020, the Court entered an order approving a settlement between the then Responsible Person, Mark Healy, and the defendants in that action with respect to the 2018 Adversary [ECF #259 in 16-02232].

14.    On April 20, 2020, the Trustee filed a *First Amended Adversary Complaint and Other Relief and Demand for Jury Trial* in the 2018 Adversary [ECF #54, 2018 Adversary] against Defendant Bao, asserting claims for breach of fiduciary duties, objection to claims, and equitable subordination relating to, among other things, the Sale of the Debtors' assets, including the artifacts and salvage rights, in the Bankruptcy Cases.

15.    Also on April 20, 2020, the Trustee filed an *Adversary Complaint for Damages and Other Relief and Demand for Jury Trial* against the Defendants asserting claims for breach of fiduciary duties, objection to claims, and equitable subordination, relating to, among other things, the Sale of the Debtors' assets, including the artifacts and salvage rights, in the Bankruptcy Cases thereby initiating Adv. Proc. No. 3:20-ap-00051-JAF .

16.    On August 28, 2020, the Court entered an order consolidating the 2018 Adversary and the 2020 Adversary (together, the "Adversary Proceedings") for all purposes, including trial [ECF #65, 2020 Adversary].

17.    On or around July 2, 2020, the Defendants filed motions to dismiss the Adversary Proceedings [ECF #66, 2018 Adversary; ECF ##34, 36, 2020 Adversary] (the "Motions to



Dismiss"), to which the Trustee filed opposition responses on August 17, 2020 [ECF #8, 2018 Adversary; ECF ## 61, 62, 2020 Adversary].

18.     On February 23, 2021, the Court entered an order denying the Motions to Dismiss [ECF #81, 2020 Adversary].

19.     On March 29, 2021, the Court entered an order [ECF #91, 2020 Adversary] requiring the Defendants to file their answers in the Adversary Proceedings by May 7, 2021.

20.     On May 7, 2021, the Defendants filed their answers and affirmative defenses [ECF #91, 2018 Adversary; ECF ##92, 93, 2020 Adversary].

21.     On March 14, 2019, the Court entered the (i) *Final Order Approving Responsible Person's Application (I) to Approve Employment of Robert P. Charbonneau, Esq., and the Law Firm of Agentis, PLLC, as Special Litigation Counsel to the Responsible Person; (II) to Modify the Terms of Said Employment; and (III) to Approve the Terms of the Agreement Between Robert P. Charbonneau, Esq., and the Law Firm of Agentis, PLLC, and Jason S. Mazer, Esq., and the Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel* [ECF # 1338]; and (ii) the *Final Order Approving Responsible Person's Application to Approve Employment of Jason S. Mazer, Esq., and the Law Firm of Cimo Mazer Mark, PLLC, as Co-Special Litigation Counsel to the Responsible Person* [ECF #1314]. The two, foregoing orders approved a contingency fee (the "Contingency Fee") of 40%, to be allocated equally between  Agentis and CMM plus reimbursement of expenses.

## SUMMARY OF THE COMPROMISED CLAIMS

22.     The Parties desire to avoid the delay, cost, and uncertainty of litigation by resolving and settling the D&O Claims against the Defendants under the terms and conditions set forth herein.



## **TERMS OF COMPROMISE**

23.     Through this Motion and the Settlement, the Parties seek to resolve the disputes among the Parties' and, *inter alia*, avoid the attendant expense, risk, difficulties, delays, and uncertainties of litigation.  The following is a summary of the Settlement, memorialized in that certain settlement agreement (the "Settlement Agreement")[5], to which parties in interest should refer for the express terms of the Settlement, which are summarized as follows:

      a.    Settlement Payment: (i) The D&Os, by and through the Insurers, shall pay to the Trustee $11,750,000.00 thirty (30) days after entry of an Order of this Court approving the Settlement Agreement; and

      b.    Subject to the terms and conditions set forth in the Settlement Agreement, the Parties shall mutually release, acquit and forever discharge each other from all Claims, excepting the specific inclusions and exceptions as set forth in the Settlement Agreement. By and through the release, all Defendants shall waive all claims against the Estate.

24.     The Trustee respectfully submits that the Settlement Agreement is fair and equitable, meets the requirements for approval of settlements, and is in the best interests of the Estate.

## **RELIEF REQUESTED AND BASIS THEREFOR**

25.     **Settlement Payment.**  For and in consideration of each of the terms set forth in the Settlement Agreement, the Insurers shall pay on the Settling Insureds' behalf the sum of ELEVEN MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 U.S. ($11,750,000.00 U.S.) (the "Settlement Payment") to the Trustee on behalf of the Bankruptcy Estate.  The Insurers shall pay the Settlement Payment via wire transfer or in the form of a check for good and collectable funds made payable to "Mark C. Healy, Liquidating Trustee of Premier Exhibitions, Inc.."  The Insurers shall pay the Settlement Payment no later than thirty (30) days

---

[5] Capitalized terms not otherwise defined herein bear the meaning ascribed to them in the Settlement Agreement.



after entry of a final order of this Court (as defined in the Settlement Agreement) and receipt of a W-9 Form. No Settling Insured is obligated to make all or part of the Settlement Payment

26.     **Trustee Release to Settling Insureds and Insured Persons.**  Upon occurrence of the Effective Date, the Trustee, solely in his capacity as Trustee for the Debtors' Estate, shall release the Insureds and Insured Persons as more fully set forth in paragraph 4 of the Settlement Agreement.

27.     **Settling Insureds Release to the Trustee, the Debtors, and the Debtors' Estate.** Upon occurrence of the Effective Date, the Settling Insureds will release, and forever discharge the Trustee.

28.     **Dismissal of Adversary Proceedings.** Within ten (10) business days after the occurrence of the Effective Date, the Parties shall file a stipulation of dismissal with prejudice of the Adversary Proceedings in accordance with Fed. R. Civ. P. 41, as incorporated by Fed. R. Bankr. P. 7041, with each Party to bear its own fees and costs.

29.     **Non-Approval.**  In the event the Settlement Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur, nothing herein shall be deemed a representation or admission by any Party as to any issue, and this Settlement Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date and the Parties shall be returned to the *status quo ante* the Settlement Agreement.

30.     The Trustee submits that the terms of the Settlement Agreement are fair and equitable, and its approval is in the best interest of the Estate and creditors. In particular, approval of the Settlement Agreement will enable the Estate to avoid the uncertainty of further litigation of the D&O Claims against the Insureds and the costs of such litigation, which are considerable

8



given that the litigation involves a number of officers and directors, and reported litigation costs are already remarkably high.

**A.     The Settlement Meets the Applicable Legal Standard for Approval**

31.     Bankruptcy Rule 9019(a) grants the bankruptcy court the power to approve settlements and compromises. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005). Specifically, Bankruptcy Rule 9019 provides, in relevant part, that "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

32.     Approval of a settlement in bankruptcy proceedings is within the sound discretion of the Court and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *See In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). In determining the reasonableness of a settlement, the test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *Id.* at 891; *see also In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

33.     The legal standard for approval of settlements in the Eleventh Circuit is set forth in *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).  The standard set forth in *Justice Oaks* requires that the Court consider the:

(a)     probability of success in litigation;

(b)     difficulties, if any, to be encountered in the matter of collection;

(c)     complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and

(d)     paramount interest of the creditors and a proper deference to their reasonable views in the premises.



34.     In applying the foregoing factors, the Trustee submits that the Settlement Agreement falls well within the requisite "range of reasonableness" and also satisfies the legal standard set forth in *Justice Oaks* as follows:

(a)     **Probability of Success in Litigation**: Although the Trustee believes that he would likely be successful in litigating claims against the Insureds, litigation with several Insureds brings with it considerable factual and legal challenges affecting the odds of success.  The claims prosecuted by the Trustee include breaches of fiduciary duty and equitable subordination, among others.

The inevitable factual issues involved in establishing personal liability for corporate actors are only multiplied by the number of D&Os who played a role in the Debtors' downfall.  Thus, when balanced, the probability for success should weigh in favor of the Trustee, but not without significant hurdles.

(b)     **Difficulties, if any, to be Encountered in the Matter of Collection**:

Such litigation could be protracted and take years to resolve.  From the Trustee's perspective, the only readily available recoveries left in this case would come from the D&O Claims.  Indeed, the longer the litigation continues, the less coverage there will be available to satisfy a potential money judgment. The Trustee would then be left to seek recovery against the individual Directors and Officers.

(c)     **Complexity of the Litigation Involved:**  The D&O Claims are complex. Because this type of litigation is highly fact and expert witness-driven, litigation of these issues would be extensive and time consuming, and the potential to resolve fact issues by dispositive motions is limited, rendering this a case that, if not settled, would likely need to



be tried. Consequently, throughout the process, the litigation itself has been, and will continue to be costly and steadily diminish the primary asset—the insurance proceeds.

(d) **Expense, Inconvenience, and Delay**: The Estate would likely incur substantial administrative costs in pursuing litigation against the Insureds. While Special Litigation counsel has accepted representation on a contingency basis, costs associated with several expert witnesses have been high. Moreover, the D&O Policy is a wasting asset, and the expense of defense costs, the inconvenience of evidence and witnesses being spread across multiple locations, and the likelihood that the case would have to proceed to trial if a negotiated resolution is not reached, all weigh in favor of approving the settlement.

Indeed, the Settlement Agreement, if approved by the Court, will go far in preserving and maximizing the available insurance proceeds for the benefit of creditors, rather than denying the creditors any benefit of the policy in lieu of diverting all of its value for defenses costs. Moreover, resolution now allows for a much more expedient distribution to creditors, rather than further delaying recovery for several years while the case is litigated.

(e) **Paramount Interest of the Creditors**: The approval of the Settlement Agreement is in the best interest of creditors and all parties in interest. A final resolution of the issues without further litigation will result in substantial economic benefit to the Estate likely resulting in creditors receiving a distribution much sooner than if the matters were delayed by proceeding through continued litigation. Notably, a representative of the post-confirmation Oversight Committee formed under the Plan attended the mediation conference and had advised it supports approval of the settlement.



35.     Based on the foregoing, the Trustee respectfully submits that the Settlement Agreement represents the sound exercise of the Trustee's business judgment and that good and sufficient cause exists for the Court to approve the Settlement Agreement.

**B.      Disbursement of Contingency Fee /Payment of Expenses**

36.     Pursuant to the retention orders entered by the Court and the Trustee's retention of Cimo Mark and Mazer Law post-confirmation, Special Litigation Counsel are collectively entitled to payment of (a) $4,700,000.00, representing a Contingency Fee of 40% of the Settlement Payment, and (b) reimbursement of actual costs and expenses.  The Contingency Fee shall be equally allocated between Agentis and CMM.[6]

37.     Pursuant to Paragraph 6.2.12 the Confirmed Plan,  any and all outstanding litigation costs incurred by Special Litigation Counsel in connection with this representation shall be paid by the Trustee from the Settlement Payment without any further order of the Court.

**--Remainder of Page Left Intentionally Blank--**

---

[6] Cimo Mark and Mazer Law to jointly advise the Trustee of their respective agreed shares from the CMM portion of the fee.



**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order (a) approving the Settlement Agreement; (b) authorizing the Trustee to pay the Contingency Fee and reimbursement of expenses to Special Litigation Counsel; and (c) granting any further relief as the Court deems appropriate.

**Respectfully Submitted by:**

| **AGENTIS**<br>*Co-Counsel for the Trustee*<br>45 Almeria Avenue<br>Coral Gables, Florida 33134<br>Tel.: 305.722.2002<br><br><br>By:___/s/ Robert P. Charbonneau___<br>      Robert P. Charbonneau<br>      Florida Bar No.: 968234<br>      rpc@agentislaw.com | **CIMO MARK PLLC**<br>*Co-Counsel for the Trustee*<br>1 SE 3rd Ave.Suite 2110<br>Miami, FL 33131<br>T. 786.742.8382<br><br>By:  /s/ David C. Cimo<br>      David C. Cimo, Esq.<br>      Fla. Bar No. 775400<br>      dcimo@cimomark.com<br>      Marilee A. Mark, Esq.<br>      Fla. Bar No. 725961<br>      mmark@cimomark.com | **MAZER LAW P.A.**<br>*Co-Counsel for the Trustee*<br>255 Alhambra Circle<br>Suite 1160<br>Coral Gables, FL 33134<br>T. 305.374.6480<br><br>  By:  Jason S. Mazer<br>      Jason S. Mazer, Esq.<br>      Fla. Bar No. 0149871<br>      jmazer@mazer-law.com |



**<u>DECLARATION</u>**

Filer's Attestation: Pursuant to Local Rule 1001-2(e)(3) regarding signatures, I, Robert P.

Charbonneau do attest that concurrence in the filing of this paper has been obtained.

By: *  /s/ Robert P. Charbonneau          *
Robert P. Charbonneau
Florida Bar No: 968234
rpc@agentislaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by

transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to

receive electronic notices of filing in this case on July 28, 2025.

By: *  /s/ Robert P. Charbonneau          *
Robert P. Charbonneau
Florida Bar No: 968234
rpc@agentislaw.com

